2013-1564

# United States Court of Appeals
# for the Federal Circuit

SCA HYGIENE PRODUCTS AKTIEBOLAG
and SCA PERSONAL CARE, INC.,

*Plaintiffs-Appellants,*

*v.*

FIRST QUALITY BABY PRODUCTS, LLC,
FIRST QUALITY HYGIENIC, INC.,
FIRST QUALITY PRODUCTS, INC., and
FIRST QUALITY RETAIL SERVICES, LLC,

*Defendants-Appellees.*

*Appeal from the United States District Court for the Western District of Kentucky in Case No. 10-CV-0122, Chief Judge Joseph H. McKinley, Jr.*

**NON-CONFIDENTIAL BRIEF FOR PLAINTIFFS-APPELLANTS SCA HYGIENE PRODUCTS AKTIEBOLAG and SCA PERSONAL CARE, INC.**

MARTIN J. BLACK
KEVIN M. FLANNERY
TERI-LYNN A. EVANS
DECHERT LLP
2929 Arch Street
Philadelphia, PA 19104-2808
(215) 994-4000

*Attorneys for Plaintiffs-Appellants*

October 15, 2013

## <u>CERTIFICATE OF INTEREST</u>

Counsel for the appellants, SCA Hygiene Products Aktiebolag and SCA Personal Care, Inc., certifies the following:

1.    The full name of every party or amicus represented by me is:

SCA Hygiene Products Aktiebolag and SCA Personal Care, Inc.

2.    The name of the real party in interest (if the real party named in the caption is not the real party in interest) represented by me is:

N/A.

3.    All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

SCA Hygiene Products Aktiebolag is a wholly-owned subsidiary of Svenska Cellulosa Aktiebolaget SCA (publ.), which is traded on the Swedish stock exchange.  No other publicly traded company owns 10% or more of the stock of SCA Hygiene Products Aktiebolag or SCA Personal Care, Inc.

4.    The names of all law firms and the partners or associates that appeared for the party or  amicus now represented by me in the District Court or agency or are expected to appear in this court are:

In the Western District of Kentucky, SCA Hygiene Products Aktiebolag and SCA Personal Care, Inc. were represented by Martin J. Black, Kevin M. Flannery, Sharon K. Gagliardi, and Teri-Lynn A. Evans of Dechert LLP, and E. Kenly Ames and Michael A. Owsley of English, Lucas, Priest & Owsley, LLP.

On appeal before this Court, SCA Hygiene Products Aktiebolag and SCA Personal Care, Inc. are represented by Martin J. Black, Kevin M. Flannery, and Teri-Lynn A. Evans of Dechert LLP.

Date:  October 15, 2013            */s/ Kevin M. Flannery*
                                   Kevin M. Flannery
                                   DECHERT LLP
                                   Attorney for Appellants

i

# TABLE OF CONTENTS

*Page*

I.      STATEMENT OF RELATED CASES.............................................................1

II.     JURISDICTIONAL STATEMENT ...............................................................1

III.    STATEMENT OF THE ISSUES ...................................................................2

IV.     STATEMENT OF THE CASE ......................................................................2

V.      STATEMENT OF THE FACTS ....................................................................4

        A.      SCA—Background.............................................................................4

        B.      SCA's Patented Technology—The '646 Patent..................................5

        C.      First Quality—Background And The Accused Products.....................6

        D.      First Quality's Motion For Summary Judgment .................................7

                1.      Communications Between The Parties ......................................8

                2.      SCA's Successful Reexamination Of The '646 Patent...............9

                3.      The Adult Incontinence Market And First Quality's Plan To
                        Become The Market Leader For Private Label Protective
                        Underwear ..............................................................................11

                4.      The Acquisition Of Tyco Healthcare Retail Group Was
                        Critical To First Quality's Strategy .........................................13

                5.      First Quality's Continued Reliance On Its Invalidity Opinion
                        And Maintenance Of The Status Quo After Filing Of The
                        Complaint.................................................................................14

        E.      The Court's Opinion And Order On First Quality's Motion .............14

VI.     SUMMARY OF THE ARGUMENT .............................................................15

VII.    ARGUMENT...............................................................................................18

        A.      Standard Of Review .......................................................................18

B.    The District Court Erred In Finding That SCA's Claims Are Barred By Laches ............................................................................19

    1.    There Can Be No Laches With Respect To The Reexamination Claims ..............................................................20

    2.    The District Court Abused Its Discretion In Requiring Notice Of The Reexamination ..................................................21

    3.    There Is A Genuine Issue Of Fact Over Whether Notice Would Have Caused First Quality To Change Its Business .....26

    4.    There Is A Factual Dispute With Respect To The Reasonableness Of SCA's Post-Reexamination Conduct ........27

C.    The District Court Erred In Finding That First Quality Suffered Economic Prejudice ......................................................29

    1.    There Is No Evidence Of Economic Prejudice To First Quality ......................................................................................31

    2.    The Purchase Of New Lines Does Not Establish Economic Prejudice As A Matter Of Law ..................................33

    3.    There Was No Economic Prejudice In Relation To The THRG Acquisition ..................................................................37

D.    The District Court Errred In Granting Summary Judgment Of Equitable Estoppel And Barring Post-Suit Damages..........................43

    1.    The District Court Made An Improper Inference Of Bad Faith Against SCA ..................................................................44

    2.    There Can Be No Estoppel On The Claims Which Issued In 2007 ..................................................................................45

    3.    The Letter Exchange Was Insufficient To Satisfy The Misleading Conduct Prong Of Equitable Estoppel ...................45

    4.    There Is At Least A Genuine Factual Dispute As To Whether SCA's Conduct Was Relied Upon By First Quality ..49

    5.    The District Court Erred In Finding Economic Prejudice ........51

iii

6.    The District Court Abused Its Discretion In Balancing The Equities.......................................................................................52

VIII.  CONCLUSION...............................................................................52

ADDENDUM

July 16, 2013 Opinion ...........................................................A0001

July 16, 2013 Judgment.........................................................A0022

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

## CONFIDENTIAL MATERIALS OMITTED

Pursuant to Federal Circuit Rule 28(d)(1)(B), material subject to a protective order entered by the United States District Court for the Western District of Kentucky has been redacted from pages 6, 7, 12–14, 36, 39–41, and 50.  The redacted portions of the brief contain confidential business information of Defendants-Appellees.

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*60 Ivy St. Corp. v. R.C. Alexander*,
  822 F.2d 1432 (6th Cir. 1987)................................................................32

*A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*,
  960 F.2d 1020 (Fed. Cir. 1992)................................................... *passim*

*AccuScan, Inc. v. Xerox Corp.*,
  Civ. No. 96-2579, 1998 U.S. Dist. LEXIS 7825 (S.D.N.Y. May 27, 1998)........29

*Aspex Eyewear Inc. v. Clariti Eyewear, Inc.*,
  605 F.3d 1305 (Fed. Cir. 2010)................................................... 47, 48

*Ecolab, Inc. v. Envirochem, Inc.*,
  264 F.3d 1358 (Fed. Cir. 2001)................................................... *passim*

*Gasser Chair Co. v. Infanti Chair Mfg. Corp.*,
  60 F.3d 770 (Fed. Cir. 1995)...................................................... *passim*

*Graham v. John Deere Co. of Kansas City*,
  383 U.S. 1 (1966) ............................................................................40

*Hall v. Aqua Queen Mfg., Inc.*,
  93 F.3d 1548 (Fed. Cir. 1996).................................................... 23, 43

*Hearing Components, Inc. v. Shure Inc.*,
  600 F.3d 1357 (Fed. Cir. 2010)................................................... 35, 50

*Hemstreet v. Computer Entry Sys. Corp.*,
  972 F.2d 1290 (Fed. Cir. 1992)................................................... *passim*

*Hottel Corp. v. Seaman Corp.*,
  833 F.2d 1570 (Fed. Cir. 1987)............................................ 44, 45, 46

*Hunt v. Cromartie*,
  526 U.S. 541 (1999) ........................................................................41

*IMS Tech., Inc. v. Haas Automation, Inc.*,
   206 F.3d 1422 (Fed. Cir. 2000) .................................................................... 19, 26

*Jamesbury Corp. v. Litton Indus. Prods., Inc.*,
   839 F.2d 1544 (Fed. Cir. 1988) .................................................................23

*Kimberly-Clark Worldwide, Inc. v. First Quality Baby Prods., LLC*,
   1:09-CV-1685, 2013 WL 4811800 (M.D. Pa. Sept. 9, 2013) .............................42

*KSR Int'l Co. v. Teleflex Inc.*,
   550 U.S. 398 (2007) ...............................................................................40

*Meyers v. Asics Corp.*,
   974 F.2d 1304 (Fed. Cir. 1992) ..................................................... 34, 36, 46, 47

*Motorvac Techs., Inc. v. Norco Indus., Inc.*,
   Civ. No. 02-503, 2004 U.S. Dist. LEXIS 4216 (C.D. Cal. Jan. 12, 2004) ... 25, 27

*Niemi v. NHK Spring Co., Ltd.*,
   543 F.3d 294 (6th Cir. 2008) .................................................................19

*Perry v. Sindermann*,
   408 U.S. 593 (1972) ...............................................................................41

*Sandt Tech., Ltd. v. Resco Metal & Plastics Corp.*,
   264 F.3d 1344 (Fed. Cir. 2001) ..................................................... 30, 32, 37, 41

*Serdarevic v. Adv. Med. Optics, Inc.*,
   532 F.3d 1352 (Fed. Cir. 2008) .................................................................22

*SRI Int'l v. Matsushita Elec. Corp.*,
   775 F.2d 1107 (Fed. Cir. 1985) ..................................................... 18, 19, 26

*State Contracting & Eng'g Corp. v. Condotte Am., Inc.*,
   346 F.3d 1057 (Fed. Cir. 2003) ..................................................... 29, 31, 32

*Tristrata Tech., Inc. v. Cardinal Health, Inc.*,
   Civ. No. 02-1290, 2004 U.S. Dist. LEXIS 585 .................................................24

*Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A.*,
   944 F.2d 870 (Fed. Cir. 1991) .................................................................22

*Wanlass v. Fedders Corp.*,
  145 F.3d 1461 (Fed. Cir. 1998) ........................................................ 18, 33, 37, 41

**STATUTES**

28 U.S.C. § 1291 ...................................................................................1

28 U.S.C. § 1295(a)(1)...........................................................................1

28 U.S.C. § 1331 ...................................................................................1

28 U.S.C. § 1338(a) ...............................................................................1

37 C.F.R. § 1.11 ............................................................................. 10, 52

**RULES**

Fed. R. Civ. P. 56 ................................................................................30

Fed. R. Civ. P. 56(c).......................................................................... 19, 26

Fed. R. Evid. 301 ................................................................................19

## I.     STATEMENT OF RELATED CASES

No other appeal in or from the underlying civil action was previously before this or any other appellate court.  There are no pending cases that would directly affect or be directly affected by this Court's decision on appeal.

## II.     JURISDICTIONAL STATEMENT

The District Court had subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a), and appellate jurisdiction exists under 28 U.S.C. §§ 1291 and 1295(a)(1).

The District Court issued a Memorandum Opinion and Order on July 16, 2013 (A0001–A0021), granting the motion by Defendants First Quality Baby Products, LLC, First Quality Hygienic, Inc., First Quality Products, Inc., and First Quality Retail Services, LLC (collectively, "First Quality") for summary judgment based on the doctrines of laches and equitable estoppel.  The District Court concurrently entered judgment ("Judgment," A0022–A0024) against Plaintiffs SCA Hygiene Products Aktiebolag and SCA Personal Care, Inc. (collectively, "SCA").  The parties filed an agreed Stipulation of Dismissal on August 8, 2013, A0025–A0026, which disposed of First Quality's counterclaims in the case.

SCA timely filed a Notice of Appeal on August 12, 2013.  A5786–A5788.

The Judgment and Stipulation of Dismissal disposed of all claims, and the Judgment is final, providing a proper basis for appeal.

1

### III.    STATEMENT OF THE ISSUES

#### Issues on Appeal

1.    Whether the District Court's grant of summary judgment on laches was clearly erroneous when the District Court refused to consider the good faith of SCA in putting the patent-in-suit into reexamination and held that SCA was required to give notice of the reexamination to First Quality to avoid the application of laches?

2.  Whether the District Court committed an abuse of discretion in granting summary judgment against SCA on laches and equitable estoppel when, in evaluating economic prejudice, it failed to draw every reasonable inference in SCA's favor and failed to consider the evidence that First Quality was pursuing a market opportunity and acted out of the view that the patent-in-suit was invalid?

3.    Whether the District Court abused its discretion in granting summary judgment on equitable estoppel when there was no evidence in the record of misleading conduct, reliance or prejudice?

### IV.    STATEMENT OF THE CASE

On August 2, 2010, SCA filed a Complaint (*see* A0041 at ECF #1) alleging that certain First Quality adult incontinence products infringe U.S. Patent No. 6,375,646 and its accompanying Reexamination Certificate (collectively, "the '646 Patent" or "the patent-in-suit," A6816–A6826).  On December 14, 2010, First

Quality filed its answer, asserting the affirmative defense of laches.  *See* A0044 at ECF #32.  First Quality's answer did not plead the affirmative defense of equitable estoppel.  *See* A0111–A0112.

On February 10, 2012, the District Court issued its *Markman* order, rejecting most of the claim construction arguments advanced by First Quality.  *See* A0046 at ECF #61; A0184, A0190–A0191, A0193–A0197, A0199–A0200.  On February 24, 2012, one-and-a-half years after SCA filed the Complaint, First Quality filed an amended answer asserting two new affirmative defenses, including the affirmative defense of equitable estoppel.  *See* A0046 at ECF # 64; A0209–A0210.  First Quality did not explain how it was misled prior to the filing of suit but was unable to discern that for a year and a half following the filing of the Complaint.

On November 11, 2012, First Quality filed a motion for summary judgment on its laches and equitable estoppel defenses, and requested oral argument on the motion.  *See* A0048–A0049 at ECF # 82–84.  SCA filed its opposition to the motion on January 3, 2013.  *See* A0050 at ECF # 94–95.  First Quality filed its reply on January 25, 2013 (*see* A0051 at ECF # 102–103), and filed a notification of supplemental authority on March 12, 2013 (*see* A0052 at ECF # 111).

The parties agreed to oral argument on First Quality's motion.  A1087; A1092.  However, on August 16, 2013, without oral argument on the motion, the District Court issued a Memorandum Opinion and Order (*see* A0053 at ECF # 119)

granting First Quality's motion, and dismissing numerous remaining pretrial motions as moot. A0021.

## V.    STATEMENT OF THE FACTS

### A.    SCA—Background

SCA is a world leading manufacturer of paper products, including the pants-type diaper products at issue in the underlying action. *See* A1259–A1260; A1335–A1339, A1349. SCA is a Swedish company with a long history in the diaper and adult incontinence industry. A1694:4–23 (deposition of Urban Widlund, a named inventor of SCA's patent-in-suit); A1183.

The culture at SCA is one of diligent, methodical development. Before filing for a patent or implementing any new technology in the marketplace, SCA performs considerable research and testing to determine the viability of the technology. *See* A1697:7–A1698:3, A1699:16–A1700:19. Similarly, before approaching any company about potential infringement of SCA's patent rights, SCA conducts a thorough investigation. *See* A1185:4–17 (deposition of Paul Winblad, head of SCA's global patent department); A1190:3–A1191:21, A1192:8–A1193:15, and A1194:10–A1195:11 (deposition of Kevin Gorman, SCA in-house counsel).

**B.    SCA's Patented Technology—The '646 Patent**

The invention described in the '646 Patent was developed by inventors at SCA's Swedish research laboratories and relates to an innovative disposable pants-type diaper. *See* A6820 at col.1, ll.56–61; A1699:16–A1700:19. The patent is directed to a pull-up, single-use, disposable diaper to be used by potty-training children and adults with incontinence problems. *See, e.g.*, A6820 at col.1, ll.20–28. Instead of the traditional disposable diaper with re-closable side tabs, the '646 Patent describes a disposable diaper that was designed to resemble a pair of conventional underpants and enable a potty-training child or incontinent adult to easily pull the diaper on and off. A6819 at col.3, ll.20–26.

Pants-type diapers must hold a larger quantity of urine than a traditional diaper. A6819 at col.2, ll.19–29. Thus, the SCA inventors determined that it was important to construct the pants-type diaper so that it would not fall down the legs of the wearer when insulted with urine. *Id.* Additionally, the SCA inventors determined that the pants-type diaper should fit snugly and comfortably around the wearer's body and should be sufficiently stretchable so that it can be readily pulled on and off. A6819 at col.2, ll.30–35. The inventors designed their product with a unique arrangement of elastic threads (or elastic material) in the chassis. A6820 at col.3, l.56–col.4, l.24. The product design described in the '646 Patent enables "the diapers to lie sealingly against and shape conformingly to the wearer's body,

5

*Confidential Material Redacted*

while enabl[ing] the diapers to support an absorbent pad even when the pad is full of liquid." A6820 at col.3, ll.58–61.

SCA manufactures and sells adult protective underwear embodying the claimed inventions of the '646 Patent under its TENA and Serenity brand names in the United States. *See* A1905–A1910. SCA is a market leader in the United States for protective underwear sales in the healthcare and homecare segments. *See* A1259–A1260 (deposition of Rosemary Capone, First Quality Director of Marketing); A1335–A1339.

### C.    First Quality—Background And The Accused Products

First Quality is a privately owned company with offices in New York and manufacturing facilities in Pennsylvania. *See* A0108–A0109; A1040:24–A1041:9 (deposition of Andrew Busch, First Quality Retail Services Director of Finance). First Quality's business is the manufacture of private label disposable products that emulate the products designed by the branded market leaders, such as SCA and Kimberly-Clark. *See, e.g.*, A1453 ████████████████████████████████

████████████████████████████████

First Quality's products accused of infringement in this litigation are disposable pull-on/off diaper-type products used by consumers with incontinence problems, referred to as protective underwear (when used by adults) or training/youth pants (when used by children). A0110–A0111. ████████████████

*Confidential Material Redacted*

██████████████████████████████████████████████████

██████████████████████████████████  A1229:9–A1230:13.

SCA contends that all of First Quality's private label protective underwear

products infringe the asserted claims of the '646 Patent because they all have an

elasticated chassis designed to hold the absorbent pad of the product against the

wearer's body, as required by SCA's patent claims.  A0346; A0382; A0411.

████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████████████████

███████████████████████████████████████████████████

**D.    First Quality's Motion For Summary Judgment**

First Quality filed a motion for summary judgment on its laches and

equitable estoppel defenses on November 12, 2012.  *See* A0048–A0049 at ECF #

82–84.  In its motion, First Quality argued that SCA sent First Quality a letter in

October 2003 which constituted a threat of litigation and that SCA unreasonably

delayed filing suit by seeking reexamination of its patent after First Quality cited

prior art that had not been considered by the United States Patent and Trademark Office ("PTO") during original prosecution. A0279–A0280. First Quality maintained that SCA's silence after sending the letter was misleading and that First Quality suffered economic prejudice as a result of its alleged reliance on SCA's conduct. A0281.

SCA opposed First Quality's motion, submitting deposition testimony from 16 witnesses. *See* A0048–A0049 at ECF # 95. The relevant facts are as follows.

### 1.    Communications Between The Parties

Counsel for SCA sent a letter to First Quality on October 31, 2003, identifying the '646 Patent and stating that SCA believed First Quality's absorbent pants-type diaper infringed the '646 Patent. A1156. The letter concluded with SCA asking First Quality for its opinion on the matter:

> If you are of the opinion that the First Quality Prevail[®] All Nites[TM] absorbent pants-type diaper does not infringe any of the claims of this patent, please provide us with an explanation as to why you believe the products do not infringe.
>
> . . .
>
> If you believe that the products do infringe, please provide us with your assurance that you will immediately stop making and selling such products.

*Id.* Neither the word "litigation" nor the phrase "cease and desist" appear anywhere in the letter. *See id.* Moreover, SCA made no "demand" that First Quality do anything if First Quality believed that its product did not infringe

8

SCA's patent. *See id*. SCA asked First Quality to assure SCA that First Quality

would stop selling its product *if* First Quality believed that the product infringed

SCA's patent.

On November 21, 2003, First Quality replied to SCA's letter, stating First

Quality's opinion that it did not infringe the patent because the patent was invalid

in light of U.S. Patent No. 5,415,649 to Watanabe, *et al.*:

> As you suggested, we studied U.S. Patent No. 6,375,646
> B1 ("the '646 Patent"), which we understand is owned by
> your client SCA Hygiene Products AB. In addition, we
> made a cursory review of prior patents and located U.S.
> Patent No. 5,415,649 ("the '649 Patent"), which was
> filed in the United States on October 29, 1991 and is
> therefore prior to your clients [*sic*] '646 Patent. A review
> of Figs. 3 and 4 of the prior '649 Patent invalidates your
> client's '646 Patent. As you know, an invalid patent
> cannot be infringed.

A1158–A1160. First Quality made no request for a further response from SCA.

*Id.* According to First Quality, the matter "was never thought of again" after First

Quality sent the letter. A1171:19–A1172:7 (deposition of Babak Damaghi, co-

owner of First Quality).

### 2.    SCA's Successful Reexamination Of The '646 Patent

After SCA received First Quality's reply, SCA considered its options.

Rather than assert the patent, SCA decided to seek guidance from the PTO and, on

July 7, 2004, filed a request for reexamination of its own patent in light of the

Watanabe patent. A1174. Reexamination files are open to inspection by the

general public (37 C.F.R. § 1.11(c), (d) (2004)), and the PTO notified the public of SCA's reexamination request on August 24, 2004. A1177. Additionally, both the Internet and the PTO Intranet can be accessed to determine whether a reexamination request has been filed for a particular patent.

SCA spent approximately two-and-a-half years in reexamination to determine the validity of the '646 Patent claims in light of the Watanabe patent. A1174. At the conclusion of the reexamination on March 27, 2007, the PTO confirmed the patentability of all claims of the '646 Patent as originally issued and granted new claims 29–38. A1174–A1175. These new claims did not exist and could not have been asserted until the issuance of the reexamination certificate. *Id.*

After completion of the PTO reexamination proceedings, SCA conducted a thorough due diligence investigation to determine whether it was appropriate to bring infringement claims relating to the '646 Patent against First Quality. A1190:3–A1191:16 (SCA in-house counsel, Kevin Gorman, testified that SCA performed an investigation into whether it could assert the patent-in-suit against First Quality). SCA had to consider its infringement case anew in view of the extensive reexamination record, as well as new claims 29-38. A1174–A1175; A1185:4–17. SCA, a Swedish-based company not used to litigating in the United States, spent considerable time examining potentially infringing products and investigating choices for outside counsel to bring its patent litigation claims. *See*

10

A1185:4–17.  Outside counsel for SCA then spent considerable time examining the

claims to be asserted and the infringing products, as well as traveling to Sweden to

interview the inventors of the '646 Patent as part of its pre-suit investigation.  *See*

A1190:3–A1191:21; A1192:24–A1193:6; A1194:16–A1195:11.

At the completion of its good faith investigation into First Quality's

infringement of the '646 Patent, SCA filed the present action on August 2, 2010.

*See* A0041 at ECF #1.  At the time of summary judgment, SCA had infringement

claims pending with respect to original claims 1–11 and 15–25, as well as new

claims 35–38.  *See* A0346, A0382, and A0411.

### 3.    The Adult Incontinence Market And First Quality's Plan To Become The Market Leader For Private Label Protective Underwear

The adult incontinence market is directed to disposable absorbent products

for the management of incontinence problems.  A1257.  Given the aging

population in the United States, this is an important market for sellers of consumer

health care products, such as SCA and Kimberly-Clark.  A1404; A1417; A1257,

A1259–A1263.

The market is generally broken out into a healthcare segment and a retail

segment.  A1335–A1338.  In the healthcare segment, products are sold to assisted

living facilities and nursing homes, which then provide products to their residents.

*Confidential Material Redacted*

A1398.  In the retail segment, end users or their caregivers purchase products

directly from retailers such as Wal-Mart, CVS, and Walgreens.  A1357.

██████████████████████████████████████

█████████████████████████████████████

█████████████████████████████████████

██████████████████████████████████████

████████████████████████.  Historically, protective underwear has

been the driving growth of sales in the broader adult incontinence market.  A1259–

A1261; A1330.  ████████████████████████████████

███████████████████████████████

████████████████████████████████████████

█████████████████████████████████████

████████████████████████████████

█████████████████████████████████████

████████████████████████████

███████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████

████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████

### 4.  The Acquisition Of Tyco Healthcare Retail Group Was Critical To First Quality's Strategy

In an effort to further its private label protective underwear business, First

Quality acquired Covidien, Ltd.'s Tyco Healthcare Retail Group ("THRG") in

2008.  A1469.  At the time of the acquisition, THRG was the supplier of private

label protective underwear for many of the biggest retailers in the United States,

including Wal-Mart, Rite-Aid, and Target.  A1262.  ██████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████

██████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████

*Confidential Material Redacted*

██████████████████████████████████████

███

**5.     First Quality's Continued Reliance On Its Invalidity Opinion And Maintenance Of The Status Quo After Filing Of The Complaint**

Since the filing of the Complaint in this litigation, First Quality has steadfastly maintained its position that SCA's patent claims are invalid in view of the Watanabe patent that was the subject of First Quality's reply to SCA in 2003. *See* A1484, A1487; A1521, A1524–A1525; A1602, A1605–A1606.  First Quality has made **no** changes to its accused products in view of this litigation.  *See* A1166:9–13 ("Q.  When SCA sued First Quality in 2010 for the sale – sales of protective underwear products did First Quality stop selling those protective underwear products?  A.  No.").  Despite the fact that the PTO reexamined SCA's patent in view of Watanabe and found the claims to be valid, and undaunted by the presumption that the claims are valid in view of Watanabe, First Quality contends that the PTO made a "mistake" by issuing the reexamination certificate over Watanabe.  *See* A1484, A1487; A1521, A1524–A1525; A1602, A1605–A1606.

**E.     The Court's Opinion And Order On First Quality's Motion**

Following the conclusion of briefing on First Quality's motion, the District Court granted First Quality's motion for summary judgment on laches and equitable estoppel.  A0021.  In its memorandum opinion, the District Court found

that both laches and equitable estoppel had been proven as a matter of law.  A0014, A0020–A0021.  The District Court held that there was not even a triable issue over:  (1) the reasonableness of SCA's conduct in deciding not to file suit during reexamination, (2) the credibility of the testimony of First Quality's in-house lawyer, Moshe Oppenheim, that the THRG deal and its acquisition of additional product lines were predicated on the belief that SCA had dropped its patent claim, (3) whether First Quality relied instead on its invalidity opinion, and (4) whether there was in fact a penny of economic prejudice beyond the damages that would accrue for patent infringement.  A0014, A0020–A0021.  The District Court then entered judgment (A0022) consistent with its ruling on summary judgment.

Following the District Court's entry of judgment and First Quality's subsequent dismissal of all remaining counterclaims (A0022; A0025–A0026), SCA timely appealed to this Court.  A5786–A5787.

## VI.    SUMMARY OF THE ARGUMENT

SCA is a leading branded manufacturer of adult incontinence products, including pants type diapers, often called "adult diapers."  In late 2003, the parties exchanged two brief letters relating to the '646 Patent.  SCA accused First Quality of infringement, but did not threaten suit, and First Quality responded by stating that the patent was invalid in light of the Watanabe patent, U.S. Patent No. 5,415,649 ("Watanabe").  SCA did not file suit, and, instead, took the '646 Patent

15

back to the PTO for voluntary reexamination in light of Watanabe. At the conclusion of the reexamination on March 27, 2007, the PTO confirmed all original claims and granted new claims 28–35.

In August 2010, SCA filed suit against First Quality, but the District Court dismissed the suit on summary judgment with respect to all claims on grounds of laches and estoppel. The District Court erred in several respects.

First, the District Court barred all pre- and post-suit damages, even with respect to claims issuing following reexamination and in relation to product lines that First Quality bought from a third party. Because SCA could not assert the new reexamination claims until they issued, this was error.

Second, the District Court refused to consider SCA's good faith in taking the patent into reexamination, erroneously taking the view that the reexamination was irrelevant since SCA had not provided formal notice to First Quality. There is no notice requirement in the law with respect to reexaminations, and there are strong policy reasons why notice should not be required. A patentee who files for voluntary reexamination should be lauded not punished, and an infringer who expands its business without reviewing the file history of a patent on which it has notice acts at its own risk. Moreover, once reexamination begins, both the future existence and ultimate scope of the patent are in doubt, and, on the facts of this case, there was strong evidence that notice would have made no difference. First

Quality's business plan was to dominate the private label market, and it has steadfastly maintained that the patent-in-suit is invalid.

The District Court also abused its discretion in failing to give every reasonable inference to SCA in evaluating the question of economic prejudice, a requirement both for laches and equitable estoppel. The parties presented two starkly different views of the world: (1) SCA contended that First Quality was intent on becoming the dominant force in private label adult incontinence products and expanded its business to capture a huge market opportunity; and (2) First Quality says that, had it known of SCA's claim, First Quality would not have expanded its business at all. In patent law, as in other areas of the law, such questions of motivation cannot be decided on summary judgment. The District Court was required to give SCA all reasonable factual inferences and failed to do so, instead relying on the self-serving testimony of First Quality's in-house lawyer and ignoring SCA's evidence that First Quality was simply maximizing its business opportunities. There was a genuine issue of material fact for trial as to economic prejudice, and the District Court abused its discretion in granting summary judgment.

Finally, the District Court abused its discretion by barring post-suit damages under the doctrine of equitable estoppel. The District Court misapplied the law in holding that the brief letter exchange in 2003 raised a sufficient threat to invoke

17

equitable estoppel.  Moreover, there are genuine issues of material fact as to whether First Quality's conduct was based on its pursuit of profit or a belief that the '646 Patent was invalid, rather than the charge that it was misled.

## VII.  ARGUMENT

### A.    Standard Of Review

The District Court's grant of summary judgment on laches and equitable estoppel is reviewed for an abuse of discretion.  *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1028 (Fed. Cir. 1992).  The grant of summary judgment on such equitable defenses will be reversed if the judgment is based on an erroneous interpretation of the law or rests on clearly erroneous factual underpinnings.  *Id.* at 1039.  Accordingly, reversal is appropriate if the District Court applied the law incorrectly, made erroneous determinations regarding the underlying facts, or if the District Court's decision represents an unreasonable judgment in weighing relevant factors.  *Id.*

With respect to the evaluation of the factual underpinnings of its rulings, the District Court was required to view all of the evidence in the light most favorable to SCA, as the non-moving party, and draw all reasonable inferences in favor of SCA.  *Wanlass v. Fedders Corp.*, 145 F.3d 1461, 1463 (Fed. Cir. 1998); (citing *SRI Int'l v. Matsushita Elec. Corp.*, 775 F.2d 1107, 1116 (Fed. Cir. 1985)).  Where the evidence is such that a reasonable fact-finder could return a verdict in favor of

the non-moving party, this Court will reverse and remand for further proceedings on the merits. *IMS Tech., Inc. v. Haas Automation, Inc.*, 206 F.3d 1422, 1429 (Fed. Cir. 2000) (citing *SRI Int'l*, 775 F.2d at 1116; Fed. R. Civ. P. 56(c)); *Niemi v. NHK Spring Co.*, 543 F.3d 294, 298 (6th Cir. 2008).

### B.   The District Court Erred In Finding That SCA's Claims Are Barred By Laches

First Quality bears the burden of establishing the affirmative defense of laches by a preponderance of the evidence by showing: "(a) the patentee's delay in bringing suit was unreasonable and inexcusable, and (b) the alleged infringer suffered material prejudice attributable to the delay." *Aukerman*, 960 F.2d at 1028. A presumption of laches arises when the "patentee delays bringing suit for more than six years after the date the patentee knew or should have known of the alleged infringer's activity." *Id.* All the presumption does, however, is create a *prima facie* case that the unreasonable delay and prejudice elements have been met. *Id.* at 1037–38. It does not shift the burden of persuasion. *Id.* Moreover, the presumption goes away under the "bursting bubble" theory in Federal Rule of Evidence 301, and completely vanishes upon introduction of evidence that supports a finding that the plaintiff's delay was reasonable or evidence showing that the prejudice factor is in genuine dispute. *Aukerman*, 960 F.2d at 1037–38 ("Such evidence need only be sufficient to raise a genuine issue respecting the reasonableness of the delay . . . .").

The District Court erred in barring SCA's claims with respect to all claims of the patent-in-suit, including the claims which issued following reexamination, as the time period between issuance and the filing of suit was a little over three years and four months, not six years.  Second, because SCA voluntarily put its patent into reexamination to obtain a ruling from the PTO, it acted justifiably and should not be charged with laches.  Finally, because there is, at the minimum, a genuine issue of material fact with respect to whether First Quality suffered economic prejudice, it was inappropriate to apply the presumption and inappropriate to grant summary judgment.

### 1.    There Can Be No Laches With Respect To The Reexamination Claims

While the alleged delay period is six years and nine months with respect to the original claims of the patent-in-suit, claims 29–38 issued on March 27, 2007, following the conclusion of the reexamination, and the delay on asserted claims 35–38 is at best three years and five months.  A6825–A6826.  SCA began investigating infringement of those claims following the issuance of the reexamination certificate (A1190:3–A1191:16) and brought suit on those claims within a reasonable amount of time.  *Aukerman*, 960 F.2d at 1032 (the laches "period does not begin prior to issuance of the patent").  The District Court applied the presumption of laches to all claims, refusing to consider the impact of the

reexamination, and plainly erred in barring assertion of claims 35–38, which could

not have been asserted until 2007.  A0006–A0007, A0014.

**2.    The District Court Abused Its Discretion In Requiring Notice Of The Reexamination**

Even when the six-year period has passed and material prejudice is

demonstrated, laches will not apply if the plaintiff can demonstrate an excuse for

the delay.  *Aukerman*, 960 F.2d at 1033.  The District Court erred as a matter of

law in refusing to consider SCA's proffered justification that it spent several years

in reexamination on the ground that SCA had failed to give notice of the

reexamination to First Quality.

Despite SCA's good faith, the District Court found that there was

a presumption of delay and concluded that SCA's suit was barred.  A0010.  This

was error.  It is the height of reasonableness to put one's own patent into

reexamination following a charge of invalidity, and SCA should not be punished in

equity for taking the matter to the PTO for consideration before bringing suit.  It

was manifestly reasonable for SCA to seek input from the PTO before bringing

suit, and, accordingly, it was error for the District Court to conclude that SCA's

decision to delay was unreasonable as a matter of law, especially here, where SCA

missed the six year "deadline" by a mere nine months.

This Court has not addressed the circumstances under which a voluntary

reexamination by the patentee can be relied upon to show good faith and lack of

undue delay in connection with the laches analysis. In *Aukerman*, which reset the law of laches, the Court stated that other litigation may constitute an excuse for delay, but did not address the question of voluntary reexamination, let alone whether notice of reexamination to the defendant was required. *Aukerman*, 960 F.2d at 1033. In *Serdarevic v. Advanced Medical Optics, Inc.*, the Court suggested that the issuance of a reexamination certificate may reset the laches delay clock, but did not state when. 532 F.3d 1352, 1358–59 (Fed. Cir. 2008). In *Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A.*, the Court stated that "[p]atentees should be encouraged to avoid litigation when their patents are being reevaluated in the PTO rather than being forced into premature litigation on penalty of being held to have been guilty of laches." 944 F.2d 870, 878 (Fed. Cir. 1991). However, in *Vaupel*, the defendant had notice of the reissue proceeding, and the Court did not address whether notice was required or the impact of the *Aukerman* framework, which was put into place the following year. *Id*.

We therefore start with *Aukerman*, in which the Court reformulated the law, setting out a clear test and a two-element approach: undue delay and prejudice. *Aukerman*, 960 F.2d at 1036. The undue delay element goes to the reasonableness of the patent holder's decision to delay filing suit; the prejudice element goes to the harm to the infringer. *Id*. The Court recognized that there were numerous justifications which could vitiate a finding of laches, including other litigation,

poverty, illness, wartime conditions, extent of infringement, and disputes over ownership. *Id.* at 1033. What is notable about these justifications is that they all focus on the reason for the delay *from the plaintiff's perspective*—that is, they answer the question in the first prong of the laches defense: "Did the plaintiff act unreasonably in delaying?" All of the cited justifications go to the reasonableness of the patent holder's decision to delay, not to the prejudice the defendant might suffer, and they are properly analyzed under the first prong, which focuses on the reasonableness of the plaintiff's conduct. It follows that a court in equity can, and must, consider a proffered justification for delay if the justification demonstrates the reasonableness of the plaintiff's conduct in delaying.

The "other litigation" exception developed in the pre-*Aukerman* world, and the *Jamesbury* panel recognized that there was a split on whether notice was required. *Jamesbury Corp. v. Litton Indus. Prods., Inc.*, 839 F.2d 1544, 1552–53 (Fed. Cir. 1988). The panel held that, where a plaintiff claimed it delayed suit because it could not practically sue all infringers at once, the equities required notice. *Id.* The *en banc* Court in *Aukerman* took a more flexible approach, stating that there can be "no rigid requirement in judging a laches defense that such notice must be given." *Aukerman*, 960 F.2d at 1039; *see also Hall v. Aqua Queen Mfg., Inc.*, 93 F.3d 1548, 1554 (Fed. Cir. 1996).

The equities do not require that patentees give notice to infringers regarding the filing of reexamination proceedings. Seeking reexamination of a patent on a voluntary basis is far different in character and effect from filing suit against third parties and secretly harboring an intent to leave the infringer to last. There is no logical reason why a plaintiff should be permitted to delay simply because he decided to sue someone else first. On the other hand, there are strong policy and practical reasons why filing for reexamination of one's own patent should be recognized as a cognizable justification for delay. There could be nothing more reasonable than requesting a ruling from the PTO on a new piece of prior art, and such conduct should be lauded and encouraged. Such a plaintiff is not in a position to give notice that it will sue infringers because it may not have a patent at the end of the reexamination or, as in this case, the full extent of the claims may change. By the same token, the reexamination process is open to the public and can easily be reviewed by any potential infringer who is on notice of the patent and has an Internet connection. *See* 37 C.F.R. § 1.11; A1177.

Several district courts which have considered the issue of whether notice is required have reached the same result. *Tristrata Tech., Inc. v. Cardinal Health, Inc.*, Civ. No. 02-1290, 2004 U.S. Dist. LEXIS 585, at *8–13 (D. Del. Jan. 16, 2004) (denying defendant's motion for summary judgment because the "equities of the case are split" where plaintiff sent letters, then waited more than six years

before filing suit partly due to other litigation and reexamination of which plaintiff did not notify defendant); *Motorvac Techs., Inc. v. Norco Indus., Inc.*, Civ. No. 02-503, 2004 U.S. Dist. LEXIS 4216, at \*6–7 (C.D. Cal. Jan. 12, 2004) (finding plaintiff's failure to give notice unpersuasive in the laches context and denying defendant's motion for summary judgment on laches).

In contrast, the District Court here imposed a rigid notice requirement.  *See* A0009.  This is the wrong approach.  *Aukerman* is properly read as creating a balancing test in which the plaintiff's good faith under the delay prong is balanced against the prejudice of the delay to the defendant.  *See Aukerman*, 960 F.2d at 1034.  While providing notice can affect the prejudice prong and tip the balance of equities in favor of the plaintiff, there is no reason *to require notice* as the price of entry into the equitable analysis.  Laches is an equitable doctrine and should be flexible.  That is especially true here, where there is strong evidence indicating that the defendant would not have changed its behavior even if it had received notice.

The District Court brushed away SCA's good faith in seeking reexamination by finding in the law a requirement that SCA provide notice to First Quality of the pendency of the reexamination.  A0007–A0008.  The District Court ruled that "notice by SCA of an intent to sue after the reexamination was required."  A0009.  This was a legally erroneous finding, and as a result, the District Court abused its discretion in granting summary judgment of laches.

25

### 3.    There Is A Genuine Issue Of Fact Over Whether Notice Would Have Caused First Quality To Change Its Business

There is plainly a genuine issue of fact for trial as to whether the provision of notice would have changed the result. Here, First Quality made no changes to is conduct or its products even after SCA filed this case. A1166:9–13. Moreover, there is ample evidence in the record that any such notice would have served no purpose. First Quality identified the prior art that was the subject of the reexamination and expressed its firm belief that the patent was invalid in view of that art. A1159. First Quality has steadfastly maintained its invalidity opinion and claims in this litigation that the PTO made a "mistake" in allowing SCA's patent in view of Watanabe. *See* A1484, A1487; A1521, A1524–A1525; A1602, A1605–A1606 (First Quality invalidity contentions stating that "the examiner's allowance of these claims was a mistake"). The most plausible inference to draw from the circumstances—and SCA is absolutely entitled to any reasonable inference on summary judgment—is that First Quality would have done nothing different if SCA had taken the formalistic step to notify First Quality that it was seeking reexamination. *IMS Tech., Inc. v. Haas Automation, Inc.*, 206 F.3d 1422, 1429 (Fed. Cir. 2000) ("We view the evidence in a light most favorable to the non-movant, and draw all reasonable inferences in its favor.") (citing *SRI Int'l*, 775 F.2d at 1116; Fed. R. Civ. P. 56(c)).

It would elevate form over substance to rule that SCA should have notified First Quality of the reexamination when there is no evidence such notice would have made any difference. First Quality should not be able to use as a sword SCA's prudent course of initiating reexamination, rather than litigation, when First Quality called the validity of the patent into question. *Motorvac*, 2004 U.S. Dist. LEXIS 4216, at *5 ("Thus, in undertaking what became a two-year reexamination of its patent, Norco was pursuing what seems to be a prudent course before bringing a suit for infringement. The Court does not believe it would be equitable to turn this conduct into a sword against Norco.").

### 4.    There Is A Factual Dispute With Respect To The Reasonableness Of SCA's Post-Reexamination Conduct

The District Court found that the period between the reexamination and SCA's filing of suit was an "unreasonable delay" in a footnote, relying on only a single district court case. A0010. In doing so, the District Court barred SCA's claims with respect to the three new claims that issued following reexamination, as well as any claim against the THRG products purchased by First Quality after the conclusion of the reexamination.

The District Court based its decision on its erroneous finding that SCA "had already" completed its infringement analysis by October of 2003. A0009. But, that was impossible with respect to both the new claims and the THRG products. After the reexamination, and with an extensive new record on the patentability of

its claims after more than two years of examination by the PTO, SCA had to reevaluate its patent claims. The District Court implied bad faith on SCA's part, ignoring SCA's evidence which showed that after the reexamination, SCA, a European company that had not been involved in patent litigation for decades, proceeded in a conservative manner to evaluate and prepare its case for infringement against First Quality. *See* A1185:4–17; A1190:3–A1191:21, A1192:24–A1193:6, A1194:16–A1195:11.

Considering all of these facts in the light most favorable to SCA, it is plausible to infer that SCA, with new litigation counsel, reasonably investigated SCA's infringement claim against First Quality anew after the reexamination period. Once the facts are properly understood, there is nothing to indicate that SCA "sat idly by" during the period after the reexamination. Under these circumstances, there is at least a genuine factual dispute as to whether SCA's conduct after the reexamination was an unreasonable period of delay when fairly analyzed in view of this Court's case law. *See, e.g., Meyers v. Asics Corp.*, 974 F.2d 1304, 1307–08 (Fed. Cir. 1992) (reversing summary judgment where delay was almost six years); *Hemstreet v. Computer Entry Sys. Corp.*, 972 F.2d 1290, 1293–95 (Fed. Cir. 1992) (reversing summary judgment for defendant on laches); *AccuScan, Inc. v. Xerox Corp.*, Civ. No. 96-2579, 1998 U.S. Dist. LEXIS 7825, at *1, *5, *8, *22–25 (S.D.N.Y. May 26, 1998) (finding no laches after trial despite

presumption and lack of notice of other litigation, having already denied

defendant's pre-trial motion for summary judgment of laches), *rev'd on other*

*grounds*, 76 F. App'x 290 (Fed. Cir. 2003).

### C.    The District Court Erred In Finding That First Quality Suffered Economic Prejudice

Both laches and equitable estoppel require a showing of economic prejudice.

*Aukerman*, 960 F.2d at 1033; *Ecolab, Inc. v. Envirochem, Inc.*, 264 F.3d 1358,

1371–72 (Fed. Cir. 2001).  Economic prejudice consists of "damages which likely

would have been prevented by earlier suit." *Aukerman*, 960 F.2d at 1033.

Damages accruing from infringement during the laches period are insufficient to

establish economic prejudice.  *State Contracting & Eng'g Corp. v. Condotte Am.,*

*Inc.*, 346 F.3d 1057, 1066 (Fed. Cir. 2003).  There must be a damaging "change in

the economic position." *Aukerman*, 960 F.2d at 1033.

If the laches presumption applies, then prejudice is presumed with respect to

pre-suit damages; however, the presumption merely has the effect of shifting the

burden of going forward with evidence, not the burden of persuasion, which

remains on the defendant.  *Id.* at 1028.  Once the plaintiff comes forward with

evidence of lack of economic prejudice, the bubble is burst, and the defendant is

obligated to provide contrary evidence.  *Id.*  SCA provided such evidence, the

bubble was burst, and there is no applicable presumption.

Moreover, with respect to equitable estoppel, which would bar post-suit damages, there is no presumption of economic prejudice. *Id.* at 1043. Accordingly, the District Court was not entitled to allow First Quality to rest on any presumption of economic prejudice.

SCA put forward considerable evidence that First Quality did not suffer any damages which would have been avoided had suit been brought earlier, and the District Court erred in concluding that there was no genuine issue of material fact for trial. There are two competing paradigms here: (1) SCA contends that First Quality was intent on becoming the dominant force in private label adult incontinence products and bought product lines and acquired the competing business of THRG in order to effectuate that plan; and (2) First Quality says that it built its business because it felt that it was free of infringement claims from SCA and, in the but-for world where SCA sued earlier, First Quality would not have entered into these transactions. The resolution of this question turns on the credibility of First Quality witnesses, which cannot be resolved on summary judgment. *See Sandt Tech., Ltd. v. Resco Metal & Plastics Corp.*, 264 F.3d 1344, 1357 (Fed. Cir. 2001) ("[S]ummary judgment is inappropriate in circumstances where credibility is an issue . . . .") (citing Fed. R. Civ. P. 56, Advisory Committee Note). SCA produced more than sufficient evidence to create a genuine issue of material fact with respect to the question of economic prejudice.

### 1.    There Is No Evidence Of Economic Prejudice To First Quality

In order to establish economic prejudice, a defendant must at least prove that there is a nexus between its claim of economic prejudice and the alleged delay (when considering laches) and its alleged reliance on purported misleading conduct (when considering equitable estoppel). *State Contracting*, 346 F.3d at 1066; *Ecolab*, 264 F.3d at 1371–72; *Gasser Chair Co. v. Infanti Chair Mfg. Corp.*, 60 F.3d 770, 774–75 (Fed. Cir. 1995); *Hemstreet*, 972 F.2d at 1294–95. First Quality must demonstrate a change in its economic position during the alleged delay period (or following the alleged misleading conduct) that would not have occurred if SCA had sued earlier. *See*, *e.g.*, *Ecolab*, 264 F.3d at 1371–72.

The District Court based its finding of economic prejudice on two purported changes in First Quality's economic position after the exchange of letters between the companies in 2003: (1) First Quality's purchase of new production lines to meet the expanding demand for its adult underwear business; and (2) First Quality's acquisition of THRG's private label retail business, which encompassed baby diapers and feminine hygiene products in addition to adult underwear. A0013–A0014. The District Court found that First Quality would not have purchased the new lines and would have structured the THRG acquisition differently if SCA had sued earlier. *Id*. However, the only evidence on which the District Court based these findings was a few pages of conclusory deposition

testimony from First Quality's in-house counsel. *Id*. (stating "Moshe Oppenheim, in-house counsel for First Quality, testified that First Quality would not have invested millions of dollars in acquiring" the lines, and that "First Quality could have structured differently its acquisition of THRG").

The District Court abused its discretion in finding for First Quality on the economic prejudice issue and entering judgment for First Quality because it failed to recognize that the only real "loss" that First Quality will suffer here is attributable to a finding of liability for infringement. Infringement damages are not the kind of prejudice that is sufficient to support a finding of equitable estoppel or laches under this Court's controlling law. *State Contracting*, 346 F.3d at 1066.

Moreover, because First Quality asserts that it would have managed its affairs differently had it been sued earlier, First Quality squarely put the state of mind of First Quality business people at issue in these proceedings. The District Court committed reversible error when it credited the self-serving, uncorroborated testimony of First Quality's witness, who was an in-house lawyer and not even a business person. Where, as here, motivation and credibility are at issue, summary judgment is inappropriate. *See Sandt*, 264 F.3d at 1357; *60 Ivy St. Corp. v. R.C. Alexander*, 822 F.2d 1432, 1437 (6th Cir. 1987) ("Summary judgment is seldom appropriate in cases where the parties' intentions or states of mind are crucial elements of the claim because of the likelihood of self-serving testimony and the

necessity for the factfinder's credibility determinations."); *see also Wanlass v. Fedders Corp.*, 145 F.3d 1461, 1467 (Fed. Cir. 1998) ("In light of the conflicting evidence, it was inappropriate for the District Court to rule on summary judgment on the record presented that the plaintiff was prevented by laches from maintaining its suit because doing so required determining witness credibility, counter-weighing conflicting evidence, and drawing inferences against Wanlass.").

> **2.    The Purchase Of New Lines Does Not Establish Economic Prejudice As A Matter Of Law**

With respect to the first purported example of economic harm, the purchase of the King of Prussia, Pennsylvania, manufacturing lines, the District Court focused on the amount of money First Quality spent in setting up the lines (A0012–A0014), but quoting those figures is insufficient to meet the nexus/reliance requirement.  There is a long line of cases requiring courts to look far deeper than the amount of the investment and investigate the motivation behind the investment.  *See*, *e.g.*, *Gasser Chair*, 60 F.3d at 774–75; *Meyers,* 974 F.2d at 1308–09; *Hemstreet*, 972 F.2d at 1294–95.  If the investment is made to capitalize on a market opportunity or because of a belief that the patent claim is meritless, there is no economic prejudice.  *Hemstreet*, 972 F.2d at 1294–95; *Meyers,* 974 F.2d at 1308–09; *Gasser Chair*, 60 F.3d at 774–75.

In *Hemstreet*, the Court remanded after a summary judgment determination in favor of the defendant on both laches and estoppel, noting that it was "difficult

to imagine" that the defenses could succeed even though the defendant incurred costs of nearly $50 million on R&D, facilities expansion, and direct marketing costs related to the infringing activity. *Hemstreet*, 972 F.2d at 1294–95. It is not enough that the alleged infringer change its position by investing in production of the infringing product in pursuit of a decision to capitalize on a market opportunity. *Id*.

In *Meyers,* the Court reversed the grant of summary judgment even though the alleged infringer spent "substantial amounts of money to design, develop and promote many new and different shoe models" subject to the infringement allegations. *Meyers,* 974 F.2d at 1308. The Court based its decision on the facts, which are present here, that the defendants did not curtail their allegedly infringing activity in response to the patentee's suit once it was actually filed and the defendants' reliance on their belief that they did not infringe the patents-in-suit. *Id*.

Likewise, in *Gasser Chair*, notwithstanding that the defendant significantly expanded its business during the delay period, the Court found no economic prejudice where the defendant believed the patent-in-suit was invalid. *Gasser Chair*, 60 F.3d at 774–75. "Even a considerable investment during a delay period is not a result of the delay if it was a deliberate business decision to ignore a

warning, and to proceed as if nothing had occurred." *Id.* at 775 (internal quotations omitted).

Similarly, in both *Hearing Components* and *Ecolab*, the Court, in affirming a conclusion of no laches or estoppel, gave significant weight to the accused infringer's firm belief from the outset that its product was not infringing. *Hearing Components, Inc. v. Shure Inc.*, 600 F.3d 1357, 1375–76 (Fed. Cir. 2010); *Ecolab*, 264 F.3d at 1371–72.

What these cases make clear is that First Quality's laches defense turns on a hypothetical exercise—determining what First Quality would have done had SCA filed suit earlier. It follows that it would be error to grant summary judgment if a finder of fact giving all reasonable inferences to SCA could conclude that First Quality would have gone forward with its infringing conduct anyway.

The evidence produced by First Quality is thin and full of holes. It is based almost entirely on the testimony of its in-house lawyer. On the other hand, SCA has presented a compelling case that First Quality would have done nothing differently had suit been filed earlier. As in the above cases, First Quality has steadfastly maintained its belief that the patent is invalid and that even the reexamination proceedings were wrongly decided. A1484, A1487; A1521, A1524–A1525; A1602, A1605–A1606. SCA offered substantial evidence showing that First Quality was motivated by a huge market opportunity and would

*Confidential Material Redacted*

have continued to grow its protective underwear business regardless of when SCA filed suit.

███████████████████████████████████████

████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████████

████████████████████████████████

██████████████████████████████████████

███████████████████████████████████████

████████ First Quality was responding to the market, not to the lack of an infringement suit.  A1229:9–14; *see, e.g., Ecolab*, 264 F.3d at 1371–72 (affirming finding of neither laches nor equitable estoppel where "economic decisions were merely business decisions to capitalize on a market opportunity").

Moreover, given First Quality's firm reliance on its invalidity opinion, its maintenance of the status quo after SCA filed suit, and its claim that the PTO made a "mistake" during the reexamination, it is reasonable to infer that First Quality would not have changed its conduct if SCA had sued earlier.  *See id.*; *Gasser Chair*, 60 F.3d at 775; *Meyers*, 974 F.2d at 1308–09.  First Quality has made no changes to its product lines as a result of the filing of suit, and there is nothing in

the record to suggest that First Quality would have changed course had suit been filed earlier.

The District Court glossed over the required nexus analysis, a hotly disputed issue which was not ripe for summary judgment. The District Court pointed to only one piece of evidence with respect to the King of Prussia facility: a few pages of deposition testimony from First Quality's in-house lawyer, which was unsupported by a declaration from a business person or a single document. A0013. In granting summary judgment, the District Court deprived SCA of the right to cross-examine the witness at trial, establish bias, establish lack of his knowledge regarding business decisions, and question the motivation of First Quality business people. *See Sandt*, 264 F.3d at 1357; *Wanlass*, 145 F.3d at 1467.

### 3.    There Was No Economic Prejudice In Relation To The THRG Acquisition

In 2008, First Quality purchased Covidien, Ltd.'s THRG business "which includes some of the product lines at issue in this litigation." A0012. Even though the THRG products were first sold by First Quality in 2008 and SCA could not have brought an infringement claim against First Qualtiy until that time, the District Court barred SCA from pursuing all claims against these products. The bar includes past and forward damages in relation to all claims in the asserted patent, including claims issuing in 2007 following reexamination.

The District Court stated that First Quality could have restructured the acquisition or "foregone purchase of the product lines accused of infringement." A0013. Again, the District Court engaged in improper speculation and failed to consider evidence provided by SCA. Because there is a genuine issue of material fact on what First Quality would have done had suit been brought earlier, there is no basis for finding economic prejudice as a matter of law. *See Aukerman*, 960 F.2d at 1037–38.

Laches and equitable estoppel are doctrines founded on fairness. *See id.* at 1029, 1034. First Quality purchased the THRG business and could not possibly have believed that SCA was waiving its claims with respect to the THRG products. If left to stand, the District Court's ruling would insulate the THRG product designs from infringement liability for all claims—an undeserved windfall for First Quality.

SCA further offered evidence showing that First Quality would have proceeded with the THRG acquisition had an SCA suit been on file due to the huge market opportunity in private label sales of disposable products, including adult underwear. *Ecolab*, 264 F.3d at 1371–72 ("Envirochem's firm belief from the outset that its product was noninfringing, coupled with its conduct after being contacted by Ecolab, led the court to the conclusion that the foregoing economic decisions were merely business decisions to capitalize on a market opportunity.").

38

*Confidential Material Redacted*



*Confidential Material Redacted*

████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████

████████████████████

First Quality had strong reasons to enter into the THRG acquisition, which was a large transaction. By far, the most reasonable inference is that, had SCA filed suit against First Quality prior to the THRG acquisition, First Quality would have gone forward with the acquisition anyway. The business reasons for doing so were compelling, and the idea that First Quality entered into this huge transaction as a result of the 2003 exchange of letters with SCA over the First Quality products—not THRG products—makes no sense.

The District Court allowed First Quality to engage in improper hindsight analysis. In other contexts, this Court has warned repeatedly against the dangers of hindsight. *See KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 421 (2007) ("A factfinder should be aware, of course, of the distortion caused by hindsight bias and must be cautious of arguments reliant upon *ex post* reasoning."); *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 36 (1966) (warning against a

*Confidential Material Redacted*

"temptation to read into the prior art the teachings of the invention in issue" and

instructing courts to "guard against slipping into use of hindsight") (internal

quotations omitted).  It is easy in the heat of litigation for a litigant to make

assertions about what would have happened years ago, but this sort of evidence is,

by nature, hard to evaluate without hearing from live witnesses under the cleansing

fire of cross-examination.  *See Sandt*, 264 F.3d at 1357.  It is well established in

other areas of the law that motivation is inherently subjective and that summary

judgment is inappropriate when motivation is at issue.  *See Hunt v. Cromartie*, 526

U.S. 541, 552 (1999) ("[I]t was error in this case for the District Court to resolve

the disputed fact of motivation at the summary judgment stage.")*; Perry v.

Sindermann*, 408 U.S. 593, 598 (1972) (finding grant of summary judgment

inappropriate where motivation of decision not to renew contract was at issue).

The District Court concluded that First Quality would have restructured the

transaction.  A0012–A0014.███████████████████████████████

████████████████████████████████████████ A1002:22–

A1008:9.  This inherently implausible statement should be tested at trial.  *See

Sandt*, 264 F.3d at 1357; *Wanlass*, 145 F.3d at 1467.  It is far more plausible to

conclude that, given the huge strategic importance of the transaction, First Quality

would have gone through with the transaction anyway.  But, more to the point, the

District Court was in no position to make that factually laden determination before hearing from the witnesses at trial.

The District Court also concluded that First Quality could have structured the THRG acquisition by "demand[ing] that Covidien resolve all issues with respect to SCA's claims prior to the acquisition." A0014. The District Court erroneously relied on the argument that "First Quality required Covidien to settle its outstanding patent disputes with Kimberly-Clark before completing the THRG acquisition." A0014. However, the public record shows that First Quality has been embroiled in patent litigation with Kimberly-Clark regarding baby diapers since the acquisition. *See*, *e.g.*, *Kimberly-Clark Worldwide, Inc. v. First Quality Baby Prods., LLC*, 1:09-CV-1685, 2013 WL 4811800 (M.D. Pa. Sept. 9, 2013) (denying First Quality's motion for reconsideration of the court's order denying First Quality's motion for summary judgment that Kimberly-Clark's patents relating to diaper designs are invalid).

Moreover, the District Court was engaging in rank speculation. There is no proof that such a deal was feasible with THRG, how much it would have changed the deal price, or whether First Quality would have lost the transaction over that request. There is certainly no reason to believe that SCA would have granted THRG a free pass to sell an infringing business to First Quality. The whole exercise is entirely speculative.

All of this illustrates that making suppositions about the past is a slippery exercise.  The record here plainly supports the inference that First Quality went forward with the THRG deal for reasons that had nothing to do with the 2003 exchange of letters.  Accordingly, First Quality suffered no cognizable prejudice and, in fact, would receive a windfall if the judgment is affirmed.  Neither laches nor estoppel applies here.

### D.    The District Court Errred In Granting Summary Judgment Of Equitable Estoppel And Barring Post-Suit Damages

Equitable estoppel bars pre-suit and post-suit damages.  The doctrine is sparingly applied and requires that the defendant establish three elements: "(a) statements or conduct that communicate something misleading; (b) actions taken in reliance on these statements; and (c) resulting prejudice." *Hall v. Aqua Queen Mfg., Inc.*, 93 F.3d 1548, 1557 (Fed. Cir. 1996) (citing *Aukerman*, 960 F.2d at 1042–43).  As with laches, prejudice can take the form of a change in economic position.  However, unlike laches, no presumption arises with the passage of time, and the burden of proof on equitable estoppel always rests on the defendant. *Aukerman*, 960 F.2d at 1041–43.  The court must balance all relevant factors, and, even when the three required elements are met, a court will deny application of equitable estoppel if the equities so require. *Id.* at 1043.

Here, the District Court found that the exchange of two brief letters in 2003 followed by silence was sufficient to act as a bar to all of SCA's claims.  A0016–

A0017.  The District Court erred in finding as a matter of law that SCA had acted in bad faith and refusing to consider the substantial evidence presented that First Quality did not rely on the letter exchange in expanding its business.

### 1.    The District Court Made An Improper Inference Of Bad Faith Against SCA

It is well established that silence alone will not create an estoppel.  "[M]ere silence must be accompanied by some *other* factor which indicates that the silence was sufficiently misleading as to amount to bad faith." *Hemstreet*, 972 F.2d at 1295 (citing *Hottel Corp. v. Seaman Corp.*, 833 F.2d 1570, 1573–74 (Fed. Cir. 1987); *Aukerman*, 960 F.2d at 1042).  There was absolutely no evidence of bad faith in this case.  SCA's response to First Quality's letter was to take the asserted prior art to the PTO for reexamination.  A6825–A6826.  The PTO issued new claims to SCA, which it then asserted along with the original claims.  A6826.  There is nothing in the record to support a finding of bad faith, let alone to rule that no other inference was possible on the summary judgment record.  SCA was entitled to every reasonable inference in its favor, and the District Court violated that rule.  Accordingly, the District Court's analysis was erroneous and must be reversed.

### 2.   There Can Be No Estoppel On The Claims Which Issued In 2007

The District Court barred the entire suit, even with respect to claims which arose after the conclusion of the reexamination in March 2007.  The parties had no discussions with respect to those claims, and First Quality could not possibly have concluded based on the 2003 letters that it was being absolved from all future patent claims which might issue from the '646 specification.  Barring SCA from proceeding on those claims was clear error.

### 3.   The Letter Exchange Was Insufficient To Satisfy The Misleading Conduct Prong Of Equitable Estoppel

"In the cases that have applied intentionally misleading silence . . . a patentee threatened immediate and vigorous enforcement of its patent right but then did nothing for an unreasonably long time."  *Hottel*, 833 F.2d at 1574.  The District Court erroneously interpreted the law on this essential estoppel element, and thus abused its discretion by relying on "silence alone."  *See* A0016 ("SCA unquestionably misled First Quality though [*sic*] its 2003 letter and subsequent inaction.").

The letters sent between the parties did not rise to the level of threat required to satisfy the first prong of the equitable estoppel defense.  SCA sent one letter to First Quality regarding the '646 Patent.  A1156.  SCA made no mention of litigation and in no way threatened litigation in that letter.  *Id.*  The District Court

erroneously found that "SCA demanded First Quality's assurance that it would immediately stop making and selling [products identified in the letter]." A0016. That finding is wrong. SCA merely identified the '646 Patent and advised First Quality of SCA's belief that its product infringed the patent. A1156. SCA only demanded that First Quality cease making its products "if" First Quality likewise concluded that it infringed the patent. *Id.* The SCA letter was not an unqualified "cease and desist" letter that could be "reasonably viewed" as a "threat of an infringement suit," as found by the District Court to support its finding of misleading conduct. A0016.

SCA did not threaten to "immediately" and "vigorously" pursue litigation against First Quality, as required by the Court in *Hottel*. 833 F.2d at 1574. This case is more akin to *Meyers*, *Hemstreet*, and *Aukerman*, which emphasized how rare the application of equitable estoppel should be and rejected equitable estoppel defenses. *Meyers*, 974 F.2d at 1308–09; *Hemstreet*, 972 F.2d at 1294–95; *Aukerman*, 960 F.2d at 1043–45. In *Aukerman*, there were multiple communications between the parties, including a notice that the patentee was "seeking to enforce" its patents and an invitation by the accused infringer to the patentee to instigate suit against it, followed by more than eight years of silence. *Aukerman*, 960 F.2d at 1026–27. In *Meyers*, the patentee communicated to multiple defendants its suggestion that they take a license to the patents. *Meyers*,

974 F.2d at 1305–07.  One defendant responded with its belief that it did not infringe.  *Id.*  The patentee pushed back and again offered a license, which was followed by a period of more than three years of silence.  *Id.*  The other defendant responded that it had no intention to take a license, which was followed by a period of almost five years of silence.  *Id.*  The court found that application of equitable estoppel was inappropriate.  *Id.* at 1309.

In *Hemstreet*, the patent holder offered a license, described other pending patent litigation, and implied a "sequential license-or-litigate" strategy, followed by around six years of silence.  *Hemstreet*, 972 F.2d at 1292.  The Court in *Hemstreet* concluded that it was "difficult to imagine" that the elements of estoppel could be met on such facts.  *Id.* at 1295.

The District Court relied primarily upon its comparison of the correspondence here with the correspondence in *Aspex Eyewear Inc. v. Clariti Eyewear, Inc.*, 605 F.3d 1305, 1311 (Fed. Cir. 2010).  While this Court affirmed a finding of equitable estoppel in *Aspex*, it did so in a 2-1 decision based on conduct far more egregious than in this case.  Considering the letters in *Aspex*, then Circuit Judge Rader presciently warned that "this court with this opinion expands the doctrine of equitable estoppel beyond its own precedent."  *Id.* at 1316–19 (Radar, J., dissenting).

In *Aspex*, the patentee sent letters regarding five patents, referencing the

patentee's "strong intention to fully and vigorously enforce [its patent] rights." *Id.*

at 1308 (majority opinion). These letters were sent on the heels of prior patent

litigation. *Id.* The accused infringer requested an identification of the claims of

the patents that were infringed. *Id.* at 1309. The patentee responded with

infringement allegations for only two of the patents, but did not provide any

contentions regarding the '747 patent, which the plaintiff later asserted in the

litigation. *Id.* On this fact pattern, the Court found that it was reasonable for the

accused to infer that the '747 patent was no longer at issue. *Id.* at 1311.

Here, there was no prior litigation between the parties, and SCA's letter

included no mention of a "strong intention" to "vigorously enforce" SCA's patent

rights. Moreover, there was only a single letter from SCA on the subject of the

patent-in-suit and a response from First Quality that the patent was invalid.[1] This

case presents the paradigm case of notice of infringement, followed by a denial and

---

[1] The District Court also relied on a later set of letters relating to different products and a different patent (A0017), but this was error. These letters communicated nothing about the patent-in-suit or even the accused products. *See* A1952, A1972–A1978. Unlike the subsequent letters in *Aspex*, which related to the same subject matter, the 2004 letters were directed to a different subject matter.

silence. This Court has never held that such an exchange bars post-suit damages.

Equitable stoppel is inappropriate under this Court's precedent.[2]

### 4.    There Is At Least A Genuine Factual Dispute As To Whether SCA's Conduct Was Relied Upon By First Quality

First Quality was obligated to establish reliance on the correspondence and that there was no genuine issue of material fact as to its motivation in expanding its business. *Aukerman*, 960 F.2d at 1042–44. On summary judgment, "such inference must be the only possible inference from the evidence." *Id.* at 1044.

As discussed above in connection with laches, First Quality cannot show that it relied upon any misleading conduct on SCA's part in moving forward with the expansion of its business. The overwhelming evidence is that First Quality relied on its view that the '646 Patent was invalid and expanded its business to take advantage of a market opportunity. Moreover, there is substantial reason to doubt the veracity of First Quality's assertions on equitable estoppel. First Quality did not assert estoppel in its answer, but instead waited one-and-a-half years before filing its equitable estoppel defense. A0209–A0210. Somewhere along the line, First Quality "discovered" that it had been relying on SCA's conduct all along. First Quality's story on reliance is not credible. The most plausible inference is that the reliance argument is a lawyer-created invention.

---

[2]    If *Aspex* is read to bar post-suit damages here, then it is in conflict with this Court's prior jurisprudence and should be expressly overruled.

*Confidential Material Redacted*

There are at least two plausible inferences as to First Quality's true motivation—it thought the patent was invalid and it simply did not care. █

████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████

Furthermore, in finding against the defendant on equitable estoppel, the Court in *Meyers*, *Ecolab*, *Gasser Chair*, and *Hearing Components* placed significant weight on the fact that the defendant relied on its belief that the patent was either invalid or not infringed. *Hearing Components*, 600 F.3d at 1375–76; *Ecolab*, 264 F.3d at 1371–72; *Gasser Chair*, 60 F.3d at 776–77; *Meyers,* 974 F.2d at 1308–09. Although the District Court acknowledged *Gasser Chair*, the District Court failed to give every inference to SCA when it found that First Quality performed only a "cursory" analysis before formulating that opinion. A0018–A0019. In fact, First Quality has steadfastly maintained that SCA's patent is

invalid in view of the Watanabe patent both before and after suit.[3]  *See* A1484,

A1487; A1521, A1524–A1525; A1602, A1605–A1606.

On summary judgment, SCA is entitled to the inference that First Quality

simply did not care whether there was still an outstanding issue of infringement,

either because it thought the patent was invalid or wanted to pursue a huge market

opportunity.  The District Court's factual finding that there was no genuine issue of

material fact as to First Quality's motivation was erroneous.

### 5.    The District Court Erred In Finding Economic Prejudice

The third element of equitable estoppel is material prejudice.  *Aukerman*,

960 F.2d at 1043.  As in laches, the requisite showing of economic prejudice

requires more than the accrual of infringement damages.  *Gasser Chair*, 60 F.3d at

776.  On estoppel, unlike laches, there is a never a presumption of prejudice.

*Aukerman*, 960 F.2d at 1043.  Accordingly, First Quality was obligated to establish

that there was no genuine issue of material fact for trial on the prejudice element.

For the reasons stated in Section VII.C addressing the economic prejudice in the

context of laches, First Quality failed to meet that burden.

---

[3]    Assuming the District Court is correct that First Quality performed only a cursory analysis, it is difficult to see how such careless conduct would support in equity a bar against SCA's claim, rather than count against First Quality in the balancing of the equities.

### 6.     The District Court Abused Its Discretion In Balancing The Equities

Even if all of the elements of equitable estoppel are met, the Court must still exercise its judgment before barring post-suit damages, which is a harsh result. *Aukerman*, 960 F.2d at 1043. Here, it was an abuse of discretion for the District Court to refuse to consider the equities fully, including the good faith of SCA in seeking reexamination (A6825), the fact that First Quality had easy access to the reexamination file at the PTO (37 C.F.R. § 1.11; A1177–A1178), and the fact that the PTO granted new claims after the conclusion of the reexamination (A6826). Furthermore, First Quality began selling the THRG products in 2008. As the case stands now, SCA has no remedy against First Quality for any infringement. Because it sent one letter in 2003 and did not provide a "reservation or rights" letter a few months later, SCA's valuable intellectual property rights have been wiped out. This is a harsh and unwarranted result. Even if this Court were to find that laches applies to presuit damages, the Court should not bar post-suit damages under the higher standard necessary to establish equitable estoppel.

## VIII.  CONCLUSION

SCA respectfully urges this Court to reverse the District Court's grant of summary judgment on the doctrines of laches and equitable estoppel, set aside the Judgment in First Quality's favor, and remand to the District Court for additional proceedings in accordance with the Court's rulings.

Date: October 15, 2013

Respectfully submitted,

*/s/ Kevin M. Flannery*
Martin J. Black
Kevin M. Flannery
Teri-Lynn A. Evans
DECHERT LLP
2929 Arch Street
Philadelphia, PA 19104
(215) 994-4000

*Attorneys for Plaintiffs-Appellants,*
*SCA Hygiene Products Aktiebolag and*
*SCA Personal Care, Inc.*

# ADDENDUM

# ADDENDUM

## TABLE OF CONTENTS

| Appendix Page | File Date | Description |
|---|---|---|
| A0001 | 07/16/2013 | D.I. 120 – JUDGMENT in favor of Defendants consistent with the Court's Memorandum Opinion and Order and the Plaintiff's Complaint is dismissed with prejudice.  Signed by Chief Judge Joseph H. McKinley, Jr. on 7/15/2013. |
| A0022 | 07/16/2013 | D.I. 119 – MEMORANDUM OPINION AND ORDER – For the reason set forth above, IT IS HEREBY ORDERED that the motion by Defendants for summary judgment based on the doctrines of laches and equitable estoppel is GRANTED and the motion by Defendants for a hearing on this motion is DENIED.  All remaining motions are DENIED AS MOOT.  A Judgment shall be entered consistent with the Opinion. |

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION

CIVIL ACTION NO. 1:10CV-00122-JHM

SCA HYGIENE PRODUCTS AKTIEBOLAG and
SCA PERSONAL CARE, INC.                                                   PLAINTIFFS

v.

FIRST QUALITY BABY PRODUCTS, LLC,
FIRST QUALITY HYGIENIC, INC.,
FIRST QUALITY PRODUCTS, INC., and
FIRST QUALITY RETAIL SERVICES, LLC                        DEFENDANTS

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on a motion by Defendants First Quality Baby Products, LLC,

First Quality Hygienic, Inc., First Quality Products, Inc., and First Quality Retail Services, LLC

(collectively "First Quality") for summary judgment based on the doctrines of laches and equitable

estoppel [DN 82, DN 83] and on a motion by First Quality for a hearing on this motion for summary

judgment [DN 84]. Fully briefed, these matters are ripe for decision.

### I. BACKGROUND

Plaintiffs SCA Hygiene Products Aktiebolag and SCA Personal Care, Inc. (collectively

"SCA") assert that some of First Quality's pants-type disposable diapers infringe the asserted claims

of U.S. Patent No. 6,375,646 and its accompanying Reexamination Certificate (collectively "the '646

Patent"). The invention described in the '646 Patent was developed by engineers at SCA's Swedish

research laboratories and relates to a pants-type disposable diaper for use by both potty-training

children and adults with incontinence issues. The inventors filed an initial patent application in

Sweden on March 4, 1992, and the '646 Patent issued in the United States on April 23, 2002, with

claims 1-28. Claims 29-38 were added during a reexamination which concluded on March 27, 2007.

Claims 1 and 15 are independent claims and the remainder of the claims depend from either claim

1 or 15.

On October 31, 2003, counsel for SCA wrote a notice letter to Mr. Kambiz Damaghi,

President of First Quality Enterprises, Inc. The letter provided that SCA was the owner of the patent

rights of the '646 Patent, "which related to absorbent pants-type diapers . . . ." (October 31, 2003,

Letter, DN 83-8, DN 95-3.) The letter identified the First Quality Prevail All Nites absorbent pants-

type diapers as infringing the '646 Patent. Specifically, the letter provided:

> It has come to our attention that you are making, selling and/or offering for
> sale in the United States absorbent pants-type diapers under the name Prevail All
> Nites. We believe that these products infringe claims of the patent listed above.
>
> We suggest that you study U.S. Patent No. 6,375,646 B1. If you are of the
> opinion that the First Quality Prevail All Nites absorbent pants-type diaper does not
> infringe any of the claims of this patent, please provide us with an explanation as to
> why you believe the products do not infringe. If you believe that the products do
> infringe, please provide us with your assurance that you will immediately stop
> making and selling such products.
>
> Please provide us with your response before **November 21, 2003**.

(Id. at 1.)

First Quality investigated the allegation and promptly responded to SCA's letter. On

November 21, 2003, counsel for First Quality responded indicating that the '646 Patent was invalid

in view of what the parties refer to as the Watanbe patent ("the '649 Patent"). Specifically, the letter

provided:

> As you suggested, we studied U.S. Patent No. 6,375,646 B1 (the '646
> Patent"), which we understand is owned by your client SCA Hygiene Products AB.
> In addition, we made a cursory review of prior patents and located U.S. Patent No.
> 5,415,649, ("the '649 Patent"), which was filed in the United States on October 29,
> 1991 and is therefore prior to your client's '646 Patent. A review of Figs. 3 and 4
> of the prior '649 Patent reveals the same diaper construction claimed by the '646
> Patent. Thus, the prior '649 Patent invalidates your client's '646 Patent. As you
> know, an invalid patent cannot be infringed.

(November 21, 2003 Letter, DN 95-4.) First Quality further provided that all future correspondence

2

to First Quality should be directed to First Quality's counsel. (Id.)  First Quality heard nothing further from SCA regarding the '646 Patent.

Five months later, on April 27, 2004, SCA sent another letter to First Quality asserting that a different First Quality Product infringed a different SCA Patent, U.S. Pat. No. 6,726,670 ("the '670 Patent").  SCA's April 2004 letter did not mention its earlier assertion of the '646 Patent.  (April 24, 2004, Letter, DN 83-10.)  On May 24, 2004, First Quality responded to SCA's April 27, 2004 letter, explaining that it did not infringe the '670 Patent.  First Quality also referred to the 2003 correspondence relating to the '646 Patent.  (See May 24, 2004 Letter, DN 83-11.)("As we previously advised you in our letter of November 21, 2003, we also represent First Quality Enterprises, Inc. and, in the future, correspondence from you to [First Quality] should be directed to the undersigned.").  On July 6, 2004, SCA replied to First Quality's May 24, 2004, letter disagreeing with First Quality regarding the '670 Patent, but saying nothing about First Quality's position on the '646 Patent.  (July 6, 2004, Letter, DN 83-12.)  On July 20, 2004, First Quality replied to SCA's July 6, 2004, letter.  (July 20, 2004, Letter, DN 83-13.)  First Quality received no further correspondence from SCA regarding the '646 patent.

On July 7, 2004, SCA initiated an *ex parte* reexamination proceeding in the U.S. Patent Office for the '646 Patent over the Watanabe patent. The reexamination proceeding lasted for over three years. On March 27, 2007, the Patent Office issued a reexamination certificate that confirmed the validity of all claims of the '646 Patent and added a number of new dependent claims.  It is undisputed that SCA did not notify First Quality as to the existence of the reexamination proceeding, nor did SCA ever advise First Quality that SCA intended to file suit against First Quality once the reexamination was complete.

SCA filed this case on August 2, 2010, alleging that some of First Quality's pants-type

3

disposable diapers infringe the asserted claims of U.S. Patent No. 6,375,646 and its accompanying Reexamination Certificate (collectively "the '646 Patent"). First Quality filed a counterclaim against SCA alleging claims of noninfringement and patent invalidity. The parties identified six claim construction issues contained in the '646 Patent in claims 1-11, 15-25, 29-33, and 35-38. On December 29, 2011, the Court conducted a hearing pursuant to Markman v. Westview Instruments, Inc., 517 U.S. 370 (1996). On February 10, 2012, the Court issued a Claims Construction Memorandum Opinion and Order determining the construction of the disputed claims.

First Quality has now filed a motion for summary judgment based on the doctrines of laches and equitable estoppel and a motion for partial summary judgment of non-infringement for all asserted claims, along with two related motions to exclude portions of expert testimony and reports. [DN 82, DN 83, DN 98, DN 96, DN 97]. SCA also filed a motion to exclude First Quality's expert on the issue of infringement. [DN 100]. This Opinion addresses only the motion for summary judgment based on the doctrine of laches and equitable estoppel.

## II. STANDARD OF REVIEW

In order to grant a motion for summary judgment, the Court must find that the pleadings, together with the depositions, interrogatories, and affidavits, establish that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The moving party bears the initial burden of specifying the basis for its motion and of identifying that portion of the record which demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 247-48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving

4

party, the non-moving party is required to do more than simply show that there is some

"metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Co., 475

U.S. 574, 586 (1986). Rule 56 requires the non-moving party to present "*specific facts* showing

there is a *genuine* issue for trial." Fed. R. Civ. P. 56(e) (emphasis added). "The mere existence of

a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be

evidence on which the jury could reasonably find for the plaintiff." Anderson, 477 U.S. at 252.

## III. DISCUSSION

First Quality moves for summary judgment arguing that SCA's infringement claims are

barred by the doctrines of laches and equitable estoppel.

### A. Laches

"The Supreme Court has long recognized the defense of laches to a patent infringement

action brought in equity." A.C. Aukerman Co. v. R. L. Chaides Constr. Co., 960 F.2d 1020, 1028

(Fed. Cir. 1992)(citing Lane & Bodley Co. v. Locke, 150 U.S. 193 (1893)). Laches is "defined as

the neglect or delay in bringing suit to remedy an alleged wrong, which taken together with lapse

of time and other circumstances, causes prejudice to the adverse party and operates as an equitable

bar." Id. at 1028-1029. In determining the applicability of the laches defense, the Federal Circuit

has directed district courts to consider whether "(a) the patentee's delay in bringing suit was

unreasonable and inexcusable," and whether "(b) the alleged infringer suffered material prejudice

attributable to the delay." Id. at1028 (Fed. Cir. 1992); FMC Corp. v. Guthery, 2009 WL 1033663,

*3 (D. N.J. April 17, 2009). If these factors are proven, "laches bars the recovery of patent damages

for any time period before the suit was filed." Lautzenhiser Technologies, LLC v. Sunrise Medical

HHG, Inc., 752 F. Supp. 2d 988, 999 (S.D. Ind. 2010)(quoting A.C. Aukerman Co., 960 F.2d at

1028).

5

Furthermore, "'a delay of more than six years after the omitted inventor knew or should have known of the issuance of the patent will produce a rebuttable presumption of laches.'" FMC Corp., 2009 WL 1033663, *3(quoting Advanced Cardiovascular Sys., Inc. v. SciMed Life Sys., Inc., 988 F.2d 1157, 1163 (Fed. Cir.1993)). "The presumption requires the district court to infer unreasonable delay and resulting prejudice. Id. This presumption can be rebutted if the patentee "raises a genuine factual issue that the delay was reasonable or excusable or offers evidence 'sufficient to place the matters of [evidentiary] prejudice and economic prejudice genuinely in issue.'" Id. (quoting Serdarevic v. Advanced Med. Optics, Inc., 532 F.3d 1352, 1359 (Fed. Cir. 2008). "If the presumption is overcome, the adverse party must affirmatively prove both elements of laches by a preponderance of the evidence." Id. (quoting Church & Dwight Co., Inc. v. Abbott Lab., 2008 WL 5416383, *5 (D.N.J. Dec.23, 2008)). For purposes of laches, "the clock starts to run at 'the time the plaintiff *knew or reasonably should have known* of its claim against the defendant.'" Lautzenhiser Technologies, 752 F. Supp. 2d at 999 (quoting A.C. Aukerman Co., 960 F.2d at 1032).

### 1. Applicability of the Presumption

The record reflects that SCA knew or should have known of its claims against First Quality no later than October 31, 2003, the date it sent the letter to First Quality regarding the '646 patent infringement claim. Because the delay in bringing the patent infringement action exceeded six years, First Quality is entitled to the benefit of the presumption of unreasonable delay and prejudice. Thus, SCA "must come forward with evidence sufficient to put the existence of these presumed undisputed facts into genuine dispute, either by showing that the delay was reasonable or that the movant did not suffer prejudice caused by the wait." Lautzenhiser, 752 F. Supp. 2d at 1001 (citing Aukerman, 960 F.2d at 1038). If SCA fails to come forward with "*either* affirmative evidence of a lack of prejudice *or* a legally cognizable excuse for its delay in filing suit," then First Quality will

6

prevail. <u>Hall v. Aqua Queen Mfg., Inc.</u>, 93 F.3d 1548, 1554 (Fed. Cir. 1996) (recognizing that plaintiff must do more than attack defendant's evidence regarding unreasonableness and prejudice, because "the defendants could have remained *utterly mute* on the issue[s] . . . and nonetheless prevailed."); <u>Lautzenhiser</u>, 752 F. Supp. 2d at 1001(citing <u>ABB Robotics, Inc. v. GMFanuc Robotics Corp.</u>, 828 F. Supp. 1386, 1392 (E.D. Wis. 1993)(defendant must put forward "evidence sufficient to support a finding of the nonexistence of the presumed fact.")).

## 2. Unreasonableness of Delay

"A court must consider and weigh any justification offered by the plaintiff for its delay." <u>Aukerman</u>, 960 F.2d at 1033. Excuses that have been recognized in certain instances include: "other litigation; negotiations with the accused defendant; possibly poverty and illness in limited circumstances; wartime conditions; extent of infringement; and dispute over ownership of the patent." <u>FMC Corp.</u>, 2009 WL 1033663, *4 (citing <u>A.C. Aukerman Co.</u>, 960 F.2d at 1033).

SCA contends that it has come forward with evidence to show a genuine factual dispute on the reasonableness of any alleged delay. Specifically, SCA maintains that its pursuit of the reexamination of the '646 patent is a reasonable excuse for any delay through 2007. SCA also contends that it was not required to provide notice of the reexamination or notice that it intended to enforce its patent upon completion of the proceeding. Further, SCA argues that the three year delay after the reexamination was reasonable because SCA was confidentially and deliberately investigating its infringement claim, including the selection of counsel. However, the Court finds none of these explanations provide "a cognizable justification for the delay sufficient to rebut the presumption of laches." <u>FMC Corp.</u>, 2009 WL 1033633, *4.

First, SCA's involvement in the reexamination of the '646 patent does not provide it with a sufficient excuse because SCA failed to provide notice to First Quality that it intended to litigate

7

its rights under the '646 Patent at the conclusion of the reexamination. <u>FMC Corp.</u>, 2009 WL 1033663, *4.  <u>See also Hall</u>, 93 F.3d at 1554 (finding no abuse of discretion in district court's conclusion that notice of an intent to sue after litigation was required under the facts of that case); <u>Vaupel Textilmaschinen KG v. Meccanica Euro Italia SPA</u>, 944 F.2d 870, 877 (Fed. Cir.1991) (holding that notice to the alleged infringer is the key to finding excusable delay and that "[f]or other litigation to excuse a delay in bringing suit, there must be adequate notice of the proceedings to the accused infringer. The notice must also inform the alleged infringer of the patentee's intention to enforce its patent upon completion of that proceeding." (internal citations omitted)).

SCA contends that such notice was unnecessary, relying on the Federal Circuit's statement in <u>Aukerman</u> that "there can be no rigid requirement in judging a laches defense that such notice must be given." 960 F.2d at 1039.  While there is no "rigid requirement" of notice, the Federal Circuit in <u>Hall</u> addressing the same argument held that, "'[w]here there is prior contact [between the patentee and the accused infringer], the overall equities may require appropriate notice, as in <u>Jamesbury</u>.'" <u>Hall</u>, 93 F.3d at 1554 (quoting <u>Aukerman</u>, 960 F.2d at 1039(citing <u>Jamesbury Corp. v. Litton Indus. Products., Inc.</u>, 839 F.2d 1544 (Fed. Cir.1988)). <u>See Southern Grouts & Mortars, Inc. v. 3M Co.</u>, 2008 WL 4346798, *5 (S.D. Fla. Sept. 17, 2008).

In the present case, there was prior contact between SCA and First Quality regarding SCA's claim that certain First Quality absorbent pants-type diapers infringed the '646 Patent. (October 31, 2003, Letter, DN 95-3.)  On November 21, 2003, counsel for First Quality responded indicating that the '646 Patent was invalid in view of what the parties refer to as the Watanbe patent ("the '649 Patent").  Five months later, on April 24, 2004, SCA sent another letter to First Quality asserting that a different First Quality Product infringed a different SCA Patent, U.S. Pat. No. 6,726,670 ("the '670 Patent").  SCA's April 2004 letter did not mention SCA's earlier assertion of the '646 Patent. (April

8

24, 2004, Letter, DN 83-10.) At no time did SCA communicate with First Quality in any way that it was going to pursue its claims under the '646 Patent. The evidence reflects that First Quality believed the matter was closed. Under the facts of this case, notice by SCA of an intent to sue after the reexamination was required. See Hall, 93 F.3d at 1554; Serdarevic v. Advanced Med. Optics, Inc., 532 F.3d 1352, 1359 (Fed. Cir. 2008)(what is important is whether the defendant had reason to believe it was likely to be sued after the proceedings concluded).

Second, SCA's stated reasons for the three year delay in bringing suit once the reexamination ended does not provide it with a legally cognizable excuse for its delay in filing suit. The Court rejects SCA's argument that it needed more than three years to determine whether it was appropriate to bring infringement claims against First Quality. The evidence reflects that SCA had already completed its infringement analysis by October of 2003, when it sent the initial letter to First Quality. (See Charles Macedo Decl., Ex. 40, Kevin Gorman Tr. 27-28.) Additionally, SCA admitted that it has continuously tracked First Quality's activity since 2003 and has an entire department dedicated solely to competitive intelligence. (Macedo Decl., Ex. 18; Melissa DeMarinis Dep. 185:7-186:23; Lizelle Valdecanas Dep. 49: 4-50:5 (acknowledging that "SCA was tracking what First Quality was doing as early as October 29, 2003"); Kenneth Strannemalm Dep. 136:23-137:14.) Additionally, SCA's claim that it is a foreign company unfamiliar with litigating in the United States is likewise not a legally cognizable excuse for its delay. See Serdarevic, 532 F.3d at 1360. While SCA is a Swedish-based company, since 2001 all of SCA's litigation in the United States has been overseen by U.S.-based general counsel. (Gorman Tr. 32-33.) In fact, SCA was represented by patent litigation counsel, Robert Grudziecki, in 2003-2004 when it accused First Quality of patent infringement. Additionally, the attorneys from Grudziecki's firm prosecuted the reexamination of the '646 patent on behalf of SCA from 2004-2007. Thus, SCA's delay in bringing

9

suit because of its asserted unfamiliarity with the United States patent system is belied by its earlier representation by United States based patent attorneys that sent notice letters on SCA's behalf and is not a reasonable or excusable delay.

Finally, SCA's delay caused by its search for legal counsel is likewise not sufficient to overcome the presumption. "A claimant's inability to find counsel willing to litigate [its] claim does not constitute a reasonable excuse for the delay." Bassali v. Johnson Controls, Inc., 2010 WL 1923979, *5 (W.D. Mich. May 12, 2010). See also Serdarevic, 532 F.3d at 1360; Hall, 93 F.3d at 1554 (citing Naxon Telesign Corp. v. Bunker Ramo Corp., 686 F.2d 1258, 1261 (7th Cir.1982); Wafer Shave Inc. v. Gillette Co., 857 F. Supp. 112, 120 (D. Mass.1993); Coleman v. Corning Glass Works, 619 F. Supp. 950, 954 (W.D.N.Y.1985)).

Thus, SCA's stated reasons for delay in filing suit are legally insufficient to overcome the presumption of unreasonable delay.[1]

### 3. Material Prejudice

A claimant can also rebut the laches presumption by raising a genuine fact issue regarding the absence of prejudice to the adverse party. See FMC Corp., 2009 WL 1033663, *5 (citing Serdaveric, 532 F.3d at 1359–60). "Material prejudice to adverse parties resulting from the plaintiff's delay is essential to the laches defense." Aukerman, 960 F.2d at 1033. Material prejudice may be in the form of either or both economic and evidentiary prejudice. FMC Corp., 2009 WL 1033663, * 5 (D. N.J. April 17, 2009)(citing A.C. Aukerman Co., 960 F.2d at 1033). "Economic prejudice occurs when the defendant 'will suffer the loss of monetary investments or incur damages

---

[1]Even if the time period during which the SCA '646 Patent was being reexamined is not considered, there was a three year delay from the reexamination before SCA took any further action. Under the facts of this case, this delay alone would support a finding of unreasonable delay without the benefit of the presumption. See Digital Systems International, Inc. v. Davox Co., 1993 WL 664647, *3 (W.D. WA. July 1, 1993).

10

which likely would have been prevented by earlier suit.'" Bassali v. Johnson Controls, Inc., 2010 WL 1923979, *5 (W.D. Mich. May 12, 2010)(citing A.C. Aukerman Co., 960 F.2d at 1033). "Evidentiary prejudice may be established by demonstrating an 'inability to present a full and fair defense on the merits due to a loss of records, the death of a witness, or the unreliability of memories of long past events.'" Id. In either case, "the critical inquiry is whether the prejudice arises from the claimant's unreasonable delay in filing suit." Id.

SCA contends that it has come forward with evidence to rebut the presumption of economic prejudice. Specifically, SCA argues that a genuine factual dispute exists regarding a lack of nexus between the delay and the expenditures at issue. Specifically, SCA contends that there is ample evidence in the record to suggest that First Quality's capital expenditures in protective underwear lines and the acquisition of Tyco Healthcare Retail Group ("THRG") were directly related to its efforts to become a market leader in private label protective underwear, and First Quality would have made such expenditures in pursuit of its goal regardless of when SCA brought this litigation. (SCA's Response at 23-25 (citing Moshe Opponheim Dep. 34-35).) SCA maintains that First Quality has not identified a single document that associates any business decision with any supposed delay by SCA in bringing suit or that First Quality would have acted differently had SCA sued earlier. Further, SCA contends that First Quality's maintenance of the status quo after the filing of the Complaint shows the speculative nature of its economic prejudice claims. (Id. at 22.) However, the Court finds none of these explanations and/or arguments provide a genuine issue of fact to rebut the presumption of laches.

First, the record demonstrates that during the seven-year delay First Quality made considerable capital investments and substantial expenditures in expanding its business. "In granting summary judgment to the alleged infringer on laches, courts usually have relied upon

11

A0011

evidence of considerable capital investment or substantially increased sales." Lautzenhiser Technologies, 752 F. Supp. 2d at 1003-1004.[2] "Economic prejudice may arise where a defendant and possibly others will suffer the loss of monetary investments or incur damages which likely would have been prevented by earlier suit." Aukerman, 960 F.2d at 1033. Since 2006, First Quality purchased at least three new protective underwear lines for its King of Prussia facility alone, with its most recent line added in 2009 that cost in excess of $10 million dollars. (Macedo Decl., Ex. 36; Andrew Busch Dep. 23-24.)  In 2008, First Quality purchased from Covidien, Ltd. ("Covidien") THRG which includes some of the product lines at issue in this litigation.

Contrary to the argument of SCA, while First Quality admits that it has continuously sought opportunities to expand its sales, SCA's delay in bringing an infringement action deprived First Quality of the opportunity to modify its business strategies. Caltech Controls Corp. v. OIL Instruments, Inc., 8 Fed. Appx. 941, 951 (Fed. Cir. 2001)(affirming summary judgment on laches defense where district court found that corporate "changes would have been structured differently had [the defendant] been aware of a potential lawsuit by [the plaintiff]."); Lautzenhiser

---

[2]See also R2 Medical Systems v. Katecho, Inc., 931 F. Supp. 1397, 1411 (N.D. Ill. July 19, 1996); Adelberg Laboratories, Inc. v. Miles, Inc., 921 F.2d 1267, 1272 (Fed. Cir.1990) (during delay, defendant made considerable capital investments in expanding business); ABB Robotics, 828 F. Supp. at 1396 (granting summary judgment where alleged infringer enjoyed three-fold increase in sales of challenged device during period of delay); Motorola, Inc. v. CBS, Inc., 672 F. Supp. 1033, 1037 (N.D. Ill. 1986) (ruling that Motorola could not overcome presumption of prejudice because CBS's sales of allegedly infringing product continued and expanded while Motorola delayed in bringing suit); Manus v. Playworld Sys.,Inc., 893 F. Supp. 8, 10 (E.D. Pa. 1995)(economic prejudice was shown with costs associated with increased production of accused article and marketing and capital expenditures over the ten-year delay in filing suit); 5 Chisum, Patents, § 19.05 [2][c] (1996 Supp.) (noting there are very few cases when a lengthy period of unexcused delay escaped a laches finding because of proof of want of injury)). See also Shell Global Solutions Inc. v. RMS Engineering, Inc., 782 F. Supp. 2d 317, 327-328 (S.D. Tex. 2011); Technology for Energy Corp. v. Computational Systems, Inc., 1993 WL 366350, *7–8 (finding economic prejudice where defendant expanded its business, including employees, sales, and research and development).

12

Technologies, 752 F. Supp. 2d at 1004 (rejecting plaintiff's argument that the "[defendants']
expenditures were mere garden-variety ventures in the ordinary course of business, and that no
evidence suggests [defendants] would have altered their conduct had [the plaintiff] filed suit earlier"
because "common sense suggests that Defendants would have modified their business strategies if
they came under suit for infringement.") In the present case, Moshe Oppenheim, in-house counsel
for First Quality, testified that First Quality would not have invested millions of dollars in acquiring
and retooling the King of Prussia facility if it was embroiled in a lawsuit with SCA relating to these
products. (Oppenheim Dep. 100-101.) See Digital Systems, 1993 WL 664647, *3 (granting
summary judgment of laches where DSI "offers unchallenged evidence of its investment in its
business and its phenomenal growth" during the delay period and noting that "[even if only a part
of DSI's expansion involves equipment allegedly infringing Davies' patents, DSI has been
materially injured.") Similarly, Mr. Oppenheim testified that had SCA brought suit earlier, First
Quality could have structured differently its acquisition of THRG which included some of the
product lines at issue in this litigation. According to Mr. Oppenheim, First Quality could have either
demanded that Covidien resolve all issues with respect to SCA's claims prior to the acquisition or
foregone purchase of the product lines accused of infringement. (Id. at 89-95 ("Q: If SCA had sued
First Quality prior to the acquisition of Covidien is it your testimony that First Quality would not
have acquired Covidien? A: And my answer is that that is one potential outcome that would have
come of it. Other potential outcomes, so I can just be clear, we could have walked away from the
deal like we did at one point . . .[or] carved out the protective underwear portion of the deal." Id. at
89-90.)).        In fact, First Quality walked away from its acquisition of THRG at one point, and
only returned to the bargaining table at Covidien's request. (Oppenheim Dep. 14-15.) Further, Mr.
Oppenheim, who was responsible for managing and structuring the THRG acquisition, testified that

13

avoidance of intellectual property issues was a key issue in the transaction. (Id. at 15-17.) The record reflects that in acquiring THRG, First Quality made the acquisition based on the understanding that all of THRG's product lines had a "clean bill of health." In fact, First Quality required Covidien to settle its outstanding patent disputes with Kimberly-Clark before completing the THRG acquisition. (Id. at 16.) First Quality also restructured the THRG acquisition as a result of Covidien's Mexican intellectual property liability purchasing only the assets of the Mexican facility. (Id. at 24-25.) Thus, if SCA had sued earlier, First Quality would not have aggressively expanded its adult incontinence line of products with the purchase of new product lines and THRG. It would have likely structured the acquisition of THRG differently requiring Covidien to settle any outstanding patent disputes. "[C]ommon sense suggests that [First Quality] would have modified [its] business strategies if [it] came under suit for infringement." Lautzenhiser Technologies, 752 F. Supp.2d at 1004.

For these reasons, the Court finds that SCA failed to present evidence sufficient to create a genuine issue of material fact regarding the nonexistence of the presumed material prejudice and, as a result the presumption remains intact. See Lautzenhiser Technologies, 752 F. Supp. 2d at 1004. First Quality's laches defense is valid and the Court will not recognize any of SCA's claims of patent infringement against First Quality prior to the date of filing its claim of infringement on August 2, 2010.

### B. Equitable Estoppel

Equitable estoppel may serve as an absolute bar to a patentee's claim of infringement. Lautzenhiser Technologies, 752 F. Supp. 2d at 1008 (citing Scholle Corp. v. Blackhawk Molding Co., 133 F.3d 1469, 1471 (Fed. Cir.1998)). The equitable estoppel bar applies when:

    a.   The patentee, through misleading conduct, leads the alleged infringer to

reasonably infer that the patentee does not intend to enforce its patent against the alleged infringer. "Conduct" may include specific statements, action, inaction, or silence when there was an obligation to speak.

b. The alleged infringer relies on that conduct.

c. Due to its reliance, the alleged infringer will be materially prejudiced if the patentee is allowed to proceed with its claim.

A.C. Aukerman Co., 960 F.2d at 1028. In contrast to laches, "'equitable estoppel focuses on the reasonableness of the *Defendant's* conduct.'" Lautzenhiser Technologies, 752 F. Supp. 2d at 1008. "And, unlike laches, 'unreasonable delay' is not an element of estoppel and no presumption applies, meaning a party advancing an estoppel defense must prove each of the elements by a preponderance of the evidence." Id.

### 1. Misleading Conduct

"To prove the first element of equitable estoppel, the alleged infringer must prove that the patentee, through misleading conduct, has led the infringer to infer that it does not intend to enforce the patent." Lautzenhiser Technologies, 752 F. Supp. 2d at 1008-1009. The patentee's misleading conduct may include specific statements, actions, inaction, or silence. Id. at 1009 (citing Gossen Corp. v. Marley Mouldings, 977 F. Supp. 1346, 1353–54 (E.D. Wis. Aug. 20, 1997) (citing ABB Robotics, 52 F.3d at 1063)). According to the Federal Circuit in Aukerman:

The patentee's conduct must have supported an inference that the patentee did not intend to press an infringement claim against the alleged infringer. It is clear, thus, that for equitable estoppel the alleged infringer cannot be unaware—as is possible under laches—of the patentee and/or its patent. The alleged infringer also must know or reasonably be able to infer that the patentee has known of the former's activities for some time. In the most common situation, the patentee specifically objects to the activities currently asserted as infringement in the suit and then does not follow up for years. In Dwight & Lloyd Sintering, Judge Learned Hand noted that estoppel was regularly based on "no further assurance [that a known competitor would not be sued than] the patentee's long inaction." 27 F.2d at 827. There is ample subsequent precedent that equitable estoppel may arise where, coupled with other factors, a patentee's "misleading conduct" is essentially misleading *inaction*.

A.C. Aukerman Co., 960 F.2d at 1042 (quoting Dwight & Lloyd Sintering Co. v. Greenawalt, 27

15

F.2d 823 (2d Cir. 1928)).

SCA unquestionably misled First Quality though its 2003 letter and subsequent inaction. A.C. Aukerman Co., 960 F.2d at 1042; Radio Systems Corp. v. Lalor, 2012 WL 254026, *7 (Jan. 26, 2012), aff'd in part, rev'd in part, 709 F.3d 1124 (Fed. Cir. 2013). It is undisputed that SCA first accused First Quality of infringing the '646 Patent in 2003. First Quality promptly responded to SCA's assertion letter in November of 2003, stating that the '646 Patent was invalid. SCA did not respond to the November letter. Instead, SCA wrote to First Quality in April of 2004 regarding a different product and a different patent. SCA did not mention the '646 Patent or the prior correspondence even after First Quality responded to SCA's second infringement assertion and referred to the earlier correspondence regarding the '646 Patent.

In an effort to raise a genuine dispute of fact, SCA argues that its conduct was not misleading because its October 31, 2003, letter did not threaten litigation but merely requested First Quality's "opinion" on the infringement issue. Initially, "threatened litigation is not an element of either laches or estoppel." Digital Systems, 1993 WL 664647, *3. Additionally, the record reflects that prior to the October 2003 letter, SCA had completed its investigations of infringement. The letter informed First Quality that certain absorbent pants-type diapers made by First Quality infringe claims of the '646 Patent. SCA demanded First Quality's assurance that it would immediately stop making and selling such products. After reviewing the correspondence as a whole, the Court finds that the letter by SCA was reasonably viewed by First Quality as a threat of an infringement suit. See, e.g., Aspex Eyewear, Inc. v. Clariti Eyewear, Inc., 605 F.3d 1305, 1311 (Fed. Cir. 2010)(rejecting plaintiffs' argument that its letters did not threaten suit because of the equivocal nature of the statements that its patents "may" cover some of the products, but were reasonably viewed by the defendant as a threat of an infringement suit).

16

Likewise, SCA's letter in April of 2004 to First Quality alleging infringement of a different patent, the '670 Patent, further supports the misleading nature of SCA's conduct. The April 2004 letter was sent five months after First Quality's response denying infringement of the '670 Patent. SCA did not mention the '646 Patent assertion at all, even after First Quality directed SCA's attention to the earlier letters. Whether this letter "is viewed as a tacit withdrawal of the ['646 patent] or as misleading silence with respect to the ['646 patent], the result is the same, for it was reasonable for [First Quality] to infer that [SCA] was not continuing the accusation of infringement as to the ['646 patent]." Aspex Eyewear, 605 F.3d at 1311.

Accordingly, the Court finds that the evidence compels a reasonable fact finder to conclude that SCA engaged in misleading conduct supporting "an inference that the patentee did not intend to press an infringement claim against the alleged infringer." A.C. Aukerman Co., 960 F.2d at 1042. Therefore, the first element of estoppel – misleading conduct – is satisfied.

### 2. Reliance

"A party invoking equitable estoppel must also prove reliance." Lautzenhiser Technologies, 752 F. Supp. 2d at 1009. Reliance, while not an element of laches, is essential to equitable estoppel. Aukerman, 960 F.2d at 1042 (citing Heckler v. Community Health Services, 467 U.S. 51, 59 (1984)). "The accused infringer must show that, in fact, it substantially relied on the misleading conduct of the patentee in connection with taking some action." Id. at 1042-1043. "Reliance is not the same as prejudice or harm, although frequently confused." Id. at 1043. As explained by the court in Aukerman: "An infringer can build a plant being entirely unaware of the patent. As a result of infringement, the infringer may be unable to use the facility. Although harmed, the infringer could not show reliance on the patentee's conduct. To show reliance, the infringer must have had a relationship or communication with the plaintiff which lulls the infringer

17

into a sense of security in going ahead with building the plant." Id.

First Quality "relied on the misleading conduct of [SCA] in connection with taking some action." Aukerman, 960 F.2d at 1042–43. First Quality points to its acquisition of THRG in 2008 and its purchase of additional protective underwear lines since 2006 – some of the products which SCA claims infringe the '646 Patent. Specifically, Babak Demaghi testified that First Quality continued to manufacture and sell the accused products because of SCA's inactions: "The fact that we never heard back from SCA once we sent them [the November 23, 2003] letter that you have put in front of me . . . and as a result we did not consider it to be an issue because we did not know what, if any, issue existed for us to follow up on." (Babak Damaghi Dep at 62.) Further, Mr. Damaghi testified as follows:

> Q: . . . [W]as there any particular point in time when First Quality began to rely on no communications from SCA with respect to conducting its business for the sale of protective underwear?
> A: My answer is after sending [the November 23, 2003 letter] this letter this matter was never thought of again.

(Id. at 63-64.) Additionally, as discussed above, Mr. Oppenheim testified that First Quality would not have invested millions of dollars in acquiring and retooling the King of Prussia facility if it was embroiled in a lawsuit with SCA relating to these products. (Oppenheim Dep. 100-101). Similarly, Mr. Oppenheim testified that had SCA brought suit earlier, First Quality could have structured its acquisition of THRG differently either demanding that Covidien resolve all issues with respect to SCA's claims prior to the acquisition or foregoing purchase of the product lines accused of infringement. (Oppenheim Dep. 89-95.) See Aspex, 605 F.3d at 1311-12.

In response, SCA argues that it is conceivable that First Quality relied not on SCA's inaction, but on First Quality's own belief that SCA's '646 Patent was invalid. It is undisputed that after receiving the 2003 letter from SCA, counsel for First Quality advised SCA that after a cursory

18

review of the prior patents he believed that '646 Patent was invalid and therefore, First Quality was not infringing upon the '646 Patent. With the exception of this letter, SCA has not cited to any testimony or internal communications indicating that First Quality actually relied on a belief that '646 Patent was invalid. Notwithstanding, "[t]he fact that [the alleged infringer] may have relied in part on [it's attorney's] advice does not negate the fact that it also relied on the patentee's apparent abandonment of [its] infringement claim." Wafer Shave, Inc., 857 F. Supp. 112, 123 (D. Mass. 1993)[3](citing MCV, Inc. v. King-Seeley Thermos Co., 870 F.2d 1568, 1573 (Fed. Cir. 1989) (inventor's position that co-inventor did not need to be named on patent was based on reliance on both his own interpretation and plaintiff/co-inventor's silence); Advanced Hydraulics, 525 F.2d at 479 (reliance on patentee's misleading conduct found even though infringer had also informed patentee that infringer's internal investigation had indicated that there was no infringement). At the very least, SCA "reinforced [First Quality's] opinion through their inaction." Radio Systems Corp. v. Labor, 2012 WL 254026, *9 (Jan. 26, 2012), aff'd in relevant part, 709 F.3d 1124 (Fed. Cir. 2013) (affirming district court's grant of summary judgment on equitable estoppel as it related to one patent). See MCV, Inc., 870 F.2d at 1573; Advanced Hydraulics, Inc. v. Otis Elevator Co., 525 F.2d 477, 479 (7th Cir.1975) (concluding that alleged infringer relied on patentee's misleading conduct despite the fact that the infringer had also informed patentee that infringer's internal investigation had indicated that there was no infringement). But see Hall, 93 F.3d at 1558; Gasser Chair Co., Inc. v. Infanti Chair Mfg. Corp., 60 F.3d 770, 776 (Fed. Cir. 1995).

---

[3] "To find otherwise would encourage those accused of infringement not to seek legal advice, but to rely solely on a patentee's future conduct and to have faith that such conduct will prevent the patentee from succeeding in a lawsuit. Such a practice would injure the ability of alleged infringers to protect their legal rights, and discourage the efficient resolution of accusations of infringement which a fully informed, well-advised person would find meritorious, or at least too risky to litigate." Wafer Shave, Inc., 857 F. Supp. at 123.

19

Finally, contrary to the argument by SCA, First Quality does not have to prove that it would have forgone its protective underwear business entirely to satisfy the reliance element. "[T]o show reliance on [a patentee's] silence and inaction, [an infringer] need not prove precisely what alternative paths it would have taken, or that every marketing decision was based on reliance on [the patentee's] silence." Aspex Eyewear, 605 F.3d at 1312.

Accordingly, no reasonable fact finder could conclude that First Quality did not rely on SCA's inaction. Radio Systems Corp., 2012 WL 254026, *9.

### 3. Material Prejudice

The requirement of material prejudice for equitable estoppel is identical to the requirement under laches. See Aukerman, 960 F.2d at 1043 ("[a]s with laches, the prejudice may be a change of economic position or loss of evidence."). "In evaluating whether economic, or business, prejudice has occurred, courts must 'look for a *change* in the economic position of the alleged infringer during the period of the delay.'" Wafer Shave, 857 F. Supp. at 125 (citing Aukerman, 960 F.2d at 1033).

As discussed above, during the seven years that SCA remained silent, First Quality suffered economic prejudice by making substantial capital investments, acquiring THRG from Covidien, and increasing its sales of the accused products. Additionally, just as the alleged infringer in Wafer Shave, First Quality lost the opportunity to limit its present exposure to substantial litigation costs and damages because it believed there was no longer a threat of litigation concerning the [patentee's] patent." Id. See also Aukerman, 960 F.2d at 1033 (noting that patentee may not "intentionally lie silently in wait watching damages escalate . . . particularly where an infringer, if he had had notice, could have switched to a noninfringing product.") (citations omitted).

Applying these factors to the facts in the light most favorable to the non-moving party, the Court concludes that no genuine dispute of material fact exists and that First Quality is entitled to

20

summary judgment as a matter of law on the defense of estoppel.

## IV. CONCLUSION

For the reason set forth above, **IT IS HEREBY ORDERED** that the motion by Defendants First Quality Baby Products, LLC, First Quality Hygienic, Inc., First Quality Products, Inc., and First Quality Retail Services, LLC (collectively "First Quality") for summary judgment based on the doctrines of laches and equitable estoppel [DN 82, DN 83] is **GRANTED** and the motion by First Quality for a hearing on this motion for summary judgment [DN 84] is **DENIED**. **IT IS FURTHER ORDERED** that all remaining motions are **DENIED AS MOOT**. A Judgment shall be entered consistent with the Opinion.

cc: counsel of record

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

July 15, 2013

21

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION

CIVIL ACTION NO. 1:10CV-00122-JHM

SCA HYGIENE PRODUCTS AKTIEBOLAG and
SCA PERSONAL CARE, INC.                                    PLAINTIFFS

v.

FIRST QUALITY BABY PRODUCTS, LLC,
FIRST QUALITY HYGIENIC, INC.,
FIRST QUALITY PRODUCTS, INC., and
FIRST QUALITY RETAIL SERVICES, LLC                         DEFENDANTS

## JUDGMENT

This matter having come before the Court on a dispositive motion filed by the

Defendants, and the Court on this date having issued a Memorandum Opinion and Order

granting said motion,

**IT IS HEREBY ORDERED** that judgment be entered in favor of the Defendants

consistent with the Court's Memorandum Opinion and Order and the Plaintiffs' Complaint

is dismissed with prejudice.

Joseph H. McKinley, Jr., Chief Judge
United States District Court

cc: counsel of record

July 15, 2013

# United States Court of Appeals
## for the Federal Circuit

*SCA Hygiene Products v. First Quality Baby Products*, No. 2013-1564

## CERTIFICATE OF SERVICE

I, Robyn Cocho, being duly sworn according to law and being over the age of 18, upon my oath depose and say that:

Counsel Press was retained by DECHERT LLP, Attorneys for Plaintiffs-Appellants to print this document. I am an employee of Counsel Press.

On **October 15, 2013**, Counsel for Appellants has authorized me to electronically file the foregoing **Brief of Plaintiffs-Appellants (confidential and non-confidential versions)** with the Clerk of Court using the CM/ECF System, which will serve via e-mail notice of such filing to any of the following counsel registered as CM/ECF users:

> Kenneth P. George
> Mark Berkowitz
> Charles R. Macedo
> Amster Rothstein & Ebenstein LLP
> 90 Park Avenue
> New York, NY 10016
> 212-336-8000
> kgeorge@arelaw.com
> mberkowitz@arelaw.com
> cmacedo@arelaw.com
> rmandaro@arelaw.com

Two paper copies confidential will also be sent via email and Federal Express to the above counsel on this date.

Upon acceptance by the Court of the e-filed document, six confidential paper copies will be filed with the Court, via Federal Express, within the time provided in the Court's rules.

October 15, 2013                                    /s/ Robyn Cocho
                                                    Counsel Press

## CERTIFICATE OF COMPLIANCE
## UNDER FEDERAL RULE OF APPELLATE
## PROCEDURE 32(a)(7) AND FEDERAL CIRCUIT RULE 32

1.  This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) or Federal Rule of Appellate Procedure 28.1(e).

   X    The brief contains <u>12,320</u> words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii), or

_____ The brief uses a monospaced typeface and contains ___ lines of text, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) or Federal Rule of Appellate Procedure 28.1(e) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).

   X    The brief has been prepared in a proportionally spaced typeface using <u>Microsoft Word 2003</u> in a <u>14 point Times New Roman</u> font, or

_____ The brief has been prepared in a monospaced typeface using _____ with _____ characters per inch _____ font.

Date:  October 15, 2013             */s/ Kevin M. Flannery*
                                Kevin M. Flannery
                                DECHERT LLP
                                *Attorney for Plaintiffs-Appellants,*
                                *SCA Hygiene Products Aktiebolag*
                                *and SCA Personal Care, Inc.*