**2013-1564**

# United States Court of Appeals
# for the Federal Circuit

SCA HYGIENE PRODUCTS AKTIEBOLAG
and SCA PERSONAL CARE, INC.,

*Plaintiffs-Appellants,*

*v.*

FIRST QUALITY BABY PRODUCTS, LLC,
FIRST QUALITY HYGIENIC, INC.,
FIRST QUALITY PRODUCTS, INC., and
FIRST QUALITY RETAIL SERVICES, LLC,

*Defendants-Appellees.*

*Appeal from the United States District Court for the Western District of
Kentucky in Case No. 10-CV-0122, Chief Judge Joseph H. McKinley, Jr.*

## NON-CONFIDENTIAL BRIEF OF DEFENDANTS-APPELLEES

Kenneth P. George
Charles R. Macedo
Mark Berkowitz
AMSTER, ROTHSTEIN & EBENSTEIN LLP
90 Park Avenue
New York, NY 10016
Tel: (212) 336-8000
Fax: (212) 336-8001

*Attorneys for Defendants-Appellees*

December 16, 2013

# <u>CERTIFICATE OF INTEREST</u>

Counsel for Defendants-Appellees, First Quality Baby Products, LLC, First

Quality Hygienic, Inc., First Quality Products, Inc., and First Quality Retail

Services, LLC (collectively, "First Quality"), certifies the following:

1.    The full name of every party or amicus curiae represented by us is:

     First Quality Baby Products, LLC, First Quality Hygienic, Inc., First Quality
     Products, Inc., and First Quality Retail Services, LLC.

2.    The name of the real party in interest (if the party named in the caption is not
     the real party in interest) represented by us is:

     None.

3.    All parent corporations and any publicly held companies that own 10 percent
     or more of the stock of the party or amicus curiae represented by us are:

     None.

4.    The names of all law firms and the partners or associates that appeared for
     the party or amicus curiae now represented by us in the trial court or agency
     or are expected to appear in this Court are:

     In the Western District of Kentucky, First Quality Baby Products, LLC et al.
     were represented by Kenneth P. George, Ira E. Silfin, Charles R. Macedo,
     Michael J. Kasdan, Richard S. Mandaro, Jessica Capasso, and Addie A.
     Bendory of Amster, Rothstein & Ebenstein LLP and Thomas P. O'Brien III
     and Cory J. Skolnick of Frost Brown Todd LLC.

     On appeal before this Court, First Quality Baby Products, LLC et al. are
     represented by Kenneth P. George, Charles R. Macedo, and Mark Berkowitz
     of Amster, Rothstein & Ebenstein LLP.

Dated: December 16, 2013

Respectfully submitted,
AMSTER, ROTHSTEIN & EBENSTEIN LLP

By: */s/ Kenneth P. George*
Kenneth P. George
Charles R. Macedo
Mark Berkowitz
AMSTER, ROTHSTEIN & EBENSTEIN LLP
90 Park Avenue
New York, NY 10016
Tel: (212) 336-8000
Fax: (212) 336-8001

kgeorge@arelaw.com
cmacedo@arelaw.com
mberkowitz@arelaw.com

*Attorneys for Defendants-Appellees*
*First Quality Baby Products, LLC,*
*First Quality Hygienic, Inc.,*
*First Quality Products, Inc., and*
*First Quality Retail Services, LLC*

# TABLE OF CONTENTS

*Page*

CERTIFICATE OF INTEREST .................................................................i

TABLE OF AUTHORITIES ....................................................................vi

I.    STATEMENT OF RELATED CASES.............................................1

II.   STATEMENT OF ISSUES ..............................................................1

III.  STATEMENT OF THE CASE ........................................................1

      A.    INTRODUCTION...................................................................1

      B.    PROCEEDINGS BELOW ......................................................3

IV.   STATEMENT OF FACTS ...............................................................3

      A.    THE ASSERTED PATENT ...................................................4

      B.    FIRST QUALITY AND THE ACCUSED PRODUCTS.....................4

      C.    SCA FIRST ASSERTED THE '646 PATENT AGAINST
            FIRST QUALITY IN 2003 ..................................................5

      D.    SCA'S REEXAMINATION OF THE '646 PATENT .........................8

      E.    SCA KNEW ABOUT THE IMPORTANCE OF THE
            WATANABE PATENT YEARS BEFORE WRITING TO
            FIRST QUALITY ...............................................................10

      F.    FIRST QUALITY EXPERIENCED SIGNIFICANT GROWTH
            BETWEEN 2003 AND 2010 AS A RESULT OF CAPITAL
            INVESTMENTS .................................................................11

V.    SUMMARY OF THE ARGUMENT ..............................................12

      A.    LACHES ............................................................................12

      B.    ESTOPPEL.........................................................................14

VI.    ARGUMENT ................................................................................15

    A.    STANDARD OF REVIEW ...............................................15

VII.   THE DISTRICT COURT PROPERLY FOUND THAT SCA'S
    CLAIMS ARE BARRED BY LACHES.......................................16

    A.    SCA CONCEDED THAT THE SIX-YEAR PRESUMPTION
        OF LACHES APPLIED TO ALL THE ASSERTED CLAIMS ........16

    B.    THE DISTRICT COURT CORRECTLY FOUND THAT
        SCA'S SEVEN YEAR DELAY WAS UNREASONABLE...............18

        1.    The District Court Properly Concluded That Notice Was
            Required Under The Facts Of This Case ......................................18

        2.    SCA Presents No Compelling Reason To Overrule
            *Aukerman*......................................................................................21

        3.    SCA Cannot Shift Its Burden Of Notice To First Quality ............24

        4.    SCA's Three And A Half Year Delay After The
            Reexamination Is Inexcusable......................................................26

        5.    The District Court Correctly Found That SCA's Post-
            Reexamination Delay Alone Warranted A Finding of
            Unreasonable Delay ......................................................................30

    C.    THE DISTRICT COURT CORRECTLY FOUND THAT
        FIRST QUALITY SUFFERED ECONOMIC PREJUDICE AS
        A RESULT OF SCA'S LENGTHY DELAY.....................................31

        1.    SCA's New Arguments Are Divorced From The Facts ..............32

        2.    SCA's Market Leader Theory Is Irrelevant And
            Unsupported By The Facts.............................................................35

VIII.  THE DISTRICT COURT CORRECTLY FOUND THAT SCA'S
    CLAIMS WERE BARRED BY ESTOPPEL .............................................39

        1.    First Quality Was Misled By SCA's Conduct .............................40

        2.    SCA Fails To Offer Any Reason To Overrule *Aspex* ..................42

3.  There Is No Genuine Issue of Material Facts As To First Quality's Reliance On SCA's Inaction .........................................44

4.  SCA Failed To Present A Genuine Issue Of Material Facts As To Material Prejudice ............................................................46

IX.  CONCLUSION..............................................................................47

## **CONFIDENTIAL MATERIAL OMITTED**

Pursuant to Federal Circuit Rule 28(d)(1)(B), material subject to a protective order entered by the United States District Court for the Western District of Kentucky has been redacted from pages 2, 9-11, 22, 34, 36 and 37. The redacted portions of the brief contain material that has been designated as confidential by Plaintiffs-Appellants or that is confidential business information of Defendants-Appellees.

# TABLE OF AUTHORITIES

## CASES

*A.C. Aukerman Co. v. R.L. Chaides Construction Co.,*
  960 F.2d 1020 (Fed. Cir. 1992) ............................................. 13, 15,18, 28, 19, 42

*ABB Robotics Inc. v. GMFanuc Robotics Corp.,*
  828 F. Supp. 1386 (E.D. Wis. 1993), aff'd, 52 F.3d 1062
  (Fed. Cir. 1995), cert. denied, 516 U.S. 917 (1995) ............................................31

*Advanced Hydraulics, Inc. v. Otis Elevator Co.,*
  525 F.2d 477 (7th Cir. 1975) ..............................................................................46

*Altech Controls Corp. v. EIL Instruments, Inc.,*
  8 F. App'x 941 (Fed. Cir. 2001) .........................................................................31

*American Home Prod. Corp. v. Lockwood Mfg. Co.,*
  483 F.2d 1120 (6th Cir. 1973), cert. denied, 414 U.S. 1158 (1974) ...................38

*Aspex Eyewear, Inc. v. Clariti Eyewear, Inc.,*
  605 F.3d 1305 (Fed. Cir. 2010) ..........................................................................42

*Braun, Inc. v. Dynamics Corp.of AM.,*
  975 F.2d 815 (Fed. Cir. 1992) ............................................................................15

*Coleman v. Corning Glass Works,*
  619 F. Supp. 950 (W.D.N.Y. 1985) ....................................................................27

*Continental Coatings Corp. v. Metco, Inc.,*
  464 F.2d 1375 (7th Cir. 1972) ............................................................................36

*Corrugated Paper Products, Inc. v. Longview Fibre Co.,*
  868 F.2d 908 (7th Cir. 1989) .......................................................................... 33, 34

*Digital Sys. Int'l v. Davox Corp.,*
  No. C92-982D, No. C93-171D, 1993 U.S. Dist. LEXIS 20443. ................. 30, 41

*Golden Bridge Tech., Inc. v. Nokia, Inc.,*
  527 F.3d 1318 (Fed. Cir. 2008) ..................................................................... 17, 28

*Hall v. Aqua Queen Mfg., Inc.,*
   93 F.3d 1548 (Fed. Cir. 1996) .................................................. 13, 16, 20, 21, 27

*Hemstreet v. Computer Entry Sys. Corp.,*
   972 F.2d 1290 (Fed. Cir. 1992) ...........................................................37

*Hormel v. Helvering,*
   312 U.S. 552(1941) .............................................................................16

*Hottel Corp. v. Seaman Corp.,*
   833 F.2d 1570 (Fed. Cir. 1987) ..........................................................19

*Intertech Licensing Corp. v. Brown & Sharpe Mfg. Co.,*
   708 F. Supp. 1423(D. Del. 1989) ........................................................28

*Jamesbury Corp. v. Litton Indus. Prods., Inc.,*
   839 F.2d 1544 (Fed. Cir. 1988) ..........................................................19

*Johns Hopkins Univ. v. CellPro, Inc.,*
   152 F.3d 1342 (Fed. Cir. 1998) ..........................................................15

*Lautzenhiser Techs., LLC v. Sunrise Med. HHG, Inc.,*
   752 F. Supp. 2d 988 (S.D. Ind. 2010) ............................................. 24, 29, 35, 42

*Motorvac Techs., Inc. v. Norco Indus.,*
   NO. SACV 02-503 DOC, 2004 U.S. Dist. LEXIS 4216 ....................................22

*Odetics Inc. v. Storage Tech. Corp.,*
   919 F. Supp. 911 (E.D. Va. 1996),
   on remand 14 F. Supp. 2d 800 (E.D. Va. 1998),
   aff'd in part, rev'd in part, 185 F.3d 1259 (Fed. Cir. 1999) ................................29

*PPG Indus., Inc. v. Celanese Polymer Specialties Co.,*
   840 F.2d 1565 (Fed. Cir. 1988) ..........................................................15

*Radio Sys. Corp. v. Lalor, No.*
   10-828, 2012 U.S. Dist. LEXIS 8981 (W.D. Wash. Jan. 26, 2012) ............. 32, 46

*Rosemount, Inc. v. Beckman Instruments, Inc.,*
   727 F.2d 1540 (Fed. Cir. 1984) ..........................................................30

*Sage Prods. v. Devon Indus.,*
   126 F.3d 1420 (Fed. Cir. 1997) ..........................................................16

vii

*Serdarevic v. Advanced Med. Optics, Inc.,*
  532 F.3d 1352 (Fed. Cir. 2008) ........................................................ 16, 17, 19, 21

*Singleton v. Wulff,*
  428 U.S. 106 (1976) ...............................................................................15

*Tristrata Tech., Inc. v. Cardinal Health, Inc.,*
  No. 02-1290, 2004 U.S. Dist. LEXIS 585 (D. Del. Jan. 16, 2004).....................23

*Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A.,*
  944 F.2d 870 (Fed. Cir. 1991) ...................................................... 18, 19

*W.L. Gore & Assoc., Inc. v. Int'l Med. Prosthetics Research Assoc., Inc.,*
  No. 87-559, 1990 U.S. Dist. LEXIS 15497 (D. Ariz. May 10, 1990) ................39

*Wafer Shave, Inc. v. Gillette Co.,*
  857 F. Supp. 112 (D. Mass. 1993),
  aff'd mem., 26 F.3d 140 (Fed. Cir. 1994) ............................................ 30, 45, 46

*Western Elec. Co., Inc., v. Piezo Tech., Inc.,*
  No. 81-694-CIV-ORL-19,
  1990 U.S. Dist. LEXIS 12678 (M.D. Fla. Mar. 22, 1990)..................................24

## STATUTES AND RULES

35 U.S.C. § 112(4) ............................................................................17

35 U.S.C. § 282 ......................................................................... 24, 25

Fed. R. Civ. P. 30(b)(6)...........................................................................32

## I.   STATEMENT OF RELATED CASES

There is no other appeal in or from the same civil action in the District Court that was previously before this Court or any other appellate court.  There is no other case in this or any other court known to counsel to directly affect or be directly affected by this Court's decision in this appeal.

## II.   STATEMENT OF ISSUES

1.   Whether the District Court abused its discretion in granting summary judgment of laches.

2.   Whether the District Court abused its discretion in granting summary judgment of equitable estoppel.

## III.   STATEMENT OF THE CASE

### A.   Introduction

The District Court found that SCA's infringement claim was barred by the doctrines of laches and equitable estoppel.  SCA challenges both of those determinations, asserting that each and every one of the court's findings are erroneous.  In reality, the facts at hand give rise to textbook cases of laches and estoppel under Federal Circuit precedent.  Thus, SCA asks this Court to radically redraft the law of laches and estoppel for the sole purpose of saving SCA from more than ten years of questionable decisions.

SCA and First Quality both manufacture and sell various absorbent products, including adult incontinence products.  SCA filed its complaint on August 2, 2010,

1

*Confidential Material Redacted*

charging First Quality with infringing U.S. Patent No. 6,375,646 ("the '646 Patent"). The '646 Patent issued over a decade ago, on April 23, 2002. Similarly, the accused First Quality products were first introduced in 2001, over a decade ago.

In 2003, SCA wrote to First Quality, alleging that First Quality's protective underwear products were infringing the '646 Patent, and demanded that First Quality immediately cease their manufacture and sale. First Quality promptly responded, advising SCA that the '646 Patent was invalid and, therefore, not infringed. For nearly seven years, until this action was filed in 2010, First Quality did not hear from SCA with respect to the '646 Patent. First Quality's belief that this matter had been put to rest was confirmed in 2004, when SCA once again wrote to First Quality asserting a different patent without making any reference to the '646 Patent or the parties' earlier communications. This exchange led First Quality to believe that SCA had abandoned its infringement claim regarding the '646 Patent.

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████ SCA was well aware of First Quality's investments, but made a calculated decision not to inform First Quality that it

intended to pursue its infringement claim and thereby deprived First Quality of the opportunity to pursue alternative investments and product designs.

Below, SCA did not dispute *any* of the material facts. Instead, SCA offered the District Court unsupported and irrelevant theories and misrepresentations of the law. SCA now shamelessly seeks a second bite of the apple, presenting more than a dozen brand new (and meritless) arguments and demanding that this Court expressly overrule decades of well-settled law.

### B.    Proceedings Below

On August 2, 2010, SCA filed its complaint alleging infringement of the '646 Patent. (A0056). On November 12, 2012, following the close of fact discovery, First Quality filed a motion for summary judgment of laches and estoppel. (A0235). First Quality later filed two additional dispositive motions, including a motion for partial summary judgment of non-infringement. (A2718). On August 16, 2013, the District Court issued its Memorandum and Order granting First Quality's motion for summary judgment of laches and estoppel. (A0022). The other pending motions were dismissed as moot. (A0021).

## IV.    STATEMENT OF FACTS

SCA's statement of facts is incomplete and mischaracterizes the facts. A restatement of the facts is therefore necessary.

## A.    The Asserted Patent

The '646 Patent, which issued April 23, 2002, names Urban Widlund,

Gunilla Hedlund, and Robert Kling as inventors and relates to a disposable pants-

type diaper.  (A0316).  The "background of the invention" identifies certain

purported problems with prior art diapers, including maintaining the absorbent pad

of the diaper against the wearer's body and preventing a liquid filled absorbent pad

from sagging between the legs of the wearer.  (A0320, 3:15-53).

To address this problem, the '646 Patent teaches and claims the use of a

continuous elastic region which extends across the front part and the back part of

the diaper and also extends over the end parts of the absorbent pad.  (*Id.* at 4:38-

55).  The claims of the '646 Patent require that this region extend over the end part

of the absorbent pad such that the "forces that are exerted by the elastically

stretchable region on at least one of the end part of the absorbent layer function to

hold the absorbent layer in sealing abutment with the wearer when the pants-type

diaper is worn."  (*See, e.g.*, A0323 at Claim 15).

## B.    First Quality and the Accused Products

Defendant First Quality Products, LLC has been manufacturing adult

incontinence products for the healthcare market since 1990.  (A0329:11-14).

Defendant First Quality Retail Services, LLC manufactures adult incontinence

products for the retail market.  Defendant First Quality Baby Products, Inc. focuses

on the manufacture of baby diapers and training pants.  Defendant First Quality Hygienic, Inc., which manufactures feminine hygiene products, has sold some of the accused products.  (A0344:7-10).

SCA asserts that numerous protective underwear products manufactured and sold by First Quality between 2004 and the present infringe the '646 Patent. (A0346, A0382, A0411).  Many of these products have been sold by First Quality since 2001.  (*See, e.g.*, A0444 (note Finished Good ("FG") codes PVS-512, PVS-513); A0465 (note FG codes 5010915, 5010916, 5010917, and 6WP26728)).  SCA asserts that all of the accused products share key design features, including the purportedly novel aspect of the '646 Patent: "at least one elastically stretchable region" having "at least one of the respective end parts of the absorbent layer being disposed within" the region. (*See, e.g.*, A0349, A0386, A0414).

SCA's initial infringement contentions alleged that all of the accused products infringed at least Claims 1-6, 10-11, 15-21, 25, 29-33, and 35-38. (A0467, A0492, A0516).  After the District Court rejected SCA's proposed constructions of several key terms, (A0183-A0194), SCA was forced to jettison claims and substantially revise its infringement theories.  (A0346, A0382, A0411).

### C.    SCA First Asserted the '646 Patent against First Quality in 2003

SCA does not dispute that it has had actual knowledge of the accused products and the alleged infringement by First Quality since at least October 2003.

5

Shortly after the issuance of the '646 Patent in April 2002, SCA conducted a

comprehensive infringement analysis of the marketplace, which included First

Quality's products. (A0848:19-A0851:20).

On October 31, 2003, outside counsel for SCA wrote a notice letter to Mr.

Kambiz Damaghi, President of First Quality Enterprises, Inc.[1] (A0544). The letter

identified "the First Quality Prevail® All Nites™ absorbent pants-type diapers" as

purportedly infringing the '646 Patent:

> It has come to our attention that you are making, selling
> and/or offering for sale in the United States absorbent
> pants-type diapers under the name Prevail® All Nites™.
> **We believe that these products infringe claims of the
> patent listed above** [i.e., the '646 Patent].

(*Id.*) (emphasis added). The letter went on to demand a "[non-infringement]

explanation" or "your assurance that you will immediately ***stop making and***

***selling such products***":

> We suggest that you study U.S. Patent No. 6,375,646 B1.
> If you are of the opinion that the First Quality Prevail®
> All Nites™ absorbent pants-type diaper does not infringe
> any of the claims of this patent, ***please provide us with
> an explanation as to why you believe the products do
> not infringe***. If you believe that the products do infringe,
> please provide us with your assurance that you will
> ***immediately stop making and selling such products***.

---

[1] First Quality Enterprises, Inc. acts as the management arm for the other First
Quality entities (e.g., it provides legal, accounting and human resource services).
(A0343:14-23).

(*Id.*) (emphasis added).

First Quality investigated this allegation and promptly responded to SCA's letter. (A0332:17-A0334:23). On November 21, 2003, intellectual property counsel for First Quality Products, Inc., the manufacturer and seller of the Prevail® All Nites™ absorbent pants-type diapers, wrote back to SCA's counsel. (A0547-A0548). First Quality advised SCA that the '646 Patent was invalid and therefore could not be infringed:

> As you suggested, we studied U.S. Patent No. 6,375,646 B1 ("the '646 Patent"), which we understand is owned by your client SCA Hygiene Products AB. In addition, we made a cursory review of prior patents and located U.S. Patent No. 5,415,649 ("the '649 Patent" [Watanabe]), which was filed in the United States on October 29, 1991 and is therefore prior to your client's '646 Patent. A review of Figs. 3 and 4 of the prior '649 Patent reveals the same diaper construction claimed by the '646 Patent. Thus, the prior '649 Patent invalidates your client's '646 Patent. As you know, an invalid patent cannot be infringed.

(A0547). The letter also informed SCA's counsel that all future correspondence should be directed to outside counsel and not to Mr. Damaghi. (*Id.*). First Quality heard nothing further from SCA regarding the '646 Patent.

Five months later, on April 27, 2004, SCA sent another letter to First Quality asserting that a different type of First Quality product (i.e., a belted undergarment) infringed a different SCA patent, U.S. Pat. No. 6,726,670 ("the '670 Patent"). (A0550). Significantly, SCA's April 2004 letter did not make any mention of its

7

earlier assertion of the '646 Patent. On May 24, 2004, First Quality responded to SCA's April 27, 2004 letter, explaining that it did not infringe the '670 Patent and specifically referred to the 2003 correspondence relating to the '646 Patent. (A0571-A0572). On July 6, 2004, SCA replied to First Quality's May 24, 2004 letter, disagreeing with First Quality regarding the '670 Patent, but saying absolutely nothing about First Quality's position on the '646 Patent. (A574). First Quality's counsel later responded to SCA's July 6, 2004 letter, again denying infringement of the '670 Patent. (A0577-A0579).

First Quality heard nothing further from SCA until SCA sued First Quality on the '646 Patent on August 2, 2010, almost seven years later.

### D. SCA's Reexamination of the '646 Patent

On July 7, 2004, SCA initiated an *ex parte* reexamination proceeding in the U.S. Patent Office for the '646 Patent ("the '646 Reexamination"). (A0584). SCA based its request for reexamination upon the Watanabe Patent that First Quality referenced in its November 2003 letter to SCA. (A0586-A0597). The reexamination proceeding went on for over three years and, on March 27, 2007, the Patent Office issued a reexamination certificate that confirmed the validity of original claims 1-28 of the '646 Patent, and added dependent claims 29-38. (A0325-A0326).

*Confidential Material Redacted*

At no time did SCA ever notify First Quality as to the existence of the reexamination proceeding, nor did SCA ever advise First Quality that SCA intended to file suit against First Quality once the reexamination was completed. (A0854:22-A0855:2; A0858:2-16).



████████████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████

In 2008, after the completion of the reexamination, SCA again investigated whether to bring an infringement action against First Quality on the '646 Patent, (A0858:5-16), but still did not inform First Quality of its intent to pursue its infringement claim. First Quality only learned of the '646 Reexamination after being served with the Complaint in this action.

### E. SCA Knew About The Importance Of The Watanabe Patent Years Before Writing to First Quality

As it turned out, SCA had been aware of the Watanabe Patent long before the '646 Patent issued or First Quality identified this reference in its November 21, 2003 letter. In 1998, the Watanabe Patent was cited against the European counterpart to the '646 Patent during a proceeding in the European Patent Office. (A0866-A0868). SCA failed to bring this reference to the attention of the U.S. Patent Office during the prosecution of the '646 Patent even though it had a duty to do so. ████████████████████████████████████

█████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████

*Confidential Material Redacted*

**F.     First Quality Experienced Significant Growth Between 2003 and 2010 As A Result of Capital Investments**

During the seven years that SCA remained silent (i.e., 2003-2010), First Quality made substantial and continuously increasing capital investments in its protective underwear business in order to increase its market share. ████████

███████████████████████████████████████

███████████████████████████████████████

█████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████

███████

In 2008, First Quality completed the acquisition of the Tyco Healthcare Retail Group LP ("THRG") from Covidien, Ltd. ("Covidien"), which included several protective underwear lines. ████████████████

███████████████████████████████████████

██████████████████████████████

These expenditures have resulted in significant annual growth. (A0330:21-A0331:3-6). ███████████████████████████████

███████████████████████████████████████

████████████

## V. SUMMARY OF THE ARGUMENT

Following comprehensive briefing, the District Court issued a detailed, twenty-one page opinion barring SCA's infringement claims. SCA now seeks to reargue First Quality's motion anew. Its brief is filled to the brim with more than a dozen freshly minted arguments and theories that the District Court never considered and against which First Quality never had an opportunity to offer evidence. Putting aside the fact that these new arguments were waived, SCA still fails to establish that the District Court abused its discretion in granting summary judgment. Nor does SCA offer a compelling case to rewrite the law of laches and estoppel.

### A. Laches

SCA conceded that it delayed just less than seven years before filing suit against First Quality, and that First Quality was entitled to the presumption of laches. (A1111). The District Court correctly held that SCA failed to rebut this presumption and that, even without the presumption, a finding of laches was appropriate here.

SCA does not dispute that it failed to provide First Quality with notice of the '646 Reexamination or that it intended to file suit against First Quality after completion of the proceeding. Instead, SCA asks this Court to hold that notice to an accused infringer is *never* required in connection with reexamination

12

proceedings. This request runs counter to *A.C. Aukerman Co. v. R.L. Chaides Construction Co.*, 960 F.2d 1020 (Fed. Cir. 1992), and decades of Federal Circuit precedent. *Id.* at 1039 ("Where there is prior contact [between the parties,] the overall equities may require appropriate notice."); *see also Hall v. Aqua Queen Mfg., Inc.*, 93 F.3d 1548, 1554 (Fed. Cir. 1996).

Notably, the District Court found that even if SCA had provided the requisite notice, and the time SCA spent in reexamination was excused, SCA's post-reexamination delay ***alone*** supports a finding of unreasonable delay. SCA sat on its hands for three and a half years following the conclusion of the '646 Reexamination while knowing that First Quality was expanding its protective underwear business. The District Court correctly found that SCA's excuses for this period, including an alleged search for counsel and purported ignorance of United States law, fail as a matter of law.

With respect to prejudice, SCA does not dispute that during its lengthy delay, First Quality made significant investments in its protective underwear business. SCA's only response is a speculative theory that First Quality would have made these investments regardless of when SCA filed suit. However, the evidence on record clearly establishes that First Quality would have pursued alternative investments and designs had SCA not remained silent. (A0013-14)

13

## B.    Estoppel

It is beyond dispute that First Quality's response to SCA's charge of
infringement was met with seven years of silence.  This reasonably led First
Quality to believe that SCA was no longer pursuing its infringement claim with
respect to the '646 Patent.  Moreover, First Quality's understanding was solidified
in 2004, when subsequent correspondence between the parties explicitly referred to
SCA's earlier assertion, but SCA said nothing about the '646 Patent.  On appeal,
SCA repeats its strained argument that it never threatened First Quality with
litigation, but was merely curious as to First Quality's "opinion" on infringement.
No reasonable fact-finder could accept this interpretation.  SCA's message was
clear: "immediately" stop producing your product or face legal action.

In growing its business, First Quality relied on SCA's misleading conduct
and therefore was denied the opportunity to structure its business decisions
differently.  Here again, SCA's only response is that First Quality would not have
changed its business plans because it believed that the '646 Patent was invalid.
The District Court correctly found that SCA cited no evidence in support of this
theory.  (A0018-19).  In any event, the fact that First Quality contends that the '646
Patent is invalid does not negate the fact that First Quality relied on SCA's
abandonment of its infringement claim.

14

SCA presents no evidence to establish that the District Court abused its discretion in granting summary judgment of laches and estoppel. The court's order should be affirmed.

## VI. ARGUMENT

### A. Standard Of Review

"As equitable defenses, laches and equitable estoppel are matters committed to the sound discretion of the trial judge and the trial judge's decision is reviewed by this court under the abuse of discretion standard." *Aukerman*, 960 F.2d at 1028. "Discretion, in this sense, is abused if the record contains no basis on which the district court rationally could have made its decision or if the judicial action is arbitrary, fanciful or clearly unreasonable." *PPG Indus., Inc. v. Celanese Polymer Specialties Co.*, 840 F.2d 1565, 1572 (Fed. Cir. 1988).

"As a general rule, an appellate court will not hear on appeal issues that were not clearly raised in the proceedings below." *Johns Hopkins Univ. v. CellPro, Inc.*, 152 F.3d 1342, 1362 (Fed. Cir. 1998) (citing *Singleton v. Wulff*, 428 U.S. 106, 120 (1976) and *Braun, Inc. v. Dynamics Corp.of AM.*, 975 F.2d 815, 821 (Fed. Cir. 1992)). "This rule ensures that 'parties may have the opportunity to offer all the evidence they believe relevant to the issues . . . [and] in order that litigants may not be surprised on appeal by final decision there of issues upon which they have had no opportunity to introduce evidence.'" *Id.* (quoting *Hormel v. Helvering*, 312

U.S. 552, 556 (1941)).  Furthermore, the role of an appellate court is to review

judicial decisions; the Federal Circuit "does not 'review' that which was not

presented to the district court." *Sage Prods. v. Devon Indus.*, 126 F.3d 1420, 1426

(Fed. Cir. 1997).

## VII.  THE DISTRICT COURT PROPERLY FOUND THAT SCA'S CLAIMS ARE BARRED BY LACHES

SCA did not contest that the six-year presumption of laches applied in this

case.  (A1111).  Thus, the burden of production shifted to SCA to establish that its

delay was reasonable or that First Quality suffered no prejudice.  (A0006).  SCA

failed to make the required showing and summary judgment unavoidably followed.

*Hall*, 93 F.3d at 1554 (noting that, once the presumption of laches has attached,

"the defendants could have remained *utterly mute* on the issue of prejudice and

nonetheless prevailed") (emphasis in original); *Serdarevic v. Advanced Med.*

*Optics, Inc.*, 532 F.3d 1352, 1359 (Fed. Cir. 2008) ("The district court therefore

committed no error by holding that the presumption alone—if not rebutted—

entitled the defendants to summary judgment.").

### A.  SCA Conceded That The Six-Year Presumption Of Laches Applied To All The Asserted Claims

SCA's lead argument is new.  It asserts that the court erred in granting

summary judgment of laches "with respect to claims issuing following

reexamination . . . [b]ecause SCA could not assert the new reexamination claims

16

until they issued."  (Br. at 16; *see also id.* at 20-21 ("The District Court applied the

presumption of laches to all claims, refusing to consider the impact of the

reexamination, and plainly erred in barring assertion of claims 35-38, which could

not have been asserted until 2007.")).  Not only did SCA fail to raise this argument

below, SCA conceded that the six-year presumption of laches applied to all of the

asserted claims.  (A1111 ("SCA will assume *arguendo* for purposes of the present

motion that the presumption [of laches] applies . . .") (emphasis in original)).

Since this argument was waived it should be discarded.  *See Golden Bridge Tech.,*

*Inc. v. Nokia, Inc.*, 527 F.3d 1318, 1323 (Fed. Cir. 2008) (declining to consider a

new argument the party could have raised before the district court).

Notwithstanding the above, SCA wholly fails to explain what about these

allegedly "new" claims requires a restart of the laches period.  *Serdarevic*, 532

F.3d at 1359 (rejecting similar argument and noting that the plaintiff "has not

identified any way in which the reexamination proceeding changed her . . . claim").

The four claims in question[2], Claims 35-38, are dependent claims, which are

necessarily narrower than the original claims from which they depend.  *See* 35

U.S.C. § 112(4).  They are also nothing more than trivial variations of the original

claims, requiring that both the front *and* back panels of the product have certain

---

[2] Throughout its brief, SCA incorrectly refers to three new asserted claims; there
were four (Claims 35-38).

features, rather than "at least" one panel. (*Compare, e.g.*, A326, Claim 35, *with* A322, Claim 1).

Further, SCA's argument is based on a fundamental misunderstanding of the law—laches is not applied to each individual asserted claim. *See Aukerman*, 960 F.2d at 1031 ("[L]aches has been viewed as a single defense to a continuing tort up to the time of suit, not a series of individual defenses which must be proved as to each act of infringement, at least with respect to infringing acts of the same nature.").

Finally, the District Court found that, under the facts of this case, SCA's post-reexamination delay was alone sufficient to warrant a finding of unreasonable delay. (A0010). Even without the benefit of the presumption of laches, First Quality is entitled to summary judgment.

### B. The District Court Correctly Found That SCA's Seven Year Delay Was Unreasonable

#### 1. The District Court Properly Concluded That Notice Was Required Under The Facts Of This Case

In order for a legal proceeding (e.g., litigation or reexamination) to be recognized as excuse for a delay in filing suit, a plaintiff must provide (1) notice of the legal proceeding *and* (2) notice of its intent to sue after that proceeding is terminated. *Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A.*, 944 F.2d 870, 877 (Fed. Cir. 1991) ("For other litigation to excuse a delay in bringing suit,

there must be adequate notice of the proceedings to the accused infringer.");

*Jamesbury Corp. v. Litton Indus. Prods., Inc.*, 839 F.2d 1544, 1553 (Fed. Cir.

1988); *Hottel Corp. v. Seaman Corp.*, 833 F.2d 1570, 1573 (Fed. Cir. 1987)

(holding that notice of reexamination required to excuse delay). Express notice

(e.g., a formal letter) of one or both of these elements may not be necessary if the

accused infringer was "in fact" aware of proceeding or "had reason to believe that

it was likely to be sued." *Vaupel*, 944 F.2d at 877-78. This makes logical sense;

there is no need tell someone what they already know.

However, "[w]here there is prior contact [between the parties,] the overall

equities may require appropriate notice." *Aukerman*, 960 F.2d at 1039. The key

inquiry is whether the defendant had reason to believe it would be sued. *See, e.g.,*

*Serdarevic,* 532 F.3d at 1359 ("What is important is whether [the defendant] had

reason to believe it was likely to be sued."); *Vaupel*, 944 F.2d at 878 ("Our

decision in *Hottel* does not require that notice of other litigation *and* of a patentee's

intent to sue after that other litigation is terminated be expressly stated in writing.

What is important is whether [defendant] had reason to believe it was likely to be

sued.") (emphasis in original).

SCA did not dispute that: (1) there was prior contact between the parties; (2)

First Quality did not have actual knowledge of the reexamination; (3) SCA never

suggested that it was going to pursue its claims; and (4) First Quality was not in

apprehension of a lawsuit because it believed that this matter was closed. (A0007-10). Under these circumstances, notice was indisputably required. *See Hall*, 93 F.3d at 1554 (stating that the district court did not abuse its discretion by finding that patentee could not rely on other litigation to excuse its delay because patentee had not given notice to defendants of his intent to sue them once other litigation concluded).

Instead of simply conceding this issue below, SCA took the position that, under *Aukerman*, "SCA was not required to provide notice of the reexamination to First Quality . . . ." (A1130-31). SCA even insinuated that *Jamesbury* and *Hottel* had been overruled by *Aukerman*. (A1131-32). The District Court correctly rejected SCA's mischaracterizations of the law and determined that, "[u]nder the facts of this case, notice by SCA of intent to sue after the reexamination was required." (A0008-9).

On appeal, SCA asks this Court to overturn *Aukerman* and decades of Federal Circuit precedent and hold that a patentee is **never** required to provide notice in connection with the filing of reexamination proceedings. (Br. at 24 ("The equities do not require that patentees give notice to infringers regarding the filing of reexamination proceedings.")). In other words, SCA demands that a special exception should be created for the sole purpose of saving SCA from a finding of laches. Such a rule is not justified, particularly under the facts of this case.

## 2.    SCA Presents No Compelling Reason To Overrule *Aukerman*

SCA presents no legal or factual basis to warrant a radical departure from established law.  SCA incorrectly claims that this Court has not addressed the question of whether a reexamination automatically resets the laches clock.  (Br. at 21-22).  SCA is wrong.  First Quality and the District Court pointed to post-*Aukerman* decisions that considered and rejected similar arguments.  (A0008 (citing *Hall*, 93 F.3d at 1554); *see also Serdarevic*, 532 F.3d at 1359 ("One thing is clear, and accordingly we so hold: there is no rule that the issuance of a reexamination certificate automatically resets the six-year clock for the presumption of laches in each and every case.")).

In *Hall*, the lower court concluded that "Hall could not rely on … litigation as an excuse for his delay in filing suit because he had not informed any of the accused infringers now at bar that he intended to sue them after the conclusion of his suit with [a third party]."  93 F.3d at 1554.  On appeal, Hall—like SCA—argued that "such notice was unnecessary, relying on [the Federal Circuit's] statement in *Aukerman* that 'there can be no rigid requirement in judging a laches defense that such notice must be given.'"  *Id.* (citation omitted).  This Court was "not persuaded," reaffirming that "'where there is prior contact [between the parties], the overall equities may require appropriate notice . . . .'"  *Id.*  This Court therefore agreed that notice of intent to sue "was required."  *Id.*

21

*Confidential Material Redacted*

The only support for SCA's proposition is derived from two unpublished district court cases: *Tristrata* and *Motorvac*. Neither supports SCA's position. *Motorvac* involved a delay of only "about three and a half years." *Motorvac Techs., Inc. v. Norco Indus.*, NO. SACV 02-503 DOC, 2004 U.S. Dist. LEXIS 4216, at *4-5 (C.D. Cal. Jan. 12, 2004). As such, unlike First Quality, "Motorvac [was] not entitled to the presumption of laches that arises after a delay of six years." *Id.* There, the patentee also "notified Motorvac of the successful reexamination of its patent and its intent to sue Motorvac for patent infringement" within days of the conclusion of the reexamination. *Id.* at *3-4. By contrast, SCA delayed over three years following the conclusion of its reexamination before filing suit.

Notably, the *Motorvac* court believed that that the patentee "pursu[ed] what seems to be a prudent course" by submitting "prior art that was not before the Examiner during the prosecution of the patent-at-issue." *Id.* at *5. In this same vein, SCA attempts to paint itself as an innocent and prudent actor. But SCA's tale omits several key facts. Critically, SCA knew about the prior art Watanabe Patent long before First Quality highlighted this reference to SCA. (A0866-A0868).

█████████████████████████████████████████

████████████████████████████████████ If SCA had abided by its duty of candor and cited the Watanabe Patent to the U.S. Patent Office during

the original prosecution of the '646 Patent in 1994-2002, the subsequent

reexamination and seven year delay in bringing this lawsuit would never have

happened. In addition, the absence of notice to First Quality was not a simple

oversight. SCA made an informed and calculated decision not to advise First

Quality of the reexamination proceedings. (A0854:22-A0855:2). The equities

here do not favor SCA by a long shot.

The *Tristata* decision relied on by SCA is similarly irrelevant. There, the

district court denied the defendant's motion for summary judgment of laches as

"premature" because "the parties have yet to engage in discovery." *Tristrata

Tech., Inc. v. Cardinal Health, Inc.*, No. 02-1290, 2004 U.S. Dist. LEXIS 585, at

*12 (D. Del. Jan. 16, 2004). The court granted the defendant leave "to renew its

motion at the close of fact discovery." *Id.* at *13. Here, First Quality's motion

was filed after the close of fact discovery and SCA had a full and fair opportunity

to develop its case.

SCA's "public policy" arguments are similarly meritless. SCA claims that

"[t]here could be nothing more reasonable than requesting a ruling from the PTO

on a new piece of prior art, and such conduct should be lauded and encouraged."

(Br. at 24). As previously noted, the prior art Watanabe Patent was not new to

SCA. (A0866-A0868). Moreover, "a concern that the patent may be invalid does

not, in and of itself, toll the delay for purposes of laches." *Western Elec. Co., Inc.,*

23

*v. Piezo Tech., Inc.*, No. 81-694-CIV-ORL-19, 1990 U.S. Dist. LEXIS 12678, at

*36 (M.D. Fla. Mar. 22, 1990). Nor does "a patent holder [have an] obligation to

search for all prior art before commencing suit because a patent is presumed valid,

35 U.S.C. § 282, and the burden is on a patent challenger to assert and prove

invalidity." *Lautzenhiser Techs., LLC v. Sunrise Med. HHG, Inc.*, 752 F. Supp. 2d

988, 1002 (S.D. Ind. 2010) (finding patentee's alleged search for prior art

insufficient to rebut presumption of laches).

Finally, there is no evidence that the notice requirement, which has been in

place for decades, has somehow discouraged the filing of reexaminations. Proper

notice simply levels the playing field; it preserves the patentee's rights to enforce

its patent at the conclusion of the proceeding while protecting the accused infringer

from being sandbagged.

### 3. SCA Cannot Shift Its Burden Of Notice To First Quality

On page 23 of its Brief, SCA correctly notes that the laches analysis must

focus *solely* on the actions of the plaintiff, not the defendant. *See also Aukerman*,

960 F.2d at 1034. However, on the very next page, SCA changes course and

attempts to shift the focus to First Quality's actions.

First, SCA suggests that notice should not be required because First Quality

could have found out about the reexamination by searching Public PAIR. (Br. at

24 ("[T]he reexamination process is open to the public and can easily be reviewed

by any potential infringer who is on notice of the patent and has an Internet connection.")).  SCA's "constructive notice" theory would eviscerate the notice requirement that this Court has repeatedly endorsed.  And, by "focus[ing] on acts of the defendant, [SCA] distorts the basic concept of laches."  *Aukerman*, 960 F.2d at 1031.

Second, SCA speculates that "First Quality would have done nothing different" if SCA had provided the requisite notice.  (Br. at 26).  SCA's speculation is completely irrelevant—the issue is whether SCA's conduct was reasonable. *Aukerman*, 960 F.2d at 1031.  Further, SCA's argument rests entirely upon attorney conjecture and false statements.  For instance, SCA claims that "First Quality made no changes to is [sic] conduct or its products even after SCA filed this case."  (Br. at 26).  This is untrue.  SCA previously conceded that "First Quality *did discontinue certain versions of its protective underwear"* products after the start of this suit.  (A1128-29 n.7) (emphasis added).  More importantly, First Quality believes that it has strong non-infringement defenses for its current products.  (A2718-48).

In short, the "inference" that SCA asked the District Court to draw was contradicted by the facts and therefore unreasonable.

### 4.    SCA's Three And A Half Year Delay After The Reexamination Is Inexcusable

The District Court correctly found that SCA's delay was unreasonable, not simply because of SCA's admitted failure to give notice, but also because of SCA's lengthy delay in bringing suit once the reexamination ended.  (A0009-10).  In this regard, SCA offered the lower court a handful of litigation-driven excuses to account for its three and half year post-reexamination delay.  (A1133-34).  The District Court correctly found none of these "legally cognizable." (A0009).

First, SCA maintains that, as "a European company that had not been involved in patent litigation for decades, [SCA] proceeded in a conservative manner to evaluate and prepare its case for infringement against First Quality." (Br. at 28).  While SCA is indeed a *Swedish-based* company, since 2001, all of its litigation in the U.S. has been overseen by its *U.S.-based* general counsel, Kevin Gorman.  (A4633:14-A4634:17 (testifying that, since 2001, he has been "[r]esponsible for all of the legal affairs, matters . . . affecting our business units in North and South America," including "potential litigations" and "assertions against American competitors")).  SCA was also represented by competent patent litigation counsel in 2003-2004, when it repeatedly accused First Quality of patent infringement.  (*See* A0544; A0550).  Attorneys from that same firm even prosecuted the '646 Reexamination on behalf of SCA from 2004-2007.  (A0605).

26

SCA's sudden ignorance of U.S. law is at odds with the facts and this excuse was correctly rejected by the District Court. *See Serdarevic* 532 F.3d at 1360 (district court correctly rejected plaintiff's argument that her "delay in bringing suit was reasonable or excusable because of her unfamiliarity with the U.S. patent system" where she was earlier represented by patent counsel that sent notice letters on her behalf).

Second, SCA claims that it "spent considerable time . . . investigating choices for outside counsel," who "then spent considerable time examining the claims to be asserted and the infringing products." (Br. at 10-11; *see also id.* at 28). However, "[a] patentee's inability to find willing counsel . . . is widely rejected as a legally cognizable reason to excuse an unreasonable delay in filing suit." *Hall*, 93 F.3d at 1554; *see also Serdarevic*, 532 F.3d at 1360 (plaintiff's inability to find counsel willing to pursue her claims insufficient to excuse delay); *Coleman v. Corning Glass Works*, 619 F. Supp. 950, 954 (W.D.N.Y. 1985) (proffered excuse that "delay was due to [plaintiff's] inability to find an attorney to prosecute the action" held to be "inadequate as a matter of law").

Third, the District Court credited the uncontested facts that SCA had already *completed its infringement analysis by October 2003* when it sent its initial letter to First Quality, continuously tracked First Quality's activity since 2003, and has an entire department dedicated solely to competitive intelligence. (A0009).

In connection with this finding, SCA asserts that it could not have completed its infringement analysis "with respect to both the new claims and the THRG products" until after the reexamination. (Br. at 27). As discussed above, SCA never raised this argument below and it is therefore waived. *Golden Bridge Tech.*, 527 F.3d at 1323. In any event, the suggestion that SCA required ***more than three years*** to study four dependent claims defies common sense. Ironically, in its claim construction order, the District Court found that SCA had, in fact, failed to take the reexamination history into account in preparing its case. (*See* A0188-90).

SCA's new argument with respect to the "THRG products" is, similarly, little more than an afterthought. SCA has not (and cannot) assert that the THRG products differ in any material way from the products First Quality has manufactured for well over a decade, with respect to SCA's basis for bringing suit. *See Aukerman*, 960 F.2d at 1031 ("[L]aches has been viewed as a single defense to a continuing tort up to the time of suit, not a series of individual defenses which must be proved as to each act of infringement, at least with respect to ***infringing acts of the same nature***.") (emphasis added); *Intertech Licensing Corp. v. Brown & Sharpe Mfg. Co.*, 708 F. Supp. 1423, 1435 (D. Del. 1989) (explaining that a delay in bringing an infringement suit for different products will "tack" if the "nature of alleged infringement remains substantially constant throughout the relevant time periods").

This new argument is also undercut by SCA's initial infringement contentions, which accused *all* of First Quality's protective underwear products (including those product lines acquired from THRG) of infringement based upon the same theory, namely, that they include the purportedly novel features of the claimed article—"at least one elastically stretchable region" having "at least one of the respective end parts of the absorbent layer being disposed within" the region. (A0491, A0515, A0542). Had SCA raised this new argument below, the result would have been the same. *See, e.g.*, *Lautzenhiser Techs.*, 752 F. Supp. 2d at 1004-6 (finding that "laches clock started to run in late 1997 for all" accused products, including newly developed products first introduced into market in 2005 because defendant "alleges infringing acts of the same nature" with regard to all accused products); *Odetics Inc. v. Storage Tech. Corp.*, 919 F. Supp. 911, 916 n.3 (E.D. Va. 1996), *on remand* 14 F. Supp. 2d 800 (E.D. Va. 1998), *aff'd in part, rev'd in part*, 185 F.3d 1259 (Fed. Cir. 1999) (holding that all of the accused products, including those developed several years after the patentee first had notice of the infringing activity, should be treated as a single device for the laches analysis because the later products were essentially identical with respect to the elements at issue).

5.   **The District Court Correctly Found That SCA's Post-Reexamination Delay Alone Warranted A Finding of Unreasonable Delay**

It is undisputed that, once the reexamination ended, SCA: (1) again, decided against giving notice to First Quality of its intent to bring suit (A0858:5-16); and (2) sat silently while knowing that First Quality was expanding its protective underwear business, including acquiring THRG's protective underwear business.

Based on these facts, the District Court determined that, *even if the reexamination period was excluded and the presumption of laches did not apply*, SCA's three-year post-reexamination delay "alone would support a finding of unreasonable delay." (A0010 n.1). SCA's only criticism of this finding is that the District Court "rel[ied] on only a single district court case," *Digital Sys. Int'l v. Davox Corp.*, No. C92-982D, No. C93-171D, 1993 U.S. Dist. LEXIS 20443. (Br. at 27).

SCA wholly fails to distinguish that case, let alone explain why the District Court's identification of this *additional basis* for a finding of unreasonable delay was an abuse of discretion. The District Court's determination should be affirmed. *See Rosemount, Inc. v. Beckman Instruments, Inc.*, 727 F.2d 1540, 1550 (Fed. Cir. 1984) (affirming district court's determination that three-year delay was sufficient to support finding of laches); *Wafer Shave, Inc. v. Gillette Co.*, 857 F. Supp. 112, 128-29 (D. Mass. 1993), *aff'd mem.*, 26 F.3d 140 (Fed. Cir. 1994) (three-year delay

found "especially unreasonable" where plaintiff was aware of defendant's

"massive marketing campaign of its allegedly infringing products").

### C.     The District Court Correctly Found That First Quality Suffered Economic Prejudice As A Result Of SCA's Lengthy Delay

"[E]conomic prejudice is shown by evidence of *either* loss of investment

expenditures *or* damages (from increasing sales) which might have been prevented

by an earlier suit." *ABB Robotics Inc. v. GMFanuc Robotics Corp.*, 828 F. Supp.

1386, 1395-96 (E.D. Wis. 1993), *aff'd*, 52 F.3d 1062 (Fed. Cir. 1995), *cert. denied*,

516 U.S. 917 (1995) (emphasis added); *see also Aukerman*, 960 F.2d at 1033 ("The

courts must look for a change in the economic position of the alleged infringer

during the period of delay.").  It is undisputed that during the seven years that SCA

remained silent, First Quality materially changed its position by, *inter alia*:  (1)

making substantial capital investments; (2) acquiring THRG; (3) increasing its

sales of the accused products; and (4) foregoing alternative product designs.

(A0011-14).

Based on these facts, the District Court correctly concluded that SCA failed

to rebut the presumption of prejudice and that, even without that presumption,

there was no genuine issue of material fact with respect to this element.  *See Altech

Controls Corp. v. EIL Instruments, Inc.*, 8 F. App'x 941, 951 (Fed. Cir. 2001)

(affirming summary judgment of laches where district court found that corporate

"changes would have been structured differently had [the defendant] been aware of

31

a potential lawsuit by [plaintiff]."); *Radio Sys. Corp. v. Lalor*, No. 10-828, 2012 U.S. Dist. LEXIS 8981, at *32 (W.D. Wash. Jan. 26, 2012) (holding that "a reasonable fact finder could find only that [the accused infringers] suffered prejudice" where the patentee's "silence robbed them of the opportunity to structure their business plans as they might have had they known of the threat of litigation").

### 1. SCA's New Arguments Are Divorced From The Facts

In support of its economic prejudice position, First Quality offered, and the court relied upon, the testimony of: (1) Bobby Damaghi, one of First Quality's principals; (2) Andy Busch, Director of Finance for First Quality Retail Services, LLC; (3) Tony Silwanowicz, Director of Product Development for First Quality Products, Inc.; and (4) Moshe Oppenheim, First Quality's Director of Business Practices.

In connection with this testimony, SCA offers several new arguments on appeal that make no factual sense. First, SCA repeatedly asserts that First Quality failed to provide the testimony of a "business person" in support of its prejudice case. (Br. at 31-32, 35, 37). Since Messrs. Damaghi, Busch, and Silwanowicz are actually "business people," SCA focuses solely on Mr. Oppenheim, First Quality's in-house counsel. Mr. Oppenheim testified as a Rule 30(b)(6) witness because he was most knowledgeable as to the particular deposition Topics noticed by SCA,

including First Quality's business practices and the circumstances surrounding the THRG acquisition.

SCA also now claims, for the first time, that there are questions of credibility barring summary judgment because SCA allegedly never had an opportunity to cross-examine these witnesses. (Br. at 30). But all of the testimony in question *was elicited by SCA during its examination of these witnesses at their depositions*. Given that SCA has already examined each of these witnesses, SCA's vague allegations of "credibility" issues cannot defeat summary judgment. *See Corrugated Paper Products, Inc. v. Longview Fibre Co.*, 868 F.2d 908, 914 (7th Cir. 1989) ("Where, as here, the movant's witnesses have been examined by the nonmovant in depositions, the nonmovant ordinarily must identify specific factual inconsistencies in the witness' testimony in order to withstand a motion for summary judgment. The opposing party may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof.") (citations omitted).

Tellingly, despite the fact that SCA had the opportunity to test the veracity of their statements "under the cleansing fire of cross-examination," (Br. at 41), SCA fails to identify *any* issue of credibility, bias, or otherwise. Nor has SCA suggested that there is *additional* evidence that might change the result. SCA's

request for a second opportunity to examine these witnesses should be denied.[3]

*See Corrugated Paper*, 868 F.2d at 914 ("[W]here the plaintiff has had the

opportunity to depose the defendant to test the defendant's veracity and the

plaintiff has failed to 'shake' the defendant's version of the facts or to raise

significant issues of credibility, summary judgment for the defendant may

ordinarily be granted.").

     SCA asserts that First Quality's "intentions" and "state of mind" are at issue,

and such issues are not amenable to resolution on summary judgment. (Br. at 32-

33). SCA is wrong. This is about company policy and uncontroverted facts. First

Quality has a documented history of addressing and avoiding intellectual property

disputes. (A0300-301). For the first time, SCA now points to First Quality's

litigation with Kimberly-Clark ("K-C") relating to baby diapers to insinuate that

First Quality did not require THRG to settle its outstanding patent disputes prior to

the acquisition of THRG. (Br. at 42). 

     SCA failed to submit any documents or testimony to rebut

this evidence. *Corrugated Paper*, 868 F.2d at 914 (summary judgment must be

---

[3] As reflect by the docket sheet, there was not a single discovery dispute in this
case requiring the District Court's intervention. (A0041-55). SCA received all the
discovery that it requested.

granted "unless the plaintiff has adduced other 'significant probative evidence' from which a jury would be entitled to infer contrary conclusions about the mental state at issue").

### 2. SCA's Market Leader Theory Is Irrelevant And Unsupported By The Facts

SCA asserts that it came forward with certain, unidentified "evidence" to rebut the presumption of laches. (Br. at 29). All SCA offered the District Court was a convoluted theory that First Quality's capital expenditures and its acquisition of THRG were related to First Quality's efforts to become the "market leader" in private label protective underwear. (A1124-27). SCA postulated that First Quality, bent on this goal, would have taken these steps regardless of whether SCA had filed suit earlier. (*Id.*). SCA repeats this argument here, but still fails to cite any concrete support for its speculations.

As an initial matter, SCA's theory is immaterial. All that matters is that First Quality was deprived of the opportunity to modify its business strategies as a result of SCA's delay. *Lautzenhiser Techs.,* 752 F. Supp. 2d at 1003-4 (rejecting plaintiff's argument that the defendants "have done nothing more than design, develop, and promote products in the ordinary course of business," and would not have "acted differently" had plaintiff sued earlier, because "common sense suggests that Defendants would have modified their business strategies if they came under suit for infringement"); *see also Continental Coatings Corp. v. Metco,*

*Confidential Material Redacted*

*Inc.*, 464 F.2d 1375, 1378 (7th Cir. 1972) (holding that "an expansion of the infringer's business is the kind of change of position which will support the defense of laches").

First Quality readily admits that, like any other business, it seeks to expand its sales, including thorough strategic acquisitions or purchasing new manufacturing lines. But it does not follow that First Quality *needed* to make any particular purchase or acquisition. █████████████████████████

*Confidential Material Redacted*

████████████████████████████████

████████████████████████████████████

████████████████████████████████

██████████████

SCA's "market leader" theory is drawn from the *Hemstreet* case, not the facts of this case. There, the lower court never even addressed the prejudice factor. *Hemstreet v. Computer Entry Sys. Corp.*, 972 F.2d 1290, 1293 (Fed. Cir. 1992). Rather, this Court remanded a finding of laches, noting that the accused infringer's laches defense was unlikely to succeed because the patentee provided the defendant with "explicit notice" of other litigation that it was pursuing and made it clear that the defendant "would soon face litigation if it refused to license." *Id.* at 1294-95. Here, SCA made deliberate decisions *not to inform* First Quality of its intent to litigate. (A0854:22-A0855:2). And, given SCA's complete lack of response to First Quality's letter, there was nothing to suggest that SCA was maintaining its assertion of the '646 Patent.

SCA also cites to *Meyers, Gasser Chair,* and other cases to suggest that First Quality would not have done anything differently because it believed that the patent was invalid. (Br. at 34-35). The only evidence presented demonstrates that First Quality took SCA's charges of infringement quite seriously, investigated SCA's allegations, and provided a prompt response. It was SCA that failed to

respond to First Quality's letters and disappeared for nearly seven years. Moreover, following SCA's logic, any defendant that asserts an invalidity defense would be unable to invoke a laches or estoppel defense. This is not, and should not be, the law.

SCA asserts that "First Quality has made no changes to its product lines as a result of the filing of suit." (Br. at 36). SCA's argument is just another red herring. Throughout this case, SCA has unreasonably contended that *all* of First Quality's protective underwear products infringe the '646 Patent. (Br. at 7). More importantly, First Quality believes that it has strong non-infringement defenses for its current products. As set forth in First Quality's mooted motion for summary judgment, SCA's infringement positions are based entirely on claim constructions that the District Court explicitly rejected. (A2718-48).

In sum, SCA sat idle while *knowing* that First Quality was expanding its protective underwear business and working to acquire the THRG business unit from Covidien. The District Court's finding of economic prejudice should be affirmed. *See American Home Prod. Corp. v. Lockwood Mfg. Co.*, 483 F.2d 1120, 1124 (6th Cir. 1973), *cert. denied*, 414 U.S. 1158 (1974) (purchasers of business were "deprived of the opportunity to consider the effect which this litigation might have upon the company, and, unaware of any claim against the company, built up the business by expanding the operations of the company using the contested

product and process"); *W.L. Gore & Assoc., Inc. v. Int'l Med. Prosthetics Research Assoc., Inc.*, No. 87-559, 1990 U.S. Dist. LEXIS 15497, at *79 (D. Ariz. May 10, 1990) (expansion financed by profits from infringement "[s]tanding alone ... would not be a prejudicial change of conditions," but it was under the circumstances because, *inter alia*, the patentee deliberately delayed giving notice to avoid litigation and build up potential damages).

## VIII. THE DISTRICT COURT CORRECTLY FOUND THAT SCA'S CLAIMS WERE BARRED BY ESTOPPEL

SCA asserts that the District Court based its finding of equitable estoppel on "the exchange of two brief letters in 2003 followed by silence." (Br. at 43). This assertion is false. The District Court's finding of equitable estoppel was based on the following, undisputed, facts:

- SCA first accused First Quality of infringing the '646 Patent in 2003 (A0015);
- First Quality promptly responded to SCA's assertion letter, stating that the '646 Patent was invalid and not infringed (*Id.*);
- SCA wrote to First Quality in 2004 regarding a different product but SCA did not mention the '646 Patent or the prior correspondence (*Id.*);
- First Quality promptly responded to SCA's second infringement assertion and explicitly referred to the earlier correspondence regarding the '646 Patent (*Id.*); and
- SCA fell silent for six more years while First Quality invested in its protective underwear business (A0020).

This scenario presents a textbook case of estoppel under Federal Circuit precedent.[4]

### 1. First Quality Was Misled By SCA's Conduct

No reasonable person could conclude that SCA's conduct was anything other than misleading. This case presents what *Aukerman* referred to the "most common situation" for the application of equitable estoppel: "the patentee specifically objects to the activities currently asserted as infringement in the suit and then does not follow up for years." *Aukerman*, 960 F.2d at 1042. SCA's October 31, 2003 letter unambiguously charged First Quality with infringement and threatened immediate enforcement of the '646 Patent. (A0544). First Quality's November 21, 2003 response to SCA's assertion letter was met with nearly seven years of silence. SCA's failure to respond to First Quality's November 21, 2003 letter is, ***alone***, sufficient to reasonably indicate to First Quality that SCA did not intend to enforce the '646 Patent against First Quality. *See Hottel Corp.*, 833 F.2d at 1574 (noting that "[i]n the cases that have applied intentionally misleading silence in the patent infringement context, a patentee threatened immediate or vigorous enforcement of its patent rights and then did nothing for an unreasonably long time").

---

[4] Here again, SCA raises its new argument that estoppel could not apply with respect to the dependent claims added during the '646 Reexamination. For the reasons discussed above, this new argument is meritless. (*See* supra Part VII.A).

SCA argues that the "letters sent between the parties did not rise to the level of threat required to satisfy the first prong of the equitable estoppel defense." (Br. at 45). To begin with, "threatened litigation is not an element of . . . estoppel." *Digital Sys. Int'l*, 1993 U.S. Dist. LEXIS 20443, at *8. All that is required is that the patentee, first, "specifically object" to the accused infringer's activities and, second, engage in conduct that would "support[] an inference that the patentee did not intend to press an infringement claim against the alleged infringer." *Aukerman*, 960 F.2d at 1042 (quoting *Dwight & Lloyd Sintering Co. v. Greenawalt*, 27 F.2d 823, 827 (2d Cir. 1928)).

SCA oddly claims that "[t]he District Court erroneously found that 'SCA demanded First Quality's assurance that it would immediately stop making and selling [certain products]." (Br. at 45-46 quoting A0016). But this finding cannot be erroneous—it tracks the language of SCA's letter verbatim. (*See* A0544 ("[P]lease provide us with your ***assurance*** that you will ***immediately stop making and selling*** such products.") (emphasis added)). SCA's letter, which was dispatched by SCA's outside patent litigation counsel, was not a friendly invitation to engage in discussion, but an unambiguous demand that First Quality cease manufacturing the identified product or face immediate legal action.

Any party receiving such a letter from a competitor could only arrive at one reasonable conclusion—they were being threatened with litigation. That is

precisely the conclusion that First Quality reached. *Aspex Eyewear, Inc. v. Clariti Eyewear, Inc.*, 605 F.3d 1305, 1311 (Fed. Cir. 2010) (rejecting plaintiffs argument "that its letters did not threaten suit" because of the "equivocal nature of the statements" but were "reasonably viewed by [the defendant] as a threat of an infringement suit").

SCA further asserts that the court should not have inferred that SCA acted in bad faith because it sought reexamination of the patent-in-suit. (Br. at 44). In contrast to laches, "equitable estoppel focuses on the reasonableness of the Defendant's conduct." *Lautzenhiser Techs.*, 752 F. Supp. 2d at 1008. SCA's actions (i.e., seeking reexamination) are irrelevant.

Here, the court correctly concluded that, considering "the correspondence as a whole," the "letter by SCA was reasonably viewed by First Quality as a threat of an infringement suit." (A0016). Testimony elicited by SCA from First Quality's witnesses confirmed that First Quality was actually misled and believed that this matter was closed. (A0339:19-A0340:7; A1013). Plainly, the District Court's judgment did not rest on "clearly erroneous factual underpinnings," and should therefore be affirmed. *Aukerman*, 960 F.2d at 1039.

### 2.     SCA Fails To Offer Any Reason To Overrule *Aspex*

Contrary to SCA's statements, SCA's threats of "immediate" enforcement were not followed by "mere silence." (Br. at 33). As the District Court

recognized, there were *additional events* that further supported First Quality's understanding that SCA's claims relating to the '646 Patent had been abandoned. (A0016). Specifically, SCA ignores the fact that a May 24, 2004 letter from First Quality to SCA *explicitly referred to the 2003 correspondence relating to the '646 Patent.* (A0571-72). Moreover, SCA replied to First Quality's May 24th letter, responding to First Quality's positions regarding the '670 Patent, but continued to remain silent regarding the '646 Patent. (A0574).

In *Aspex*, this Court found that a virtually identical exchange of letters, followed by just three years of silence, supported a summary judgment that the patentees' conduct was misleading. In 2003, the patentee, Aspex, wrote to the accused infringer, Clariti, alleging that Clariti's products infringed several Aspex patents including U.S. Pat. No. 6,109,747 ("the '747 Patent"). *Aspex Eyewear,* 605 F.3d at 1308-09. When Clariti responded asking for further information, particularly which claims its products allegedly infringed and how, Aspex sent information on the other patents it alleged infringement of, but did not mention the '747 Patent or provide any information about it. *Id.* Clariti responded that it did not believe its products infringed those other patents, and then heard nothing further from Aspex until 2006, when Aspex sued Clariti for infringement of the '747 Patent. *Id.* This Court affirmed a grant of summary judgment of estoppel and noted that, given Aspex's lack of discussion of the '747 Patent in later

correspondence, "it was reasonable for Clariti to infer that Aspex was not continuing the accusation of infringement as to the '747 patent." *Id.* at 1311.

SCA makes a weak attempt to distinguish *Aspex*, claiming that "there was only a single letter from SCA on the subject of the patent-in-suit" and that "letter included no mention of a 'strong intention' to 'vigorously enforce' SCA's patent rights." (Br. at 48). But the correspondence speaks for itself. (A0544). Tacitly recognizing that it has no legitimate way to distinguish *Aspex*, SCA demands—in a footnote—that *Aspex* "should be expressly overruled." (Br. at 49 n. 2).

SCA had a total of *seven years* to state that it was going to enforce its patent. It said nothing. And, even when First Quality reminded SCA about its earlier assertion, SCA continued to remain silent. Under the law, such silence is misleading. *See Aukerman*, 960 F.2d at 1028; *see also Aspex Eyewear*, 605 F.3d at 1313; *Scholle Corp. v. Blackhawk Molding Co.,* 133 F.3d 1469, 1472 (Fed. Cir. 1998).

### 3. There Is No Genuine Issue of Material Facts As To First Quality's Reliance On SCA's Inaction

"To show reliance, the infringer must have had a relationship or communication with the plaintiff which lulls the infringer into a sense of security in going ahead with" plans to expand its business. *Aukerman*, 960 F.2d at 1043. SCA rehashes the same unsupported arguments offered in connection with prejudice, namely, that "First Quality relied on its view that the '646 Patent was

invalid and expanded its business to take advantage of a market opportunity." (Br. at 49). Despite SCA's assertion that there is "overwhelming evidence" to support this theory, (*Id.* at 49), the District Court correctly found that, "SCA has not cited to any testimony or internal communications indicating that First Quality actually relied on a belief that [the] '646 Patent was invalid." (A0019).

In actuality, SCA is merely parroting the holding of *Gasser Chair* and other similar cases. *See Gasser Chair Co. v. Infanti Chair Mfg. Corp.*, 60 F.3d 770, 776 (Fed. Cir. 1995) (finding no reliance where "[defendant] ignored [patentee's] charges of infringement because [defendant] believed the patent was invalid"). But First Quality did not "ignore" SCA's charges of infringement. The *only* record evidence confirms that, after responding to SCA's assertion letter and receiving no response, First Quality's ownership believed that this matter was closed. (A0339:19-A0340:7 (Mr. Damaghi testifying that "after sending th[e] [November 2003 Letter] this matter was never thought of again."); *see also* A1012:9-A1013:25) (Mr. Oppenheim testifying that First Quality had no reason to take further action because "SCA disappeared" and "never came back")).

Finally, First Quality's contention that the '646 Patent is invalid, and its reliance on SCA's abandonment of its infringement claim, are not mutually exclusive. *See Wafer Shave*, 857 F. Supp. at 123 ("The fact that [the alleged infringer] may have relied in part on [its attorney's] advice does not negate the fact

that it also relied on the patentee's apparent abandonment of [its] infringement claim."); *see also Advanced Hydraulics, Inc. v. Otis Elevator Co.*, 525 F.2d 477, 479 (7th Cir. 1975) (concluding that alleged infringer relied on patentee's misleading conduct despite the fact that the infringer had also informed patentee that infringer's internal investigation had indicated that there was no infringement). SCA's silence in response to First Quality's identification of invalidating prior art only "reinforced [First Quality's] opinion through [SCA's] inaction." *Radio Sys. Corp.*, 2012 U.S. Dist. LEXIS 8981, at *30-31, *aff'd in relevant part*, 709 F.3d 1124 (Fed. Cir. 2013).

### 4. SCA Failed To Present A Genuine Issue Of Material Facts As To Material Prejudice

A patentee may not "intentionally lie silently in wait watching damages escalate . . . particularly where an infringer, if he had had notice, could have switched to a noninfringing product." *Aukerman*, 960 F.2d at 1033. Yet, that is exactly what SCA did. For this reason, and those discussed above (*see* supra Part VII.C), the District Court correctly found that there is no genuine issue of material fact with respect to prejudice. *See Wafer Shave*, 857 F. Supp. at 125 ("Gillette lost the opportunity to limit its present exposure to substantial litigation costs and damages because it believed there was no longer a threat of litigation concerning the [patentee's] patent.").

46

## IX.   CONCLUSION

For these reasons, First Quality respectfully requests that this Court affirm

the District Court's grant of summary judgment of laches and equitable estoppel.


Dated: December 16, 2013

Respectfully submitted,
AMSTER, ROTHSTEIN & EBENSTEIN
LLP

By: */s/ Kenneth P. George*

Kenneth P. George
Charles R. Macedo
Mark Berkowitz
AMSTER, ROTHSTEIN & EBENSTEIN
LLP
90 Park Avenue
New York, NY 10016
Tel: (212) 336-8000
Fax: (212) 336-8001

kgeorge@arelaw.com
cmacedo@arelaw.com
mberkowitz@arelaw.com

*Attorneys for Defendants-Appellees*
*First Quality Baby Products, LLC,*
*First Quality Hygienic, Inc.,*
*First Quality Products, Inc., and*
*First Quality Retail Services, LLC*

𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔆𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰
𝔣𝔬𝔯 𝔱𝔥𝔢 𝔉𝔢𝔡𝔢𝔯𝔞𝔩 𝔆𝔦𝔯𝔠𝔲𝔦𝔱

*SCA Hygiene Products v. First Quality Baby Products*, No. 2013-1564

## CERTIFICATE OF SERVICE

I, Robyn Cocho, being duly sworn according to law and being over the age of 18, upon my oath depose and say that:

Counsel Press was retained by AMSTER, ROTHSTEIN & EBENSTEIN LLP, Attorneys for Appellees, to print this document.  I am an employee of Counsel Press.

On **December 16, 2013**, Counsel for Appellees has authorized me to electronically file the foregoing **Brief of Defendants-Appellees (confidential and non-confidential versions)** with the Clerk of Court using the CM/ECF System, which will serve via e-mail notice of such filing to any of the following counsel registered as CM/ECF users:

Martin J. Black
Kevin M. Flannery
Teri-Lynn A. Evans
DECHERT LLP
2929 Arch Street
Philadelphia, PA 19104-2808
Tel: (215) 994-4000

Two paper copies confidential will also be sent via email and Federal Express to the above counsel on this date.

Upon acceptance by the Court of the e-filed document, six confidential paper copies will be filed with the Court, via Federal Express, within the time provided in the Court's rules.

December 16, 2013                    /s/ Robyn Cocho
                                     Counsel Press

## CERTIFICATE OF COMPLIANCE
## UNDER FEDERAL RULE OF APPELLATE
## <u>PROCEDURE 32(a)(7) AND FEDERAL CIRCUIT RULE 32</u>

1.  This brief complies with the type-volume limitation of Federal Rule of

Appellate Procedure 32(a)(7)(B) or Federal Rule of Appellate Procedure 28.1(e).

  <u>X</u>   The brief contains <u>10,506</u> words, excluding the parts of the brief

        exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii),

        or

  _____ The brief uses a monospaced typeface and contains ___ lines of text,

        excluding the parts of the brief exempted by Federal Rule of

        Appellate Procedure 32(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of Federal Rule of Appellate

Procedure 32(a)(5) or Federal Rule of Appellate Procedure 28.1(e) and the type

style requirements of Federal Rule of Appellate Procedure 32(a)(6).

  <u>X</u>   The brief has been prepared in a proportionally spaced typeface using

        <u>Microsoft Word 2003</u> in a <u>14 point Times New Roman</u> font, or

  _____ The brief has been prepared in a monospaced typeface using _____

        with _____ characters per inch _____ font.

December 16, 2013         By: <u>*/s/ Kenneth P. George*</u>
                             Kenneth P. George
                             Counsel for Appellees