**2013-1564**

# United States Court of Appeals
# for the Federal Circuit

SCA HYGIENE PRODUCTS AKTIEBOLAG
and SCA PERSONAL CARE, INC.,

*Plaintiffs-Appellants*,

v.

FIRST QUALITY BABY PRODUCTS, LLC,
FIRST QUALITY HYGIENIC, INC., FIRST QUALITY PRODUCTS, INC.,
and FIRST QUALITY RETAIL SERVICES, LLC,

*Defendants-Appellees*.

*Appeal from the United States District Court for the Western District of
Kentucky in Case No. 10-CV-0122, Chief Judge Joseph H. McKinley, Jr.*

## NON-CONFIDENTIAL EN BANC BRIEF OF PLAINTIFFS-APPELLANTS SCA HYGIENE PRODUCTS AKTIEBOLAG AND SCA PERSONAL CARE, INC.

MARTIN J. BLACK
KEVIN M. FLANNERY
TERI-LYNN A. EVANS
SHARON K. GAGLIARDI
DECHERT LLP
2929 Arch Street
Philadelphia, PA 19104-2808
(215) 994-4000

Attorneys for Plaintiffs-Appellants
February 27, 2015

## <u>CERTIFICATE OF INTEREST</u>

Counsel for the appellants, SCA Hygiene Products Aktiebolag and SCA Personal Care, Inc., certifies the following:

1.      The full name of every party or amicus represented by me is:

      SCA Hygiene Products Aktiebolag and SCA Personal Care, Inc.

2.      The name of the real party in interest (if the real party named in the caption is not the real party in interest) represented by me is:

      N/A.

3.      All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

      SCA Hygiene Products Aktiebolag is a wholly-owned subsidiary of Svenska Cellulosa Aktiebolaget SCA (publ.), which is traded on the Swedish stock exchange.  No other publicly traded company owns 10% or more of the stock of SCA Hygiene Products Aktiebolag or SCA Personal Care, Inc.

4.      The names of all law firms and the partners or associates that appeared for the party or  amicus now represented by me in the district court or agency or are expected to appear in this court are:

      In the Western District of Kentucky, SCA Hygiene Products Aktiebolag and SCA Personal Care, Inc. were represented by Martin J. Black, Kevin M. Flannery, Sharon K. Gagliardi, and Teri-Lynn A. Evans of Dechert LLP, and E. Kenly Ames and Michael A. Owsley of English, Lucas, Priest & Owsley, LLP.

      On appeal before this Court, SCA Hygiene Products Aktiebolag and SCA Personal Care, Inc. are represented by Martin J. Black, Kevin M. Flannery, Teri-Lynn A. Evans, and Sharon K. Gagliardi of Dechert LLP.

Date: February 27, 2015              */s/ Martin J. Black*
                                     Martin J. Black
                                     DECHERT LLP
                                     Attorney for Appellants

# TABLE OF CONTENTS

Page

I.    STATEMENT OF RELATED CASES ........................................................1

II.    JURISDICTIONAL STATEMENT ......................................................1

III.    RESPONSE TO THE EN BANC COURT'S QUESTIONS ...................2

IV.    STATEMENT OF THE CASE ..............................................................4

V.    STATEMENT OF THE FACTS ...........................................................6

VI.    SUMMARY OF THE ARGUMENT ....................................................8

VII.    ARGUMENT.......................................................................................12

     A.    *Petrella* Bars Application Of Laches To Patent Damage Claims Brought Under 35 U.S.C. § 286........................................................12

         1.    The Copyright Act And Patent Act Share A Common Purpose And Structure ...............................................................14

         2.    *Petrella* Rejects The Crucial Arguments Made In *Aukerman* In Support Of The Application Of Laches To Patent Cases.....17

             a.    *The Merger Of Law And Equity Does Not Support The Application Of Laches To Legal Claims For Damages* ........................................................................17

             b.    *The Legislative History Does Not Support The Application Of Laches To Legal Claims For Damages* .20

                 (1)    Legislative History Prior To The 1952 Act..........20

                 (2)    The 1952 Act ......................................................23

             c.    *The "Federico Commentary" Is Neither Legislative History Nor Supportive Of Aukerman* ...........................25

             d.    *Section 282 Strongly Supports Refusing To Apply Laches To Patent Damages Actions* ...............................27

             e.    *Prior Circuit Court Practice Does Not Support The Application Of Laches To Legal Claims For Damages* .28

     B.    Laches Cannot Be Used To Bar An Entire Infringement Suit For Damages, But May Be Used To Limit Injunctive Relief ........32

         1.    Laches Is Inapplicable To Damages Actions............................33

i

**TABLE OF CONTENTS (cont.)**

Page

      2.     Laches Has A Continuing Role In Equitable Relief.................35

      3.     Even If Laches Has Continued Viability In Infringement Suits, The Facts Here Do Not Warrant The Grant Of Summary Judgment Of Laches.................................................37

**VIII.  CONCLUSION** ...........................................................................**40**

**CONFIDENTIAL MATERIALS OMITTED**

Pursuant to Federal Circuit Rule 28(d)(1)(B), material subject to a protective order entered by the United States District Court for the Western District of Kentucky has been redacted from pages 6 and 7.  The redacted portions of the brief contain confidential business information of Defendants-Appellees.

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*,
  960 F.2d 1020 (Fed. Cir. 1992) ................................................................ passim

*Apple, Inc. v. Samsung Electronics Co.*,
  678 F.3d 1314 (Fed. Cir. 2012) ......................................................................36

*Banker v. Ford Motor Co.*,
  69 F.2d 665 (3d Cir. 1934) ...................................................................... 31, 32

*Barnhart v. Peabody Coal Co.*,
  537 U.S. 149 (2003) ........................................................................................27

*Bruesewitz v. Wyeth LLC*,
  131 S. Ct. 1068 (2011) ...................................................................................27

*Campbell v. City of Haverhill*,
  155 U.S. 610 (1895) ................................................................................ passim

*Cipollone v. Liggett Grp., Inc.*,
  505 U.S. 504 (1992) ........................................................................................27

*Citizens & Landowners Against the Miles City/New Underwood Powerline v. Sec'y, U.S. Dep't of Energy*,
  683 F.2d 1171 (8th Cir. 1982) .......................................................................36

*Cornetta v. United States*,
  851 F.2d 1372 (Fed. Cir. 1988) (in banc) .....................................................29

*Dwight & Lloyd Sintering Co. v. Greenawalt*,
  20 F.2d 533 (S.D.N.Y. 1927) .........................................................................30

*Dwight & Lloyd Sintering Co., Inc. v. Greenawalt*,
  27 F.2d 823 (2d Cir. 1928) .............................................................................30

*eBay Inc. v. MercExchange, L.L.C.*,
  126 S. Ct. 1837 (2006) ...................................................................................36

# TABLE OF AUTHORITIES (cont.)

**Page**

*Enelow v. New York Life Ins. Co.*,
   293 U.S. 379 (1935), *overruled on other grounds by Gulfstream Aerospace
   Corp. v. Mayacamas Corp.*, 485 U.S. 271 (1988)...............................................31

*Enelow v. New York Life Ins. Co.*,
   70 F.2d 728 (3d Cir. 1934),
   *rev'd on other grounds*, 293 U.S. 379 (1935),
   *overruled on other grounds by Gulfstream Aerospace Corp. v. Mayacamas
   Corp.*, 485 U.S. 271 (1988) .................................................................................32

*Environmental Defense Fund v. Alexander*,
   614 F.2d 474 (5th Cir. 1980), *cert. denied*, 449 U.S. 919 (1980) ............... 17, 18

*Exxon Mobil Corp. v. Allapattah Servs., Inc.*,
   545 U.S. 546 (2005)...........................................................................................28

*Ford v. Huff*,
   296 F. 652 (5th Cir. 1924) ......................................................................... 31, 32

*George J. Meyer Mfg. Co. v. Miller Mfg. Co.*,
   24 F.2d 505 (7th Cir. 1928) ...............................................................................30

*Gillons v. Shell Co. of Cal.*,
   86 F.2d 600 (9th Cir. 1936) ...............................................................................30

*Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*,
   527 U.S. 308 (1999)............................................................................................19

*Hayden v. Oriental Mills*,
   15 F. 605 (C.C.D.R.I. 1883) ..................................................................... 21, 22, 30

*Holmberg v. Armbrecht*,
   327 U.S. 392 (1946)............................................................................................18

*Lane & Bodley Co. v. Locke*,
   150 U.S. 1930 (1893)...................................................................... 3, 11, 17, 33

iv

# TABLE OF AUTHORITIES (cont.)

**Page**

*Locke v. Lane & Bodley Co.*,
    35 F. 289 (C.C.S.D. 1888), *rev'd sub nom. Lane & Bodley Co. v. Locke*, 150
    U.S. 193 (1893) ................................................................................ 11, 34, 35

*Oneida County, N.Y. v. Oneida Indian Nation of New York State*,
    470 U.S. 226 (1985) .......................................................................................19

*Petrella v. Metro-Goldwyn-Mayer*,
    134 S. Ct. 1962 (2014) ........................................................................... passim

*Reconstruction Finance Corp. v. Harrisons & Crosfield Ltd.*,
    204 F.2d 366 (2d Cir. 1953), *cert denied*, 346 U.S. 854 (1953) .......................29

*SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*,
    767 F.3d 1339 (Fed. Cir. 2014) .......................................................... 1, 5, 8, 37

*SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*,
    No. 2013-1564, 2014 WL 7460970 (Fed. Cir. Dec. 30, 2014) ................. passim

*Smith v. City of Chicago*,
    769 F.2d 408 (7th Cir. 1985) .........................................................................36

*SRI Int'l v. Matsushita Elec. Corp.*,
    775 F.2d 1107 (Fed. Cir. 1985) (in banc) .........................................................38

*Stainback v. Mo Hock Ke Lok Po*,
    336 U.S. 368 (1949) .......................................................................................19

*U.S. v. Mack*,
    295 U.S. 480 (1935) .......................................................................................18

*United States v. Vonn*,
    535 U.S. 55 (2002) .........................................................................................27

*Wagner v. Baird*,
    48 U.S. 234 (1849) .........................................................................................30

# TABLE OF AUTHORITIES (cont.)

**Page**

*Wanlass v. Fedders Corp.*,
　145 F.3d 1461 (Fed. Cir. 1998) ...........................................................38

*Westco-Chippewa Pump Co. v. Del. Elec. & Supply Co.*,
　57 F.2d 559 (D. Del. 1931) .................................................................30

*Westco-Chippewa Pump Co. v. Delaware Electric & Supply Co.*,
　64 F.2d 185 (3d Cir. 1933) .................................................................30

*Wilkie v. Manhattan Rubber Mfg. Co.*,
　14 F.2d 811 (3d Cir. 1926) .................................................................31

## <u>STATUTES</u>

15 U.S.C. § 1115(b)(9)..........................................................................28

15 U.S.C. §§ 1051, *et seq*.....................................................................15

17 U.S.C. § 1323...................................................................................25

17 U.S.C. § 507(b) ...................................................................... 4, 12, 14

28 U.S.C. § 1291 ....................................................................................2

28 U.S.C. § 1295(a)(1)............................................................................2

28 U.S.C. § 1331 ....................................................................................2

28 U.S.C. § 1338(a) ...............................................................................2

35 U.S.C. § 282 .......................................................................... 25, 26, 27, 28

35 U.S.C. § 286.............................................................................. passim

37 C.F.R. § 1.11(c)–(d) (2004) ................................................................7

vi

# TABLE OF AUTHORITIES (cont.)

**Page**

Judicial Code § 274b
 (63d Cong., 39 Stat. 956 (1915)) ........................................................31

## RULES

Fed. R. Civ. P. 2 ...................................................................... 19, 31

Fed. R. Civ. P. 8 ...................................................................... 9, 19

## OTHER AUTHORITIES

1st Cong., 1 Stat. 109–12 (1790) ..............................................20

41st Cong., 16 Stat. 206 (1870) ...............................................20

54th Cong., 29 Stat. 694 (1897) ...............................................22

67th Cong., 42 Stat. 392 (1922) ...............................................23

79th Cong., 60 Stat. 778 (1946) ...............................................23

82nd Cong., 66 Stat. 813 (1952) ..............................................23

H.R. Rep. No. 82-1923 (1952) ..................................................24

H.R. Rep. No. 940 (1896) ................................................ 16, 23, 32

P.J. Federico, *Commentary on the New Patent Act*,
 Title 35, United States Code Annotated (West 1954), *reprinted in*
 75 J. Pat. & Trademark Off. Soc'y 161, 217 (1993)........................ 25, 26, 27

S. Rep. No. 82-1979 (1952) .......................................................25

Wright & Miller,
 4 Fed. Prac. & Proc. Civ. § 1041 (3d ed.) .......................................31

## I.    STATEMENT OF RELATED CASES

The Court issued the original Panel decision in this matter on September 25, 2014.  *SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*, 767 F.3d 1339 (Fed. Cir. 2014) (Reyna, Wallach, Hughes, JJ.) (hereinafter, "*SCA I*"). On December 30, 2014, the en banc Court issued an order vacating *SCA I* and requesting additional briefing.  *SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*, No. 2013-1564, 2014 WL 7460970, at *1 (Fed. Cir. Dec. 30, 2014) (hereinafter "*SCA II*").

There is no other case pending in this or any other court involving these parties or patents, although there are other pending appeals raising the question whether laches constitutes a defense to a claim of patent infringement.  *See, e.g.*, *Reese v. Sprint Nextel Corp.*, Nos. 2015-1030, -1031, -1032, -1035, -1036 (Fed. Cir.); *Medinol Ltd., v. Cordis Corp., Johnson & Johnson*, No. 2015-1027 (Fed. Cir.).

## II.    JURISDICTIONAL STATEMENT

SCA Hygiene Products Aktiebolag and SCA Personal Care, Inc. (collectively "SCA") filed a complaint for patent infringement in the United States District Court for the Western District of Kentucky on August 2, 2010, against First Quality Baby Products, LLC, First Quality Hygiene, Inc., First Quality Products, Inc. and First Quality Retail Service, LLC  (collectively "First Quality").

A0041 at ECF No. 1.  The district court had subject matter jurisdiction under

28 U.S.C. §§ 1331 and 1338(a).  The district court entered judgment on July 16,

2013 (A0022–A0024), which became final when the parties filed an agreed

stipulation of dismissal on August 8, 2013 (A0025–A0026).  SCA timely filed a

notice of appeal on August 12, 2013.  A5786–A5788.  This Court has jurisdiction

under 28 U.S.C. §§ 1291 and 1295(a)(1).

## III.    RESPONSE TO THE EN BANC COURT'S QUESTIONS

The Court's order granting en banc rehearing specified two questions, and

SCA's summary response appears below.

Issue I:  "In light of the Supreme Court's decision in *Petrella v. Metro-

Goldwyn-Mayer*, 134 S. Ct. 1962 (2014) (and considering any relevant differences

between copyright and patent law), should this court's en banc decision in *A.C.

Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020 (Fed. Cir. 1992), be

overruled so that the defense of laches is not applicable to bar a claim for damages

based on patent infringement occurring within the six-year damages limitations

period established by 35 U.S.C. § 286?"  *SCA II*, 2014 WL 7460970, at *1.

Brief Answer:  Yes.  Since *Aukerman* is inconsistent with *Petrella*, and the

cases cannot be reconciled, *Aukerman* should be overruled.  The Supreme Court

has never approved the use of laches in the face of a statute of limitations enacted

by Congress, and there is no principled distinction between copyright and patent

law.  As the en banc Court's question notes, § 286 is a "limitations period," and the legislative history indicates that Congress considered it to be a "statute of limitations."  More importantly, whatever label is ascribed to § 286, *Petrella* rejects the fundamental premise of *Aukerman*, which reasoned that judges retain a vestigial power to evaluate the timeliness of suit even when Congress has provided a limitations period.

Issue II:  "In light of the fact that there is no statute of limitations for claims of patent infringement and in view of Supreme Court precedent, should the defense of laches be available to bar an entire infringement suit for either damages or injunctive relief?  *See, e.g.*, *Lane & Bodley Co. v. Locke*, 150 U.S. 193 (1893)." *SCA II*, 2014 WL 7460970, at *1.

Brief Answer:  SCA respectfully disagrees with the premise of the question—that there is no statute of limitations in the Patent Act.  In fact, both the traditional definition of a statute of limitations and the legislative history of § 286 demonstrate that § 286 is a statute of limitations.  Moreover, *Lane & Bodley Co. v. Locke*, 150 U.S. 193 (1893) provides no support for the continued viability of *Aukerman*.  *Lane & Bodley* was brought in equity at a time when there was no extant limitations period under patent law.  The defendant asserted an estoppel defense, not the standalone laches defense *Aukerman* approved.  The case provides no support for the proposition that delay alone can result in barring a suit for patent

3

damages.  With respect to injunctive relief, laches continues to play its traditional role.

## IV.   STATEMENT OF THE CASE

On August 2, 2010, SCA brought the instant action for patent infringement against First Quality in the United States District Court for the Western District of Kentucky.  A0056–A0062.  On November 12, 2012, First Quality moved for summary judgment on the defenses of laches and equitable estoppel.  A0235–A0309.  SCA opposed First Quality's motion, submitting deposition testimony from nine witnesses to rebut the presumption of economic prejudice.  *See*, *e.g.*, A1097–A1144; A1407–A1411; A1460–A1467.  Nevertheless, on July 16, 2013, the district court granted summary judgment in favor of First Quality on both estoppel and laches.  A0001–A0021.

SCA appealed, and a Panel of this Court (the "Panel") heard oral argument on April 8, 2014.  On May 19, 2014, while the case was under submission, the Supreme Court issued its opinion in *Petrella*, holding that the equitable defense of laches cannot be invoked to preclude an award of damages for copyright infringement during the three-year look-back window of the copyright statute (17 U.S.C. § 507(b)[1]).  134 S. Ct. at 1967–68.  The Supreme Court held that "[t]o the

---

[1]     Section 507(b) of the copyright statute states:  "No civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued."  17 U.S.C. § 507(b).

extent that an infringement suit seeks relief solely for conduct occurring within the limitations period, however, courts are not at liberty to jettison Congress' judgment on the timeliness of suit." *Id*.

Like the Copyright Act, the Patent Act has a look-back window: "[N]o recovery shall be had for any infringement committed more than six years prior to the filing of the complaint . . . ." 35 U.S.C. § 286. Thus, SCA filed a letter of supplemental authority on May 27, 2014, arguing that the logic of *Petrella* applies equally to patent cases and *Petrella* compels reversal of *Aukerman*. ECF No. 51.

On September 17, 2004, the Panel issued its opinion, reversing the grant of summary judgment on equitable estoppel and finding, *inter alia*, a genuine issue of material fact as to whether First Quality had suffered economic prejudice. *SCA I*, 767 F.3d at 1350–51. The Panel declined, however, to address the viability of *Aukerman*, stating that only the Supreme Court or an en banc panel of this Court could do so. *Id*. at 1345.

Accordingly, on October 15, 2014, SCA filed a combined petition requesting rehearing en banc to review and overrule *Aukerman* and rehearing en banc or panel rehearing to address the conflict between the Panel's opinion and Federal Circuit precedent holding that summary judgment of laches is inappropriate when there is a dispute over the nexus between delay and economic prejudice. ECF No. 55. The Court invited a response to SCA's petition on October 21, 2014 (ECF No. 57), and

5

amicus briefs were filed by Medinol, Inc. and the Toro Company in support of SCA's petition (ECF Nos. 68, 71).

On December 30, 3014, the Court granted SCA's petition for rehearing en banc, vacating the Panel decision. *SCA II*, 2014 WL 7460970, at *1. The Court's order did not address the Panel's reversal of the district court's finding of summary judgment on equitable estoppel. *Id.*

## V.    STATEMENT OF THE FACTS

SCA is a worldwide leader in adult incontinence products. SCA inventors developed an innovative protective underwear design and patented the invention in U.S. Patent No. 6,375,646 ("the '646 patent"), which issued on April 23, 2002. A6816–A6826.

First Quality manufactures private label disposable products that emulate the products designed by the branded market leaders, such as SCA. *See, e.g.*, ███

████████████████████████████████████████

████████████████████████████. First Quality entered the disposable protective underwear market in 2001 and has since become a market leader for sales of private label protective underwear in the United States. ████

████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████

*Confidential Material Redacted*

████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████

In 2003, SCA and First Quality exchanged correspondence relating to the '646 Patent and First Quality's use of SCA's patented technology. A1156; A1158–A1160. First Quality took the position that SCA's patent was invalid in light of U.S. Patent No. 5,415,649 to Watanabe, *et al*. A1158–A1160. First Quality made no request for a further response from SCA. *Id.* According to First Quality, the matter "was never thought of again" after First Quality sent the letter. A1171:19–A1172:7 (deposition of Babak Damaghi, co-owner of First Quality).

Rather than file suit immediately, SCA sought guidance from the PTO and, on July 7, 2004, filed a request for reexamination of its own patent in light of the Watanabe patent. A1174–A1175. Reexamination files are open to inspection by the general public (37 C.F.R. § 1.11(c)–(d) (2004)), and the PTO notified the public of SCA's reexamination request on August 24, 2004. A1177. Both the Internet and the PTO Intranet can be accessed to determine whether a reexamination request has been filed for a particular patent.

The reexamination of SCA's patent in light of the Watanabe patent identified by First Quality took almost three years to complete, terminating on March 27, 2007, at which time the PTO confirmed all original claims and granted

new claims 29–38.  A1174–A1175.  SCA filed suit on August 2, 2010, two years

and four months after conclusion of the reexamination and six years and 11 months

after SCA's initial letter to First Quality.  *See* A0041 at ECF No. 1.  At the time of

summary judgment, SCA had infringement claims pending with respect to original

claims 1–11 and 15–25, as well as new claims 35–38.  *See* A0346, A0382, and

A0411.

While the district court granted First Quality's motion for summary

judgment as to both laches and equitable estoppel (A0001–A0021), the Panel

reversed the ruling on equitable estoppel.  *SCA I*, 767 F.3d at 1350.  The Panel

found it persuasive that "SCA almost immediately filed a request for ex parte

reexamination of the '646 patent to address the issues raised by First Quality—an

action that could reasonably be viewed as inconsistent with SCA's alleged

acquiescence."  *Id*.  Thus, "[a] reasonable juror could conclude that First Quality

raised an issue SCA had overlooked and that SCA, rather than acquiescing, took

immediate action."  *Id.*

## VI.   SUMMARY OF THE ARGUMENT

In light of *Petrella*, this Court should expressly overrule *Aukerman*.  The

Supreme Court stated that it has never "approved the application of laches to bar a

claim for damages brought within the time allowed by a federal statute of

limitations."  *Petrella*, 134 S. Ct. at 1974.  The Patent Act contains an express

limitation on the time within which a patentee must bring an infringement claim, and the legislative history demonstrates that § 286 is a statute of limitations, both in name and effect.

The Patent Act falls squarely within the rule of *Petrella*, and there is no principled distinction between the copyright and patent laws. Both statutes address infringement of intellectual property rights, which, by their nature, can occur repeatedly during the life of the grant. In both cases, Congress enacted a limitations period with a look-back period from the date of suit. There is no basis for maintaining a unique rule for patent cases that requires patentees to clear a second judicially-created timeliness hurdle before being granted access to the courthouse.

*Petrella* rejects both the logic of *Aukerman* and the specific arguments made in support of the decision. While *Aukerman* lauds the discretion of judges and calls the limitations period of § 286 "arbitrary," *Petrella* takes the opposite approach, setting out a clear rule limiting the judicial use of laches to circumstances in which Congress has not provided a statute of limitations.

The remaining arguments made in *Aukerman* were rejected in *Petrella*. *Aukerman* argues that the merger of law and equity created a new laches defense which could be interposed in actions at law for damages. The Supreme Court disagreed, holding in connection with the merger provision, Rule 8 of the Federal

Rules of Civil Procedure, that "[t]he expansive role for laches [defendant] envisions careens away from understandings, past and present, of the essentially gap-filling, not legislation-overriding, office of laches. Nothing in this Court's precedent suggests a doctrine of such sweep." *Petrella*, 134 S. Ct. at 1974.

Nor can refuge be found in the legislative history. The predecessor to § 286 was enacted for a specific purpose—to fill a gap caused by the failure of Congress to renew the 1870 statute of limitations when it compiled all federal law into the 1874 Revised Statutes. As a result of that legislative gap, courts applied varying state limitations periods. Congress acted to create uniformity, and, in both the 1897 legislation and 1952 revisions, the legislative history makes clear that the provision was considered to be a statute of limitations.

With respect to the en banc Court's second question, SCA respectfully disagrees with the premise of the question that there is no statute of limitations in patent law. The drafters of the predecessors to § 286 repeatedly referred to the limitations period in the patent law as a "statute of limitations." Moreover, the Supreme Court's reasoning does not turn on a question of labels or legal pigeonholes, but rather on one of policy, and, in particular, the appropriate division of power between the legislative and judicial branches. The pertinent question is whether, in the face of a Congressional enactment governing the damages period for a claim at law, the judicial branch may create a laches overlay which bars relief

even within the limitations period.  Such judicial encroachment on the legislature was expressly rejected by *Petrella*.

The rule of *Petrella* applies with equal force to patent cases, and *Lane & Bodley Co. v. Locke*, 150 U.S. 193 (1893) provides no support for maintaining the *Aukerman* regime.  The case was brought on the equity side of the court years before passage of the predecessor to § 286.  *See Locke v. Lane & Bodley Co.*, 35 F. 289, 294 (C.C.S.D. 1888), *rev'd sub nom. Lane & Bodley Co. v. Locke*, 150 U.S. 193 (1893).  The issue in the case was whether the plaintiff should be limited to his remedies on the law side of the court, not barred from seeking infringement damages.  *Id.* at 294.  Moreover, the defense asserted in *Lane & Bodley* was estoppel, not standalone laches.  *Id.*  *Petrella* approved the use of estoppel in actions at law, where laches may be one factor in the analysis, but stated unequivocally that laches alone is insufficient to support barring a damage claim. 134 S. Ct. at 1977–79.  *Petrella* and *Lane & Bodley* are easily reconcilable, and neither case supports the expansive use of laches approved in *Aukerman*.

On the other hand, laches remains a relevant factor in determining whether to grant or tailor injunctive relief.  *Petrella* did not purport to disturb the rule that laches may bar preliminary injunctive relief or, in some cases, permanent injunctive relief, depending on the equities.  The circumstances of each case are

different, and a court in equity has the ability to tailor injunctive relief to address any true prejudice from delay.

Even if the Court were to uphold the viability of the laches doctrine in some circumstances, the Court should overturn the district court's grant of summary judgment in this case. The district court credited the testimony of First Quality's witnesses, impermissibly refusing to give all reasonable inferences to SCA, and refused to consider the fact that SCA took its own patent into reexamination. In reviewing that decision under the abuse of discretion standard, the Panel concluded that estoppel applies, but laches does not. The *Aukerman* presumptions regime has not done equity here, but resulted in injustice.

## VII.  ARGUMENT

### A.  *Petrella* Bars Application Of Laches To Patent Damage Claims Brought Under 35 U.S.C. § 286

The specific question before the Supreme Court in *Petrella* was whether laches can be invoked to bar a damage claim brought within the three-year look-back period for copyright infringement claims in 17 U.S.C. § 507(b). The Supreme Court undertook a lengthy analysis of the history of the laches doctrine and the relationship between legal and equitable claims and stated that it had never "approved the application of laches to bar a claim for damages brought within the time allowed by a federal statute of limitations." *Petrella*, 134 S. Ct. at 1974. Congress, not the courts, is the arbiter of timeliness in actions at law, and courts

have no vestigial power to curtail a Congressionally-created look-back period:

"[t]o the extent that an infringement suit seeks relief solely for conduct occurring

with the limitations period, however, courts are not at liberty to jettison Congress'

judgment on the timeliness of suit." *Id*. at 1967.  Thus, the Supreme Court held

that laches "cannot be invoked to preclude adjudication of a claim for damages

brought within the three-year window." *Id*.

As the en banc Court noted in the first question, § 286 contains a "six-year

damages limitations period."  That provision provides that "no recovery shall be

had for any infringement committed more than six years prior to the filing of the

complaint." 35 U.S.C. § 286.  Because Congress has legislated a damages

limitations period for patent infringement suits, Congress' legislation governs, and

there is no room for a judicially-created overlay period.

There is a fundamental clash between *Petrella* and *Aukerman*.  *Aukerman*

lauds "the *discretionary* power" of judges while calling the Congressional six-year

bar of 35 U.S.C. § 286 "an *arbitrary* limitation." *Aukerman*, 960 F.2d at 1030

(emphasis in original).  *Petrella* takes the opposite view, holding that laches is a

gap filler to be used by courts only where Congress fails to provide a rule of

decision for evaluating timeliness. *Id.* at 1973–74.  *Aukerman* mirrors many of the

arguments made in the *Petrella* dissent, but the Supreme Court has now spoken,

13

and patent law must be brought into conformity with other areas of the law. *Aukerman* must be expressly overruled.

### 1. The Copyright Act And Patent Act Share A Common Purpose And Structure

While *Petrella* was decided under the Copyright Act, there is no relevant distinction between copyright and patent law. Both the Copyright and Patent Acts create causes of action for infringement of intellectual property rights, wrongs which can be continuing in nature and occur during a lengthy Congressionally-prescribed period. Under the separate accrual rule, "when a defendant commits successive violations, the statute of limitations runs separately from each violation"—here, each act of infringement. *Petrella*, 134 S. Ct. at 1969. As the Supreme Court noted, "[e]ach wrong gives rise to a discrete claim that accrue[s] at the time the wrong occurs." *Id.* (internal quotation marks omitted). When an accused infringer has committed infringing acts both prior to and within the look-back period, "the copyright holder's suit ordinarily will be timely under § 507(b) with respect to more recent acts of infringement (*i.e.*, acts within the three-year window), but untimely with respect to prior acts of the same or similar kind." *Id.* at 1970. Thus, the look-back provision in § 507(b) provides "retrospective relief running only three years back from the date the complaint was filed." *Id.*

The limitations period of § 286 has the same effect as the look-back provision in § 507(b). A claim for patent infringement, like a claim for copyright

infringement, accrues whenever an act of infringement occurs. The ability to sue for patent infringement is governed by a six-year look-back period which bars claims for damages arising outside the limitations period. Here, each new First Quality sale is a new act of infringement, just as the creation of each new copy of the motion picture *Raging Bull* was a new act of infringement in *Petrella*. 134 S. Ct. at 1969. The six-year limitation is measured against each new act of infringement, and "[o]ne counts backwards from the date of the complaint to limit pre-filing damages . . . ." *Aukerman*, 960 F.2d at 1030.

Congress could, of course, have created a different rule of decision by passing legislation barring all claims for relief if the initial act of infringement occurred more than six years prior to suit. In the alternative, Congress could have left it up to the courts to determine timeliness based on laches, as is the case in the Lanham Act, which lacks a statute of limitations. *See* 15 U.S.C. §§ 1051, *et seq*. In fact, Congress did neither. For both copyright and patent infringement, Congress enacted a look-back window.

The look-back window was first enacted in patent law and then later extended to copyright law. As the Supreme Court noted in surveying the patent law in 1895, the lack of any limitations period in the Patent Act had led to a split in the circuits in which some courts used analogous state statutes of limitations and others refused to recognize any limitations period. *Campbell v. City of Haverhill*,

155 U.S. 610, 613–14 (1895).  Congress enacted the predecessor to § 286, a six-year limitation on damages in actions relating to patent infringement, to eliminate that lack of uniformity.  H.R. REP. NO. 940, at 2 (1896) ("Under the decisions of the Supreme Court, the State statutes of limitation apply to actions for infringement of patents brought upon the law side of the court.  It seems to your committee desirable that there should be a uniform statute of limitations, and they therefore adopt the recommendation of the committee of the Bar Association.").

Sixty years later, Congress implemented the same solution for copyright law.  Before 1957, there was no federal limitations period for copyright infringement, and the federal courts used analogous state statutes of limitations to evaluate the timeliness of suit.  *Petrella*, 134 S. Ct. at 1968–69.  This created a lack of uniformity and uncertainty, and, in 1957, "Congress addressed the matter and filled the hole . . . [with] a three-year look-back limitations period . . . ."  *Id*.

Borne of the same problem and closely related in nature, there is no principled distinction between the limitations periods in the copyright and patent laws, both of which spring from the same concerns.  Just as laches in copyright cases is "entirely a judicial creation, one notably in tension with Congress' [provision of a three-year limitations period]," so too is laches in patent cases an entirely judicial creation in tension with Congress' provision of a six-year limitations period.  *See Petrella*, 134 S. Ct. at 1972) (alteration in original)

16

(internal quotation marks omitted).  There is no principled distinction between copyright and patent law.

> **2.** *Petrella* **Rejects The Crucial Arguments Made In** *Aukerman* **In Support Of The Application Of Laches To Patent Cases**

*Petrella* directly contradicts the reasoning in *Aukerman*.  The reasoning in *Aukerman* mirrors the *Petrella* dissent.  Examining the applicability of the laches doctrine to patent cases with a fresh eye and with the benefit of *Petrella* demonstrates that *Aukerman* must be overruled.

> **a.    The Merger Of Law And Equity Does Not Support The Application Of Laches To Legal Claims For Damages**

*Aukerman*'s discussion of the viability of the laches defense begins with the observation that "the Supreme Court has long recognized the defense of laches to a patent infringement action brought in equity."  960 F.2d at 1028 (citing, *inter alia*, *Lane & Bodley Co. v. Locke*, 150 U.S. 193 (1893)).  While true as far as it goes, the statement does not address the application of laches to bar damage claims at law.  To support that jump, the Court made the following assertion:  "Extended to suits at law as well, laches became 'part of the general body of rules governing relief in the federal court system.'"  *Id.* at 1029 (citing *Environmental Defense Fund v. Alexander*, 614 F.2d 474, 478 (5th Cir. 1980), *cert. denied*, 449 U.S. 919 (1980)).  This statement was taken from dicta in a Fifth Circuit case in which the relief sought was an injunction against the construction of a federal waterway.  *See*

*Environmental Defense Fund*, 614 F.2d at 477–78. All the Fifth Circuit meant was that laches could be used to bar injunctive relief in cases arising under federal statutes. *See id.* The citation does not support the assertion that laches is available to bar damage claims following the merger of law and equity.

As the Supreme Court noted, laches was developed by courts at equity, and "its principal application was, ***and remains***, to claims of an equitable cast for which the Legislature has provided no fixed time limitations." *Petrella*, 134 S. Ct. at 1973 (emphasis added)). That observation pertains to claims brought both before and after the merger of law and equity in 1938. In 1935, the Supreme Court held that "[l]aches within the term of the statute of limitations is no defense at law." *U.S. v. Mack*, 295 U.S. 480, 489 (1935). The merger of law and equity three years later did not suddenly create a slew of new equitable defenses to be used to defeat Congressional intent and statutes. Indeed, after 1938, the Supreme Court "cautioned against invoking laches to bar legal relief." *Petrella*, 134 S. Ct. at 1973 (citing *Holmberg v. Armbrecht*, 327 U.S. 392, 395 (1946)). As noted in *Holmberg* and cited by *Petrella*, the Supreme Court noted that "[i]f Congress explicitly puts a limit upon the time for enforcing a right which it created, there is an end of the matter. The Congressional statute of limitations is definitive." *Holmberg*, 327 U.S. at 395; *see Petrella*, 134 S. Ct. at 1973.

Almost 40 years later, when considering whether state statutes of limitations applied to federal common law actions by Native Americans to enforce property rights, the Supreme Court noted "that application of the equitable defense of laches in an action at law would be novel indeed." *Oneida County, N.Y. v. Oneida Indian Nation of New York State*, 470 U.S. 226, 245 n.16 (1985). The Supreme Court further reasoned that "as with the borrowing of state statutes of limitations, the application of laches would appear to be inconsistent with established federal policy." *Id.*

*Aukerman*'s reliance on the merger of law and equity is misplaced. The 1938 merger resulted in permitting claims for legal and equitable relief to be joined in one "civil action" (FED. R. CIV. P. 2), but did not change the substantive rights of parties. *Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 322 (1999) (discussing the merger of law and equity, and noting that "the merger did not alter substantive rights") (citing *Stainback v. Mo Hock Ke Lok Po*, 336 U.S. 368, 383 (1949) ("Notwithstanding the fusion of law and equity by the Rules of Civil Procedure, the substantive principles of Courts of Chancery remain unaffected")). Thus, while *Aukerman* reasoned that the reference to laches in the list of affirmative defenses in Rule 8 of the Federal Rules of Civil Procedure created a new defense of laches in actions at law (*Aukerman*, 960 F.2d at 1031), the Supreme Court held directly to the contrary in *Petrella*. In addressing Rule 8,

19

the Supreme Court stated:  "The expansive role for laches [defendant] envisions careens away from understandings, past and present, of the essentially gap-filling, not legislation-overriding, office of laches.  Nothing in this Court's precedent suggests a doctrine of such sweep."  *Petrella*, 134 S. Ct. at 1974.  Thus, the merger of law and equity cannot be used to buttress *Aukerman*.

### b.   The Legislative History Does Not Support The Application Of Laches To Legal Claims For Damages

*Aukerman* does not provide a detailed legislative history of § 286, and the briefing to the en banc Court which SCA has been able to locate did not provide a robust discussion on that issue either.  In fact, the legislative history is instructive and demonstrates that § 286 is a statute of limitations subject to the logic of *Petrella*.

### (1)   Legislative History Prior To The 1952 Act

When Congress passed the first Patent Act in 1790, it did not provide any limitation on the time for bringing an infringement suit.  1st Cong., 1 Stat. 109–12 (1790).  It was not until the Act of 1870 that Congress enacted a time limitation:  "all actions shall be brought during the term for which letters-patent shall be granted or extended, or within six years of the expiration thereof."  41st Cong., 16 Stat. 206 (1870).

In 1874, Congress codified all of the United States laws in force as of December 1, 1873, and issued a set of Revised Statutes.  *Campbell v. City of*

*Haverhill*, 155 U.S. 610, 613–614 (1895).  The statute of limitations in the Patent

Act was not carried forward into the Revised Statutes.  *See id.* (detailing the history

surrounding the federal statute of limitations for patent litigation prior to 1895).

As a result, the courts were left to themselves to determine when a claim for

patent infringement was timely.  A raging split developed, with some courts

borrowing state statutes of limitations and others refusing to apply any limitations

period.  In 1895, the Supreme Court described the situation as follows:

> The case, then, is reduced to the naked question whether
> the statute of limitations of the several states apply to
> actions at law for the infringement of patents.
>
> The question has arisen in a large number of cases, and
> the circuit courts have been nearly equally divided.  This
> is the first time, however, that it has been directly
> presented to this court.  It was most carefully considered
> by the circuit court of Massachusetts, holding in favor of
> the applicability of the statute, in *Hayden v. Oriental
> Mills*, 15 Fed. 605, and by the circuit court of
> Connecticut, in *Brickill v. City of Hartford*, 49 Fed.
> 372, against it.  In view of this conflict of opinion, which
> seems to be wholly irreconci[l]able, we shall dispose of it
> as an original question.

*Campbell v. City of Haverhill*, 155 U.S. 610, 613 (1895).

Notably, courts of the time did not believe that laches could be used to bar a

claim at law for infringement damages.  *Hayden* stated that courts of law had no

inherent power to refuse stale claims:  "This is an action at law, and if the statutes

in question do not apply, there is no limitation, unless it be that of Rhode Island of

1789, *for a court of common law has no discretion to refuse to entertain stale claims*." *Hayden v. Oriental Mills*, 15 F. 605, 605 (C.C.D.R.I. 1883) (emphasis added).

The Supreme Court sided with the *Hayden* court and determined that "the federal statute of limitation has no application to any infringement committed since June 22, 1874," and that the lower courts should borrow a statute of limitations from local state law. *Campbell*, 155 U.S. at 613–14. In deciding between no rule for evaluating timeliness and applying state law, the Supreme Court chose to apply state law.

The effect, however, was to create limitations periods for patent infringement that varied from state to state. Faced with a lack of uniformity, Congress acted promptly, enacting a federal statute of limitations two years later. 54th Cong., 29 Stat. 694 (1897). That provision, which is the precursor to § 286, stated in relevant part: "But in any suit or action brought for the infringement of any patent there shall be no recovery of profits or damages for any infringement committed more than six years before the filing of the bill of complaint or the issuing of the writ in such suit or action . . . ." *Id.*

The House Report regarding the 1897 legislation states:

> Section 6 provides a *statute of limitations* in patent cases. Under the decisions of the Supreme Court, the State statutes of limitation apply to actions for infringement of patents brought upon the law side of the

court.  It seems to your committee desirable that there
should be a uniform statute of limitations, and they
therefore adopt the recommendation of the committee of
the Bar Association.

It is believed, as before stated, that these amendments
will simplify and improve the patent law . . . .

H.R. REP. NO. 940, at 2 (1896) (emphasis added).  The drafters of this provision

intended to fill the hole caused by the failure to carry forward a statute of

limitations in the 1874 Revised Statutes.  Notably, this statute has the same

operative language as the current limitations provision, § 286, and was explicitly

referred to as a "statute of limitations."

In 1922, Congress passed amendments to several provisions of the patent

laws, including Section 4921.  67th Cong., 42 Stat. 392 (1922).  Congress did not

amend the limitations language in the 1897 Act, and in the margin of the bill, the

drafters identified this provision by the title "Time limit for action, etc."  *Id*.

In 1946, Congress again amended Section 4921, this time shortening the

provision to state "but recovery shall not be had for any infringement committed

more than six years prior to the filing of the complaint in the action."  79th Cong.,

60 Stat. 778 (1946).

### (2)    The 1952 Act

In 1952, Congress enacted the current form of § 286.  82nd Cong., 66 Stat.

813 (1952).  The House Report regarding this Act states:

23

Beginning with 281 is a group of sections relating to remedy for infringement of a patent, the suit in the courts. The present statutes on this matter are in confusion because they were written quite some time ago and court procedure and the names of actions and so on have changed since then. So the present sections were substantially reorganized into a group of sections fitting in at this place, with some changes.

Section 281 is a declaration which serves as a preamble to the others.

Section 282 introduces a declaration of the presumption of validity of a patent, which is now a statement made by courts in decisions, but has had no expression in the statute. The defenses to a suit for infringement are stated in general terms, changing the language in the present statute, but not materially changing the substance.

The next few sections relate to injunctions, damages, attorney fees, ***the statute of limitations***, and to marking and notice; all of which together replace present statutes on suits, with a good deal of reorganization in language to clarify the statement of the statutes.

Section 288 is the companion section to the disclaimer section 253.

H.R. REP. No. 82-1923, at 10 (1952) (emphasis added). The "next few sections"

refers to Sections 283 through 287, and mapping those Sections to the report

shows: "the next few sections relate to injunctions [Section 283], damages

[Section 284], attorney fees [Section 285], ***the statute of limitations*** [Section 286],

and to marking and notice [Section 287] . . . ." *Id.* (emphasis added). The same

language was repeated in the corresponding Senate Report. S. REP. NO. 82-1979, at 8–9 (1952).

It is plain from the legislative history that Congress intended § 286 to be a "statute of limitations" on the "remedy for infringement of a patent." *Id.* There is no suggestion that Congress intended to create a special rule for patent cases, *sub silentio*, granting the judiciary a discretionary power to bar claims within the limitations period.[2]

### c. The "Federico Commentary" Is Neither Legislative History Nor Supportive Of *Aukerman*

*Aukerman* relies heavily on a few words in a commentary prepared by P.J. Federico, *Commentary on the New Patent Act*, Title 35, UNITED STATES CODE ANNOTATED (West 1954), *reprinted in* 75 J. PAT. & TRADEMARK OFF. SOC'Y 161, 217 (1993) (hereinafter "Federico Commentary") as "confirm[ing] the intention to retain the defense of laches, specifically by 35 U.S.C. § 282 . . . ." *Aukerman*, 960 F.2d at 1029. But the Federico Commentary, which is not part of the legislative history, and is irrelevant under Supreme Court precedent, does not support an

---

[2]    That § 286 is, indeed, a statute of limitations is supported by the fact that other statutes of limitations use the same language as the provision in § 286. For example, subsection (c) of the Vessel Hull Design Protection Act states: "(c) **Statute of Limitations.** — No recovery under subsection (a) or (b) shall be had for any infringement committed more than 3 years before the date on which the complaint is filed." 17 U.S.C. § 1323(c). This tracks the language of § 286. The fact that § 286 does not have the magic words "statute of limitations" at the beginning of the section is of no moment.

inference that Congress intended to approve the use of laches *in actions at law for damages*.  In fact, there was nothing to retain because courts did not use laches to evaluate the timeliness of infringement claims for damages in 1952, let alone in 1897 when the limitations period was first enacted.  The untethered reference to § 282's role in retaining defenses such as laches is properly understood as applying only to claims in equity, such as for injunctive relief.

Moreover, the Federico Commentary is not legislative history at all and merely constitutes Mr. Federico's private views two years after the enactment of the statute.  As Mr. Federico stated himself:

> After the new patent act [this title] was approved the writer was called upon to address various patent groups for the purpose of acquainting them with the details of the new law . . . .  The present essay is a consolidation and revision of these various transcriptions, with some condensation and a certain amount of added material. . . . This paper should be considered only as a survey of the patent statute, with the main objective of pointing out the changes which have been made by the new act. . . . and it should be understood that the paper contains some opinions and views of the writer even though not always labeled as such.
>
> It must be emphasized that any views or opinions expressed are not necessarily the views of the office in which the writer is employed or of any of its officials.

Federico Commentary at 162–63.  Not only is such commentary insufficient to carry the weight of the laches defense, but the Federico Commentary is not legislative history in any sense.  Mr. Federico was not a legislator and "[p]ost-

enactment legislative history (a contradiction in terms) is not a legitimate tool of statutory interpretation." *Bruesewitz v. Wyeth LLC*, 131 S. Ct. 1068, 1081 (2011). The post-enactment personal commentary of Mr. Federico is entitled to no weight.

### d.    Section 282 Strongly Supports Refusing To Apply Laches To Patent Damages Actions

In fact, § 282 rebuts the argument that laches is an available defense to patent infringement damage claims.  The statute explicitly enumerates the defenses to patent infringement, namely:  non-infringement, invalidity, and unenforceability.  35 U.S.C. § 282.  The doctrine of laches is not a listed defense and, by *expressio unius est exclusio alterius*, cannot be read into the statute.  *Cf. Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 168 (2003) ("As we have held repeatedly, the canon *expressio unius est exclusio alterius* does not apply to every statutory listing or grouping; it has force only when the items expressed are members of an 'associated group or series,' justifying the inference that items not mentioned were excluded by deliberate choice, not inadvertence.") (citing *United States v. Vonn,* 535 U.S. 55, 65 (2002)).

*Aukerman* reasoned that the Federico Commentary showed a Congressional intent to include the defense of laches in § 282 (960 F.2d at 1029); however, the Supreme Court has never approved that analysis, and the canons of statutory construction compel a different finding.  *See Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 517 (1992) ("Congress' enactment of a provision defining the pre-

emptive reach of a statute implies that matters beyond that reach are not pre-empted.").  The text of § 282 is unambiguous, and "the authoritative statement is the statutory text, not the legislative history or any other extrinsic material. Extrinsic materials have a role in statutory interpretation only to the extent they shed a reliable light on the enacting of the Legislature's understanding of otherwise ambiguous terms."  *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 568 (2005).  Laches is not an enumerated defense, and Congress knows how to include laches as a defense to infringement claims when it intends to do so.  *See, e.g.*, 15 U.S.C. § 1115(b)(9) (listing defenses to the Lanham Act, stating "equitable principles, including ***laches***, estoppel, and acquiescence, are applicable") (emphasis added); *see also Petrella*, 134 S. Ct. at 1974 n.15 (noting "the Lanham Act . . . expressly provides for defensive use of 'equitable principles, including laches'").  There is no support in the text of the patent laws for employing laches to bar damage claims in relation to infringement occurring within the prescribed six-year limitations period.

### e.    Prior Circuit Court Practice Does Not Support The Application Of Laches To Legal Claims For Damages

The Supreme Court scoured its laches jurisprudence in *Petrella* and declared that it had never approved the use of laches to bar a legal claim for damages where Congress had enacted a statute of limitations.  134 S. Ct. at 1974.  *Aukerman* cites no examples to the contrary and instead tries to support is position by reference to

28

circuit court cases and practice prior to the 1952 Act, stating that the application of laches to patent infringement claims was "well established" in 1952.  960 F.2d at 1029.

First, *Aukerman* cites two circuit court cases in support of the general proposition that laches is available in actions at law:  *Cornetta v. United States*, 851 F.2d 1372 (Fed. Cir. 1988) (in banc) and *Reconstruction Finance Corp. v. Harrisons & Crosfield Ltd.*, 204 F.2d 366 (2d Cir. 1953), *cert denied*, 346 U.S. 854 (1953).  *Aukerman*, 960 F.2d at 1030.  In *Cornetta*, the Federal Circuit reversed a grant of summary judgment on laches.  851 F.2d at 1383.  The Court cautioned against "intruding on [the] legislative judgment" of Congress through the application of laches, noting that it "is not the role of the judiciary" to use laches to create a "*de facto* statute of limitations, superceding the six-year one mandated by Congress."  *Id.* at 1381.  The Court's citation to itself four years later in *Aukerman* is obviously unavailing in light of *Petrella*.  In *Reconstruction Finance*, the Second Circuit evaluated the availability of equitable relief while sitting in equity to determine the propriety of a permanent injunction under the federal Arbitration Act, not as a defense to a damage claim.  204 F.2d at 367, 369.  Neither case supports the proposition that the use of laches to bar damage claims at law was commonplace.

With respect to patent cases, the Federal Circuit stated that the use of laches was well established at the time of the enactment of the 1952 Patent Act. *Aukerman*, 960 F.2d at 1029. That is certainly the case with respect to equitable claims, but not with respect to damage claims at law. As noted above, at the time of *Campbell* in 1895, courts did not believe that they had the power to apply laches to bar legal claims for infringement damages. *See Campbell*, 15 U.S. at 613–14; *Hayden*, 15 F. at 605.

The cases cited in footnote 6 of *Aukerman* do not support the proposition that laches was regularly applied in actions at law. Five of the cited cases were suits in equity, not damage claims at law. *Gillons v. Shell Co. of Cal.*, 86 F.2d 600, 609 (9th Cir. 1936) ("There is a defence peculiar to courts of equity founded on lapse of time and the staleness of the claim, where no statute of limitations directly governs the case.") (quoting *Wagner v. Baird*, 48 U.S. 234, 255 (1849)); *Westco-Chippewa Pump Co. v. Delaware Electric & Supply Co.*, 64 F.2d 185 (3d Cir. 1933) (patentee brought suit in equity) (*see Westco-Chippewa Pump Co. v. Del. Elec. & Supply Co.*, 57 F.2d 559, 564 (D. Del. 1931) ("The plaintiff has come into a ***court of equity*** for relief.") (emphasis added)); *Dwight & Lloyd Sintering Co., Inc. v. Greenawalt*, 27 F.2d 823, 825 (2d Cir. 1928) (suit in equity) (*see Dwight & Lloyd Sintering Co. v. Greenawalt*, 20 F.2d 533 (S.D.N.Y. 1927)); *George J. Meyer Mfg. Co. v. Miller Mfg. Co.*, 24 F.2d 505, 505 (7th Cir. 1928) (noting that

the patentee brought the "suit to enjoin infringement" of his patent but the "court

dismissed the bill for want of equity"); *Wilkie v. Manhattan Rubber Mfg. Co.*, 14

F.2d 811 (3d Cir. 1926) (suit in equity).

Two other cases cited in footnote 6 of *Aukerman* involved equitable claims

interposed in actions at law under Judicial Code § 274b (63d Cong., 39 Stat. 956

(1915)) (repealed June 25, 1948, in favor of FED. R. CIV. P. 2). *See Banker v. Ford

Motor Co.*, 69 F.2d 665, 666 (3d Cir. 1934); *Ford v. Huff*, 296 F. 652, 658 (5th Cir.

1924). This provision was enacted in 1919 as an early step in the merger of federal

law and equity to allow equitable claims to be asserted in actions at law, but it did

not create new substantive rights. *Enelow v. New York Life Ins. Co.*, 293 U.S. 379

(1935), *overruled on other grounds by Gulfstream Aerospace Corp. v. Mayacamas

Corp.*, 485 U.S. 271 (1988) ("When the Congress enacted section 274b . . . the

procedure was simplified, but the substance of the authorized intervention of

equity was not altered."). In 1948, § 274b was repealed as obsolete in light of Rule

2 of the Federal Rules of Civil Procedure, which created a single civil action and

formally merged the procedure for law and equity. *See* WRIGHT & MILLER, 4 FED.

PRAC. & PROC. CIV. § 1041, n.6 (3d ed.) (noting that "38 Stat. 956, repealed by Act

of June 25, 1948, c. 646, § 39, 62 Stat. 992, as being unnecessary because of the

adoption of the federal rules"). In *Petrella*, the Supreme Court specifically

addressed Rule 2 and held that it was procedural in nature and did not authorize the

use of laches in actions for damages where Congress has set as statute of limitations.  134 S. Ct. at 1974.  Cases decided under § 274b are inapposite.[3]

In short, despite the assertion in *Aukerman* to the contrary, there was no widespread, historical practice to employ laches to bar infringement damage claims at the time of the 1952 Patent Act.

### B.    Laches Cannot Be Used To Bar An Entire Infringement Suit For Damages, But May Be Used To Limit Injunctive Relief

SCA disagrees with the premise of the second question propounded by the en banc Court—that patent law contains no statute of limitations.  The legislative history of § 286 discloses that the drafters of the predecessor provisions did, in fact, refer to the provision as a "statute of limitations" and that it was enacted to create certainty and a uniform federal limitations period.  H.R. REP. NO. 940, at 2 (1896).  There is no basis for barring infringement claims for damages based on laches.

---

[3]    *Ford* is inapposite for the additional reason that it was not a patent infringement suit, but a contract dispute over royalties.  296 F.652 at 654.  And *Banker* is hardly sufficient to establish the existence of a widespread practice in the circuit courts.  Scarcely a month after the decision, the Third Circuit examined *Banker* again in *Enelow*, which eventually made its way to the Supreme Court. The Third Circuit held that § 274b did not create new substantive rights: "[t]he act does not, however, affect or change the substantive law, but is directed wholly to procedural methods."  *Enelow v. New York Life Ins. Co.*, 70 F.2d 728 (3d Cir. 1934), *rev'd on other grounds*, 293 U.S. 379, 382 (1935), *overruled on other grounds by Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271 (1988).

That does not mean the end of the doctrine of laches in patent cases. Laches may still be applied to limit the scope of injunctive relief when equity so requires.

### 1.    Laches Is Inapplicable To Damages Actions

There is no Supreme Court precedent supporting the proposition that there is a special role for laches in patent cases. The Supreme Court noted that it has "not had occasion to review the Federal Circuit's position" that "laches can bar damages incurred prior to the commencement of suit," let alone that it can bar an entire infringement suit. *Petrella*, 134 S. Ct. at 1974, n.15. The logic of *Petrella* compels a finding that laches is not a defense to a damage claim at law.

The en banc Court asked whether *Lane & Bodley Co. v. Locke*, 150 U.S. 193 (1893) supports *Aukerman*. *SCA II*, 2014 WL 7460970, at *1. It does not.

The procedural history and facts of the case are instructive. The plaintiff, Locke, was employed as a designing engineering and draughtsman by the firm of Lane & Bodley and patented a device for improving hydraulic elevators or lifts. *Lane & Bodley*, 150 U.S. at 197. He discussed a potential agreement with his employer to pay him for use of the invention, but no agreement was reached. *Id.* at 198. He then continued for many years to work for the employer designing and building devices under the patent. *Id.* at 200–01. Some years after leaving the employ of the company, he sued the successor firm for patent infringement. *Id.* As indicated in the lower court decision, Locke filed a bill in equity averring patent

infringement and seeking injunctive relief. *See Locke v. Lane & Bodley Co*, 35 F. 289, 294 (C.C.S.D. Ohio 1888) *rev'd sub nom., Lane & Bodley Co. v. Locke*, 150 U.S. 193 (1893). The defendant asserted the defense of shop rights and related defenses, claiming that since Locke had been an employee of its predecessor that, under law, agreement or custom, the firm actually owned the invention. *Id.* at 293–94. The lower court described the dispute as follows:

> But it is said that the complainant's suit must fail, ***and the complainant be remitted to whatever rights he may have at law, by reason of his laches in pursuing his equitable remedy***, ***the estoppel by conduct constituting a waiver of his equitable rights***. These propositions are based upon evidence tending to prove that, although complainant knew that the defendant was making, using, and selling his improvement, he made no objection, set up no claim, made no demand for royalties, but was silent and acquiesced until 1884.

*Id.* at 294. (emphasis added).

The asserted defense of estoppel by conduct was brought in equity, not at law, and most importantly, no one involved in the case believed that the equitable defense could function to bar both equitable and legal remedies. *See id.* Rather, the defendant requested "the complainant be remitted to whatever rights he may have ***at law*** . . . ." *Id.* (emphasis added). Thus, *Lane & Bodley* demonstrates that the distinction between law and equity was well understood at the time and that laches was an equitable doctrine.

34

Moreover, the reference to "laches" in the case cannot be separated from the context in which it is being used, namely, as an element in analyzing the estoppel defense, not as a standalone defense. *Locke*, 35 F. at 294; *see also Lane & Bodley*, 150 U.S. at 200–01. The *Petrella* court recognized that laches is a factor to be considered in analyzing estoppel, but is not the *sine qua non* of estoppel:

> The test for estoppel is more exacting than the test for laches, and the two defenses are differently oriented. The gravamen of estoppel, a defense long recognized as available in actions at law, see *Wehrman* v. *Conklin*, 155 U. S. 314, 327 (1894), is misleading and consequent loss, see 6 Patry §20:58, at 20–110 to 20–112. Delay may be involved, but is not an element of the defense. For laches, timeliness is the essential element. In contrast to laches, urged by MGM entirely to override the statute of limitations Congress prescribed, estoppel does not undermine Congress' prescription, for it rests on misleading, whether engaged in early on, or later in time.

*Petrella*, 134 S. Ct. at 1977 (parallel citations omitted).

*Aukerman* held that laches alone can suffice to bar a claim during the limitations period even when the other elements of estoppel have not been met. 960 F.2d at 1040–41. That position is directly contrary to *Petrella* and finds no support in *Lane & Bodley* or other Supreme Court precedent.

## 2. Laches Has A Continuing Role In Equitable Relief

The en banc Court also asked the parties to address whether laches can be used to bar equitable relief. The answer is a qualified yes.

The Supreme Court has held that the general rules applicable to injunctions apply with equal force in patent law. *See eBay Inc. v. MercExchange, L.L.C.*, 126 S. Ct. 1837, 1839–40 (2006). Because the effect of delay is not an issue of unique import to patent law, equitable doctrines which would preclude the imposition of injunctive relief in other contexts are also pertinent to the issuance of injunctive relief in the area of patent law.

In particular, with respect to preliminary injunctions, it has long been the rule that the failure to promptly bring a motion for preliminary injunction can result in denial of the motion under the doctrine of laches. *See, e.g.*, *Apple, Inc. v. Samsung Electronics Co.*, 678 F.3d 1314, 1321 (Fed. Cir. 2012); *Smith v. City of Chicago*, 769 F.2d 408, 410, 414 (7th Cir. 1985); *Citizens & Landowners Against the Miles City/New Underwood Powerline v. Sec'y, U.S. Dep't of Energy*, 683 F.2d 1171, 1175 (8th Cir. 1982).

With respect to permanent injunctive relief, *Petrella* indicates that laches may be relevant to the equitable analysis in the right circumstances. *Petrella*, 134 S. Ct. at 1977–78. The Supreme Court gives the example of the improper use of architectural drawings for the construction of a building. *Id.* While equitable relief might be available to remedy such a wrong, laches might intervene to bar the harsh result of destruction of the building. *Id.* Fashioning equitable relief is inherently an issue of judicial discretion, and a court sitting in equity can consider, when

relevant, whether the plaintiff's delay counsels against a particular form of equitable relief.

### 3. Even If Laches Has Continued Viability In Infringement Suits, The Facts Here Do Not Warrant The Grant Of Summary Judgment Of Laches

Even if the en banc Court were to find that, in some extraordinary circumstances, laches can apply to bar a claim for patent infringement in its entirety, the case here does not present such extraordinary circumstances. The district court and Panel took the rare step of approving summary judgment of laches without trial and without any opportunity for the district court to evaluate the credibility of witnesses or the equities. SCA's conduct, whether tardy or not, is simply not deserving of the legal death penalty.

SCA acted reasonably and took prudent steps based on the situation presented. Indeed, as noted by this Court, after First Quality challenged the validity of the '646 patent, "SCA almost immediately filed a request for ex parte reexamination of the '646 patent to address the issues raised by First Quality—an action that could reasonably be viewed as inconsistent with SCA's alleged acquiescence." *SCA I*, 767 F.3d at 1350. Thus, "[a] reasonable juror could conclude that First Quality raised an issue SCA had overlooked and that SCA, rather than acquiescing, took immediate action." *Id.* As such, the Panel found that there was insufficient evidence to support the district court's finding of summary

37

judgment on the issue of equitable estoppel. This is not a case where the facts would support the application of an equitable doctrine to bar the entire suit for patent infringement.

Moreover, even under the *Aukerman* standard, where there is disputed evidence with respect to economic prejudice, summary judgment is inappropriate. Under *Aukerman*, the grant of summary judgment on equitable defenses such as laches and equitable estoppel will be reversed if the judgment is based on an erroneous interpretation of the law or rests on clearly erroneous factual underpinnings. *Aukerman*, 960 F.2d at 1039. Accordingly, reversal is appropriate if the district court applied the law incorrectly, made erroneous determinations regarding the underlying facts, or if the district court's decision represents an unreasonable judgment in weighing relevant factors. *Id*. And, the district court was required to view all of the evidence in the light most favorable to SCA, as the non-moving party, and draw all reasonable inferences in favor of SCA. *Wanless v. Fedders Corp.*, 145 F.3d 1461, 1463 (Fed. Cir. 1998) (citing *SRI Int'l v. Matsushita Elec. Corp.*, 775 F.2d 1107, 1116 (Fed. Cir. 1985) (in banc)).

Here, the district court refused to consider SCA's good faith in taking the patent into reexamination, erroneously taking the view that the reexamination was irrelevant since SCA had not provided formal notice to First Quality. There is no notice requirement in the law with respect to reexaminations, and there are strong

policy reasons why notice should not be required.  It is the height of

reasonableness to put one's own patent into reexamination following a charge of

invalidity, and a patentee who files for voluntary reexamination should be lauded

not punished.  Moreover, once reexamination begins, both the future existence and

ultimate scope of the patent are in doubt, and, on the facts of this case, there was

strong evidence that notice would have made no difference.

    The district court also abused its discretion in failing to give every

reasonable inference to SCA in evaluating the question of economic prejudice, a

requirement both for laches and equitable estoppel.  The parties presented two

starkly different views of the world:  (1) SCA contended that First Quality was

intent on becoming the dominant force in private label adult incontinence products

and expanded its business to capture a huge market opportunity; and (2) First

Quality said that, had it known of SCA's claim, First Quality would not have

expanded its business at all.  In patent law, as in other areas of the law, such

questions of motivation cannot be decided on summary judgment.  The district

court was required to give SCA all reasonable factual inferences and failed to do

so, instead relying on the self-serving testimony of First Quality's in-house lawyer

and ignoring SCA's evidence that First Quality was simply maximizing its

business opportunities.  There was a genuine issue of material fact for trial as to

economic prejudice, and the district court abused its discretion in granting summary judgment.[4]

SCA incorporates the briefing provided in connection with the appeal before the Panel and respectfully suggests that even under the *Aukerman* standard, this is simply not an appropriate case for granting summary judgment of laches.

## VIII.  CONCLUSION

For the foregoing reasons, SCA respectfully requests that the Court overrule *Aukerman*, reverse the district court's finding of summary judgment of laches and issue a mandate adopting the Panel's opinion reversing the district court with respect to its grant of summary judgment on equitable estoppel.

Respectfully submitted,

Date: February 27, 2015

*/s/ Martin J. Black*
Martin J. Black
Kevin M. Flannery
Teri-Lynn A. Evans
Sharon K. Gagliardi
DECHERT LLP
2929 Arch Street
Philadelphia, PA 19104
(215) 994-4000

*Attorneys for Plaintiffs-Appellants*,
*SCA Hygiene Products Aktiebolag and*
*SCA Personal Care, Inc.*

---

[4]    The detailed argument on this point can be found at pages 29 to 43 of SCA's opening brief before the Panel and pages 8 to 14 of the reply brief.

# ADDENDUM

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION

CIVIL ACTION NO. 1:10CV-00122-JHM

SCA HYGIENE PRODUCTS AKTIEBOLAG and
SCA PERSONAL CARE, INC.                                          PLAINTIFFS

v.

FIRST QUALITY BABY PRODUCTS, LLC,
FIRST QUALITY HYGIENIC, INC.,
FIRST QUALITY PRODUCTS, INC., and
FIRST QUALITY RETAIL SERVICES, LLC                              DEFENDANTS

MEMORANDUM OPINION AND ORDER

This matter is before the Court on a motion by Defendants First Quality Baby Products, LLC,

First Quality Hygienic, Inc., First Quality Products, Inc., and First Quality Retail Services, LLC

(collectively "First Quality") for summary judgment based on the doctrines of laches and equitable

estoppel [DN 82, DN 83] and on a motion by First Quality for a hearing on this motion for summary

judgment [DN 84]. Fully briefed, these matters are ripe for decision.

I. BACKGROUND

Plaintiffs SCA Hygiene Products Aktiebolag and SCA Personal Care, Inc. (collectively

"SCA") assert that some of First Quality's pants-type disposable diapers infringe the asserted claims

of U.S. Patent No. 6,375,646 and its accompanying Reexamination Certificate (collectively "the '646

Patent"). The invention described in the '646 Patent was developed by engineers at SCA's Swedish

research laboratories and relates to a pants-type disposable diaper for use by both potty-training

children and adults with incontinence issues. The inventors filed an initial patent application in

Sweden on March 4, 1992, and the '646 Patent issued in the United States on April 23, 2002, with

claims 1-28. Claims 29-38 were added during a reexamination which concluded on March 27, 2007.

Claims 1 and 15 are independent claims and the remainder of the claims depend from either claim

1 or 15.

On October 31, 2003, counsel for SCA wrote a notice letter to Mr. Kambiz Damaghi, President of First Quality Enterprises, Inc. The letter provided that SCA was the owner of the patent rights of the '646 Patent, "which related to absorbent pants-type diapers . . . ." (October 31, 2003, Letter, DN 83-8, DN 95-3.) The letter identified the First Quality Prevail All Nites absorbent pants-type diapers as infringing the '646 Patent. Specifically, the letter provided:

> It has come to our attention that you are making, selling and/or offering for sale in the United States absorbent pants-type diapers under the name Prevail All Nites. We believe that these products infringe claims of the patent listed above.
>
> We suggest that you study U.S. Patent No. 6,375,646 B1. If you are of the opinion that the First Quality Prevail All Nites absorbent pants-type diaper does not infringe any of the claims of this patent, please provide us with an explanation as to why you believe the products do not infringe. If you believe that the products do infringe, please provide us with your assurance that you will immediately stop making and selling such products.
>
> Please provide us with your response before **November 21, 2003**.

(Id. at 1.)

First Quality investigated the allegation and promptly responded to SCA's letter. On November 21, 2003, counsel for First Quality responded indicating that the '646 Patent was invalid in view of what the parties refer to as the Watanbe patent ("the '649 Patent"). Specifically, the letter provided:

> As you suggested, we studied U.S. Patent No. 6,375,646 B1 (the '646 Patent"), which we understand is owned by your client SCA Hygiene Products AB. In addition, we made a cursory review of prior patents and located U.S. Patent No. 5,415,649, ("the '649 Patent"), which was filed in the United States on October 29, 1991 and is therefore prior to your client's '646 Patent. A review of Figs. 3 and 4 of the prior '649 Patent reveals the same diaper construction claimed by the '646 Patent. Thus, the prior '649 Patent invalidates your client's '646 Patent. As you know, an invalid patent cannot be infringed.

(November 21, 2003 Letter, DN 95-4.) First Quality further provided that all future correspondence

2

to First Quality should be directed to First Quality's counsel. (Id.) First Quality heard nothing further from SCA regarding the '646 Patent.

Five months later, on April 27, 2004, SCA sent another letter to First Quality asserting that a different First Quality Product infringed a different SCA Patent, U.S. Pat. No. 6,726,670 ("the '670 Patent"). SCA's April 2004 letter did not mention its earlier assertion of the '646 Patent. (April 24, 2004, Letter, DN 83-10.) On May 24, 2004, First Quality responded to SCA's April 27, 2004 letter, explaining that it did not infringe the '670 Patent. First Quality also referred to the 2003 correspondence relating to the '646 Patent. (See May 24, 2004 Letter, DN 83-11.)("As we previously advised you in our letter of November 21, 2003, we also represent First Quality Enterprises, Inc. and, in the future, correspondence from you to [First Quality] should be directed to the undersigned."). On July 6, 2004, SCA replied to First Quality's May 24, 2004, letter disagreeing with First Quality regarding the '670 Patent, but saying nothing about First Quality's position on the '646 Patent. (July 6, 2004, Letter, DN 83-12.) On July 20, 2004, First Quality replied to SCA's July 6, 2004, letter. (July 20, 2004, Letter, DN 83-13.) First Quality received no further correspondence from SCA regarding the '646 patent.

On July 7, 2004, SCA initiated an *ex parte* reexamination proceeding in the U.S. Patent Office for the '646 Patent over the Watanabe patent. The reexamination proceeding lasted for over three years. On March 27, 2007, the Patent Office issued a reexamination certificate that confirmed the validity of all claims of the '646 Patent and added a number of new dependent claims. It is undisputed that SCA did not notify First Quality as to the existence of the reexamination proceeding, nor did SCA ever advise First Quality that SCA intended to file suit against First Quality once the reexamination was complete.

SCA filed this case on August 2, 2010, alleging that some of First Quality's pants-type

3

Case 13-1564   Document 84   Page: 54   Filed: 02/27/2015

disposable diapers infringe the asserted claims of U.S. Patent No. 6,375,646 and its accompanying Reexamination Certificate (collectively "the '646 Patent"). First Quality filed a counterclaim against SCA alleging claims of noninfringement and patent invalidity. The parties identified six claim construction issues contained in the '646 Patent in claims 1-11, 15-25, 29-33, and 35-38. On December 29, 2011, the Court conducted a hearing pursuant to Markman v. Westview Instruments, Inc., 517 U.S. 370 (1996). On February 10, 2012, the Court issued a Claims Construction Memorandum Opinion and Order determining the construction of the disputed claims.

First Quality has now filed a motion for summary judgment based on the doctrines of laches and equitable estoppel and a motion for partial summary judgment of non-infringement for all asserted claims, along with two related motions to exclude portions of expert testimony and reports. [DN 82, DN 83, DN 98, DN 96, DN 97]. SCA also filed a motion to exclude First Quality's expert on the issue of infringement. [DN 100]. This Opinion addresses only the motion for summary judgment based on the doctrine of laches and equitable estoppel.

## II. STANDARD OF REVIEW

In order to grant a motion for summary judgment, the Court must find that the pleadings, together with the depositions, interrogatories, and affidavits, establish that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The moving party bears the initial burden of specifying the basis for its motion and of identifying that portion of the record which demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 247-48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving

4

party, the non-moving party is required to do more than simply show that there is some "metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Co., 475 U.S. 574, 586 (1986). Rule 56 requires the non-moving party to present "*specific facts* showing there is a *genuine* issue for trial." Fed. R. Civ. P. 56(e) (emphasis added). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson, 477 U.S. at 252.

### III. DISCUSSION

First Quality moves for summary judgment arguing that SCA's infringement claims are barred by the doctrines of laches and equitable estoppel.

### A. Laches

"The Supreme Court has long recognized the defense of laches to a patent infringement action brought in equity." A.C. Aukerman Co. v. R. L. Chaides Constr. Co., 960 F.2d 1020, 1028 (Fed. Cir. 1992)(citing Lane & Bodley Co. v. Locke, 150 U.S. 193 (1893)). Laches is "defined as the neglect or delay in bringing suit to remedy an alleged wrong, which taken together with lapse of time and other circumstances, causes prejudice to the adverse party and operates as an equitable bar." Id. at 1028-1029. In determining the applicability of the laches defense, the Federal Circuit has directed district courts to consider whether "(a) the patentee's delay in bringing suit was unreasonable and inexcusable," and whether "(b) the alleged infringer suffered material prejudice attributable to the delay." Id. at1028 (Fed. Cir. 1992); FMC Corp. v. Guthery, 2009 WL 1033663, *3 (D. N.J. April 17, 2009). If these factors are proven, "laches bars the recovery of patent damages for any time period before the suit was filed." Lautzenhiser Technologies, LLC v. Sunrise Medical HHG, Inc., 752 F. Supp. 2d 988, 999 (S.D. Ind. 2010)(quoting A.C. Aukerman Co., 960 F.2d at 1028).

5

Furthermore, "'a delay of more than six years after the omitted inventor knew or should have known of the issuance of the patent will produce a rebuttable presumption of laches.'" FMC Corp., 2009 WL 1033663, *3(quoting Advanced Cardiovascular Sys., Inc. v. SciMed Life Sys., Inc., 988 F.2d 1157, 1163 (Fed. Cir.1993)). "The presumption requires the district court to infer unreasonable delay and resulting prejudice." Id. This presumption can be rebutted if the patentee "raises a genuine factual issue that the delay was reasonable or excusable or offers evidence 'sufficient to place the matters of [evidentiary] prejudice and economic prejudice genuinely in issue.'" Id. (quoting Serdaveric v. Advanced Med. Optics, Inc., 532 F.3d 1352, 1359 (Fed. Cir. 2008). "If the presumption is overcome, the adverse party must affirmatively prove both elements of laches by a preponderance of the evidence." Id. (quoting Church & Dwight Co., Inc. v. Abbott Lab., 2008 WL 5416383, *5 (D.N.J. Dec.23, 2008)). For purposes of laches, "the clock starts to run at 'the time the plaintiff *knew or reasonably should have known* of its claim against the defendant.'" Lautzenhiser Technologies, 752 F. Supp. 2d at 999 (quoting A.C. Aukerman Co., 960 F.2d at 1032).

### 1. Applicability of the Presumption

The record reflects that SCA knew or should have known of its claims against First Quality no later than October 31, 2003, the date it sent the letter to First Quality regarding the '646 patent infringement claim. Because the delay in bringing the patent infringement action exceeded six years, First Quality is entitled to the benefit of the presumption of unreasonable delay and prejudice. Thus, SCA "must come forward with evidence sufficient to put the existence of these presumed undisputed facts into genuine dispute, either by showing that the delay was reasonable or that the movant did not suffer prejudice caused by the wait." Lautzenhiser, 752 F. Supp. 2d at 1001 (citing Aukerman, 960 F.2d at 1038). If SCA fails to come forward with "*either* affirmative evidence of a lack of prejudice *or* a legally cognizable excuse for its delay in filing suit," then First Quality will

6

prevail. Hall v. Aqua Queen Mfg., Inc., 93 F.3d 1548, 1554 (Fed. Cir. 1996) (recognizing that plaintiff must do more than attack defendant's evidence regarding unreasonableness and prejudice, because "the defendants could have remained *utterly mute* on the issue[s] . . . and nonetheless prevailed."); Lautzenhiser, 752 F. Supp. 2d at 1001(citing ABB Robotics, Inc. v. GMFanuc Robotics Corp., 828 F. Supp. 1386, 1392 (E.D. Wis. 1993)(defendant must put forward "evidence sufficient to support a finding of the nonexistence of the presumed fact.")).

### 2. Unreasonableness of Delay

"A court must consider and weigh any justification offered by the plaintiff for its delay." Aukerman, 960 F.2d at 1033. Excuses that have been recognized in certain instances include: "other litigation; negotiations with the accused defendant; possibly poverty and illness in limited circumstances; wartime conditions; extent of infringement; and dispute over ownership of the patent." FMC Corp., 2009 WL 1033663, *4 (citing A.C. Aukerman Co., 960 F.2d at 1033).

SCA contends that it has come forward with evidence to show a genuine factual dispute on the reasonableness of any alleged delay. Specifically, SCA maintains that its pursuit of the reexamination of the '646 patent is a reasonable excuse for any delay through 2007. SCA also contends that it was not required to provide notice of the reexamination or notice that it intended to enforce its patent upon completion of the proceeding. Further, SCA argues that the three year delay after the reexamination was reasonable because SCA was confidentially and deliberately investigating its infringement claim, including the selection of counsel. However, the Court finds none of these explanations provide "a cognizable justification for the delay sufficient to rebut the presumption of laches." FMC Corp., 2009 WL 1033633, *4.

First, SCA's involvement in the reexamination of the '646 patent does not provide it with a sufficient excuse because SCA failed to provide notice to First Quality that it intended to litigate

7

its rights under the '646 Patent at the conclusion of the reexamination. FMC Corp., 2009 WL 1033663, *4. See also Hall, 93 F.3d at 1554 (finding no abuse of discretion in district court's conclusion that notice of an intent to sue after litigation was required under the facts of that case); Vaupel Textilmaschinen KG v. Meccanica Euro Italia SPA, 944 F.2d 870, 877 (Fed. Cir.1991) (holding that notice to the alleged infringer is the key to finding excusable delay and that "[f]or other litigation to excuse a delay in bringing suit, there must be adequate notice of the proceedings to the accused infringer. The notice must also inform the alleged infringer of the patentee's intention to enforce its patent upon completion of that proceeding." (internal citations omitted)).

SCA contends that such notice was unnecessary, relying on the Federal Circuit's statement in Aukerman that "there can be no rigid requirement in judging a laches defense that such notice must be given." 960 F.2d at 1039. While there is no "rigid requirement" of notice, the Federal Circuit in Hall addressing the same argument held that, "'[w]here there is prior contact [between the patentee and the accused infringer], the overall equities may require appropriate notice, as in Jamesbury.'" Hall, 93 F.3d at 1554 (quoting Aukerman, 960 F.2d at 1039(citing Jamesbury Corp. v. Litton Indus. Products., Inc., 839 F.2d 1544 (Fed. Cir.1988)). See Southern Grouts & Mortars, Inc. v. 3M Co., 2008 WL 4346798, *5 (S.D. Fla. Sept. 17, 2008).

In the present case, there was prior contact between SCA and First Quality regarding SCA's claim that certain First Quality absorbent pants-type diapers infringed the '646 Patent. (October 31, 2003, Letter, DN 95-3.) On November 21, 2003, counsel for First Quality responded indicating that the '646 Patent was invalid in view of what the parties refer to as the Watanbe patent ("the '649 Patent"). Five months later, on April 24, 2004, SCA sent another letter to First Quality asserting that a different First Quality Product infringed a different SCA Patent, U.S. Pat. No. 6,726,670 ("the '670 Patent"). SCA's April 2004 letter did not mention SCA's earlier assertion of the '646 Patent. (April

24, 2004, Letter, DN 83-10.) At no time did SCA communicate with First Quality in any way that it was going to pursue its claims under the '646 Patent. The evidence reflects that First Quality believed the matter was closed. Under the facts of this case, notice by SCA of an intent to sue after the reexamination was required. See Hall, 93 F.3d at 1554; Serdarevic v. Advanced Med. Optics, Inc., 532 F.3d 1352, 1359 (Fed. Cir. 2008)(what is important is whether the defendant had reason to believe it was likely to be sued after the proceedings concluded).

Second, SCA's stated reasons for the three year delay in bringing suit once the reexamination ended does not provide it with a legally cognizable excuse for its delay in filing suit. The Court rejects SCA's argument that it needed more than three years to determine whether it was appropriate to bring infringement claims against First Quality. The evidence reflects that SCA had already completed its infringement analysis by October of 2003, when it sent the initial letter to First Quality. (See Charles Macedo Decl., Ex. 40, Kevin Gorman Tr. 27-28.) Additionally, SCA admitted that it has continuously tracked First Quality's activity since 2003 and has an entire department dedicated solely to competitive intelligence. (Macedo Decl., Ex. 18; Melissa DeMarinis Dep. 185:7-186:23; Lizelle Valdecanas Dep. 49: 4-50:5 (acknowledging that "SCA was tracking what First Quality was doing as early as October 29, 2003"); Kenneth Strannemalm Dep. 136:23-137:14.) Additionally, SCA's claim that it is a foreign company unfamiliar with litigating in the United States is likewise not a legally cognizable excuse for its delay. See Serdarevic, 532 F.3d at 1360. While SCA is a Swedish-based company, since 2001 all of SCA's litigation in the United States has been overseen by U.S.-based general counsel. (Gorman Tr. 32-33.) In fact, SCA was represented by patent litigation counsel, Robert Grudziecki, in 2003-2004 when it accused First Quality of patent infringement. Additionally, the attorneys from Grudziecki's firm prosecuted the reexamination of the '646 patent on behalf of SCA from 2004-2007. Thus, SCA's delay in bringing

9

suit because of its asserted unfamiliarity with the United States patent system is belied by its earlier representation by United States based patent attorneys that sent notice letters on SCA's behalf and is not a reasonable or excusable delay.

Finally, SCA's delay caused by its search for legal counsel is likewise not sufficient to overcome the presumption. "A claimant's inability to find counsel willing to litigate [its] claim does not constitute a reasonable excuse for the delay." Bassali v. Johnson Controls, Inc., 2010 WL 1923979, *5 (W.D. Mich. May 12, 2010). See also Serdarevic, 532 F.3d at 1360; Hall, 93 F.3d at 1554 (citing Naxon Telesign Corp. v. Bunker Ramo Corp., 686 F.2d 1258, 1261 (7th Cir.1982); Wafer Shave Inc. v. Gillette Co., 857 F. Supp. 112, 120 (D. Mass.1993); Coleman v. Corning Glass Works, 619 F. Supp. 950, 954 (W.D.N.Y.1985)).

Thus, SCA's stated reasons for delay in filing suit are legally insufficient to overcome the presumption of unreasonable delay.[1]

### 3. Material Prejudice

A claimant can also rebut the laches presumption by raising a genuine fact issue regarding the absence of prejudice to the adverse party. See FMC Corp., 2009 WL 1033663, *5 (citing Serdaveric, 532 F.3d at 1359–60). "Material prejudice to adverse parties resulting from the plaintiff's delay is essential to the laches defense." Aukerman, 960 F.2d at 1033. Material prejudice may be in the form of either or both economic and evidentiary prejudice. FMC Corp., 2009 WL 1033663, * 5 (D. N.J. April 17, 2009)(citing A.C. Aukerman Co., 960 F.2d at 1033). "Economic prejudice occurs when the defendant 'will suffer the loss of monetary investments or incur damages

---

[1]Even if the time period during which the SCA '646 Patent was being reexamined is not considered, there was a three year delay from the reexamination before SCA took any further action. Under the facts of this case, this delay alone would support a finding of unreasonable delay without the benefit of the presumption. See Digital Systems International, Inc. v. Davox Co., 1993 WL 664647, *3 (W.D. WA. July 1, 1993).

10

which likely would have been prevented by earlier suit.'" Bassali v. Johnson Controls, Inc., 2010

WL 1923979, *5 (W.D. Mich. May 12, 2010)(citing A.C. Aukerman Co., 960 F.2d at 1033).

"Evidentiary prejudice may be established by demonstrating an 'inability to present a full and fair

defense on the merits due to a loss of records, the death of a witness, or the unreliability of memories

of long past events.'" Id. In either case, "the critical inquiry is whether the prejudice arises from

the claimant's unreasonable delay in filing suit." Id.

 SCA contends that it has come forward with evidence to rebut the presumption of economic

prejudice. Specifically, SCA argues that a genuine factual dispute exists regarding a lack of nexus

between the delay and the expenditures at issue. Specifically, SCA contends that there is ample

evidence in the record to suggest that First Quality's capital expenditures in protective underwear

lines and the acquisition of Tyco Healthcare Retail Group ("THRG") were directly related to its

efforts to become a market leader in private label protective underwear, and First Quality would

have made such expenditures in pursuit of its goal regardless of when SCA brought this litigation.

(SCA's Response at 23-25 (citing Moshe Opponheim Dep. 34-35).) SCA maintains that First

Quality has not identified a single document that associates any business decision with any supposed

delay by SCA in bringing suit or that First Quality would have acted differently had SCA sued

earlier. Further, SCA contends that First Quality's maintenance of the status quo after the filing of

the Complaint shows the speculative nature of its economic prejudice claims. (Id. at 22.) However,

the Court finds none of these explanations and/or arguments provide a genuine issue of fact to rebut

the presumption of laches.

 First, the record demonstrates that during the seven-year delay First Quality made

considerable capital investments and substantial expenditures in expanding its business. "In

granting summary judgment to the alleged infringer on laches, courts usually have relied upon

11

evidence of considerable capital investment or substantially increased sales." Lautzenhiser

Technologies, 752 F. Supp. 2d at 1003-1004.[2]  "Economic prejudice may arise where a defendant

and possibly others will suffer the loss of monetary investments or incur damages which likely

would have been prevented by earlier suit." Aukerman, 960 F.2d at 1033.  Since 2006, First Quality

purchased at least three new protective underwear lines for its King of Prussia facility alone, with

its most recent line added in 2009 that cost in excess of $10 million dollars.  (Macedo Decl., Ex. 36;

Andrew Busch Dep. 23-24.)   In 2008, First Quality purchased from Covidien, Ltd. ("Covidien")

THRG which includes some of the product lines at issue in this litigation.

Contrary to the argument of SCA, while First Quality admits that it has continuously sought

opportunities to expand its sales, SCA's delay in bringing an infringement action deprived First

Quality of the opportunity to modify its business strategies.  Caltech Controls Corp. v. OIL

Instruments, Inc., 8 Fed. Appx. 941, 951 (Fed. Cir. 2001)(affirming summary judgment on laches

defense where district court found that corporate "changes would have been structured differently

had [the defendant] been aware of a potential lawsuit by [the plaintiff]."); Lautzenhiser

---

[2]See also  R2 Medical Systems v. Katecho, Inc., 931 F. Supp. 1397, 1411 (N.D. Ill. July 19, 1996); Adelberg Laboratories, Inc. v. Miles, Inc., 921 F.2d 1267, 1272 (Fed. Cir.1990) (during delay, defendant made considerable capital investments in expanding business); ABB Robotics, 828 F. Supp. at 1396 (granting summary judgment where alleged infringer enjoyed three-fold increase in sales of challenged device during period of delay); Motorola, Inc. v. CBS, Inc., 672 F. Supp. 1033, 1037 (N.D. Ill. 1986) (ruling that Motorola could not overcome presumption of prejudice because CBS's sales of allegedly infringing product continued and expanded while Motorola delayed in bringing suit); Manus v. Playworld Sys.,Inc., 893 F. Supp. 8, 10 (E.D. Pa. 1995)(economic prejudice was shown with costs associated with increased production of accused article and marketing and capital expenditures over the ten-year delay in filing suit); 5 Chisum, Patents, § 19.05 [2][c] (1996 Supp.) (noting there are very few cases when a lengthy period of unexcused delay escaped a laches finding because of proof of want of injury)). See also Shell Global Solutions Inc. v. RMS Engineering, Inc., 782 F. Supp. 2d 317, 327-328 (S.D. Tex. 2011); Technology for Energy Corp. v. Computational Systems, Inc., 1993 WL 366350, *7–8 (finding economic prejudice where defendant expanded its business, including employees, sales, and research and development).

12

Technologies, 752 F. Supp. 2d at 1004 (rejecting plaintiff's argument that the "[defendants']

expenditures were mere garden-variety ventures in the ordinary course of business, and that no

evidence suggests [defendants] would have altered their conduct had [the plaintiff] filed suit earlier"

because "common sense suggests that Defendants would have modified their business strategies if

they came under suit for infringement.") In the present case, Moshe Oppenheim, in-house counsel

for First Quality, testified that First Quality would not have invested millions of dollars in acquiring

and retooling the King of Prussia facility if it was embroiled in a lawsuit with SCA relating to these

products.  (Oppenheim Dep. 100-101.)  See Digital Systems, 1993 WL 664647, *3 (granting

summary judgment of laches where DSI "offers unchallenged evidence of its investment in its

business and its phenomenal growth" during the delay period and noting that "[even if only a part

of DSI's expansion involves equipment allegedly infringing Davies' patents, DSI has been

materially injured.")  Similarly, Mr. Oppenheim testified that had SCA brought suit earlier, First

Quality could have structured differently its acquisition of THRG which included some of the

product lines at issue in this litigation.  According to Mr. Oppenheim, First Quality could have either

demanded that Covidien resolve all issues with respect to SCA's claims prior to the acquisition or

foregone purchase of the product lines accused of infringement.  (Id. at 89-95 ("Q: If SCA had sued

First Quality prior to the acquisition of Covidien is it your testimony that First Quality would not

have acquired Covidien?  A: And my answer is that that is one potential outcome that would have

come of it.  Other potential outcomes, so I can just be clear, we could have walked away from the

deal like we did at one point . . .[or] carved out the protective underwear portion of the deal." Id. at

89-90.)).        In fact, First Quality walked away from its acquisition of THRG at one point, and

only returned to the bargaining table at Covidien's request. (Oppenheim Dep. 14-15.)  Further, Mr.

Oppenheim, who was responsible for managing and structuring the THRG acquisition, testified that

13

avoidance of intellectual property issues was a key issue in the transaction. (Id. at 15-17.) The record reflects that in acquiring THRG, First Quality made the acquisition based on the understanding that all of THRG's product lines had a "clean bill of health." In fact, First Quality required Covidien to settle its outstanding patent disputes with Kimberly-Clark before completing the THRG acquisition. (Id. at 16.) First Quality also restructured the THRG acquisition as a result of Covidien's Mexican intellectual property liability purchasing only the assets of the Mexican facility. (Id. at 24-25.) Thus, if SCA had sued earlier, First Quality would not have aggressively expanded its adult incontinence line of products with the purchase of new product lines and THRG. It would have likely structured the acquisition of THRG differently requiring Covidien to settle any outstanding patent disputes. "[C]ommon sense suggests that [First Quality] would have modified [its] business strategies if [it] came under suit for infringement." Lautzenhiser Technologies, 752 F. Supp.2d at 1004.

For these reasons, the Court finds that SCA failed to present evidence sufficient to create a genuine issue of material fact regarding the nonexistence of the presumed material prejudice and, as a result the presumption remains intact. See Lautzenhiser Technologies, 752 F. Supp. 2d at 1004. First Quality's laches defense is valid and the Court will not recognize any of SCA's claims of patent infringement against First Quality prior to the date of filing its claim of infringement on August 2, 2010.

**B. Equitable Estoppel**

Equitable estoppel may serve as an absolute bar to a patentee's claim of infringement. Lautzenhiser Technologies, 752 F. Supp. 2d at 1008 (citing Scholle Corp. v. Blackhawk Molding Co., 133 F.3d 1469, 1471 (Fed. Cir.1998)). The equitable estoppel bar applies when:

    a.   The patentee, through misleading conduct, leads the alleged infringer to

14

reasonably infer that the patentee does not intend to enforce its patent against the alleged infringer. "Conduct" may include specific statements, action, inaction, or silence when there was an obligation to speak.

b. The alleged infringer relies on that conduct.

c. Due to its reliance, the alleged infringer will be materially prejudiced if the patentee is allowed to proceed with its claim.

A.C. Aukerman Co., 960 F.2d at 1028. In contrast to laches, "'equitable estoppel focuses on the reasonableness of the *Defendant's* conduct.'" Lautzenhiser Technologies, 752 F. Supp. 2d at 1008. "And, unlike laches, 'unreasonable delay' is not an element of estoppel and no presumption applies, meaning a party advancing an estoppel defense must prove each of the elements by a preponderance of the evidence." Id.

### 1. Misleading Conduct

"To prove the first element of equitable estoppel, the alleged infringer must prove that the patentee, through misleading conduct, has led the infringer to infer that it does not intend to enforce the patent." Lautzenhiser Technologies, 752 F. Supp. 2d at 1008-1009. The patentee's misleading conduct may include specific statements, actions, inaction, or silence. Id. at 1009 (citing Gossen Corp. v. Marley Mouldings, 977 F. Supp. 1346, 1353–54 (E.D. Wis. Aug. 20, 1997) (citing ABB Robotics, 52 F.3d at 1063)). According to the Federal Circuit in Aukerman:

> The patentee's conduct must have supported an inference that the patentee did not intend to press an infringement claim against the alleged infringer. It is clear, thus, that for equitable estoppel the alleged infringer cannot be unaware—as is possible under laches—of the patentee and/or its patent. The alleged infringer also must know or reasonably be able to infer that the patentee has known of the former's activities for some time. In the most common situation, the patentee specifically objects to the activities currently asserted as infringement in the suit and then does not follow up for years. In Dwight & Lloyd Sintering, Judge Learned Hand noted that estoppel was regularly based on "no further assurance [that a known competitor would not be sued than] the patentee's long inaction." 27 F.2d at 827. There is ample subsequent precedent that equitable estoppel may arise where, coupled with other factors, a patentee's "misleading conduct" is essentially misleading *inaction*.

A.C. Aukerman Co., 960 F.2d at 1042 (quoting Dwight & Lloyd Sintering Co. v. Greenawalt, 27

15

F.2d 823 (2d Cir. 1928)).

SCA unquestionably misled First Quality though its 2003 letter and subsequent inaction. A.C. Aukerman Co., 960 F.2d at 1042; Radio Systems Corp. v. Lalor, 2012 WL 254026, \*7 (Jan. 26, 2012), aff'd in part, rev'd in part, 709 F.3d 1124 (Fed. Cir. 2013). It is undisputed that SCA first accused First Quality of infringing the '646 Patent in 2003. First Quality promptly responded to SCA's assertion letter in November of 2003, stating that the '646 Patent was invalid. SCA did not respond to the November letter. Instead, SCA wrote to First Quality in April of 2004 regarding a different product and a different patent. SCA did not mention the '646 Patent or the prior correspondence even after First Quality responded to SCA's second infringement assertion and referred to the earlier correspondence regarding the '646 Patent.

In an effort to raise a genuine dispute of fact, SCA argues that its conduct was not misleading because its October 31, 2003, letter did not threaten litigation but merely requested First Quality's "opinion" on the infringement issue. Initially, "threatened litigation is not an element of either laches or estoppel." Digital Systems, 1993 WL 664647, \*3. Additionally, the record reflects that prior to the October 2003 letter, SCA had completed its investigations of infringement. The letter informed First Quality that certain absorbent pants-type diapers made by First Quality infringe claims of the '646 Patent. SCA demanded First Quality's assurance that it would immediately stop making and selling such products. After reviewing the correspondence as a whole, the Court finds that the letter by SCA was reasonably viewed by First Quality as a threat of an infringement suit. See, e.g., Aspex Eyewear, Inc. v. Clariti Eyewear, Inc., 605 F.3d 1305, 1311 (Fed. Cir. 2010)(rejecting plaintiffs' argument that its letters did not threaten suit because of the equivocal nature of the statements that its patents "may" cover some of the products, but were reasonably viewed by the defendant as a threat of an infringement suit).

16

Likewise, SCA's letter in April of 2004 to First Quality alleging infringement of a different patent, the '670 Patent, further supports the misleading nature of SCA's conduct. The April 2004 letter was sent five months after First Quality's response denying infringement of the '670 Patent. SCA did not mention the '646 Patent assertion at all, even after First Quality directed SCA's attention to the earlier letters. Whether this letter "is viewed as a tacit withdrawal of the ['646 patent] or as misleading silence with respect to the ['646 patent], the result is the same, for it was reasonable for [First Quality] to infer that [SCA] was not continuing the accusation of infringement as to the ['646 patent]." Aspex Eyewear, 605 F.3d at 1311.

Accordingly, the Court finds that the evidence compels a reasonable fact finder to conclude that SCA engaged in misleading conduct supporting "an inference that the patentee did not intend to press an infringement claim against the alleged infringer." A.C. Aukerman Co., 960 F.2d at 1042. Therefore, the first element of estoppel – misleading conduct – is satisfied.

**2. Reliance**

"A party invoking equitable estoppel must also prove reliance." Lautzenhiser Technologies, 752 F. Supp. 2d at 1009. Reliance, while not an element of laches, is essential to equitable estoppel. Aukerman, 960 F.2d at 1042 (citing Heckler v. Community Health Services, 467 U.S. 51, 59 (1984)). "The accused infringer must show that, in fact, it substantially relied on the misleading conduct of the patentee in connection with taking some action." Id. at 1042-1043. "Reliance is not the same as prejudice or harm, although frequently confused." Id. at 1043. As explained by the court in Aukerman: "An infringer can build a plant being entirely unaware of the patent. As a result of infringement, the infringer may be unable to use the facility. Although harmed, the infringer could not show reliance on the patentee's conduct. To show reliance, the infringer must have had a relationship or communication with the plaintiff which lulls the infringer

17

into a sense of security in going ahead with building the plant." Id.

First Quality "relied on the misleading conduct of [SCA] in connection with taking some action." Aukerman, 960 F.2d at 1042–43. First Quality points to its acquisition of THRG in 2008 and its purchase of additional protective underwear lines since 2006 – some of the products which SCA claims infringe the '646 Patent. Specifically, Babak Demaghi testified that First Quality continued to manufacture and sell the accused products because of SCA's inactions: "The fact that we never heard back from SCA once we sent them [the November 23, 2003] letter that you have put in front of me . . . and as a result we did not consider it to be an issue because we did not know what, if any, issue existed for us to follow up on." (Babak Damaghi Dep at 62.) Further, Mr. Damaghi testified as follows:

> Q: . . . [W]as there any particular point in time when First Quality began to rely on no communications from SCA with respect to conducting its business for the sale of protective underwear?
> A: My answer is after sending [the November 23, 2003 letter] this letter this matter was never thought of again.

(Id. at 63-64.) Additionally, as discussed above, Mr. Oppenheim testified that First Quality would not have invested millions of dollars in acquiring and retooling the King of Prussia facility if it was embroiled in a lawsuit with SCA relating to these products. (Oppenheim Dep. 100-101). Similarly, Mr. Oppenheim testified that had SCA brought suit earlier, First Quality could have structured its acquisition of THRG differently either demanding that Covidien resolve all issues with respect to SCA's claims prior to the acquisition or foregoing purchase of the product lines accused of infringement. (Oppenheim Dep. 89-95.) See Aspex, 605 F.3d at 1311-12.

In response, SCA argues that it is conceivable that First Quality relied not on SCA's inaction, but on First Quality's own belief that SCA's '646 Patent was invalid. It is undisputed that after receiving the 2003 letter from SCA, counsel for First Quality advised SCA that after a cursory

18

review of the prior patents he believed that '646 Patent was invalid and therefore, First Quality was not infringing upon the '646 Patent. With the exception of this letter, SCA has not cited to any testimony or internal communications indicating that First Quality actually relied on a belief that '646 Patent was invalid. Notwithstanding, "[t]he fact that [the alleged infringer] may have relied in part on [it's attorney's] advice does not negate the fact that it also relied on the patentee's apparent abandonment of [its] infringement claim." Wafer Shave, Inc., 857 F. Supp. 112, 123 (D. Mass. 1993)[3](citing MCV, Inc. v. King-Seeley Thermos Co., 870 F.2d 1568, 1573 (Fed. Cir. 1989) (inventor's position that co-inventor did not need to be named on patent was based on reliance on both his own interpretation and plaintiff/co-inventor's silence); Advanced Hydraulics, 525 F.2d at 479 (reliance on patentee's misleading conduct found even though infringer had also informed patentee that infringer's internal investigation had indicated that there was no infringement). At the very least, SCA "reinforced [First Quality's] opinion through their inaction." Radio Systems Corp. v. Labor, 2012 WL 254026, *9 (Jan. 26, 2012), aff'd in relevant part, 709 F.3d 1124 (Fed. Cir. 2013) (affirming district court's grant of summary judgment on equitable estoppel as it related to one patent). See MCV, Inc., 870 F.2d at 1573; Advanced Hydraulics, Inc. v. Otis Elevator Co., 525 F.2d 477, 479 (7th Cir.1975) (concluding that alleged infringer relied on patentee's misleading conduct despite the fact that the infringer had also informed patentee that infringer's internal investigation had indicated that there was no infringement). But see Hall, 93 F.3d at 1558; Gasser Chair Co., Inc. v. Infanti Chair Mfg. Corp., 60 F.3d 770, 776 (Fed. Cir. 1995).

---

[3] "To find otherwise would encourage those accused of infringement not to seek legal advice, but to rely solely on a patentee's future conduct and to have faith that such conduct will prevent the patentee from succeeding in a lawsuit. Such a practice would injure the ability of alleged infringers to protect their legal rights, and discourage the efficient resolution of accusations of infringement which a fully informed, well-advised person would find meritorious, or at least too risky to litigate." Wafer Shave, Inc., 857 F. Supp. at 123.

19

Finally, contrary to the argument by SCA, First Quality does not have to prove that it would have forgone its protective underwear business entirely to satisfy the reliance element. "[T]o show reliance on [a patentee's] silence and inaction, [an infringer] need not prove precisely what alternative paths it would have taken, or that every marketing decision was based on reliance on [the patentee's] silence." Aspex Eyewear, 605 F.3d at 1312.

Accordingly, no reasonable fact finder could conclude that First Quality did not rely on SCA's inaction. Radio Systems Corp., 2012 WL 254026, *9.

### 3. Material Prejudice

The requirement of material prejudice for equitable estoppel is identical to the requirement under laches. See Aukerman, 960 F.2d at 1043 ("[a]s with laches, the prejudice may be a change of economic position or loss of evidence."). "In evaluating whether economic, or business, prejudice has occurred, courts must 'look for a *change* in the economic position of the alleged infringer during the period of the delay.'" Wafer Shave, 857 F. Supp. at 125 (citing Aukerman, 960 F.2d at 1033).

As discussed above, during the seven years that SCA remained silent, First Quality suffered economic prejudice by making substantial capital investments, acquiring THRG from Covidien, and increasing its sales of the accused products. Additionally, just as the alleged infringer in Wafer Shave, First Quality lost the opportunity to limit its present exposure to substantial litigation costs and damages because it believed there was no longer a threat of litigation concerning the [patentee's] patent." Id. See also Aukerman, 960 F.2d at 1033 (noting that patentee may not "intentionally lie silently in wait watching damages escalate . . . particularly where an infringer, if he had had notice, could have switched to a noninfringing product.") (citations omitted).

Applying these factors to the facts in the light most favorable to the non-moving party, the Court concludes that no genuine dispute of material fact exists and that First Quality is entitled to

20

summary judgment as a matter of law on the defense of estoppel.

## IV. CONCLUSION

For the reason set forth above, **IT IS HEREBY ORDERED** that the motion by Defendants First Quality Baby Products, LLC, First Quality Hygienic, Inc., First Quality Products, Inc., and First Quality Retail Services, LLC (collectively "First Quality") for summary judgment based on the doctrines of laches and equitable estoppel [DN 82, DN 83] is **GRANTED** and the motion by First Quality for a hearing on this motion for summary judgment [DN 84] is **DENIED**. **IT IS FURTHER ORDERED** that all remaining motions are **DENIED AS MOOT**. A Judgment shall be entered consistent with the Opinion.

Joseph H. McKinley, Jr., Chief Judge
United States District Court

July 15, 2013

cc: counsel of record

21

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
### BOWLING GREEN DIVISION

**CIVIL ACTION NO. 1:10CV-00122-JHM**

**SCA HYGIENE PRODUCTS AKTIEBOLAG and
SCA PERSONAL CARE, INC.**                                          **PLAINTIFFS**

**v.**

**FIRST QUALITY BABY PRODUCTS, LLC,
FIRST QUALITY HYGIENIC, INC.,
FIRST QUALITY PRODUCTS, INC., and
FIRST QUALITY RETAIL SERVICES, LLC**                              **DEFENDANTS**

## JUDGMENT

This matter having come before the Court on a dispositive motion filed by the

Defendants, and the Court on this date having issued a Memorandum Opinion and Order

granting said motion,

**IT IS HEREBY ORDERED** that judgment be entered in favor of the Defendants

consistent with the Court's Memorandum Opinion and Order and the Plaintiffs' Complaint

is dismissed with prejudice.

*Joseph H. McKinley*

Joseph H. McKinley, Jr., Chief Judge
United States District Court

cc: counsel of record                                             July 15, 2013

# United States Court of Appeals
## for the Federal Circuit

*SCA Hygiene Products v. First Quality Baby Products*, No. 2013-1564

## CERTIFICATE OF FILING AND SERVICE

I, Elissa Matias, being duly sworn according to law and being over the age of 18, upon my oath depose and say that:

Counsel Press was retained by DECHERT LLP, Attorneys for Plaintiffs-Appellants to print this document. I am an employee of Counsel Press.

On **February 27, 2015,** counsel has authorized me to electronically file the foregoing **EN BANC BRIEF OF PLAINTIFFS-APPELLANTS SCA HYGIENE PRODUCTS AKTIEBOLAG AND SCA PERSONAL CARE, INC. (confidential and non-confidential versions)** with the Clerk of Court using the CM/ECF System, which will serve via e-mail notice of such filing to any of the following counsel registered as CM/ECF users:

Kenneth P. George (kgeorge@arelaw.com)
Charles R. Macedo (cmacedo@arelaw.com)
Mark Berkowitz (mberkowitz@arelaw.com)
Amster Rothstein & Ebenstein LLP
90 Park Avenue
New York, NY 10016
212-336-8000

The confidential version will also be emailed and two paper copies will also be mailed to the above counsel on this date. Any counsel for Amicus Curiae, appearing at the time of filing, will be served only via the CM/ECF e-mail notice.

Upon acceptance by the Court of the e-filed document, thirty-one paper confidential copies will be filed with the Court within the time provided in the Court's rules.

February 27, 2015

/s/ Elissa Matias
Elissa Matias
Counsel Press

**CERTIFICATE OF COMPLIANCE**
**UNDER FEDERAL RULE OF APPELLATE**
**PROCEDURE 32(a)(7) AND FEDERAL CIRCUIT RULE 32**

1. This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) or Federal Rule of Appellate Procedure 28.1(e).

 _X_ The brief contains _9,777_ words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii), or

_____ The brief uses a monospaced typeface and contains ___ lines of text, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) or Federal Rule of Appellate Procedure 28.1(e) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).

 _X_ The brief has been prepared in a proportionally spaced typeface using Microsoft Word 2003 in a 14-point Times New Roman font, or

_____ The brief has been prepared in a monospaced typeface using _____ with ____ characters per inch ____ font.

Date: February 27, 2015   /s/ Martin J. Black_____
            Martin J. Black
            DECHERT LLP
            Attorney for Plaintiffs-Appellants,
            SCA Hygiene Products Aktiebolag
            and SCA Personal Care, Inc.