No. 2013-1564

## UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

SCA HYGIENE PRODUCTS AKTIEBOLAG and
SCA PERSONAL CARE, INC.,

Plaintiffs-Appellants,

v.

FIRST QUALITY BABY PRODUCTS, LLC,
FIRST QUALITY HYGIENIC, INC.,
FIRST QUALITY PRODUCTS, INC., and
FIRST QUALITY RETAIL SERVICES, LLC,

Defendants-Appellees.

Appeal from the United States District Court for the Western District of Kentucky
in No. 10-CV-0122, Chief Judge Joseph H. McKinley, Jr.

## CORRECTED BRIEF OF *AMICI CURIAE* LAW PROFESSORS
## IN SUPPORT OF PLAINTIFFS-APPELLANTS

Ariel N. Lavinbuk
Michael E. Kenneally
*Robbins, Russell, Englert, Orseck,*
    *Untereiner & Sauber LLP*
1801 K Street, N.W., Suite 411
Washington, D.C. 20006
(202) 775-4500

*Counsel for Amici Curiae*

# CERTIFICATE OF INTEREST

Pursuant to Federal Circuit Rule 47.4, counsel for *amici curiae* certifies the following:

1. The full name of every party or amicus curiae represented by me is:

> Stephanos Bibas
> Samuel L. Bray
> John F. Duffy

2. The name of the real party in interest (if the parties named in the caption are not the real parties in interest) represented by me is:

> N/A

3. All parent corporations and any publicly held companies that own ten percent or more of the stock of the party or amicus curiae represented by me are:

> None

4. The names of all law firms and the partners or associates that appeared for the party or amicus curiae now represented by me in the trial court or agency or are expected to appear in this Court are:

> *Robbins, Russell, Englert, Orseck, Untereiner & Sauber LLP*
> Ariel N. Lavinbuk
> Michael E. Kenneally

Dated: March 6, 2015                s/ Ariel N. Lavinbuk
                                    Ariel N. Lavinbuk

                                    *Counsel for Amici Curiae*

i

# TABLE OF CONTENTS

Certificate Of Interest.................................................................... i

Table Of Contents ........................................................................ ii

Table Of Authorities ................................................................... iii

Interest Of *Amici Curiae* ......................................................... vii

Summary Of Argument.................................................................1

Argument.......................................................................................2

I.     Laches Is An Equitable Defense That Does Not Apply To Claims For Legal Damages ...........................................................................2

     A.     The Traditional Rule In American Law Is That Laches Does Not Bar A Claim For Damages ..............................................2

     B.     *Petrella* Reaffirmed The Traditional Rule ............................4

     C.     *Petrella* Compels Overruling *Aukerman*..............................7

II.    There Are Good Reasons For The Traditional Rule ....................10

III.   The Patent Act Adheres To The Traditional Rule.......................13

     A.     Congress Confirmed—And Certainly Did Not Abrogate—The Traditional Rule In The Patent Act ....................................13

     B.     *Lane & Bodley* Is Not To The Contrary..............................19

Conclusion ..................................................................................21

# TABLE OF AUTHORITIES

## Cases

*A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*,
    960 F.2d 1020 (Fed. Cir. 1992) ................................................................ passim

*Campbell v. Haverhill*,
    155 U.S. 610 (1895)...............................................................................20

*Cnty. of Oneida v. Oneida Indian Nation of N.Y.*,
    470 U.S. 226 (1985)...............................................................................2

*Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*,
    447 U.S. 102 (1980)...............................................................................15

*Cooper Indus., Inc. v. Aviall Servs., Inc.*,
    543 U.S. 157 (2004)...............................................................................17

*Cornetta v. United States*,
    851 F.2d 1372 (Fed. Cir. 1988) .........................................................3

*Dep't of Transp. v. Pub. Citizen*,
    541 U.S. 752 (2004)...............................................................................16

*Dwight & Lloyd Sintering Co. v. Greenawalt*,
    27 F.2d 823 (2d Cir. 1928) ................................................................17

*eBay Inc. v. MercExchange, L.L.C.*,
    547 U.S. 388 (2006)...............................................................................14

*Fogerty v. Fantasy, Inc.*,
    510 U.S. 517 (1994)...............................................................................19

*France Mfg. Co. v. Jefferson Elec. Co.*,
    106 F.2d 605 (6th Cir. 1939) .............................................................18

*George J. Meyer Mfg. Co. v. Miller Mfg. Co.*,
    24 F.2d 505 (7th Cir. 1928) ...............................................................17

*Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*,
    527 U.S. 308 (1999)...............................................................................4

*Haas v. Leo Feist, Inc.*,
   234 F. 105 (S.D.N.Y. 1916)................................................................12

*Hartford-Empire Co. v. Swindell Bros.*,
   96 F.2d 227 (4th Cir. 1938) ...........................................................18

*Holmberg v. Armbrecht*,
   327 U.S. 392 (1946).................................................................5, 19

*Holt v. Menendez*,
   23 F. 869 (C.C.S.D.N.Y. 1885) ........................................................20

*Jama v. Immigration & Customs Enforcement*,
   543 U.S. 335 (2005)....................................................................18

*Jesinoski v. Countrywide Home Loans, Inc.*,
   135 S. Ct. 790 (2015)..................................................................14

*Lane & Bodley Co. v. Locke*,
   150 U.S. 193 (1893)........................................................... 19, 20, 21

*Locke v. Lane & Bodley Co.*,
   35 F. 289 (C.C.S.D. Ohio 1888) ......................................................20

*Lorillard v. Pons*,
   434 U.S. 575 (1978)....................................................................16

*Lyons P'ship, L.P. v. Morris Costumes, Inc.*,
   243 F.3d 789 (4th Cir. 2001) ..........................................................5

*Marsh v. Clarke Cnty. Sch. Dist.*,
   732 S.E.2d 443 (Ga. 2012) ............................................................3

*Menendez v. Holt*,
   128 U.S. 514 (1888)....................................................................20

*Metro. Stevedore Co. v. Rambo*,
   515 U.S. 291 (1995)....................................................................16

*Middleton v. Wiley*,
   195 F.2d 844 (8th Cir. 1952) ..........................................................18

iv

*Miles v. Apex Marine Corp.*,
498 U.S. 19 (1990)............................................................................7

*Naccache v. Taylor*,
72 A.3d 149 (D.C. 2013) ...............................................................2, 5

*Nken v. Holder*,
556 U.S. 418 (2009)........................................................................14

*Original Great Am. Chocolate Chip Cookie Co. v. River Valley Cookies, Ltd.*,
970 F.2d 273 (7th Cir. 1992) ..........................................................12

*Overland Motor Co. v. Packard Motor Car Co.*,
274 U.S. 417 (1927).....................................................................9, 10

*Petrella v. Metro-Goldwyn-Mayer, Inc.*,
134 S. Ct. 1962 (2014)............................................................ passim

*Reconstruction Fin. Corp. v. Harrisons & Crosfield Ltd.*,
204 F.2d 366 (2d Cir. 1953) .............................................................3

*Shapiro v. United States*,
335 U.S. 1 (1948)............................................................................16

*Smith v. Gehring*,
496 A.2d 317 (Md. Ct. Spec. App. 1985)..........................................3

*Stainback v. Mo Hock Ke Lok Po*,
336 U.S. 368 (1949)..........................................................................4

*Teamsters & Employers Welfare Trust of Ill. v. Gorman Bros. Ready Mix*,
283 F.3d 877 (7th Cir. 2002) ............................................................5

*United States v. Am. Bell Tel. Co.*,
167 U.S. 224 (1897)........................................................................10

*United States v. Locke*,
471 U.S. 84 (1985)............................................................................7

*Universal Coin Lock Co. v. Am. Sanitary Lock Co.*,
104 F.2d 781 (7th Cir. 1939) ..........................................................17

*Weinberger v. Romero-Barcelo*,
  456 U.S. 305 (1982)............................................................................14

*Westco-Chippewa Pump Co. v. Del. Elec. & Supply Co.*,
  64 F.2d 185 (3d Cir. 1933) ...............................................................18

**Statutes**

17 U.S.C. § 507(b) .................................................................................8

35 U.S.C. § 282 ................................................................... 13, 14, 15

35 U.S.C. § 283 .....................................................................................7

35 U.S.C. § 286 ......................................................................... passim

Act of July 8, 1870, ch. 230, 16 Stat. 198.........................................19

Act of Mar. 3, 1897, ch. 391, 29 Stat. 692......................................9, 20

**Other Authorities**

Samuel L. Bray,
  *A Little Bit of Laches Goes a Long Way: Notes on* Petrella v. Metro-Goldwyn-
  Mayer Inc., 67 Vand. L. Rev. En Banc 1 (2014)................................ 2, 3, 10, 14

Dan B. Dobbs,
  *Law of Remedies* (2d ed. 1993).........................................................2

Mark P. Gergen, John M. Golden & Henry E. Smith,
  *The Supreme Court's Accidental Revolution? The Test for Permanent
  Injunctions*, 112 Colum. L. Rev. 203 (2012).....................................11

*Restatement (Third) of Restitution and Unjust Enrichment* (2011)...........................2

Antonin Scalia & Bryan A. Garner,
  *Reading Law* (2012)..........................................................................16

Charles Alan Wright et al.,
  *Federal Practice and Procedure* (3d ed. 2002)..............................4, 12

## INTEREST OF *AMICI CURIAE*

*Amici* are professors of law who teach and write about a wide range of subjects, including the law of remedies, patent law, and constitutional law. They have cross-disciplinary expertise that bears directly on the question before this Court: Should laches be available to bar claims for damages from patent infringement? *Amici* include (institutional affiliations provided for identification purposes only):

- **Stephanos Bibas**, Professor of Law and Criminology at the University of Pennsylvania Law School. Professor Bibas studies the powers and incentives that shape how prosecutors, defense counsel, defendants, and judges behave in the real world of guilty pleas. He also serves as Director of the school's Supreme Court Clinic. In that capacity, he has argued four cases before the United States Supreme Court, including, most recently, on behalf of Paula Petrella in *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S. Ct. 1962 (2014).

- **Samuel L. Bray**, Assistant Professor of Law at the UCLA School of Law. Professor Bray's research explores the law of remedies, and in particular questions related to the functions, timing, and institutional demands of different remedies. His latest work in this area explains the continuing relevance of and justifications for the traditional distinction between legal and equitable remedies.

- **John F. Duffy**, Samuel H. McCoy II Professor of Law at the University of Virginia School of Law. Professor Duffy has written extensively in the area of patent law and policy. His works include law review articles on patent law and a casebook, co-authored with Robert Merges, on *Patent Law and Policy*. He also writes on other areas of the law, and his article *Administrative Common Law in Judicial Review*, 77 Tex. L. Rev. 113 (1998), examined the relationship between statutory law and judge-made law, including judge-made law in equity decisions.

No party or party's counsel authored this brief in whole or in part or contributed money for its preparation or submission, nor did any other person, aside from *amici* and their counsel.

*Amici* submit this brief pursuant to the Court's Order entered on December 30, 2014, which granted rehearing *en banc* and authorized the filing of *amicus* briefs. *See* Dkt. 76 at 3.

# SUMMARY OF ARGUMENT

The traditional rule in American law is that laches is an equitable defense that does not apply to claims for damages.  When Congress further defines the timeliness of such claims by statute, the traditional rule is buttressed by the duty of courts to follow Congress's lead.  The traditional rule is also well-founded as a matter of policy:  The reasons for the laches defense—among them, avoiding abusive behavior by litigants and costly judicial supervision—are simply not present when a plaintiff seeks damages.  All three points were decisively reaffirmed by the U.S. Supreme Court just last Term in *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S. Ct. 1962 (2014).

The traditional rule, its policy reasons, and *Petrella* are all consistent with, and indeed reinforce, one another.  But none is consistent with this Court's *en banc* decision in *A.C. Aukerman Co. v. R.L. Chaides Construction Co.*, 960 F.2d 1020 (Fed. Cir. 1992).  *Aukerman* held that laches can bar a plaintiff's claim for damages from patent infringement—even when that claim is brought within the time period prescribed by Congress.  *Aukerman* is based, in part, on a belief that Congress intended to treat patent law differently.  But each of the reasons cited by *Aukerman* for that conclusion is unsound or was rejected by the Supreme Court in *Petrella*.  This Court should therefore overrule *Aukerman*'s holding that laches can bar an otherwise timely claim for damages.  It cannot.

# ARGUMENT

## I.    LACHES IS AN EQUITABLE DEFENSE THAT DOES NOT APPLY TO CLAIMS FOR LEGAL DAMAGES

### A.    The Traditional Rule In American Law Is That Laches Does Not Bar A Claim For Damages

The traditional rule in American law is that laches is not a defense to claims for legal damages. *See e.g.*, *Cnty. of Oneida v. Oneida Indian Nation of N.Y.*, 470 U.S. 226, 244 n.16 (1985) ("[A]pplication of the equitable defense of laches in an action at law would be novel indeed."); *Restatement (Third) of Restitution and Unjust Enrichment* § 70 (2011) (explaining that any "action for restitution may be barred by [a] lapse of time under an applicable statute of limitations" but expressly restricting the defense of laches to "an action for restitution [that] asserts a claim or seeks a remedy originating in equity"); 1 Dan B. Dobbs, *Law of Remedies* 104, 105-106 (2d ed. 1993) ("When laches does not amount to estoppel or waiver, it does not ordinarily bar legal claims, only equitable remedies. . . . Courts have routinely referred to laches as an equitable defense, that is, a defense to equitable remedies but not a defense available to bar a claim of legal relief."); Samuel L. Bray, *A Little Bit of Laches Goes a Long Way: Notes on* Petrella v. Metro-Goldwyn-Mayer Inc., 67 Vand. L. Rev. En Banc 1, 2-4 (2014).

That traditional rule continues to govern in the vast majority of state and federal courts. *See Naccache v. Taylor*, 72 A.3d 149, 154 & n.9 (D.C. 2013)

(collecting cases). While a few courts do apply laches to all claims, legal and equitable, these scattered exceptions only demonstrate the widespread resilience and vitality of the traditional rule. *See, e.g.*, *Smith v. Gehring*, 496 A.2d 317, 323-25 (Md. Ct. Spec. App. 1985) (noting several outliers to the traditional rule, including a pair of patent cases, and rejecting them as unreasoned outliers); Bray, *supra*, at 3 (same).[1] This Court was thus correct when it once recognized that "[b]ecause laches is an equitable defense, it has traditionally been unavailable in actions at law brought within the applicable statute of limitations." *Cornetta v. United States*, 851 F.2d 1372, 1376 (Fed. Cir. 1988).[2]

---

[1] For example, laches has been applied to requests for mandamus even though it is a legal remedy. The courts that have done so, however, have themselves made clear that the applying laches to a legal remedy is unusual and justified as against mandamus for unique reasons. *See, e.g.*, *Marsh v. Clarke Cnty. Sch. Dist.*, 732 S.E.2d 443, 445 (Ga. 2012) (making an exception for mandamus but reaffirming as the general rule "the well established notion that inasmuch as laches is an equitable defense, it cannot be applied to actions at law").

[2] *Aukerman* cited *Cornetta* as supporting the proposition that laches *can* bar timely claims for legal relief. But *Cornetta*'s departure from the traditional rule was based on federal policies specific to that case (and inapplicable here): "the twin goals of limiting monetary consequences to the government and compelling the speedy resolutions of disputes" in the military context. *Cornetta*, 851 F.2d at 1376. Nor is *Reconstruction Finance Corp. v. Harrisons & Crosfield, Ltd.*, 204 F.2d 366 (2d Cir. 1953) (cited in *Aukerman*, 960 F.2d at 1030) illuminating, as it was nothing more than a dispute about the availability of equitable relief. *See id.* at 369 ("[W]hen asked to enter an order, under the federal Arbitration Act, requiring a party to arbitrate as he promised, [the court] sits 'in equity,' . . . [and] must take into account equity considerations, and notably laches."). It was silent as to the application of laches to claims for legal relief. *See also infra* Part III (addressing the cases listed in *Aukerman*, 960 F.2d at 1029 n.6).

### B.   *Petrella* Reaffirmed The Traditional Rule

The traditional rule was decisively reaffirmed by the U.S. Supreme Court last year in *Petrella*, a decision that controls this case.  The Court held, among other things, that laches is not a defense to claims for legal damages for at least two reasons.

*First*, the traditional rule limiting laches to equitable claims was not affected by the creation of the Federal Rules of Civil Procedure—contrary to what *Aukerman* concluded.  *See* 960 F.2d at 1031.  Although the Rules merged the procedures of the federal courts, they did not change the substantive distinctions between legal and equitable remedies.  *See Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 318-19 (1999); *Stainback v. Mo Hock Ke Lok Po*, 336 U.S. 368, 382 n.26 (1949); 4 Charles Alan Wright et al., *Federal Practice and Procedure* § 1043 (3d ed. 2002) ("[T]he substantive and remedial principles that applied prior to the advent of the federal rules are not changed.").  Thus, as the Court held, the procedural merger of law and equity had no effect on the traditional rule that laches does not apply to claims for damages.  *See Petrella*, 134 S. Ct. at 1973-74 ("Both before and after the merger of law and equity in 1938, this Court has cautioned against invoking laches to bar legal relief."); *see also Naccache*, 72 A.3d at 154 ("The overwhelming majority of the state supreme

4

courts we identified that have considered this issue continue, post-merger, to bar laches as a defense for actions at law.").

*Second*, the Court repeatedly emphasized the importance of time limitations enacted by Congress. When Congress enacts a statute of limitations, "courts are not at liberty to jettison Congress' judgment on the timeliness of [a] suit" for damages brought within that period. *Petrella*, 134 S. Ct. at 1967. Courts may consider judicially created timeliness doctrines such as laches "[w]hen Congress fails to enact a statute of limitations," because in that case "laches is not invading congressional prerogatives. It is merely filing a legislative hole." *Id*. at 1968 (quoting *Teamsters & Employers Welfare Trust of Ill. v. Gorman Bros. Ready Mix*, 283 F.3d 877, 881 (7th Cir. 2002)). But "'[i]f Congress explicitly puts a limit upon the time for enforcing a right which it created, there is an end of the matter.'" *Id*. at 1973 (quoting *Holmberg v. Armbrecht*, 327 U.S. 392, 395 (1946)) (internal quotation marks omitted). Then Congress has "filled the hole" itself, *id*. at 1968, and "[t]he Congressional statute of limitation is definitive," *Holmberg*, 327 U.S. at 395. As the Court explained, the "legislation-overriding" that occurs when individual judges "set a time limit other than the one Congress prescribed . . . tug[s] against the uniformity Congress s[eeks] to achieve when it enact[s]" a limitation period, and upsets the proper division of labor between courts and Congress. *Petrella*, 134 S. Ct. at 1974-75; *cf. Lyons P'ship, L.P. v. Morris*

*Costumes, Inc.*, 243 F.3d 789, 798 (4th Cir. 2001) ("Separation of powers principles . . . preclude us from applying the judicially created doctrine of laches to bar a federal [copyright] claim that has been timely filed under an express statute of limitations.").

Although *Petrella* addressed a limitation period for bringing suit under the Copyright Act, its holdings were based on principles that apply more generally. The conclusion that "laches is a defense developed by courts of equity," and so is inapplicable to claims for legal remedies, *Petrella*, 134 S. Ct. at 1973, is not unique to copyright—as the *Petrella* Court itself noted. Speaking about the traditional rule that laches may not "bar a claim for damages brought within the time allowed by a federal statute of limitations," the Court observed that "[t]here is nothing at all different about copyright cases in this regard." *Id.* at 1974 (internal quotation marks, brackets, and citation omitted).

Similarly, the command that when Congress speaks, the courts must follow (*see id.* at 1973-74) is hardly limited to copyright, or even to the context of statutes of limitations. Even in areas such as admiralty where the federal courts have a more general lawmaking power, the Supreme Court has held that the courts must recognize Congress's "superior authority" and that, where "Congress has spoken directly" to remedial questions, the courts must not "supplement" Congress's answer by prescribing "a different measure of damages," "a different statute of

limitations," or "a different class of beneficiaries."  *Miles v. Apex Marine Corp.*, 498 U.S. 19, 27, 31 (1990).

### C.     *Petrella* Compels Overruling *Aukerman*

*Petrella* thus requires overruling those portions of *Aukerman* holding that laches can bar an otherwise timely claim for damages based on patent infringement.  Indeed, *Aukerman* runs afoul of both the traditional rule regarding the scope of laches and Congress's own judgment because, in Section 286 of the Patent Act, Congress expressly defined the period for which such damages can be recovered:

> Except as otherwise provided by law, no recovery shall be had for any infringement committed more than six years prior to the filing of the complaint or counterclaim for infringement in the action.

35 U.S.C. § 286.[3]

It does not matter whether the particular period of time chosen by Congress is "arbitrary," as *Aukerman* suggested.  960 F.2d at 1030; *see also id*. (noting that Section 286 "counts backwards from the date of the complaint to limit pre-filing damages arbitrarily").  All statutes of limitations (and other such timing rules) have a certain degree of arbitrariness—such is the nature of bright line rules.  *United States v. Locke*, 471 U.S. 84, 94 (1985) (recognizing that "[d]eadlines are inherently arbitrary" (citation omitted)).  Moreover, what matters most is that *it is*

---

[3] Section 283 of the Patent Act separately provides for the entrance of "injunctions in accordance with the principles of equity."

*the time period chosen by Congress*.   It is, thus, the "controlling time prescription[]" (arbitrary or not) and "in face of [this] statute of limitations enacted by Congress"—which is consistent with the traditional rule—"laches cannot be invoked to bar legal relief."  *Petrella*, 134 S. Ct. at 1970, 1974.

Nor does it matter whether Section 286 is "a statute of limitations in the sense of barring a suit for infringement."  *Aukerman*, 960 F.2d at 1030; *see also id.* at 1032 (suggesting that "courts use the equitable doctrine of laches" because "there is no statute from which to determine the timeliness of an infringement action, vis-a-vis the patentee's first knowledge of infringement").   Much like the provision of the Copyright Act addressed by the Court in *Petrella*,[4] Section 286 of the Patent Act is a "look-back" provision that ensures a "successful plaintiff can gain retrospective relief" for a specified number of "years back from the time of suit"—and "only" for that period of time.  *Petrella*, 134 S. Ct. at 1972-73.  Like Section 507(b) of the Copyright Act, Section 286 of the Patent Act "directs that" the damages caused by a defendant's infringement "in years outside the [six]-year window . . . cannot be reached by" a plaintiff.  *Petrella*, 134 S. Ct. at 1973.  And as the Court held in *Petrella*, it is a necessary implication of "that feature of the statute" that a plaintiff is entitled to recover for actions brought *within* the window

---

[4] *See* 17 U.S.C. § 507(b) ("No civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued.").

chosen by Congress because the time limit chosen by Congress "itself takes account of delay." *Id.* *Aukerman* concluded otherwise[5]—but that conclusion cannot survive *Petrella* either.

Were it in doubt that *Petrella*'s focus on both the traditional rule and separation of powers applies equally here, it is confirmed by the Supreme Court's earlier treatment of a different timeliness aspect of the patent laws. In *Overland Motor Co. v. Packard Motor Car Co.*, 274 U.S. 417 (1927), a defendant charged with patent infringement argued that the patentee had delayed so long in finalizing his application with the Patent Office that he had effectively abandoned his invention. *Id.* at 422. The Court rejected that argument, noting that the Patent Act established how quickly the patentee was obliged to proceed. *Id.* at 423 ("All applications for patents shall be completed and prepared for examination within one year after the filing of the application." (quoting Act of Mar. 3, 1897, ch. 391, § 4, 29 Stat. 692, 693)). Because the patentee had complied with the statutory requirement, the defendant's charges of inequitable delay were unsustainable: "During the pendency of the application in this case, the period allowed was one year. We do not know on what principle we could apply the equitable doctrine of abandonment by laches in a case where the measure of reasonable promptness is

---

[5] *See Aukerman*, 960 F.2d at 1030 ("We are unpersuaded that section 286 should be interpreted to . . . provide, in effect, a guarantee of six years [of] damages[.]").

fixed by statute." *Id.* at 424. The Court went on to invoke words from an earlier

decision that are particularly apt in the present case:

> Neither can a party pursuing a strictly legal remedy be adjudged in the wrong if he acts within the time allowed, and pursues the method prescribed by the statute. . . . A party seeking a right under the patent statutes may avail himself of all their provisions, and the courts may not deny him the benefit of a single one.

*Id.* at 424-25 (quoting *United States v. Am. Bell Tel. Co.*, 167 U.S. 224, 246-47

(1897)). So too here.

## II.    THERE ARE GOOD REASONS FOR THE TRADITIONAL RULE

Although *Petrella*, standing alone, compels overruling *Aukerman*, there are

sound policy reasons for doing so, as well. The traditional rule that laches does not

apply to a claim for damages is not merely a historical artifact. It reflects

important differences between legal and equitable relief that remain relevant today.

*See* Bray, *supra*, at 6-7.

Consider, for example, why laches even exists as a defense. One answer is

that there are familiar problems from long-delayed suits—memories fade, stories

change, documents are lost, and so on. That answer is good as far as it goes, but it

is also the reason for a statute of limitations. By itself, that is not a reason for a

more flexible time limit, like the one embodied in the laches defense. And it is

certainly not a reason to set aside a statute of limitations—Congress's bright-line

answer to these general timeliness concerns. It is Congress's prerogative to choose

10

between a bright-line rule and a flexible standard, and its choice of the former should be respected. So the equitable defense of laches must have other purposes.

Laches responds to certain dangers to which equitable remedies are more susceptible than damages. One danger is that equitable remedies will be abused by litigants because they have asymmetric effects on the parties. In real property, the classic example is the landowner who knowingly allows an encroaching neighbor to build an expensive structure on his land because the threat of a court order to tear the structure down gives powerful leverage to exact concessions. This danger is of course well-known not only for real property but also for intellectual property. But it is almost wholly absent for damages. An award of damages is money, and the amount of money paid by the defendant is the same as the amount of money received by the plaintiff. There is no asymmetry of effect.[6]

Another danger is that litigants will abuse equitable remedies because of a temporal asymmetry. The benefit the plaintiff would derive from an injunction, accounting, constructive trust, or specific performance may fluctuate dramatically based on prices, variation in profits over time, or circumstances that lock the defendant in to a course of conduct. This danger, too, is acute for intellectual property. *See, e.g.*, Mark P. Gergen, John M. Golden & Henry E. Smith, *The*

---

[6] Of course, the defendant's loss and the plaintiff's gain of the same amount of money might be experienced differently for various reasons, such as temperament, wealth disparities, and loss aversion.

*Supreme Court's Accidental Revolution? The Test for Permanent Injunctions*, 112 Colum. L. Rev. 203, 243-44 (2012) (noting the concern that some entities will "sit back while others make costly investments based on an apparent absence of relevant patent rights, not knowing that the [plaintiff] will assert a claim of infringement after designing around the [plaintiff's] patent rights becomes much more expensive"); *Haas v. Leo Feist, Inc.*, 234 F. 105, 108 (S.D.N.Y. 1916) (L. Hand, J.) (noting this risk as a reason to apply laches to an equitable remedy in copyright). But none of these reasons for temporal asymmetry is typically present for damages.

A final danger is costly supervision of the parties. Equitable remedies are more likely to require continuing judicial oversight, whether because of the possibility of noncompliance or the possibility that they will need alteration as circumstances change. *See, e.g.*, *Original Great Am. Chocolate Chip Cookie Co. v. River Valley Cookies, Ltd.*, 970 F.2d 273, 281 (7th Cir. 1992) ("[E]quitable relief is costly to the judicial system, especially in a case such as this where the relief sought would cast the court in a continuing supervisory role."); 13A Wright et al., *supra*, § 3531.2 ("To award damages, it need only be determined that the specific activities involved with this case were unlawful. To award an injunction, much more precise determinations may become necessary."). Many of these costs are

externalities to the parties and will not be fully incorporated into their decisionmaking. Again, these costs are not characteristic of damages.

The dangers to which laches is addressed are rarely if ever present for damages. To be sure, even with respect to equitable relief, laches is not an automatic bar to tardy claims. It is a consideration "brought to bear at the remedial stage." *Petrella*, 134 S. Ct. at 1967. Only in "extraordinary circumstances" will the defendant's delay be so extreme as to justify a complete "curtailment" of an equitable remedy. *Id.* at 1977-79. And there are other equitable doctrines that also respond to these same dangers (*e.g.*, the undue hardship defense). Yet whatever the exact scope and application of laches should be for equitable relief, the point is that the policy rationales for it do not apply when a plaintiff is seeking damages.

## III.  THE PATENT ACT ADHERES TO THE TRADITIONAL RULE

### A.  Congress Confirmed—And Certainly Did Not Abrogate—The Traditional Rule In The Patent Act

*Aukerman* acknowledged the general rule we have described but concluded that it did not apply to the patent laws. Quite the contrary, in fact: *Aukerman* concluded that Congress actually *endorsed* the application of laches to claims for damages from patent infringement. As the Court saw it, Congress expressly provided for laches in Section 282 of the Patent Act, which provides, in pertinent part, that "[t]he following shall be defenses in any action involving the validity or infringement of a patent and shall be pleaded: (1) Noninfringement, absence of

13

liability for infringement or unenforceability." 35 U.S.C. § 282; *Aukerman*, 960 F.2d at 1029-30 & n.7. Moreover, *Aukerman* continued, laches was widely applied in patent disputes even after Congress first enacted a six-year limitation period in 1897, so Congress must have intended to ratify that practice when it reenacted a time limitation in 1952:

> Nothing in section 286 suggests that Congress intended by reenactment of this damage limitation to eliminate the long recognized defense of laches or to take away a district court's equitable powers in connection with patent cases.

*Id.* at 1030. For several reasons, however, this chain of reasoning is unsound.

*First*, it is entirely at odds with what the Supreme Court has recently and repeatedly said about congressional departures from traditional principles of equitable remedies: They are not to be implied lightly. *See, e.g.*, *Nken v. Holder*, 556 U.S. 418, 433 (2009); *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006); *see also Weinberger v. Romero-Barcelo*, 456 U.S. 305, 313, 320 (1982). That is not to say that Congress cannot make changes to the law of remedies when it wishes. *See Jesinoski v. Countrywide Home Loans, Inc.*, 135 S. Ct. 790, 793 (2015). But it must speak clearly to do so. *See Nken*, 556 U.S. at 433. Unless Congress does so, the courts are expected to read federal statutes as invoking, rather than altering, the law of equitable remedies. *Romero-Barcelo*, 456 U.S. at 320; *see also* Bray, *supra*, at 15-17 (giving rationales).

There is nothing in the Patent Act even to suggest that Congress altered traditional rules governing laches—let alone is there the requisite clear statement. *Aukerman* placed great weight on Section 282. *See* 960 F.2d at 1029. But that section does not even mention laches—let alone express a clear intent to deviate from the traditional rule barring its application to legal claims.

In seeming recognition of this, *Aukerman* relied upon "[t]he commentary of one of the drafters of the revised patent statute," which this Court believed "confirms the intention to retain the defense of laches." *Aukerman*, 906 F.2d at 1030. Putting aside whether this commentary, published two years later, should be accorded any authoritative weight,[7] the sentence quoted by this Court—which says that Section 282 was meant to "include . . . equitable defenses such as laches"— provides no evidence of an intent to deviate from the traditional rule either. *Id.* at 1029. Nothing in the cited drafting history suggests that Congress intended to alter the traditional rule confining laches to equitable relief.

*Second*, even if it were true that "laches was well established at the time of recodification of the patent laws in 1952," *Aukerman*, 960 F.2d at 1029—and as we demonstrate below, there was no uniform history of permitting laches *as a defense to claims for legal relief*, the question presented here—that history still

---

[7] *Cf. Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 117-18, 120 (1980) (repeating "the oft-repeated warning that" a "*post hoc* statement" of a single legislator "is far from authoritative as an expression of congressional will").

would not justify *Aukerman*'s holding. It is certainly true that "Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change." *Lorillard v. Pons*, 434 U.S. 575, 580 (1978). But that presumption applies only to judicial interpretations of *particular statutory language*. *See, e.g.*, *Shapiro v. United States*, 335 U.S. 1, 16 (1948) ("In adopting *the language used* in the earlier act, Congress must be considered to have adopted also the construction given by this Court *to such language*, and made it a part of the enactment." (emphasis added) (internal quotation marks omitted)). The question presented in *Aukerman*, and again here, is not about the meaning of Section 286's *language* but rather about the significance of that provision's *existence* for the proper use of a judicially created doctrine. *Cf. Petrella*, 134 S. Ct. at 1975 ("Laches . . . can scarcely be described as a rule for interpreting a statutory prescription."). "[C]ongressional reenactment of [Section 286 thus] tells us nothing about Congress'[s] view as to [its implications for laches], and so, on the legal issues involved in this case, Congress has been entirely silent." *Dep't of Transp. v. Pub. Citizen*, 541 U.S. 752, 770 n.4 (2004).

*Third*, even if the presumption of congressional ratification were relevant— and it is not—its prerequisites still would not be met here. For the presumption to apply, judicial practice at the time of ratification must either be established by the Supreme Court or be uniform in the lower courts. *See, e.g.*, *Metro. Stevedore Co.*

16

*v. Rambo*, 515 U.S. 291, 299 (1995); *see also* Antonin Scalia & Bryan A. Garner, *Reading Law* 322 (2012) (describing the doctrine as requiring authoritative interpretation "by the highest court in a jurisdiction" or "a uniform interpretation" by lower courts). It certainly was not the former. And despite what *Aukerman* might seem to suggest, neither was it the latter.

In fact, many (if not all) of the cases that applied laches to bar claims for patent damages did so without so much as mentioning the language that became Section 286.[8]  *See, e.g.*, *Universal Coin Lock Co. v. Am. Sanitary Lock Co.*, 104 F.2d 781, 781 (7th Cir. 1939); *George J. Meyer Mfg. Co. v. Miller Mfg. Co.*, 24 F.2d 505, 507-08 (7th Cir. 1928) (cited in *Aukerman*, 960 F.2d at 1029 n.6). These cases, therefore, hardly show that the courts treated the use of laches to bar legal damages as compatible with Section 286's language. After all, "'[q]uestions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents.'"  *Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157, 170 (2004).

Other cases that did mention Section 286's language, and which were cited in *Aukerman*, 960 F.2d at 1029 n.6, nevertheless were not concerned with the question presented here: Is laches available to bar *legal damages*? An illustrative case is *Dwight & Lloyd Sintering Co. v. Greenawalt*: It was a case about equitable

---

[8] We will refer to this language as "Section 286's language" even though that language was codified elsewhere prior to 1952.

17

relief.  *See* 27 F.2d 823, 827 (2d Cir. 1928) (L. Hand, J.) (accounting).  So too *Westco-Chippewa Pump Co. v. Delaware Electric & Supply Co.*, 64 F.2d 185, 188 (3d Cir. 1933) (injunction and accounting).

Other cases decided in the lower courts before 1952 suggested some openness to applying laches to claims for legal damages, but they did not actually do so.  *E.g.*, *France Mfg. Co. v. Jefferson Elec. Co.*, 106 F.2d 605, 609 (6th Cir. 1939); *Hartford-Empire Co. v. Swindell Bros.*, 96 F.2d 227, 232-33 (4th Cir. 1938), *modified in part on other grounds*, 99 F.2d 61 (4th Cir. 1938).  Even assuming that these opinions could be read to endorse the availability of laches for damages claims—and that is far from clear—any such endorsements are dicta.  As such, they "do not lend any additional weight to the argument that Congress ratified a settled judicial construction.  Dictum settles nothing, even in the court that utters it."  *Jama v. Immigration & Customs Enforcement*, 543 U.S. 335, 351 n.12 (2005).

Unlike the sketchy (at best) evidence in favor of applying a presumption of congressional ratification in this case, the evidence against it is conclusive.  There simply was not a consensus that applying laches to damages claims *was* permissible given Section 286.  Consider one circuit court case decided the same year as the 1952 reenactment.  In *Middleton v. Wiley*, the Eighth Circuit reversed

the trial court's use of laches, and at least one of the court's reasons was the Patent

Act's statute of limitations:

> It is clear that, under the statute, recovery of compensatory damages for infringement of a patent is not a matter of judicial grace but of legal right, and that the damages awarded may not be less than a reasonable royalty.

> The defendant Wiley asserts, in effect, that the plaintiff lost his right to damages because he waited too long to bring his action.  But persistence in the unauthorized use of a patented invention is a continuing trespass, and mere delay in seeking redress cannot destroy the right of the patentee to compensatory damages.

195 F.2d 844, 847 (8th Cir. 1952).  In light of this case alone—not to mention the

Supreme Court's general admonition in 1946 that "[i]f Congress explicitly puts a

limit upon the time for enforcing a right which it created, there is an end of the

matter," *Holmberg*, 327 U.S. at 395—it cannot plausibly be said that the 1952

patent legislation presumed the opposite.  *Cf. Fogerty v. Fantasy, Inc.*, 510 U.S.

517, 532 (1994) ("This is hardly the sort of uniform construction that Congress

might have endorsed.").

## B.     *Lane & Bodley* **Is Not To The Contrary**

Although *Aukerman* suggested otherwise, the Supreme Court's decision in

*Lane & Bodley Co. v. Locke*, 150 U.S. 193 (1893) does not "conflict[]" with the

traditional rule that laches cannot bar a claim for damages brought within a

congressionally prescribed time period.  *Aukerman*, 960 F.2d at 1031.

*First*, and most importantly, *Lane & Bodley* was a suit in equity, not an action at law. The district court opinion begins "In Equity." *Locke v. Lane & Bodley Co.*, 35 F. 289, 290 (C.C.S.D. Ohio 1888), *rev'd*, 150 U.S. 193. Indeed, the plaintiff sought an injunction and an accounting. *Id.* at 294.[9]

*Second*, when the Court decided *Lane & Bodley* in 1893, *there was no federal statute of limitations for patent law*.[10] As the Supreme Court explained in *Petrella*, the Court was therefore free to fill the hole that Congress had left open. 134 S. Ct. at 1968. It was free to apply laches, as it did in *Lane & Bodley*. And it was free to borrow a limitation period from an analogous state statute, as it would later do in *Campbell*. Neither choice would "jettison Congress's judgment on . . . timeliness." *Petrella*, 134 S. Ct. at 1967. But that is no longer true given the enactment of Section 286.

---

[9] *Menendez v. Holt*, 128 U.S. 514 (1888), a trademark infringement case also cited in *Aukerman*, 960 F.2d at 1031, is inapt for the same reason: it too was a suit for equitable relief, not an action at law for damages. *See Holt v. Menendez*, 23 F. 869, 869 (C.C.S.D.N.Y. 1885).

[10] In the 1870 Patent Act, Congress had enacted a time limitation that required patentees to bring claims during the term of their patent or within six years of the term's expiration. Act of July 8, 1870, ch. 230, § 55, 16 Stat. 198, 206. That provision was left out when Congress codified the Patent Act (and many other laws) in the *Revised Statutes* on June 22, 1874. Thus, between that date and March 3, 1897, when Congress enacted Section 286's predecessor, the 1870 Act's statute of limitations was defunct. *See Campbell v. Haverhill*, 155 U.S. 610, 614 (1895) ("[T]he [1870 Act's] federal statute of limitation has no application to any infringement committed since June 22, 1874."); *see also* Act of Mar. 3, 1897, ch. 391, § 6, 29 Stat. 692, 694 (predecessor to § 286).

Applying laches in *Lane & Bodley* was thus completely compatible with historical practice and Congress's enactments.  Applying laches to bar damages in this case would be compatible with neither.

## CONCLUSION

For the foregoing reasons, this Court should overrule those portions of its *en banc* decision in *Aukerman* holding that laches can bar an otherwise timely claim for damages based on patent infringement.

3/6/2015
_____
Date

_____
Ariel N. Lavinbuk

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitations set forth in Fed. R. App. P. 32(a)(7)(B) because this brief contains 5,663 words, excluding those parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii) and Fed. Cir. R. 32(b).  I further certify that this brief complies with the typeface requirements of Fed. R. App. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface, 14-point Times New Roman, using Microsoft Word.


Dated: March 6, 2015                                  s/ Ariel N. Lavinbuk
                                                           Ariel N. Lavinbuk

## CERTIFICATE OF SERVICE

I hereby certify that on March 6, 2015, I electronically filed the foregoing corrected brief using the Court's CM/ECF system, which will send notice of such filing to counsel for all parties.  In addition, I caused the required 31 paper copies of the brief to be delivered to the Clerk of Court's office, and 2 paper copies to be shipped via Federal Express to each party.


Dated: March 6, 2015                              s/ Ariel N. Lavinbuk
                                                  Ariel N. Lavinbuk