2013-1564

# United States Court of Appeals
## for the
# Federal Circuit

---

SCA HYGIENE PRODUCTS AKTIEBOLAG
and SCA PERSONAL CARE, INC.,

*Plaintiffs-Appellants,*

— v. —

FIRST QUALITY BABY PRODUCTS, LLC, FIRST QUALITY
HYGIENIC, INC., FIRST QUALITY PRODUCTS, INC.
and FIRST QUALITY RETAIL SERVICES, LLC,

*Defendants-Appellees.*

---

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF KENTUCKY, CASE NO. 10-CV-0122
CHIEF JUDGE JOSEPH H. MCKINLEY, JR.

---

## *EN BANC* BRIEF OF *AMICUS CURIAE* MEDINOL LTD. IN SUPPORT OF PLAINTIFFS-APPELLANTS

RICHARD H. PILDES
40 Washington Square South
New York, New York 10012
(212) 998-6377

RICHARD L. DELUCIA
ELIZABETH A. GARDNER
MARK A. CHAPMAN
A. ANTONY PFEFFER
ERIC T. SCHREIBER
JOSEPH M. PURCELL, JR.
KENYON & KENYON LLP
One Broadway
New York, New York 10004
(212) 425-7200

*Attorneys for* Amicus Curiae *Medinol Ltd.*

March 6, 2015

# CERTIFICATE OF INTEREST

Pursuant to Federal Circuit Rule 47.4 and Federal Rule of Appellate Procedure 26.1, counsel for *amicus curiae* Medinol Ltd. certifies the following:

1.     The full name of every party or amicus represented by us:

    Medinol Ltd.

2.     The name of the real party in interest if the party named in the caption is not the real party in interest:

    Not applicable.

3.     All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party represented by us:

    Zuli Holdings Ltd.

4.     The names of all law firms and the partners and associates that have appeared for the party now represented by us in the trial court or agency, or are expected to appear in this Court:

    <u>Kenyon & Kenyon LLP</u>: Richard L. DeLucia, Elizabeth A. Gardner, Mark A. Chapman, A. Antony Pfeffer, Eric T. Schreiber, Caryn Harsche Cross, and Joseph M. Purcell, Jr.

    <u>Of counsel</u>: Arthur R. Miller and Richard H. Pildes

Dated: March 6, 2015                  <u>/s/ Richard L. DeLucia</u>
                                  *Attorney for* Amicus Curiae *Medinol Ltd.*

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTEREST ................................................................................i

RULE 29(C)(4)-(5) STATEMENT ................................................................. 1

ARGUMENT ................................................................................................... 3

I.    Laches Cannot Bar a Claim for Damages Brought Within the Six-Year Limitations Period Set by Statute in 35 U.S.C. § 286 ................................... 3

    A.    *Petrella* Recognized a General Rule That Federal Courts Cannot Apply Laches to Bar Damages Within a Statutory Limitations Period ................................................................. 5

    B.    *Petrella* Rejects the Precise Reasoning of *Aukerman* ...................................... 9

    C.    Like Copyright Law, Patent Law Is No Different from Other Federal Laws That Have Statutory Limitations Periods for Damages Claims ......................................... 15

        1.    The Limitations Periods in the Copyright Act and the Patent Act Are Functionally Identical .................................. 15

        2.    Section 282 of the Patent Act Does Not Provide a Laches Defense ........................................................... 18

            a)    Noninfringement ................................................. 19

            b)    Absence of liability for infringement .................................... 19

            c)    Unenforceability ................................................. 211

            d)    P.J. Federico's Post-Enactment Commentary Cannot Be Used to Alter the Unambiguous Meaning of Section 282 ......................................... 23

CONCLUSION ........................................................................................... 27

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*A.C. Aukerman Co. v. R.L. Chaides Construction Co.*,
  960 F.2d 1020 (Fed. Cir. 1992) ................................................................. *passim*

*Bruesewitz v. Wyeth LLC*,
  131 S. Ct. 1068 (2011) ........................................................................... 25

*Conn. Nat'l Bank v. Germain*,
  503 U.S. 249 (1992) ............................................................................... 19

*Exxon Mobil Corp. v. Allapattah Servs., Inc.*,
  545 U.S. 546 (2005) ........................................................................... 24, 26

*Great-West Life & Annuity Ins. Co. v. Knudson*,
  534 U.S. 204 (2002) ............................................................................... 6

*Green v. Bock Laundry Mach. Co.*,
  490 U.S. 504 (1989) ............................................................................... 4

*Grupo Mexicano de Desarrollo, SA v. Alliance Bond Fund, Inc.*,
  527 U.S. 308 (1999) ............................................................................... 6

*Hazel-Atlas Glass Co. v. Hartford-Empire Co.*,
  322 U.S. 238 (1944) ............................................................................... 21

*In re Donaldson Co.*,
  16 F.3d 1189 (Fed. Cir. 1994) ................................................................. 26

*Ingersoll Milling Mach. Co. v. Gen. Motors Corp.*,
  110 F. Supp. 12 (N.D. Ill. 1952) ............................................................. 22

*J.P. Stevens & Co. v. Lex Tex Ltd.*,
  747 F.2d 1553 (Fed. Cir. 1984) ........................................................... 21, 24

*Medinol Ltd. v. Cordis Corp.*,
  15 F. Supp. 3d 389 (S.D.N.Y. 2014) ...................................................... 1, 12

*Metallizing Eng'g Co. v. Metallizing Co. of Am.,*
    62 F. Supp. 274 (S.D.N.Y. 1945)...................................................................... 23

*Milner v. Dep't of Navy,*
    131 S. Ct. 1259 (2011)................................................................................... 25

*Morton Salt Co. v. G.S. Suppiger Co.,*
    314 U.S. 488 (1942)...................................................................................... 22

*Petrella v. Metro-Goldwyn-Mayer, Inc.,*
    134 S. Ct. 1962 (2014)....................................................................... *passim*

*Petrella v. Metro-Goldwyn-Mayer, Inc.,*
    695 F.3d 946 (9th Cir. 2012) .......................................................................... 6

*Plaut v. Spendthrift Farm, Inc.,*
    514 U.S. 211 (1995)..................................................................................7, 8

*Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.,*
    324 U.S. 806 (1945)...................................................................................... 21

*Ragsdale v. Wolverine World Wide, Inc.,*
    535 U.S. 81 (2002)......................................................................................... 7

*Sony Corp. of Am. v. Universal City Studios, Inc.,*
    464 U.S. 417 (1984)...................................................................................... 15

*Standard Oil Co. v. Nippon Shokubai Kagaku Kogyo Co.,*
    754 F.2d 345 (Fed. Cir. 1985) ...................................................................... 18

*Steffen v. W. J. Schoenberger Co.,*
    90 F. Supp. 710 (N.D. Ohio 1950) ................................................................ 22

*Troy v. Samson Mfg. Corp.,*
    758 F.3d 1322 (Fed. Cir. 2014) .................................................................9, 14

*United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs.,*
    484 U.S. 365 (1988)...................................................................................... 20

*Zenith Radio Corp. v. Radio Corp. of Am.,*
    106 F. Supp. 561 (D. Del. 1952) .................................................................. 22

**Statutes**

17 U.S.C. § 507(b) ................................................................... 16

35 U.S.C. § 271(a) ................................................................... 19

35 U.S.C. § 282(b)(1) ............................................................... 18

35 U.S.C. § 286 ................................................................3, 17, 27

**Other Authorities**

1 D. Dobbs, *Law of Remedies* (2d. ed. 1993) ......................... 5

98 Cong. Rec. 9323 (1952) ....................................................... 22

*Black's Law Dictionary* (10th ed. 2014) ................................ 21

H.R. Rep. No. 82-1923 (1952) ........................................... 16, 26

H.R. Rep. No. 940 (1896) ................................................. 11, 16

P.J. Federico, *Commentary on the New Patent Act*,
    Title 35, United States Code Annotated
    (West 1954), *reprinted in* 75 J. Pat. & Trademark Office Soc'y 161 (1993) ............... 24

*Patent Law Codification and Revision:*
    *Hearing on H.R. 3760 Before Subcomm. No. 3 of the H. Comm.*
    *on the Judiciary*, 82d Cong. 151(1951) ....................................... 19, 26

Pub. L. No. 73-415, 48 Stat. 1064 (1934) ...................... 14

Pub. L. No. 82-593, 66 Stat. 792 (1952) ....................... 20

S. Rep. No. 82-1979 (1952) .............................................16, 22, 27

**Rules**

Fed. R. Civ. P. 8(c) ............................................................ 14

# RULE 29(C)(4)-(5) STATEMENT

Like Appellants in this appeal, *amicus curiae* Medinol Ltd. is a patent plaintiff whose claims for past damages were barred by laches. Applying the framework in *A.C. Aukerman Co. v. R.L. Chaides Construction Co.*, 960 F.2d 1020 (Fed. Cir. 1992) (en banc), the district court ruled after a four-day trial that laches applied, and entered judgment dismissing Medinol's complaint against defendants Cordis Corporation and Johnson & Johnson. *See Medinol Ltd. v. Cordis Corp.*, 15 F. Supp. 3d 389 (S.D.N.Y. 2014).

After the Supreme Court decided *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S. Ct. 1962 (2014), Medinol sought relief from the judgment under Rule 60(b), arguing that *Aukerman* was no longer good law in view of *Petrella*. While Medinol's request was pending, the panel in this appeal held that, despite *Petrella*, *Aukerman* was still binding precedent, which only the Supreme Court or this Court *en banc* could reconsider. Panel Op. at 8-9. Relying entirely on the panel's decision, the district court denied Medinol's Rule 60(b) request.

Medinol appealed (No. 15-1027). Medinol also filed an *amicus* brief supporting Appellants' petition for rehearing *en banc*, which this Court granted. Meanwhile, Medinol petitioned for *en banc* hearing of its own appeal, and submitted its principal brief, but the Court *sua sponte* stayed Medinol's appeal and held its petition in abeyance pending resolution of this appeal. Because the outcome of Medinol's appeal depends on this Court confirming that *Aukerman* is no longer good law in view of *Petrella*,

1

Medinol submits this *amicus* brief supporting Appellants, pursuant to Rule 29 and the Court's order inviting *amicus* briefs.

No party's counsel authored any part of this brief. No party, party's counsel, or other person beside Medinol contributed money to fund the preparation or submission of this brief.

**ARGUMENT**

## I.    Laches Cannot Bar a Claim for Damages Brought Within the Six-Year Limitations Period Set by Statute in 35 U.S.C. § 286

The Supreme Court's decision in *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S. Ct. 1962 (2014), recognizes general principles about (1) the proper relationship between legal claims and equitable defenses, and (2) the proper separation-of-powers relationship between federal courts and Congress. As to the former, *Petrella* makes clear that the general rule is that laches cannot be used to "bar a claim for damages brought within the time allowed by a federal statute of limitations." *Id.* at 1974. The Court twice stated that it had *never* applied laches to bar such claims. *See id.* at 1974-75. As to the second principle, the Court made clear that this general rule is also required by the separation of powers: When Congress enacts a statutory limitations period, that period *is* the law concerning whether a suit seeking legal relief is timely, and "courts are not at liberty to jettison Congress' judgment on the timeliness of suit." *Id.* at 1967.

These general principles of *Petrella* apply to all federal statutes. In *Petrella,* the Court viewed the defendant's arguments as advocating an exception to these principles for copyright cases; but as the Court held, "[t]here is nothing at all 'different' about copyright cases" that justified abandoning these general rules. *Id.* at 1974 (citation omitted). The Patent Act is no more an exception to these general principles than is the Copyright Act. This Court must follow *Petrella*'s holding that, "in

face of a statute of limitations enacted by Congress, laches cannot be invoked to bar legal relief." *Id.*

Moreover, *Petrella* means that when a statute provides for a specific limitations period for damages actions, if Congress also intends to permit laches to operate within that limitations period, Congress must expressly and clearly create that laches defense in the statute itself. Congress legislates against the background of the general rule and the long-standing, consistent historical practice that, as *Petrella* recognized, laches is not available to supplant statutory damages-limitations periods. Given this background, it would be extremely unusual for Congress to create a damages-limitations period and also create a laches defense operable within that period. Thus, courts must apply a strong presumption against that peculiar possibility; courts cannot rely on mere inferences or ambiguous congressional suggestions in order to infer such a policy, but instead must find it in clear and unmistakable statutory language. "A party contending that legislative action changed settled law has the burden of showing that the legislature intended such a change." *Green v. Bock Laundry Mach. Co.*, 490 U.S. 504, 521 (1989). As the dissent in *Petrella* observed, *Petrella* recognizes that if a statute with a limitations period is silent about the availability of a laches defense, then the courts cannot recognize that defense. *Id.* at 1983 (Breyer, J., dissenting) (noting that *Petrella* concludes that statutory "silence" regarding laches precludes the defense in damages actions). *Petrella* commands that congressional silence must be treated as not altering the general rule that laches is not available in damages actions when Congress

4

creates a statutory limitations period. As explained below, the Patent Act nowhere expressly recognizes a laches defense, and, under *Petrella,* that is the end of the matter. But even were this Court free to look to the legislative history or other extrinsic sources, nothing in those sources demonstrates that Congress intended to create a laches defense that could apply to defeat the right it created to seek damages within the six-year window of section 286.

### A. *Petrella* Recognized a General Rule That Federal Courts Cannot Apply Laches to Bar Damages Within a Statutory Limitations Period

*Petrella* reaffirmed the traditional rule that laches is not a defense to claims for legal damages brought within a statutorily specified limitations period. This rule is deeply enough embedded in American law that, as the majority concluded, not even the dissent could uncover a "case in which [the Supreme] Court has approved the application of laches to bar a claim for damages brought within the time allowed by a federal statute of limitations." *Petrella*, 134 S. Ct. at 1974. As the Court observed, the principal application of laches is "to claims of an equitable cast for which the Legislature has provided no fixed time limitation." *Id.* at 1973. In support of these principles, the Court cited the leading treatise on remedies. *Id.* (citing 1 D. Dobbs, *Law of Remedies* § 2.4(4) (2d. ed. 1993)). These are general principles of American law, not unique in any way to the Copyright Act.[1]

_____

[1] Indeed, the Supreme Court has insisted in cases decided since *Aukerman* that federal courts must continue to respect the historical distinction between legal and equitable

Moreover, the Supreme Court in *Petrella* endorsed the position of one of the leading federal-courts scholars in the country, Judge William Fletcher. Judge Fletcher had concurred below only out of obligation to Ninth Circuit precedent, but rightly also concluded that laches had no place in legal actions for infringement brought within a statutory limitations period. As Judge Fletcher put it, laches is "entirely a judicial creation" and cannot be invoked to defeat Congress' intent in creating a defined limitations period for legal actions. *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 695 F.3d 946, 958 (9th Cir. 2012) (Fletcher, J., concurring); *cf. Petrella*, 134 S. Ct. at 1972.

In addition, *Petrella* recognized that Congress, by enacting rolling limitations periods such as those in the Copyright and Patent Acts, crafts a very specific bargain that courts must respect. On the one hand, each act of infringement triggers a new limitations period, but "a successful plaintiff can gain retrospective relief only three [or six] years back from the time of suit," *Petrella*, 134 S. Ct. at 1973; on the other hand, these provisions permit a copyright or patent holder to defer suit until it can judge "whether litigation is worth the candle," and still recover for infringements within those three (or six) years, *see id.* at 1976. Only by "disregarding" the

---

remedies. *See, e.g., Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 209-16 (2002) (holding that an action seeking essentially legal relief not typically available in equity was not authorized by a statute allowing only "equitable relief"); *Grupo Mexicano de Desarrollo, SA v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 322-23 (1999) (rejecting argument that the merger of law and equity changed the requirements of a traditionally equitable rule because "'[n]otwithstanding the fusion of law and equity by the Rules of Civil Procedure, the substantive principles of Courts of Chancery remain unaffected'") (citation omitted).

interlocking elements of this bargain reflected in the statute, as the Court put it, could a court invoke laches to bar damages claims within the statutory limitations period. *See id.* at 1973. But courts cannot disregard these bargains crafted by Congress. *See, e.g., Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 93-94 (2002) (Kennedy, J.) (noting that "any key term in an important piece of legislation" typically reflects "the result of compromise between groups with marked but divergent interests" and that "[c]ourts and agencies must respect and give effect to these sorts of compromises").

As *Petrella* concluded, these principles mean that Congress has already balanced the relevant considerations in setting a statutory limitations period. That period *is* the law for damages actions. In the Copyright Act, Congress prescribed by statute the effect of "delay" in bringing suit: The plaintiff may not recover for infringement occurring before the limitations period. *See Petrella*, 134 S. Ct. at 1972-73. Courts have no authority to supplant or override Congress' considered judgment; they may not "jettison Congress' judgment on the timeliness of suit" and replace it with their own. *Id.* at 1967. The statutory limitations period "itself takes account of delay." *Id.* at 1973. Therefore, the Court broadly held, "in face of a statute of limitations enacted by Congress, laches cannot be invoked to bar legal relief." *Id.* at 1974.

As *Petrella* makes clear, these principles also follow from the separation of powers. The Supreme Court in recent decades has vigorously stressed the importance of separation-of-powers boundaries between Congress and the courts. In *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211 (1995), for example, the Court held that Congress

7

had violated the separation of powers and acted unconstitutionally when it legislated to expand the time period for suit in a class of securities cases that had already reached final judgment in the courts. Noting that "[t]he Framers of our Constitution lived among the ruins of a system of intermingled legislative and judicial powers, which had been prevalent in the colonies long before the Revolution," *id.* at 219, the Court concluded that "the need for separation of legislative from judicial power was plain," *id.* at 222. The Court stressed that "[t]he essential balance created by this allocation of authority was a simple one. The Legislature would be possessed of power to 'prescrib[e] the rules by which the duties and rights of every citizen are to be regulated,' but the power of '[t]he interpretation of the laws' would be 'the proper and peculiar province of the courts.'" *Id.* at 222 (alterations in original) (quoting The Federalist No. 78, at 523, 525 (J. Cooke ed., 1961)). *Petrella* expressly recognizes the other side of that "essential balance": Just as Congress is constitutionally forbidden to intrude into the judicial power, the courts are forbidden to intrude into the legislative power. *See, e.g.*, 134 S. Ct. at 1967. That is the reason *Petrella* holds that judicial recognition of laches in the teeth of a statutory limitations period cannot be justified as judicial interpretation or even judicial gap-filling; it is simply supplanting Congress' rule with a judicially-created rule. *See id.* at 1974-75. As *Petrella* recognized, separation-of-powers principles prohibit courts from supplanting the congressional role in this way.

*Petrella* therefore applies equally to claims for damages under all federal statutes with limitations periods, including the Patent Act, unless Congress expressly chooses to adopt a different rule. The limitations period in section 286 of the Patent Act is functionally identical to its counterpart in the Copyright Act, as discussed below. Thus, it is unquestionably a "statute of limitations" within the meaning of *Petrella*. Because Congress has decided when claims for legal damages in patent actions are timely, the proper constitutional separation of powers requires courts to accept and respect that congressional judgment.

## B. *Petrella* Rejects the Precise Reasoning of *Aukerman*

As this Court has recognized, "intervening Supreme Court authority" that "undercut[s] the theory or reasoning underlying . . . prior circuit precedent" "implicitly overrule[s]" that circuit court precedent. *Troy v. Samson Mfg. Corp.*, 758 F.3d 1322, 1326 (Fed. Cir. 2014). *Petrella* implicitly overrules *Aukerman* because it specifically rejects virtually every argument upon which *Aukerman* rested, as explained below.[2]

First, *Aukerman* confronted and directly rejected the central principle that the Supreme Court endorsed in *Petrella*. In *Aukerman,* this Court did not accept the

---

[2] The Supreme Court mentioned *Aukerman* in a footnote in *Petrella*, *see* 134 S. Ct. at 1974 n.15, to confirm the Court's usual practice of not deciding questions that were not directly before the Court. The Court merely noted that "[w]e have not had occasion to review the Federal Circuit's position" that "laches can bar damages incurred prior to the commencement of suit, but not injunctive relief." *Id.* This statement did not, of course, in any way endorse this Court's reasoning or holding. Indeed, the dissent cited *Aukerman* as a case that was inconsistent with *Petrella's* holding. *See id.* at 1985 (Breyer, J., dissenting).

argument that "where an express statute of limitations applies against a claim, laches cannot apply *within* the limitation period." 960 F.2d at 1030. The Supreme Court held precisely the opposite in *Petrella*, concluding that courts are required to treat statutory limitations periods for damages as precluding the defense of laches. The Court pointedly noted that it had "never applied laches to bar in their entirety claims for discrete wrongs occurring **within** a federally prescribed limitations period." 134 S. Ct. at 1975 (emphasis added). The Court adhered to this practice in *Petrella*, broadly holding that "in face of a statute of limitations enacted by Congress, laches cannot be invoked to bar legal relief." *Id.* at 1974. Federal courts cannot override the policy judgment of Congress reflected in a fixed statutory limitations period.

Second, *Aukerman* concluded that the limitations period of section 286 was merely an "arbitrary limitation on the period for which damages may be awarded," and that courts were therefore justified in invoking their "discretionary power" to make case-by-case judgments based on the equities. 960 F.2d at 1030. But *Petrella* forbids this approach. Federal courts cannot treat a limitations period prescribed by Congress as "arbitrary": Statutory limitations periods *are* the law and that law is binding on the federal courts. The principle underlying *Petrella* is that courts have no legal authority to exercise their own equitable "judgment" to further limit the timeliness of suit. Doing so intrudes on the domain of Congress. Courts exercising such discretionary powers in the face of congressional limitations periods are engaging

10

in legislation, not judicial interpretation, and thereby departing from the "essentially gap-filling, not legislation-overriding, office of laches." *Petrella*, 134 S. Ct. at 1974-75.

This "discretionary power" also conflicts with the legislative goal of achieving uniformity in the time within which claims can be pursued. As *Petrella* explained, "[i]nviting individual judges to set a time limit other than the one Congress prescribed would tug against the uniformity that Congress sought to achieve when it enacted § 507(b)." *Id.* at 1975. The very point of section 286 is to bring the same uniformity to patent disputes. *See* H.R. Rep. No. 940, at 2 (1896) (addressing the original predecessor to section 286 and explaining that "[i]t seems to your committee desirable that there should be a uniform statute of limitations"). Under *Petrella*, courts may not undermine that uniformity.

A fixed limitations period serves another important legislative purpose: providing clear guidance to regulated actors, on which they are entitled to rely. *See Petrella*, 134 S. Ct. at 1976 ("[Section 507(b)] allows a copyright owner to defer suit until she can estimate whether litigation is worth the candle. She will miss out on damages for periods prior to the three-year look-back, but her right to prospective relief should, in most cases, remain unaltered."). That purpose is severely undermined by a doctrine that superimposes on the "arbitrary" statutory limitations period a "discretionary" power for courts to determine that, in hindsight, the plaintiff's delay was "unreasonable" and "prejudicial."

This is exactly what happened to *amicus* Medinol: As a patent owner, Medinol knowingly surrendered significant damages for past infringement as it postponed litigation in favor of pursuing a mutually beneficial business relationship with the infringers, Cordis and Johnson & Johnson. But the district court nevertheless invoked its discretion under *Aukerman* to deny Medinol the benefit of the statutory scheme because, in hindsight, it concluded Medinol's delay was unreasonable and prejudicial. *See generally Medinol Ltd. v. Cordis Corp.*, 15 F. Supp. 3d 389 (S.D.N.Y. 2014).

This Court's treatment in *Aukerman* of section 286 as merely an "arbitrary limitation" is, therefore, directly contrary to the purposes of that statute and to the way courts are obligated to treat statutory limitations periods. *Petrella* forbids courts from encroaching upon the legislative power and assuming for themselves the power to deem the statutory limitations period inapplicable in a given case. The judgment of Congress *is* the law and must be respected.

Third, *Aukerman* expressed concern about patent holders being "guaranteed" a right to seek damages for six years. *Aukerman* treated any such guarantee as inappropriate, because that guarantee might be "unfair" in particular cases. Thus, *Aukerman* rejected the argument "that section 286 should be interpreted to preclude the defense of laches and provide, in effect, a guarantee of six years damages regardless of equitable considerations arising from delay in assertion of one's rights." 960 F.2d at 1030. But *Petrella* held that statutory limitations periods do, as a matter of law, guarantee the legal right to seek damages within the limitations period. The

Supreme Court reasoned that "Congress' time provisions secured to authors . . . a **right** to sue for infringement occurring no more than three years back from the time of suit. That regime leaves little place for a doctrine that would further limit the timeliness of a copyright owner's suit." 134 S. Ct. at 1977 (emphasis added and internal quotation omitted). Section 507(b) and similar statutory limitations periods are both a time limitation on a plaintiff's right and also a guarantee ("a right") that, within that time period, plaintiffs are entitled to seek damages. *See also id.* at 1974 ("a claim for damages brought within the time **allowed** by a federal statute of limitations" (emphasis added)). Courts may not abrogate that entitlement by invoking laches. Because, as explained below, section 286 is functionally identical to section 507(b), it follows from *Petrella* that section 286 "guarantee[s]" the right to seek past damages that this Court rejected in *Aukerman.*

Fourth, *Aukerman* dispensed with the traditional division between legal claims and equitable claims. This Court concluded that it was "unpersuaded that the technical distinction between application of laches against legal damages and an equitable accounting . . . should be made." 960 F.2d at 1031. But again, *Petrella* reached exactly the opposite conclusion. *Petrella* emphasized that the historical division between legal and equitable claims is essential to the proper application of laches where there is a statutory limitations period. As the Court explained, "laches is a defense developed by courts of equity; its principal application was, and remains, to claims of an equitable cast for which the Legislature has provided no fixed time

13

limitation." 134 S. Ct. at 1973. And, while *Petrella* forbids applying laches to bar legal relief, the Court recognized the defense's application to equitable relief, in certain circumstances. *Id.* at 1967, 1977-79.

In reaffirming the importance of the traditional distinction between law and equity in the context of remedies, *Petrella* also rejected this Court's basis for ignoring that distinction. In *Aukerman*, this Court concluded that "the right to interpose the equitable defense of laches in a civil action is specifically recognized in Fed. R. Civ. P. 8(c)." 960 F.2d at 1031. The cited rule provides that "a party must affirmatively state any avoidance or affirmative defense, including . . . laches"; in other words, any such defense must be pled if a party wishes to rely on it. The rule does not purport to authorize courts, as a substantive matter, to apply every listed defense to every cause of action, for every form of relief—nor could it. *See* Pub. L. No. 73-415, 48 Stat. 1064 (1934) (The Rules "shall neither abridge, enlarge, nor modify the substantive rights of any litigant."). The defendant in *Petrella* argued that Rule 8 permits laches to be applied to legal claims, but the Supreme Court denied such an "expansive role" for the defense, implicitly rejecting this Court's conclusion in *Aukerman*. *See* 134 S. Ct. at 1974. As the Supreme Court noted, "[b]oth before and after the merger of law and equity in 1938," i.e., the adoption of the Federal Rules, "this Court has cautioned against invoking laches to bar legal relief." *Id.* at 1973.

In sum, *Petrella* implicitly overrules *Aukerman* because it specifically rejects virtually every rationale upon which *Aukerman* rested. *See Troy*, 758 F.3d at 1326.

14

### C. Like Copyright Law, Patent Law Is No Different from Other Federal Laws That Have Statutory Limitations Periods for Damages Claims

In its order granting rehearing *en banc*, the Court directed the parties to "consider[] any relevant differences between copyright and patent law." As explained below, there are no differences that could permit a result different in patent cases from the one reached by the Supreme Court in *Petrella*. Indeed, an *amicus* association from the patent sector urged the Supreme Court in *Petrella* to reject Ms. Petrella's argument, precisely because accepting her argument, they recognized, would necessarily require the same result under the Patent Act. Br. of the Ass'n for Competitive Technology at 11 ("Her argument, if accepted, poses significant and unwarranted risk to the availability of laches in patent infringement cases, given the 'historic kinship between patent law and copyright law,' *Sony Corp. of Am. v. Universal City Studios, Inc.,* 464 U.S. 417, 439 (1984), and the parallel, rolling statutes of limitations in both areas."). The Court's logic in accepting Ms. Petrella's argument that laches cannot apply to damages actions under the Copyright Act necessarily compels the same result under the Patent Act.

### 1. The Limitations Periods in the Copyright Act and the Patent Act Are Functionally Identical

One purported difference between the Patent and Copyright Acts to which Appellees pointed in opposing rehearing, D.I. 74 at 3-7, is that section 286 of the Patent Act is not styled a "statute of limitations" or couched in terms of prohibiting

suit.[3] *See, e.g., Aukerman*, 960 F.2d at 1030. But, as Appellants correctly note, section 286 is functionally identical to the statute of limitations at section 507(b) of the Copyright Act addressed by the Supreme Court in *Petrella*: Both provisions limit the recovery of pre-suit damages to those for infringements that occurred during a fixed time period prior to suit. *See* D.I. 84 at 14-15. A further examination of sections 286 and 507(b) confirms this functional identity and, consequently, confirms that *Petrella* is controlling in patent cases.

Section 507(b) provides that "[n]o civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued." 17 U.S.C. § 507(b). However, as the Supreme Court explained in *Petrella*, the "separate-accrual rule" dictates that "when a defendant commits successive violations, the statute of limitations runs separately from each violation," i.e., each act of infringement. 134 S. Ct. at 1969. Thus, "[e]ach wrong gives rise to a discrete 'claim' that 'accrue[s]' at the time the wrong occurs." *Id.* (alteration in original). In other words, the limitations period runs separately from each infringing act, not from the initial infringing act. Therefore, if a defendant has infringed both before and during the three-year look-back period, "the copyright holder's suit ordinarily will be timely under § 507(b) with respect to more recent acts of infringement (*i.e.*, acts within the

---

[3] Nevertheless, as Appellants explain, the legislative histories of section 286 and its predecessor in the 1897 statute identify each as a "statute of limitations." D.I. 84 at 20-25 (citing H.R. Rep. No. 82-1923, at 10 (1952); S. Rep. No. 82-1979, at 9 (1952); H.R. Rep. No. 940, at 2 (1896)).

three-year window), but untimely with respect to prior acts of the same or similar kind." *Id.* at 1970. Accordingly, section 507(b) provides "retrospective relief running only three years back from the date the complaint was filed." *Id.*

The limitations period in the Patent Act has precisely the same effect. Under section 286, "no recovery shall be had for any infringement committed more than six years prior to the filing of the complaint." 35 U.S.C. § 286. As such, a six-year limitation is measured against each individual act of infringement. "[T]he effect of section 286," like the limitations period in the Copyright Act, "is to limit recovery to damages for infringing acts committed within six years of the date of the filing of the infringement action. One counts backwards from the date of the complaint to limit pre-filing damages . . . ." *Aukerman*, 960 F.2d at 1030. Or, said differently, the Patent Act provides "retrospective relief running only [six] years back from the date the complaint was filed." *Cf. Petrella*, 134 S. Ct. at 1970.

Thus, when the Supreme Court held in *Petrella* that "in face of a statute of limitations enacted by Congress, laches cannot be invoked to bar legal relief," *id.* at 1974, it was examining a "statute of limitations" that—by the Court's own interpretation—operates in the same manner as section 286. Each is measured against individual infringing acts, rather than the beginning or end of a series of infringements, and each entirely bars a suit for infringement if, and only if, **all** acts of infringement occurred prior to the three- or six-year window. Therefore, that the language of section 507(b) explicitly prohibits the maintenance of suit is a distinction

without a difference. *See, e.g., Standard Oil Co. v. Nippon Shokubai Kagaku Kogyo Co.*, 754 F.2d 345, 347-48 (Fed. Cir. 1985) (concluding that section 286 is not a "'statute of limitations' in the sense that it defeats the right to bring suit," but affirming dismissal because no infringements took place within the six-year window). Both statutes prescribe the effect of a plaintiff's delay in commencing a lawsuit on the recovery of damages. If the Copyright Act's three-year look-back period "itself takes account of delay," *Petrella*, 134 S. Ct. at 1973, then so, too, does section 286.

### 2. Section 282 of the Patent Act Does Not Provide a Laches Defense

Another purported difference between the Patent and Copyright Acts cited by Appellees, D.I. 74 at 7-9, is section 282 of the Patent Act. Indeed, this Court's holding in *Aukerman* that laches can bar pre-suit damages was based in part on its conclusion that section 282(b)(1) provides a laches defense. 960 F.2d at 1029 & n.7. That provision states that "[n]oninfringement, absence of liability for infringement [and] unenforceability" shall be defenses to an action for patent infringement. 35 U.S.C. § 282(b)(1). As Appellants correctly note, section 282(b)(1) does not list "laches" as a defense. D.I. 84 at 27-28. Nevertheless, this Court found laches in this provision, without explaining how the statutory text supported that conclusion. *See Aukerman*, 960 F.2d at 1029. An analysis of the text and statutory context of this provision establishes that none of "[n]oninfringement, absence of liability for infringement or unenforceability" can be read to include laches.

18

### a)    Noninfringement

There can be no question that "noninfringement" in section 282(b)(1) does not include laches. "When the words of a statute are unambiguous . . . judicial inquiry is complete." *See Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 254 (1992) (internal quotation marks omitted). The meaning of "noninfringement" is unambiguous: It means that the defendant has not "infringe[d] the patent," namely, it has not made, used, sold, offered for sale or imported the patented invention without authorization. *See* 35 U.S.C. § 271(a).

### b)    Absence of liability for infringement

"[A]bsence of liability for infringement" in section 282(b)(1) also cannot be read to include laches. As explained below, it refers instead to a defense to indirect infringement (i.e., inducement or contributory infringement).

The Patent Act of 1952 was the first patent statute to define infringement. *See Patent Law Codification and Revision: Hearing on H.R. 3760 Before Subcomm. No. 3 of the H. Comm. on the Judiciary*, 82d Cong. 151 (1951) (hereinafter, "*1951 Hearing*"). A major issue facing Congress was indirect infringement. *See id.* at 150-52. Contributory infringement had been part of the common law for some time, but recent decisions regarding patent misuse had weakened the doctrine. *See id.* at 152, 154-55. Congress adopted a Patent Act that defined two ways in which a party may be liable for another's infringement. One was inducing infringement: "Whoever actively induces infringement of a patent shall be liable as an infringer." Pub. L. No. 82-593, § 271(b),

66 Stat. 792, 811 (1952). The other was contributory infringement, and whoever performed the requisite acts would be "liable as a contributory infringer." *Id.*, § 271(c).

It is, of course, no defense to a charge of inducing infringement, or of contributory infringement, that the defendant did not itself directly infringe. Rather, the proper defense is that the defendant is not "*liable as* an infringer" or "*liable as* a contributory infringer," respectively. Against this backdrop, the meaning of "absence of liability for infringement" in section 282(b)(1) is clear: Just as Congress set forth "noninfringement" as a defense to direct infringement under section 271(a), it spelled out "absence of liability for infringement" as a defense to indirect infringement under sections 271(b) and (c). Therefore, the phrase "absence of liability for infringement," when read together with the rest of the Patent Act, is unambiguous. *Cf. United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs.*, 484 U.S. 365, 371 (1988) ("A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme.").[4]

Thus, "absence of liability for infringement" fits within the statutory scheme as a defense to indirect infringement. It cannot properly be read to include laches.

---

[4] The only other meaning to which this language is even arguably susceptible is that a party is, for **whatever** reason, not liable for infringement. But here, in the context of section 282(b), it would hardly make sense for Congress to include a defense that means, essentially, "any defense." This would render the rest of section 282(b) superfluous, including the catch-all of "any other fact or act made a defense by this title" in item (4).

### c)    Unenforceability

Finally, "unenforceability" in section 282(b)(1) cannot be read to include laches. "Unenforceability" should be given its plain meaning in light of the established usage of the term in patent cases as of 1952, namely, defenses that preclude a patentee from enforcing a patent at all, such as inequitable conduct and patent misuse.[5]

First, "unenforceability" includes the remedy for inequitable conduct (a type of unclean hands) before the Patent Office. "The Supreme Court has discussed inequitable conduct, as a defense to a claim of patent infringement, in terms of enforceability." *J.P. Stevens & Co. v. Lex Tex Ltd.*, 747 F.2d 1553, 1560 (Fed. Cir. 1984) (citing *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814-16 (1945)).[6] In *Precision Instrument*, decided a few years before the 1952 enactment of the Patent Act, the Supreme Court held that a plaintiff who had concealed perjury from the Patent Office, 324 U.S. at 816-19, "possessed such 'unclean hands' as to foreclose **its right to enforce** the patents," *id.* at 807-08 (emphasis added). *See also Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 250 (1944) (requiring "complete denial

---

[5] *Cf. Black's Law Dictionary* 1760 (10th ed. 2014) (defining "unenforceable," in relation to a contract, to mean "valid but incapable of being enforced").

[6] *J.P. Stevens* also relied in part on the commentary of P.J. Federico to conclude that inequitable conduct was within section 282(b)(1). *See* 747 F.2d at 1561. For the same reasons discussed in Appellants' brief, D.I. 84 at 25-27, and below in section C-2-d, *infra*, this reliance on Mr. Federico's commentary to interpret section 282 was improper. However, the Court's conclusion in *J.P. Stevens* that a finding of inequitable conduct renders the patent unenforceable is supported by reasoning independent of the commentary. *See* 747 F.2d at 1561.

21

of all relief" based on patentee's fraud before the Patent Office and courts); *Ingersoll Milling Mach. Co. v. Gen. Motors Corp.*, 110 F. Supp. 12, 34-35 (N.D. Ill. 1952) (addressing contention that "the patent is unenforceable because of unclean hands" based on "[a] charge of fraud in deliberately withholding information from the Patent Office for the purpose of obtaining invalid patent claims").

Second, the remedy for patent misuse also falls within the "unenforceability" provision of section 282(b)(1). Patent misuse serves as a defense for any accused infringer; it is not limited to those defendants harmed by the misuse. *See Morton Salt Co. v. G.S. Suppiger Co.*, 314 U.S. 488, 494 (1942) ("It is the adverse effect upon the public interest of a successful infringement suit, in conjunction with the patentee's course of conduct, which disqualifies him to maintain the suit, regardless of whether the particular defendant has suffered from the misuse of the patent."). Thus, misuse is not a personal defense to a particular defendant but instead renders a patent itself unenforceable. Moreover, in decisions contemporaneous with the enactment of the 1952 Patent Act, courts linked misuse to the word "unenforceable."[7] *See, e.g., Zenith Radio Corp. v. Radio Corp. of Am.*, 106 F. Supp. 561, 563 (D. Del. 1952) ("[P]laintiff . . . also raised the same issue of **unenforceability because of misuse**." (emphasis added)); *Steffen v. W. J. Schoenberger Co.*, 90 F. Supp. 710, 711 (N.D. Ohio 1950)

---

[7] The Senate Committee added "unenforceability" to section 282(b)(1) without explanation, *see* S. Rep. No. 82-1979 (1952), but one Senator briefly noted the amendment as "plac[ing] in the code this word which has been used in numerous court decisions under the section in question." 98 Cong. Rec. 9323 (1952) (statement by Sen. McCarran).

("[P]rovisions . . . in a patent license constituted an abuse of the patent monopoly and made the patent **unenforceable** in a patent infringement action." (emphasis added)); *Metallizing Eng'g Co. v. Metallizing Co. of Am.*, 62 F. Supp. 274, 277 (S.D.N.Y. 1945) ("[T]he patent was held **unenforceable** because the exclusive licensee conditioned the grant of a license to the use of unpatented stoker switches made by and purchased from it." (emphasis added)).

In contrast to inequitable conduct and patent misuse, laches does not render a patent unenforceable. *See Aukerman*, 960 F.2d at 1030 ("Recognition of laches as a defense, thus, does not affect the general enforceability of the patent against others . . . ."). Laches is inherently a personal defense specific to a particular defendant because it depends on the plaintiff's unreasonable delay in filing suit against that defendant, the resulting prejudice to that defendant, and the equities between the parties. *See id.* at 1032-34. Moreover, under *Aukerman*, a finding of laches does not preclude enforcement, via an injunction or damages, for infringement occurring after the lawsuit is filed. *See id.* at 1041.

Therefore, it strains the language of the Patent Act to assert that laches falls within "unenforceability" in section 282(b)(1).

### d)    P.J. Federico's Post-Enactment Commentary Cannot Be Used to Alter the Unambiguous Meaning of Section 282

This Court in *Aukerman* did not analyze the language of section 282. Rather, its conclusion that section 282(b)(1) includes laches as a defense relied entirely on the

commentary of P.J. Federico, published in 1954, two years **after** enactment of the statute. *See* 960 F.2d at 1029.[8, 9] In addition to the reasons set forth by Appellants, D.I. 84 at 25-28, there are additional reasons why Mr. Federico's commentary does not provide a legitimate basis for reading a laches defense into section 282.

First, Mr. Federico's commentary cannot be used to interpret section 282 because the statutory text is not ambiguous. The Supreme Court has made clear that "the authoritative statement is the statutory text, not the legislative history or any other extrinsic material," and that extrinsic material may only be consulted if the statutory text is ambiguous. *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 568 (2005) ("Extrinsic materials have a role in statutory interpretation only to the

---

[8] The entirety of Mr. Federico's commentary on the subject was:

> The defenses which may be raised in an action involving the validity or infringement of a patent are specified in general terms, by the second paragraph of section 282, in five numbered items. Item 1 specifies "Noninfringement, absence of liability for infringement, or unenforceability" (the last word was added by amendment in the Senate for greater clarity); this would include the defenses such as that the patented invention has not been made, used or sold by the defendant; license; and **equitable defenses such as laches**, estoppel and unclean hands.

P.J. Federico, *Commentary on the New Patent Act*, Title 35, United States Code Annotated (West 1954), *reprinted in* 75 J. Pat. & Trademark Office Soc'y 161, 215 (1993) (emphasis added).

[9] *Aukerman* also cited *J.P. Stevens* for the proposition that "[p]aragraph (1) [of Section 282] includes 'equitable defenses such as laches, estoppel and unclean hands.'" 960 F.2d at 1029 (quoting 747 F.2d at 1561) (alteration in original). In *J.P. Stevens*, however, the Court merely cited Mr. Federico's commentary for this proposition, without further analysis. *See* 747 F.2d at 1561.

extent they shed a reliable light on the enacting Legislature's understanding of **otherwise ambiguous terms**." (emphasis added)). As explained above, the meaning of each of "noninfringement," "absence of liability for infringement," and "unenforceability" in section 282(b)(1) is not ambiguous. Therefore, extrinsic materials, such as Mr. Federico's commentary or the legislative history, cannot properly be used to vary the unambiguous meaning of section 282(b)(1). *See id.* at 567 (declining to use legislative history to interpret statutory provision that is "not ambiguous" in view of "the [statutory] text, read in light of other statutory provisions and our established jurisprudence"); *Milner v. Dep't of Navy*, 131 S. Ct. 1259, 1267 (2011) (declining to use legislative history to interpret "clear statutory language").

Second, as Appellants correctly note, Mr. Federico's commentary cannot be used to interpret section 282 for the additional reasons that it includes his own personal views and it post-dates Congress' consideration and passage of the Patent Act. D.I. 84 at 26-27. The Supreme Court has cautioned that even "[p]ost-enactment **legislative** history (a contradiction in terms) is not a legitimate tool of statutory interpretation." *Bruesewitz v. Wyeth LLC*, 131 S. Ct. 1068, 1081 (2011) (emphasis added). This is as it should be: By definition, a statement by a subsequent Congress about the meaning of an earlier act could not have been considered by the enacting Congress. *Id.* at 1082. If a post-enactment statement by Congress is "not a legitimate tool of statutory interpretation," *see id.* at 1081, then the post-enactment writings of a single commentator are even less legitimate.

Third, even if it were proper to consider extrinsic materials in interpreting section 282(b)(1), *cf. Exxon*, 545 U.S. at 568, the legislative history of that provision would be far more relevant to gleaning Congress's intent than Mr. Federico's post-enactment commentary. As this Court has explained, Mr. Federico's commentary "is not legislative history per se that may be relied upon to indicate Congressional intent." *In re Donaldson Co.*, 16 F.3d 1189, 1194 n.3 (Fed. Cir. 1994).

The actual legislative history of section 282 gives no indication that Congress intended the provision to include a laches defense. Before the bill was passed, Mr. Federico testified before the House subcommittee responsible for the Patent Act. But he never mentioned laches. Discussing section 282 (then numbered section 242), he merely stated that "[t]he defenses to an action for infringement are stated in general terms, changing the language in the present statute, but not changing the substance materially." *1951 Hearing, supra*, at 108.[10] And, like section 282, the predecessor statute (section 4920 of the Revised Statutes) made no mention of laches. Rather, in addition to permitting a defendant to plead the "general issue" (i.e., that the allegations of infringement are incorrect), it listed five defenses that roughly correspond to (1) concealing the best mode, (2) derivation, (3) anticipation by prior patents and publications, (4) prior invention, and (5) the public-use and on-sale bars. *See* H.R. Rep. No. 82-1923, at 51-52 (1952) (R.S. 4920). Mr. Federico's testimony, that no material

---

[10] Mr. Federico also referred to section 286 (then section 246) as "the statute of limitations." *Id.*

26

substantive change was being made, appeared almost *verbatim* in House and Senate committee reports when the bill was reintroduced the following year. *See id.* at 10; S. Rep. No. 82-1979, at 9 (1952). These reports also did not mention laches.

For all of the above reasons, section 282(b) does not provide a laches defense that would permit courts to derogate from *Petrella* and apply laches to bar damages within the limitations period of section 286.

## CONCLUSION

For the above reasons and those set forth in Appellants' brief, the *en banc* Court should confirm that *Aukerman* is no longer good law in view of *Petrella* and that laches may not bar claims for damages within the limitations period of 35 U.S.C. § 286.

Respectfully submitted,

Dated: March 6, 2015

/s/ Richard L. DeLucia
Richard L. DeLucia
Elizabeth A. Gardner
Mark A. Chapman
A. Antony Pfeffer
Eric T. Schreiber
Joseph M. Purcell, Jr.
KENYON & KENYON LLP
One Broadway
New York, NY 10004-1007
(212) 425-7200

Richard H. Pildes
40 Washington Square South
New York, NY 10012
(212) 998-6377

*Attorneys for* Amicus Curiae *Medinol Ltd.*

## CERTIFICATE OF COMPLIANCE

Pursuant to Rules 29(c)(7) and 32(a)(7)(C) of the Federal Rules of Appellate Procedure, the undersigned certifies that this brief complies with the type-volume limitation of Rules 29(d) and 32(a)(7)(B) of 7,000 words for an *amicus curiae* brief (i.e., half the 14,000-word limitation for a principal brief). This brief contains 6,904 words, calculated by the word-processing software used to prepare it.

Dated: March 6, 2015

/s/ Eric T. Schreiber
Eric T. Schreiber
KENYON & KENYON LLP
One Broadway
New York, NY 10004-1007
(212) 425-7200

*Attorney for* Amicus Curiae *Medinol Ltd.*

CERTIFICATE OF FILING AND SERVICE

I, Kersuze Morancy, hereby certify pursuant to Fed. R. App. P. 25(d) that, on

March 6, 2015 the foregoing *En Banc* Brief of **Amicus Curiae** Medinol Ltd. in

Support of Plaintiffs-Appellants was filed through the CM/ECF system and served

electronically on the individual listed below:

Martin J. Black (martin.black@dechert.com)
Kevin M. Flannery (kevin.flannery@dechert.com)
Teri-Lynn A. Evans (teri-lynn.evans@dechert.com)
Dechert LLP
2929 Arch Street
Philadelphia, PA 19104-2808
(215) 994-4000
*Attorneys for Plaintiffs-Appellants*

Kenneth P. George (kgeorge@arelaw.com)
Charles R. Macedo (cmacedo@arelaw.com)
Mark Berkowitz (mberkowitz@arelaw.com)
Amster Rothstein & Ebenstein LLP
90 Park Avenue
New York, NY 10016
(212) 336-8000
*Attorneys for Defendants-Appellees*

In addition, the required 31 copies will be sent to the Court once approved by
the Court.

/s/ Kersuze Morancy
Kersuze Morancy