# United States Court of Appeals for the Federal Circuit

———————————

**SCA HYGIENE PRODUCTS AKTIEBOLAG SCA PERSONAL CARE, INC.,**
*Plaintiffs-Appellants*

**v.**

**FIRST QUALITY BABY PRODUCTS, LLC, FIRST QUALITY HYGIENIC, INC., FIRST QUALITY PRODUCTS, INC. AND FIRST QUALITY RETAIL SERVICES, LLC,**
*Defendants-Appellees*

———————————

2013-1564

———————————

Appeal from the United States District Court for the Western District of Kentucky in No. 10-CV-0122, Chief Judge Joseph H. McKinley, Jr.

———————————

Decided: September 18, 2015

———————————

MARTIN J. BLACK, Dechert LLP, Philadelphia, PA, argued for plaintiffs-appellants. Also represented by TERI-LYNN A. EVANS, KEVIN MARK FLANNERY, SHARON K. GAGLIARDI.

KENNETH GEORGE, Amster Rothstein & Ebenstein LLP, New York, NY, argued for defendants-appellees.

Also represented by MARK BERKOWITZ, SANDRA ADELE HUDAK, CHARLES R. MACEDO.

J. DEREK VANDENBURGH, Carlson, Caspers, Vandenburgh, Lindquist & Schuman, P.A., Minneapolis, MN, for amicus curiae The Toro Company. Also represented by JOSEPH W. WINKELS.

RICHARD DELUCIA, Kenyon & Kenyon LLP, New York, NY, for amicus curiae Medinol Ltd. Also represented by MARK ALEXANDER CHAPMAN, ELIZABETH GARDNER, ALOYSIUS ANTONY PFEFFER, JOSEPH MATTHEW PURCELL, JR., ERIC SCHREIBER; RICHARD H. PILDES, New York, NY.

GREGORY A. CASTANIAS, Jones Day, Washington, DC, for amicus curiae Intellectual Property Owners Association. Also represented by CAROLINE EDSALL, ISRAEL SASHA MAYERGOYZ; PHILIP STATON JOHNSON, Johnson & Johnson, New Brunswick, NJ; KEVIN H. RHODES, 3M Innovative Properties Company, St. Paul, MN; HERBERT CLARE WAMSLEY, JR., Intellectual Property Owners Association, Washington, DC.

ANDREW JOHN DHUEY, Berkeley, CA, for amicus curiae Morris Reese.

MICHAEL J. FARNAN, Farnan LLP, Wilmington, DE, for amicus curiae ART+COM Innovationpool GmbH.

ARIEL LAVINBUK, Robbins, Russell, Englert, Orseck, Untereiner & Sauber LLP, Washington, DC, for amici curiae Stephanos Bibas, Samuel L. Bray, John F. Duffy. Also represented by MICHAEL E. KENNEALLY.

NANCY MERTZEL, Schoeman Updike Kaufman & Stern LLP, New York, NY, for amicus curiae American Intellectual Property Law Association. Also represented by

DENISE WHELTON DEFRANCO, Finnegan, Henderson, Farabow, Garrett & Dunner, LLP, Boston, MA.

STEVEN C. SEREBOFF, SoCal IP Law Group LLP, Westlake Village, CA, for amicus curiae Conejo Valley Bar Association. Also represented by MARK ANDREW GOLDSTEIN, MEENAKSHI KALA SARVAIYA.

PHILIP J. WARRICK, Klarquist Sparkman, LLP, Portland, OR, for amici curiae Garmin International, Inc., Limelight Networks, Inc., LinkedIn Corporation, Mentor Graphics Corporation, Newegg Inc., SAP America, Inc., SAS Institute Inc., Symmetry LLC, Xilinx, Inc. Also represented by JOHN D. VANDENBERG.

MITCHELL M. WONG, Ashmasons LLP, New York, NY, for amicus curiae Ashmasons LLP.

JOHN THORNE, Kellogg, Huber, Hansen, Todd, Evans & Figel, PLLC, Washington, DC, for amici curiae Dell Inc., CTIA The Wireless Association, Hewlett-Packard Company, Intel Corporation, Xerox Corporation. Also represented by AARON M. PANNER, GREGORY G. RAPAWY.

SUZANNE MICHEL, Google Inc., Washington, DC, for amicus curiae Google Inc.

DEREK SHAFFER, Quinn Emanuel Urquhart & Sullivan, LLP, Washington, DC, for amicus curiae Marvell Semiconductor, Inc.

EUGENE M. GELERNTER, Patterson Belknap Webb & Tyler LLP, New York, NY, for amici curiae Johnson & Johnson, Cordis Corporation. Also represented by GREGORY DISKANT, SCOTT B. HOWARD.

VERA RANIERI, Electronic Frontier Foundation, San Francisco, CA, for amici curiae Electronic Frontier Foundation, Public Knowledge.

KEVIN J. CULLIGAN, Goodwin Procter LLP, New York, NY, for amicus curiae Askeladden, L.L.C. Also represented by JOHN P. HANISH; BRIAN TIMOTHY BURGESS, WILLIAM M. JAY, Washington, DC.

DOUGLAS A. MIRO, Ostrolenk Faber LLP, New York, NY, for amicus curiae Universal Remote Control, Inc. Also represented by ALAN FEDERBUSH.

MICHAEL SONGER, Crowell & Moring, LLP, Washington, DC, for amicus curiae AT&T Mobility II LLC. Also represented by VINCENT JOHN GALLUZZO.

GREER N. SHAW, Snell & Wilmer, LLP, Los Angeles, CA, for amicus curiae T-Mobile USA, Inc. Also represented by TRISHA FARMER, Phoenix, AZ.

DOMINIC P. ZANFARDINO, Brinks Gilson & Lione, Chicago, IL, for amicus curiae Cook Medical LLC. Also represented by CYNTHIA A. HOMAN, ANDREW S. MCELLIGOTT.

BRETT L. FOSTER, Holland & Hart LLP, Salt Lake City, UT, for amicus curiae Hydro Engineering, Inc. Also represented by DAWN M. DAVID, MARK A. MILLER.

MARK CHRISTOPHER FLEMING, Wilmer Cutler Pickering Hale and Dorr LLP, Boston, MA, for amicus curiae Roche Molecular Systems, Inc. Also represented by ROBERT J. GUNTHER, JR., OMAR KHAN, New York, NY.

MATTHEW WOLF, Arnold & Porter LLP, Washington, DC, for amici curiae Briggs & Stratton Corp., Harley-Davidson Motor Company, Inc., Jockey International,

Inc., Rockwell Automation, Inc., Wisconsin Manufacturers & Commerce.

---

Before PROST, *Chief Judge,* NEWMAN, LOURIE, DYK, MOORE, O'MALLEY, REYNA, WALLACH, TARANTO, CHEN, and HUGHES, *Circuit Judges.** 

Opinion for the court filed by *Chief Judge* PROST in which *Circuit Judges* NEWMAN, LOURIE, DYK, O'MALLEY, and REYNA join.

Opinion concurring-in-part, dissenting-in-part filed by *Circuit Judge* HUGHES in which *Circuit Judges* MOORE, WALLACH, TARANTO, and CHEN join.

PROST, *Chief Judge.*

We convene en banc to resolve whether, in light of the Supreme Court's recent decision in *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S. Ct. 1962 (2014), laches remains a defense to legal relief in a patent infringement suit. We conclude that Congress codified a laches defense in 35 U.S.C. § 282(b)(1) that may bar legal remedies. Accordingly, we have no judicial authority to question the law's propriety. Whether Congress considered the quandary in *Petrella* is irrelevant—in the 1952 Patent Act, Congress settled that laches and a time limitation on the recovery of damages can coexist in patent law. We must respect that statutory law.

Nevertheless, we must adjust the laches defense in one respect to harmonize it with *Petrella* and other Supreme Court precedent. We emphasize that equitable principles apply whenever an accused infringer seeks to use laches to bar ongoing relief. Specifically, as to injunc-

---

\*    Circuit Judge Stoll did not participate in this decision.

tions, considerations of laches fit naturally within the *eBay* framework. In contrast, *Menendez v. Holt*, 128 U.S. 514 (1888), and *Petrella* counsel that laches will only foreclose an ongoing royalty in extraordinary circumstances.

## I. BACKGROUND

The present dispute arose out of litigation concerning adult incontinence products. SCA alleges that First Quality, a competitor in the adult incontinence products market, infringes U.S. Patent No. 6,375,646 ('646 patent). SCA first contended that First Quality's Prevail® All Nites™ product infringes the '646 patent in a letter sent to First Quality on October 31, 2003. The correspondence explained:

> It has come to our attention that you are making, selling and/or offering for sale in the United States absorbent pants-type diapers under the name Prevail® All Nites™. We believe that these products infringe claims of [the '646 patent].

> We suggest that you study [the '646 patent]. If you are of the opinion that the First Quality Prevail® All Nites™ absorbent pants-type diaper does not infringe any of the claims of this patent, please provide us with an explanation as to why you believe the products do not infringe. If you believe that the products do infringe, please provide us with your assurance that you will immediately stop making and selling such products.

J.A. 544.

First Quality responded on November 21, 2003 and claimed the patent was invalid:

> As you suggested, we studied [the '646 tent]. . . . In addition, we made a cursory review of prior patents and located U.S. Patent No.

> 5,415,649, ("the '649 Patent"), which was filed in
> the United States on October 29, 1991 and is
> therefore prior to your client's '646 Patent. A re-
> view of Figs. 3 and 4 of the prior '649 Patent re-
> veals the same diaper construction claimed by
> the '646 Patent. Thus, the prior '649 Patent inval-
> idates your client's '646 Patent. As you know, an
> invalid patent cannot be infringed.

J.A. 547. SCA and First Quality ceased communications regarding the '646 patent after First Quality's response. However, on July 7, 2004, SCA requested reexamination of the '646 patent in light of the '649 patent. SCA did not notify First Quality of the reexamination because, in SCA's view, U.S. Patent and Trademark Office ("PTO") reexaminations are public and First Quality could follow the proceedings itself. Yet, from First Quality's point of view, SCA dropped its infringement allegations against First Quality after First Quality argued the patent was invalid in the November 21st letter.

The PTO instituted reexamination on the '646 patent and, on March 27, 2007, confirmed the patentability of all twenty-eight original claims and issued several other claims SCA added during reexamination. Meanwhile, First Quality invested heavily in its protective underwear business. In 2006, First Quality expanded its line of adult incontinence products. In 2008, First Quality acquired Tyco Healthcare Retail Group LP, which had several lines of competing products, and in 2009 First Quality spent another $10 million to purchase three more lines of pro-tective underwear products. SCA was aware of First Quality's activities, but never mentioned the '646 patent to First Quality during this time.

On August 2, 2010—over three years after reexami-nation concluded—SCA filed a complaint alleging that First Quality infringes the '646 patent. Service of the complaint was the first time in nearly seven years that

SCA had communicated with First Quality regarding the '646 patent. The district court proceeded with discovery and issued a claim construction order. First Quality then moved for partial summary judgment of noninfringement and for summary judgment of laches and equitable estoppel. The district court granted First Quality's motion as to laches and equitable estoppel and dismissed the noninfringement motion as moot.

SCA appealed, and on September 17, 2014, a panel of this court affirmed the district court's opinion on laches, but reversed as to equitable estoppel. *See SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*, 767 F.3d 1339 (Fed. Cir. 2014) ("*Panel Opinion*"). On laches, the panel rejected SCA's argument that the Supreme Court's *Petrella* decision abolished laches in patent law, reasoning instead that the panel was bound by this court's prior en banc opinion in *A.C. Aukerman Co. v. R.L. Chaides Construction Co.*, 960 F.2d 1020 (Fed. Cir. 1992) (en banc), and that *Petrella* left *Aukerman* intact. *Panel Opinion* at 1345. As to the delay element, the panel opinion held that while "SCA was not required to provide notice of the reexamination to First Quality," "SCA remained silent for more than three years after the patent came out of reexamination." *Id.* at 1346. "Given the circumstances, SCA should have been prepared to reassert its rights against First Quality shortly after the '646 patent emerged from reexamination." *Id.* Therefore, the panel concluded that "SCA has failed to raise a genuine issue of material fact regarding the reasonability of its delay." *Id.*

With respect to the prejudice element of laches, the panel affirmed the district court's analysis. Specifically, the panel agreed that First Quality made a number of significant capital expenditures in its adult incontinence business, and that First Quality likely would have "restructured its activities to minimize infringement liability if SCA had brought suit earlier." *Id.* at 1347. Because

SCA did not present any contrary evidence, the panel held that "SCA has not identified any evidence that raises a genuine issue of material fact regarding First Quality's presumed economic prejudice." *Id*. at 1348. And although the district court did not explicitly weigh the equities in determining that laches applied, the panel concluded the error was harmless. *Id*. Thus, the panel affirmed the district court's grant of summary judgment on laches.[1]

SCA subsequently filed a petition for rehearing en banc, asking this court to reconsider *Aukerman* in light of *Petrella*. On December 30, 2014, this court granted SCA's petition and posed the following two en banc questions:

(a) In light of the Supreme Court's decision in *Petrella v. Metro-Goldwyn-Mayer*, 134 S. Ct. 1962 (2014) (and considering any relevant differences between copyright and patent law), should this court's en banc decision in *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020 (Fed. Cir. 1992), be overruled so that the defense of laches is not applicable to bar a claim for damages based on patent infringement occurring within the six-year damages limitations period established by 35 U.S.C. § 286?

---

[1]    On equitable estoppel, the panel reversed the district court's grant of summary judgment because competing inferences could be drawn as to the meaning of SCA's silence regarding the '646 patent. *Panel Opinion* at 1350. The panel also held that a dispute of material fact remained over whether First Quality relied on SCA's alleged misleading communication because First Quality could have relied on its own belief that the '646 patent was invalid or simply ignored the '646 patent. *Id*. at 1350–51.

(b) In light of the fact that there is no statute of limitations for claims of patent infringement and in view of Supreme Court precedent, should the defense of laches be available under some circumstances to bar an entire infringement suit for either damages or injunctive relief? *See, e.g., Lane & Bodley Co. v. Locke*, 150 U.S. 193 (1893).

*SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*, No. 2013-1564, 2014 WL 7460970, at *1 (Fed. Cir. Dec. 30, 2014) (granting en banc review). Following briefing, including numerous amicus briefs, we held oral argument on June 19, 2015.

We have jurisdiction under 28 U.S.C. § 1295(a)(1).

## II. VIABILITY OF LACHES AFTER *PETRELLA*

### A

SCA contends that, after the Supreme Court's decision in *Petrella*, laches is no longer available as a defense to patent infringement within the six-year damages recovery period. We last addressed our laches law en banc in *Aukerman*. There, we set out five rules regarding the laches defense:

1. Laches is cognizable under 35 U.S.C. § 282 (1988) as an equitable defense to a claim for patent infringement.

2. Where the defense of laches is established, the patentee's claim for damages prior to suit may be barred.

3. Two elements underlie the defense of laches: (a) the patentee's delay in bringing suit was unreasonable and inexcusable, and (b) the alleged infringer suffered material prejudice attributable to the delay. The district court should consider these factors and all of the ev-

> idence and other circumstances to determine
> whether equity should intercede to bar pre-
> filing damages.

> 4. A presumption of laches arises where a pa-
> tentee delays bringing suit for more than six
> years after the date the patentee knew or
> should have known of the alleged infringer's
> activity.

> 5. A presumption has the effect of shifting the
> burden of going forward with evidence, not the
> burden of persuasion.

*Aukerman*, 960 F.2d at 1028.

Four different portions of *Aukerman*'s reasoning are especially relevant to this case. First, we determined in *Aukerman* that laches was codified in 35 U.S.C. § 282. *Aukerman* explained that, "[a]s a defense to a claim of patent infringement, laches was well established at the time of recodification of the patent laws in 1952." *Id.* at 1029. We also credited P.J. Federico's *Commentary on the New Patent Act* for its observation that the second paragraph of § 282 includes "equitable defenses such as laches, estoppel and unclean hands." *Id.* (quoting P.J. Federico, *Commentary on the New Patent Act*, 35 U.S.C.A. 1, 55 (West 1954) (hereinafter Federico *Commentary*)).

Second, *Aukerman* addressed the argument that laches conflicts with 35 U.S.C. § 286, which limits recovery of damages to the six years prior to the complaint. We explained that "[i]n other areas of our jurisdiction, laches is routinely applied within the prescribed statute of limitations period for bringing the claim." *Id.* at 1030 (citing *Cornetta v. United States*, 851 F.2d 1372 (Fed. Cir. 1988) (en banc) (military pay); *Reconstruction Finance Corp. v. Harrisons & Crosfield Ltd.*, 204 F.2d 366 (2d Cir.), *cert. denied*, 346 U.S. 854 (1953) (breach of contract)). Moreover, we observed that § 286 (or a virtually

identical analogue) "has been in the patent statute since 1897," and that, "[w]ithout exception, all circuits recognized laches as a defense to a charge of patent infringement despite the reenactment of the damages limitation in the 1952 statute." *Id.* *Aukerman* also noted that "section 286 is not a statute of limitations in the sense of barring a suit for infringement." *Id.* Rather, "the effect of section 286 is to limit recovery to damages for infringing acts committed within six years of the date of the filing of the infringement action." *Id.* Finally, we reasoned that laches and a statute of limitations are not inherently incompatible. "By section 286, Congress imposed an *arbitrary* limitation on the period for which damages may be awarded on any claim for patent infringement. Laches, on the other hand, invokes the *discretionary* power of the district court to limit the defendant's liability for infringement by reason of the equities between the particular parties." *Id.* (emphasis in original).

Third, we rejected the argument "that laches, by reason of being an equitable defense, may be applied only to monetary awards resulting from an equitable accounting, not to legal claims for damages." *Aukerman*, 960 F.2d at 1031. According to the *Aukerman* court, the merger of law and equity courts allowed laches to bar legal relief. When in 1915 Congress enacted 28 U.S.C. § 398—which authorized parties to plead equitable defenses at law without having to file a separate bill in equity—"laches became available to bar legal relief, including patent damage actions." *Id.* We also found persuasive the fact that Federal Rule of Civil Procedure 8(c) recognizes laches as a defense in civil actions. *Id.*

Fourth, *Aukerman* considered whether laches bars recovery of pre-filing damages only, or whether it precludes the entire suit. In ruling that laches prohibits recovery of pre-filing damages only, *Aukerman* relied on the Supreme Court's *Menendez* decision. *Aukerman* quoted the following portion of *Menendez*:

> Mere delay or acquiescence cannot defeat the remedy by injunction in support of the legal right, unless it has been continued so long[,] and under such circumstances[,] as to defeat the right itself. . . . Acquiescence[,] to avail[,] must be such as to create a new right in the defendant. . . .
>
> So far as the act complained of is completed, acquiescence may defeat the remedy on the principle applicable when action is taken on the strength of encouragement to do it[;] but so far as the act is in progress[,] and lies in the future, the right to the intervention of equity is not generally lost by previous delay, in respect to which the elements of an estoppel could rarely arise.

*Aukerman*, 960 F.2d at 1040 (quoting *Menendez*, 128 U.S. at 523–24.) *Aukerman* was motivated by preserving the distinction between laches—which bars only pre-suit damages—and equitable estoppel—which bars the entire suit. *Id.* Estoppel, which does not necessarily involve delay in bringing suit, requires "statements or conduct of the patentee which must 'communicate . . . in a misleading way' . . . that the accused infringer will not be disturbed by the plaintiff patentee in the activities in which the former is currently engaged." *Id.* at 1042. *Aukerman* explained that the "stated difference in the effect of laches and estoppel has served well to emphasize that more is required in the overall equities than simple laches if an alleged infringer seeks to wholly bar a patentee's claim." *Id.* at 1040. The court dismissed a rule by which laches could bar all relief "in egregious circumstances." *Id.*

For over two decades, *Aukerman* governed the operation of laches in patent cases. However, last year in *Petrella* the Supreme Court held that laches was not a defense to legal relief in copyright law. *Petrella* calls portions of *Aukerman*'s reasoning into question, necessitating our present en banc reconsideration of laches.

*Petrella* involved an assertion that Metro-Goldwyn-Mayer's ("MGM") critically-acclaimed 1980 film Raging Bull infringed a copyright in a 1963 screenplay authored by Frank Petrella. Frank Petrella's daughter, Paula Petrella ("Petrella"), renewed the copyright in 1991, but did not contact MGM until seven years later. *Petrella*, 134 S. Ct. at 1971. Over the next two years, Petrella and MGM exchanged letters concerning Petrella's copyright claim. *Id.* Petrella then went silent, and did not file suit until January 6, 2009, about nine years after her last correspondence with MGM. *Id.* To dispose of the suit, MGM moved for summary judgment of laches, which the district court granted and the Ninth Circuit affirmed.

However, the Supreme Court reversed, holding that laches is no defense to a copyright infringement suit brought within the Copyright Act's statutory limitations period. Fundamentally, the Supreme Court reasoned that "the copyright statute of limitations, § 507(b), itself takes account of delay," crowding out the judiciary's power to decide whether a suit is timely. *Id.* at 1973. According to the Court, "[l]aches . . . originally served as a guide when no statute of limitations controlled the claim." *Id.* at 1975. Historically, "laches is a defense developed by courts of equity; its principal application was, and remains, to claims of an equitable cast for which the Legislature has provided no fixed time limitation." *Id.* at 1973. Laches is thus "gap-filling, not legislation-overriding." *Id.* at 1974. In this respect, separation of powers concerns drove the result in *Petrella*. *Petrella* consequently held that "in face of a statute of limitations enacted by Congress, laches cannot be invoked to bar legal relief." *Id.* Therefore, under *Petrella*, "[t]o the extent that an infringement suit seeks relief solely for conduct occurring within the limitations period . . . courts are not at liberty to jettison Congress' judgment on the timeliness of suit." *Id.* at 1967.

In addition, the *Petrella* Court conceded that "there has been, since 1938, only one form of action—the civil action." *Petrella*, 134 S. Ct. at 1974 (internal quotation marks omitted). But, the Court responded, "the substantive and remedial principles [applicable] prior to the advent of the federal rules [have] not changed." *Id.* (alterations in original) (internal quotation marks omitted). "Both before and after the merger of law and equity in 1938, this Court has cautioned against invoking laches to bar legal relief." *Id.* at 1973.

*Petrella* also addressed the extent to which laches should affect equitable relief. The Court explained: "In extraordinary circumstances, however, the consequences of a delay in commencing suit may be of sufficient magnitude to warrant, at the very outset of the litigation, curtailment of the relief equitably awardable." *Id.* at 1977. *Petrella* then contrasted a Sixth Circuit case involving a copyrighted architectural design and the facts in *Petrella*. In the Sixth Circuit case, *Chirco v. Crosswinds Communities, Inc.*, 474 F.3d 227 (6th Cir. 2007), the plaintiffs "would not be entitled to an order mandating destruction of the housing project" embodying the copyrighted design because "the plaintiffs knew of the defendants' construction plans before the defendants broke ground, yet failed to take readily available measures to stop the project; and the requested relief would work an *unjust* hardship upon the defendants and innocent third parties." *Petrella*, 134 S. Ct. at 1978 (emphasis in original) (internal quotation marks omitted). In *Petrella*, however, "Petrella notified MGM of her copyright claims *before* MGM invested millions of dollars in creating a new edition of Raging Bull. And the equitable relief Petrella seeks—*e.g.,* disgorgement of unjust gains and an injunction against future infringement—would not result in total destruction of the film, or anything close to it." *Id.* (emphasis in original) (internal quotation marks omitted). Furthermore, the Court reasoned that "[a]llowing Petrella's suit to go

forward will put at risk only a fraction of the income MGM has earned during that period and will work no unjust hardship on innocent third parties, such as consumers who have purchased copies of Raging Bull. The circumstances here may or may not (we need not decide) warrant limiting relief at the remedial stage, but they are not sufficiently extraordinary to justify threshold dismissal." *Id.* (citation omitted).

Nonetheless, the Supreme Court continued: "Should Petrella ultimately prevail on the merits, the District Court, in determining appropriate injunctive relief and assessing profits, may take account of her delay in commencing suit." *Id.* The Court then laid out several considerations for the district court. In particular, the "court should closely examine MGM's alleged reliance on Petrella's delay." *Id.* "This examination should take account of MGM's early knowledge of Petrella's claims, the protection MGM might have achieved through pursuit of a declaratory judgment action, the extent to which MGM's investment was protected by the separate-accrual rule, the court's authority to order injunctive relief on such terms as it may deem reasonable, and any other considerations that would justify adjusting injunctive relief or profits." *Id.* at 1978–79 (internal quotation marks and citation omitted). In conclusion, the Court assured that, "on the facts thus far presented," Petrella would remain entitled to an ongoing royalty. *Id.* at 1979 ("Whatever adjustments may be in order in awarding injunctive relief, and in accounting for MGM's gains and profits, on the facts thus far presented, there is no evident basis for immunizing MGM's present and future uses of the copyrighted work, free from any obligation to pay royalties.").

Finally, the Supreme Court in *Petrella* recognized that Congress could provide for a laches defense, noting, as an example, that it had done so in the Lanham Act, governing trademarks. *Id.* at 1974 n.15. The Court took no position on whether its decision extends to the patent

context, remarking that "based in part on § 282 and commentary thereon, legislative history, and historical practice, the Federal Circuit has held that laches can bar damages incurred prior to the commencement of suit, but not injunctive relief. We have not had occasion to review the Federal Circuit's position." *Id.* (citation omitted).

Still, *Petrella* clearly casts doubt on several aspects of *Aukerman*. The following sections reexamine the availability of laches to bar recovery of damages incurred within the six-year limitations period.

## B

First, we consider the character of 35 U.S.C. § 286. Section 286 states, in relevant part: "Except as otherwise provided by law, no recovery shall be had for any infringement committed more than six years prior to the filing of the complaint or counterclaim for infringement in the action." 35 U.S.C. § 286. The parties and amici fervently debate whether § 286 is a statute of limitations or a damages limitation. By its terms, § 286 is a damages limitation. The statute does not preclude bringing a claim—instead, it limits a patentee's damages recovery to compensation for only the last six years of infringement. *See Standard Oil Co. v. Nippon Shokubai Kagaku Kogyo Co.*, 754 F.2d 345, 347–48 (Fed. Cir. 1985).

However, this distinction is irrelevant to the resolution of this case under *Petrella*. As discussed above at II.A, *Petrella* focuses on the fact that, in enacting a statute of limitations, Congress has spoken on the timeliness of copyright infringement damages claims. Thus, the question under *Petrella* is whether Congress has prescribed a time period for recovery of damages. Section 286 is one such prescription. In § 286, Congress provided a six-year time period for recovery of damages. Given that laches also considers the timeliness of damages claims, § 286—a damages-barring time provision—invokes *Petrella*'s logic at least as much as, and perhaps

more than, a statute of limitations. *Petrella*, 134 S. Ct. at 1973 ("[T]he copyright statute of limitations, § 507(b), itself takes account of delay."). Moreover, because patent infringement is a continuous tort, there is no relevant functional difference between a damages limitation and a statute of limitations. We therefore see no substantive distinction material to the *Petrella* analysis between § 286 and the copyright statute of limitations considered in *Petrella*.

## C

Next, we determine that Congress codified a laches defense in 35 U.S.C. § 282(b)(1). Section 282(b)[2] provides:

The following shall be defenses in any action involving the validity or infringement of a patent and shall be pleaded:

(1) Noninfringement, absence of liability for infringement or unenforceability.

(2) Invalidity of the patent or any claim in suit on any ground specified in part II as a condition for patentability.

(3) Invalidity of the patent or any claim in suit for failure to comply with—

(A) any requirement of section 112, except that the failure to disclose the best

---

[2] This version of § 282(b) incorporates amendments by the America Invents Act that, due to later effective dates, are inapplicable to the instant case. See Pub. L. 112–29, § 15(a), (c), 125 Stat. 284, 328; § 20(g), (j)(1), (l), 125 Stat. 284, 334–35 (2011). Those amendments, however, would not affect our decision today. For convenience, therefore, we use the current version of the statute.

mode shall not be a basis on which any claim of a patent may be canceled or held invalid or otherwise unenforceable; or

(B) any requirement of section 251.

(4) Any other fact or act made a defense by this title.

By its plain terms, § 282 broadly sets out defenses available in a patent infringement or validity suit. Rather than enumerate specific defenses, subsection (1) lists categories of defenses—"[n]oninfringement, absence of liability for infringement or unenforceability." Subsections (2) and (3) follow this pattern, referring to invalidity based on "any ground specified in part II as a condition for patentability," "any requirement of section 112," and "any requirement of section 251." And § 282(b) concludes with a catch-all provision in subsection (4): "[a]ny other fact or act made a defense by this title" is a defense within § 282(b).

The House and Senate Reports on § 282 confirm that Congress intended § 282 to have broad reach. Only one sentence in each Report describes § 282(b), but both endorse an expansive interpretation of the subsection. The Senate Report explains that "[t]he five defenses named in R. S. 4920 are omitted and replaced by a broader paragraph specifying defenses in general terms." S. Rep. No. 82-1979 at 8–9 (1952), 1952 U.S.C.C.A.N. 2394, 2422. Likewise, the House Report clarifies that "[t]he defenses to a suit for infringement are stated in general terms, changing the language in the present statute, but

not materially changing the substance."[3]    H.R. Rep. No. 82-1923, at 10 (1952).

Contemporary commentary by "P. J. Federico, a principal draftsman of the 1952 recodification," *Diamond v. Chakrabarty*, 447 U.S. 303, 321 (1980), reveals that the "broader" and "general" § 282 codified the laches defense. Federico's *Commentary on the New Patent Act*, which appears as a prologue to Title 35 in West's initial publication of the statute, states:

> The defenses which may be raised in an action involving the validity or infringement of a patent are specified in general terms, by the second paragraph of section 282, in five numbered items. Item 1 specifies "Noninfringement, absence of liability for infringement, or unenforceability" (the last word was added by amendment in the Senate for greater clarity); *this would include* the defenses such as that the patented invention has not been made, used or sold by the defendant; license; and *equitable defenses such as laches*, estoppel and unclean hands."

Federico *Commentary* (emphases added).

The dissent criticizes our reliance on Federico, Dissent at 9–10, but the Supreme Court has trusted Federico as an authority on the Patent Act at least thrice. *See*

---

[3]    The dissent asserts that the words "not materially changing the substance" indicate that § 282 is no broader than R. S. 4920. Dissent at 8. But by the statutes' plain terms that contention is wrong. R. S. 4920 enumerated five specific defenses. Even putting aside § 282(b)(1) and the catch-all provision in §282(b)(4), § 282(b)(2) and (b)(3) clearly broaden the statutory defenses available to accused infringers.

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 28 (1997) (citing 2 D. Chisum, Patents § 8.04[2], pp. 63–64 (1996) (discussing Federico *Commentary*)); *Diamond*, 447 U.S. at 321 (citing *Hearings on H.R. 3760 before Subcommittee No. 3 of the House Committee on the Judiciary*, 82d Cong., 1st Sess., 37 (1951) (statement of P. J. Federico)); *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 365 U.S. 336, 342 n.8 (1961) (citing Federico *Commentary*). Moreover, we and our predecessors have relied on the Federico *Commentary* countless times as "an invaluable insight into the intentions of the drafters of the Act." *Symbol Techs., Inc. v. Lemelson Med.*, 277 F.3d 1361, 1366 (Fed. Cir. 2002); *see, e.g., Antares Pharma, Inc. v. Medac Pharma Inc.*, 771 F.3d 1354, 1360 (Fed. Cir. 2014); *Slip Track Sys., Inc. v. Metal-Lite, Inc.*, 304 F.3d 1256, 1264 n.2 (Fed. Cir. 2002); *BIC Leisure Prods., Inc. v. Windsurfing Int'l, Inc.*, 1 F.3d 1214, 1220 (Fed. Cir. 1993); *Albert v. Kevex Corp.*, 729 F.2d 757, 761 (Fed. Cir. 1984); *Application of Hogan*, 559 F.2d 595, 603 (C.C.P.A. 1977); *Application of Harry*, 333 F.2d 920, 924 n.2 (C.C.P.A. 1964). In addition, Judge Rich, who was deeply involved in crafting the Patent Act, described Federico in a concurring opinion as "[t]he key person" in drafting the Patent Act. *Paulik v. Rizkalla*, 760 F.2d 1270, 1277 (Fed. Cir. 1985) (Rich, J., concurring). According to Judge Rich, Federico "not only wrote the first draft of the Act himself and actively participated for the next two years in every detail of its revisions but, having been made a special consultant to the House subcommittee in charge of the project, he was also a principal author of House Report No. 1923 on the bill, which was virtually copied by the Senate Judiciary Committee as its report No. 1979, and the author of the section-by-section Revisors Notes." *Id.* Judge Rich also reveals that the Federico *Commentary* was solicited by the West Publishing Company for publication with the new Title 35:

> After enactment of the law, West Publishing Company asked Federico to write a commentary on it for publication in U.S.C.A., which he did, and it was published in 1954 in the first of the volumes containing the new Title 35. Federico also submitted drafts of the commentary to Ashton and the Drafting Committee for suggestions . . . .

*Id.* (footnote omitted). We therefore consider the Federico *Commentary* to be a sufficiently reliable source on the meaning of § 282.

To summarize, § 282 uses inclusive language, the legislative history characterizes § 282 as "broader" and "general," and the Federico *Commentary* explicitly states that § 282 includes laches. The dissent does not point to anything that contradicts our understanding of § 282. Accordingly, we conclude that Congress codified a laches defense in § 282.

Notably, our construction of § 282 to include laches is neither novel, nor a direct response to *Petrella*. Rather, for decades we have held that laches was codified in § 282, including once sitting en banc in *Aukerman*. *See Aukerman*, 960 F.2d at 1029; *Symbol*, 277 F.3d at 1366; *Mylan Pharm., Inc. v. Thompson*, 268 F.3d 1323, 1331 (Fed. Cir. 2001); *J.P. Stevens & Co. v. Lex Tex Ltd.*, 747 F.2d 1553, 1561 (Fed. Cir. 1984). Nothing in *Petrella* casts doubt on our longstanding construction of the Patent Act.

## D

Having determined that Congress codified a laches defense in § 282, we now reach the critical question: does laches as codified in the 1952 Patent Act bar recovery of legal relief? If laches as codified in § 282 is a defense against only equitable relief, *Petrella* prohibits judicial application of laches to bar legal damages. If, however, laches as codified operates as a defense to both legal and equitable relief, patent law's statutory scheme—like the

Lanham Act, *see Petrella*, 134 S. Ct. at 1974 n.15—does not implicate *Petrella*. In that case, § 282 obligates us to apply laches as a defense to legal relief, notwithstanding § 286's time limitation on the recovery of damages.

Turning to the content of the laches defense in § 282, the text of § 282 provides little guidance. Because § 282 does not enumerate specific defenses, the statutory text says nothing on the applicability of laches to legal relief. Similarly, the legislative history is silent on the meaning of laches, and Federico does no more than mention laches' codification in § 282.

In these circumstances, the Supreme Court counsels that "[w]hen a statute covers an issue previously governed by the common law, we must presume that Congress intended to retain the substance of the common law." *Kirtsaeng v. John Wiley & Sons, Inc.*, 133 S. Ct. 1351, 1363 (2013) (internal quotation marks omitted).[4] This

---

[4] While the doctrine of laches in the patent context is not strictly a matter of common law, as the patent law is statutory, the Supreme Court has treated uniform interpretations of statutes involving judicially created doctrines as invoking common law adoption principles. In *United States v. Texas*, 507 U.S. 529, 533 (1993), the Supreme Court considered whether the statutory scheme there implicitly allowed for the federal government to recover prejudgment interest for money owed by state governments. The statute itself was silent on the issue, only expressly requiring individuals to pay prejudgment interest. The Court determined that there was a common law tradition of the federal government being able to recover prejudgment interest for money owed it by the states, and therefore that the statute implicitly allowed for the federal government to recover prejudgment interest against the states. Indeed, the Court rejected an

presumption applies where "Congress has failed expressly or impliedly to evince any intention on the issue." *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 110 (1991); *see also Isbrandtsen Co. v. Johnson*, 343 U.S. 779, 783 (1952) ("Statutes which invade the common law . . . are to be read with a presumption favoring the retention of long-established and familiar principles, except when a statutory purpose to the contrary is evident."). "In order to abrogate a common-law principle, the statute must speak directly to the question addressed by the common law." *United States v. Texas*, 507 U.S. 529, 534 (1993) (internal quotation marks omitted).

This canon of construction is especially applicable here. Congress's purpose in enacting the Patent Act was to codify the prevailing law wholesale, except where changes were expressly noted. The House Report reveals that, while a preliminary draft of the Patent Act "included a collection of a large number of proposed changes in the law," "[a]s a result of the comments received, it was decided not to include most of the proposed changes in a bill but to defer them for later consideration, and to limit the bill to the main purpose of codification and enactment of title 35 into law, with only some minor procedural and other changes deemed substantially noncontroversial and desirable." H.R. Rep. No. 82-1923, at 3. Consequently, "the principal purpose of the bill [was] the codification of title 35 . . . ." *Id.* at 5; S. Rep. No. 82-1979 at 4, 1952

---

argument that the presumption favoring the common law only applies "with respect to state common law or federal maritime law." *Id.* at 534. *See also* Singer, Norman & Singer, J.D., 2B *Statutes and Statutory Construction* § 50:1 (7th ed. 2007) ("All legislation is interpreted in light of the common law and the scheme of jurisprudence existing at the time of its enactment.").

U.S.C.C.A.N. at 2397. While "there [were] a number of changes in substantive statutory law," "these [were] explained in some detail in the revision notes," and "[t]he major changes or innovations in the title consist of incorporating a requirement for invention in § 103 and the judicial doctrine of contributory infringement in § 271." H.R. Rep. No. 82-1923, at 5; S. Rep. No. 82-1979 at 4, 1952 U.S.C.C.A.N. at 2397. No changes to laches doctrine were mentioned in the revision notes. Finally, "just before the bill was passed in the Senate, Senator Saltonstall asked on the floor, 'Does the bill change the law in any way or only codify the present patent laws?' Senator McCarran, Chairman of the Judiciary Committee which had been in charge of the bill for the Senate, replied, 'It codifies the present patent laws.'" *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 365 U.S. 336, 350 n.2 (1961) (Black, J., concurring) (quoting 98 Cong. Rec. 9323 (July 4, 1952)); *see also Dawson Chem. Co. v. Rohm & Haas Co.*, 448 U.S. 176, 203 (1980) (quoting the same). Therefore, if anything, Congress intended to adopt the laches patent common law when it included laches in § 282.

As outlined above, Congress remained silent on the content of the laches defense.[5] Section 282 therefore retains the substance of the common law as it existed at the time Congress enacted the Patent Act. *See Astoria*, 501 U.S. at 109 ("[L]egislative repeals by implication will not be recognized . . . ."). *See generally Symbol*, 277 F.3d at 1366 ("There is nothing in the legislative history to suggest that Congress did not intend to carry forward the defense of prosecution laches . . . ."); *Transco Prods. Inc. v.*

---

[5]   If we can infer anything from what Congress said, it is that Congress intended to "not materially chang[e] the substance" of the § 282 defenses. H.R. Rep. No. 82-1923, at 10.

*Performance Contracting, Inc.*, 38 F.3d 551, 557 (Fed. Cir. 1994) ("The legislative history of section 120 does not indicate any congressional intent to alter the Supreme Court's interpretation of continuing application practice."). Accordingly, we must review the case law prior to 1952 to determine whether courts applied laches to bar legal relief.

Some initial background information is necessary to place the case law in context. Traditionally, patentees could seek an injunction and an accounting of profits—both equitable remedies—by filing a bill in equity courts. Alternatively, patentees could seek compensatory damages by filing an action at law. In 1870, however, Congress gave equity courts the authority to award legal damages in patent cases. Patent Act of 1870, ch. 230, § 55, 16 Stat. 198, 206 (1870). Forty-five years later, in 1915, Congress passed a general statute (§ 274b) providing that "in all actions at law equitable defenses may be interposed by answer, plea, or replication without the necessity of filing a bill on the equity side of the court." Act of March 3, 1915, ch. 90, § 274b, 38 Stat. 956 (1915). Prior to this statute, parties wishing to raise equitable defenses in an action at law had to file a separate bill in equity seeking to enjoin the legal action. *See, e.g.*, *Kessler v. Eldred*, 206 U.S. 285 (1907). Section 274b did not change substantive law. *See Enelow v. N.Y. Life Ins. Co.*, 293 U.S. 379, 382 (1935), *overruled on other grounds by Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271 (1988). Rather, "[t]he net effect of [§§ 274a and 274b] was to allow transfer of action begun on either side of the court to the other side, without the necessity of commencing a new action, to permit determination of law questions arising in equity actions in those actions, and to allow equitable defenses to be offered and equitable relief to be granted in an action at law." *City of Morgantown v. Royal Ins. Co.*, 337 U.S. 254, 256–57 (1949). Beginning in 1915, then,

accused infringers were not procedurally foreclosed from pleading a laches defense in an action at law.

The merger of law and equity was completed with the advent of the Federal Rules of Civil Procedure in 1938. "[T]here has been, since 1938, only 'one form of action—the civil action.'"[6]  *Petrella*, 134 S. Ct. at 1974 (quoting Fed. R. Civ. P. 2).  Prior to 1938, where the requirements for equitable jurisdiction were satisfied, patentees often alleged patent infringement in a bill in equity, as equitable courts could provide the powerful remedies of an accounting of profits and an injunction, which were unavailable in actions at law, in addition to compensatory damages.  After the Federal Rules of Civil Procedure were implemented, patentees no longer needed to choose.

Finally, in the Patent Act of 1946, Congress eliminated accounting of profits as a remedy for patent infringement (except for design patents).  *See* Act of Aug. 1, 1946, Pub. L. No. 79-587, 60 Stat. 778; *see also Kori Corp. v. Wilco Marsh Buggies & Draglines, Inc.*, 761 F.2d 649, 654 (Fed. Cir. 1985) ("The 1946 amendment to the damages provisions effectively eliminated this double recovery.").  "After the 1946 amendment . . . R.S. 4921 provided that 'the complainant shall be entitled to recover general damages which shall be due compensation for making, using, or selling the invention, not less than a reasonable royalty therefor . . . .'" *Kori*, 761 F.2d at 654 (quoting Act of Aug. 1, 1946, Pub. L. No. 79-587, 60 Stat. 778).  The prior availability of an equitable accounting of profits in patent infringement cases is relevant because, in cases litigated between 1870 and 1946, the patentee often sought both compensatory damages and an accounting of

---

[6]  The christening of the Federal Rules of Civil Procedure did not alter any substantive law. *Petrella*, 134 S. Ct. at 1974.

profits.  *Id*.  Moreover, "[f]ollowing the 1870 Patent Act, courts regularly used the terms 'account' and 'accounting' to refer to the special master's determination of both an adjudged infringer's profits and a patentee's damages." *Robert Bosch, LLC v. Pylon Mfg. Corp.*, 719 F.3d 1305, 1310 (Fed. Cir. 2013).  For this reason, it is in many cases difficult to determine whether a court applied laches to bar purely equitable relief, or whether, in using the term "accounting," a court also prohibited legal relief.  That said, equity courts' grouping of legal and equitable relief under a single name—accounting—could explain a unique willingness in patent law to apply laches to bar a traditionally legal remedy.

With all of the foregoing in mind, we now turn to the pre-1952 case law on laches.  Upon review, the case law demonstrates that, by 1952, courts consistently applied laches to preclude recovery of legal damages.  Nearly every circuit recognized that laches could be a defense to legal relief prior to 1952.  *See, e.g.*, *Banker v. Ford Motor Co.*, 69 F.2d 665 (3d Cir. 1934); *Hartford-Empire Co. v. Swindell Bros.*, 96 F.2d 227 (4th Cir. 1938); *Ford v. Huff*, 296 F. 652 (5th Cir. 1924); *France Mfg. Co. v. Jefferson Elec. Co.*, 106 F.2d 605 (6th Cir. 1939); *Brennan v. Hawley Prods. Co.*, 182 F.2d 945 (7th Cir. 1950); *Middleton v. Wiley*, 195 F.2d 844 (8th Cir. 1952).[7]  In fact, the only two pre-1952 circuit courts that considered SCA's argument—that laches operates as a defense to equitable relief only—expressly held that laches can also bar legal remedies. *See Ford*, 296 F. at 658; *Banker*, 69 F.2d at 666.

---

[7]    Significantly, the cases cited as examples here do not include the numerous cases that apply laches to bar an "accounting."  Because of the term's inherent ambiguity (described above in text), we do not rely on such cases.

The *Ford* case was both early and influential. In *Ford*, the patentee, Huff, was employed by defendant Henry Ford as an electrical and mechanical engineer. *Ford*, 296 F. at 654. Huff and Ford agreed that Huff would invent a magneto for an automobile flywheel and assign the patent rights to Ford, and Ford would pay a reasonable royalty for the invention's use. *Id*. Huff subsequently invented the magneto and assigned the patent rights to Ford. *Id*. While Ford paid Huff $10,000 in installments upon Ford manufacturing the first 20,000 magnetos, Ford made no further royalty payments. *Id*.

Huff did not bring suit against Ford until fourteen years after the invention, ten years after he left the Ford Motor Company, and eight years after the patents issued. *Id*. at 655. The court found that Ford had established both laches and equitable estoppel—laches from the delay, and equitable estoppel from Huff's acceptance of Ford's $10,000 payment. *Id*. at 657. The court then considered whether the laches and equitable estoppel defenses could be brought in a suit at law. Citing § 274b and *Liberty Oil Co. v. Condon National Bank*, 260 U.S. 235 (1922), the Fifth Circuit stated that "a defendant in an action at law who files a plea setting up an equitable defense is given the same rights as if he had set them up in a bill in equity." *Id*. at 658. The court reasoned that "a bill in equity disclosing the state of facts alleged in the plea in question would show that defendant was entitled to prevent the enforcement of the claim asserted by this suit on the ground that plaintiff's conduct had been such as to deprive him of the right to enforce that claim." *Id*. Therefore, because the laches and equitable estoppel defenses could be pleaded in a bill in equity to enjoin the patentee's suit at law for patent infringement, § 274b

allowed the defenses to be pleaded directly in the legal suit.[8]

The only other case to expressly consider the argument that laches cannot preclude legal relief is *Banker*. In *Banker*, which involved only laches and not equitable estoppel, the Third Circuit employed similar methodology to *Ford*. Specifically, *Banker* held that "[h]ad the appellant's suit been in equity, the evidence would have been ample for holding that recovery was barred because of laches." *Banker*, 69 F.2d at 666. Nevertheless, "[t]he appellant admit[ted] the authority of the cited cases if applied in equity, but contend[ed] that they [were] inapplicable to actions at law." *Id.* The court quickly dispensed with that contention, however. Relying on *Ford*, *Banker* concluded that § 274b "authorizes equitable defenses in actions at law theretofore applicable only in equity." *Id.*

A plethora of other cases assumes laches to preclude legal relief without discussion. *See, e.g.*, *Hartford-Empire Co. v. Swindell Bros.*, 96 F.2d 227 (4th Cir. 1938); *France Mfg. Co. v. Jefferson Elec. Co.*, 106 F.2d 605 (6th Cir. 1939); *Brennan v. Hawley Prods. Co.*, 182 F.2d 945 (7th Cir. 1950); *Universal Coin Lock Co. v. Am. Sanitary Lock*

---

[8]    Subsequently, the Supreme Court in *Enelow*—which held that § 274b changed no substantive law—cited *Ford* in the context of an injunction staying a legal action pending resolution of an equitable defense. *Enelow*, 293 U.S. at 383. Although unclear, *Enelow* arguably approved of *Ford*'s § 274b methodology. *Id.* (explaining that, under § 274b, "the court, exercising what is essentially an equitable jurisdiction, in effect grants or refuses an injunction restraining proceedings at law precisely as if the court had acted upon a bill of complaint in a separate suit for the same purpose").

*Co.*, 104 F.2d 781 (7th Cir. 1939); *George J. Meyer Mfg. Co. v. Miller Mfg. Co.*, 24 F.2d 505 (7th Cir. 1928); *Wolf, Sayer & Heller v. U.S. Slicing Mach. Co.*, 261 F. 195 (7th Cir. 1919); *Middleton v. Wiley*, 195 F.2d 844 (8th Cir. 1952).[9] In addition, the Supreme Court in *Lane & Bodley Co. v. Locke* mentions monetary compensation, but does not state whether the recovery was legal or equitable in nature.   150 U.S. 193, 194 (1893) ("[T]he circuit court found in favor of the complainant, and, after reference to and report by a master, rendered a final decree against the defendant for the sum of $3,667.37, with interest and costs.").  Countless other cases refer to an accounting, and thus remain ambiguous as to whether they barred legal relief.   *See, e.g.*, *Union Shipbuilding Co. v. Bos. Iron & Metal Co.*, 93 F.2d 781 (4th Cir. 1938); *Gillons v. Shell Co. of Cal.*, 86 F.2d 600 (9th Cir. 1936); *Window Glass Mach. Co. v. Pittsburgh Plate Glass Co.*, 284 F. 645, 647 (3d Cir. 1922); *A.R. Mosler & Co. v. Lurie*, 209 F. 364 (2d Cir. 1913).  Significantly, neither SCA, nor the amici, nor the dissent, can identify a single appellate-level patent infringement case stating—much less holding—that laches is inapplicable to legal damages.

---

[9]    SCA and some amici contend that the *Middleton* case holds that laches cannot preclude legal relief.  But *Middleton* merely states that the elements of laches were not proven in that case.  As *Middleton* reasoned, delay, without prejudice, is insufficient.  *Middleton*, 195 F.2d at 847.  Moreover, the *Middleton* court ruled that application of laches would have been inequitable because the accused infringers "knowingly and deliberately were using for their own benefit the owner's patented equipment without authority, legal excuse or payment of royalty." *Id.*

Finally, the Walker patent treatise supports the conclusion that laches can preclude legal remedies. The 1937 version of the Walker treatise was published before many of the cases discussed above. 4 *Walker, on Patents* (Deller's ed. 1937). Nonetheless, although it does not list laches among the defenses in actions at law, *see id.* §§ 656, 687–88, Walker elsewhere explains that "[w]here a plaintiff is chargeable with laches, he cannot recover the damages he has suffered nor the profits defendant has gained." *Id.* § 880B (citing *George Meyer*, 24 F.2d 505). Moreover, Walker's 1951 Supplement states that "[l]aches and estoppel are equitable defenses, and may be interposed in an action at law." 4 *Walker, on Patents* at 106 (Supp. 1951) (addressing § 575) (citing *Mather v. Ford Motor Co.*, 40 F. Supp. 589 (E.D. Mich. 1941)).

In sum, the case law strongly supports the availability of laches to bar legal relief. Section 282 codified whatever laches doctrine existed when Congress enacted the Patent Act in 1952. Although the development occurred over time, by 1952 nearly every circuit had approved of the proposition that laches could bar legal relief for patent infringement, and no court had held to the contrary. The Walker treatise—in 1937 and then more authoritatively in 1951—agreed that laches precludes recovery of legal damages. The laches doctrine codified in § 282 must have meaning, and, absent any direction from Congress, it takes on its common law meaning. Following a review of the relevant common law, that meaning is clear: in 1952, laches operated as a defense to legal relief. Therefore, in § 282, Congress codified a laches defense that barred recovery of legal remedies.

The dissent suggests that this significant court of appeals authority allowing a laches defense to patent damages actions should not be deemed incorporated into the 1952 Act because "[a]ny analysis of what the common law was at a certain point in time must start with Supreme Court precedent" which established a "general principle"

that laches does not bar a claim for legal relief. Dissent at 10, 12. The dissent also suggests that circuit authority allowing the laches defense in equity actions is not pertinent to congressional intent. *Id.* at 13. The dissent is incorrect on both counts. In contrast to other areas, in patent law before 1952 there was no sharp distinction between legal and equitable actions for damages or in the defenses that were available. *See supra* pp. 23–25. Patent damages actions were unlike typical damages actions in that the 1870 statute allowed the recovery of damages in either an action at law or in equity, *see* 16 Stat. 206 (1870), and the 1897 statute of limitations applied to both legal and equitable actions, *see* 29 Stat. 694 (1897), as did the laches defense. Furthermore, the Chairman of the Judiciary Committee clarified on the Senate floor just before the Patent Act was passed that the 1952 Act "codifie[d] the present *patent* laws.'" 98 Cong. Rec. 9323 (emphasis added); *see also supra* pp. 21–22. If Congress looked to the common law, it likely looked to the common law of patents[10] rather than to more general principles.

––––––––––––

10  The two patent cases cited by the dissent—both trial court cases from a single jurisdiction—are unhelpful. In the first, *City of Concord v. Norton*, 16 F. 477 (C.C.D. Mass. 1883), after noting that the equitable defense of estoppel was available at law and at equity, the court found that equitable estoppel was not established. *Id.* at 479. The court then stated that if laches had been alleged, it would not have been available because "for laches the remedy at law is found in the statute of limitations." *Id.* at 480. It is difficult to know what was meant by this dictum because at this time no statute of limitations existed in patent law. The second, *Thorpe v. Wm. Filene's Sons Co.*, 40 F.2d 269, 270 (D. Mass. 1930), simp-

E

The fact that § 286 speaks to the timeliness of damages claims does not alter the outcome. *Petrella* fundamentally concerns separation of powers. That is, *Petrella* eliminates copyright's judicially-created laches defense because Congress, through a statute of limitations, has already spoken on the timeliness of copyright infringement claims, so there is no room for a judicially-created timeliness doctrine. *See Petrella*, 134 S. Ct. at 1974 (describing laches as "gap-filling, not legislation-overriding"). The statutory scheme in patent law, however, is different. While Congress has spoken on the timeliness of patent damages claims, Congress also codified a laches defense in § 282. Thus, because § 286 provides for a time limitation on the recovery of legal remedies, and § 282 provides for laches as a defense to legal relief, the separation of powers concern is not present. *See id*. at 1974 n.15 (noting that laches is preserved in trademark law because the Lanham Act "expressly provides for defensive use of 'equitable principles, including laches'"). Laches therefore remains a viable defense to legal relief in patent law.

Despite whatever tension may exist between the § 286 damages limitation and the § 282 laches defense, "we have no authority to substitute our views for those expressed by Congress in a duly enacted statute." *Mobil Oil Corp. v. Higginbotham*, 436 U.S. 618, 626 (1978). If, in light of this issue's newfound salience, Congress de-

---

ly did not address whether patent law was different from other areas. Moreover, because a plethora of court of appeals-level case law concludes that laches may bar legal relief, we need not list the many district court cases, such as *Mather*, 40 F. Supp. at 591–92, that accord with our reasoning.

cides that the § 286 damages limitation and the § 282 laches defense are incompatible, it can change the law. As a court, however, we must apply the law as enacted, which means that the § 286 damages limitation and the § 282 laches defense must continue to coexist.

## F

Finally, one major difference between copyright and patent law bears mention: copyright infringement requires evidence of copying, but innocence is no defense to patent infringement. *Compare N. Coast Indus. v. Jason Maxwell, Inc.*, 972 F.2d 1031, 1033 (9th Cir. 1992) ("If the plaintiff copyright holder survives the first step, i.e., it establishes that it owns a valid copyright, then the plaintiff must establish infringement by showing both access to its copyrighted material on the part of the alleged infringer and substantial similarity between the copyrighted work and the alleged infringing work."), *and Eden Toys, Inc. v. Marshall Field & Co.*, 675 F.2d 498, 501 (2d Cir. 1982) ("Evidence of independent creation may be introduced by a defendant to rebut a plaintiff's prima facie case of infringement."), *with Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920, 1926 (2015) ("Direct infringement is a strict-liability offense."). Because copyright infringement requires proof of access, a potential defendant is typically aware of a risk that it is infringing and can estimate its exposure when making its initial investment decision. *See* Dell Br. 26–27; Roche Br. 19–21. The potential defendant can also accumulate evidence of independent creation to protect its investment. Thus, in *Petrella*—as in a typical copyright suit—"[a]llowing Petrella's suit to go forward will put at risk only a fraction of the income MGM has earned during that period and will work no unjust hardship on innocent third parties . . . ." *Petrella*, 134 S. Ct. at 1978.

In patent law, however, the calculus is different. For example, in the medical device industry, a company may

independently develop an invention and spend enormous sums of money to usher the resultant product through regulatory approval and marketing, only to have a patentee emerge six years later to seek the most profitable six years of revenues. *See* Roche Br. 19–23; IPO Br. 19. In the high tech industry, amici advise that businesses receive demand letters every day—many of which assert unmeritorious claims—and it is often impractical for companies to determine which claims have merit. *See* Dell Br. 23–27. Independent invention is no defense in patent law, so without laches, innovators have no safeguard against tardy claims demanding a portion of their commercial success. Consequently, "there is a recurring risk that a stale patent claim will inflict significant hardship on a defendant who has lost the meaningful ability to choose between alternative technologies and whose investment in research, development, and further innovation may be jeopardized." Dell Br. 27. This risk likely explains why the amici in this case—encompassing industries as diverse as biotechnology, electronics, manufacturing, pharmaceuticals, software, agriculture, apparel, health care, telecommunications, and finance—overwhelmingly support retaining laches in patent law.[11]

---

[11]    *See, e.g.*, Brief of Amicus Curiae Roche Molecular Systems, Inc. in Support of Defendants-Appellees; Brief of Dell Inc. et al. as Amicus Curiae in Support of Defendants-Appellees; Brief of Intellectual Property Owners Ass'n as Amicus Curiae in Support of Defendants-Appellees; Corrected Brief of Amici Curiae Briggs & Stanton Corp., Harley-Davidson Motor Co., Inc., Jockey Int'l, Inc., Rockwell Automation, Inc. and Wisconsin Mfrs. & Commerce in Support of Defendants-Appellees; Brief of Amicus Curiae Hydro Engineering, Inc. on Rehearing En Banc in Support of Defendants-Appellees; Brief of Amici

### III.  LACHES' APPLICATION TO ONGOING RELIEF

The second question for en banc review concerns the extent to which laches can limit recovery of ongoing relief. *Aukerman* held that laches could not bar prospective relief.  *Aukerman*, 960 F.2d at 1041.  Reexamination of that rule is necessary in light of *Petrella* and the Supreme Court's decision in *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006).  There are two parts to this inquiry: whether laches can bar permanent injunctive relief and whether it can bar an ongoing royalty for continuing infringing acts.

When a court orders ongoing relief, the court acts within its equitable discretion.  *See eBay*, 547 U.S. at 391–92; *Paice LLC v. Toyota Motor Corp.*, 504 F.3d 1293, 1316 (Fed. Cir. 2007).  As *eBay* instructs, equitable "discretion must be exercised consistent with traditional principles of equity, in patent disputes no less than in other cases governed by such standards." *eBay*, 547 U.S. at 394.  With respect to injunctions, this means following *eBay*'s familiar four-factor test:

> A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is

---

Curiae AT&T Mobility II LLC and T-Mobile USA, Inc. in Support of Defendants-Appellees; Brief of Amici Curiae Johnson & Johnson and Cordis Corp. in Support of Defendants-Appellees; Brief of Amici Curiae Garmin Int'l, Inc. et al. on Rehearing En Banc Supporting Defendants-Appellees.

warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*Id.* at 391.

Consideration of laches fits naturally into this framework. As noted in *Petrella*, "the District Court, in determining appropriate injunctive relief . . . may take account of [the plaintiff's] delay in commencing suit." *Petrella*, 134 S. Ct. at 1978; *see also Menendez*, 128 U.S. at 523 ("Mere delay or acquiescence cannot defeat the remedy by injunction in support of the legal right, unless it has been continued so long, and under such circumstances, as to defeat the right itself."). Many of the facts relevant to laches, such as the accused infringer's reliance on the patentee's delay, fall under the balance of the hardships factor. *Id.* Unreasonable delay in bringing suit may also be relevant to a patentee's claim that continued infringement will cause it irreparable injury. More than anything, district courts should consider all material facts, including those giving rise to laches, in exercising its discretion under *eBay* to grant or deny an injunction. *See eBay*, 547 U.S. at 394.

The *Aukerman* court, relying on *Menendez*, based its conclusion that laches may only bar pre-suit damages on the necessity of maintaining a distinction between laches and equitable estoppel. *Aukerman*, 960 F.2d at 1040–41. But *Menendez* does not create a bright-line rule favoring injunctions. In fact, *Menendez* repeatedly allows for the possibility that laches could foreclose injunctive relief. For example, an injunction may be inequitable when the delay "has been continued so long, and under such circumstances, as to defeat the right itself." *Menendez*, 128 U.S. at 523; *see also id.* at 524 ("[S]o far as the act is in progress, and lies in the future, the right to the intervention of equity is not *generally* lost by previous delay, in respect to which the elements of an estoppel could rarely arise.") (emphasis added); *id.* at 524–25 ("Delay in bring-

ing suit there was, and such delay as to preclude recovery of damages for prior infringement; *but there was neither conduct nor negligence which could be held to destroy the right to prevention of further injury*.") (emphasis added).[12] Likewise, *eBay* clarifies that a patentee is not automatically entitled to an injunction—the patentee must prove that the equities favor an injunction. *eBay*, 547 U.S. at 392 ("[I]njunctive relief may issue only in accordance with the principles of equity.") (internal quotation marks omitted). Laches, an equitable defense, belongs in that calculus. We, accordingly, reject *Aukerman's* bright line rule regarding the interplay between laches and injunctive relief.

With respect to ongoing royalties, while the principles of equity apply, equity normally dictates that courts award ongoing royalties, despite laches. *Menendez*, an influential case contrasting laches and equitable estoppel in the trademark context, guides us here. According to *Menendez*, delay in exercising a patent right, without more, does not mean that the patentee has abandoned its right to its invention. Rather, the patentee has abandoned its right to collect damages during the delay. Equitable estoppel, on the other hand, is different—the patentee has granted a license to use the invention that extends throughout the life of the patent:

> Acquiescence, to avail, must be such as to create a new right in the defendant. . . . But there is nothing here in the nature of an estoppel; nothing which renders it inequitable to arrest at this stage

---

[12] While these passages contemplate that estoppel will be the primary situation where delay can bar an injunction, they also allow for the possibility that the facts surrounding delay can be so extreme—without establishing estoppel—as to preclude an injunction.

any further invasion of complainants' rights.
There is no pretense of abandonment. That would
require proof of non-user by the owner, or general
surrender of the use to the public. . . . Delay in
bringing suit there was, and such delay as to pre-
clude recovery of damages for prior infringement;
but there was neither conduct nor negligence
which could be held to destroy the right to preven-
tion of further injury.

*Menendez*, 128 U.S. at 524–25.

*Petrella* also briefly considered the propriety of ongo-
ing royalties. Although *Petrella* did not supply its reason-
ing, it found that, "on the facts thus far presented, there
[was] no evident basis for immunizing MGM's present and
future uses of the copyrighted work, free from any obliga-
tion to pay royalties." *Petrella*, 134 S. Ct. at 1979. As did
*Aukerman*, moreover, *Menendez* and *Petrella* caution
against erasing the distinction between laches and estop-
pel. As *Petrella* stated, "the doctrine of estoppel may bar
the copyright owner's claims completely, eliminating all
potential remedies. The test for estoppel is more exacting
than the test for laches, and the two defenses are differ-
ently oriented. The gravamen of estoppel . . . is mislead-
ing and consequent loss. Delay may be involved, but is
not an element of the defense. For laches, timeliness is
the essential element." *Petrella*, 134 S. Ct. at 1977 (cita-
tions omitted). For that reason, absent egregious circum-
stances, when injunctive relief is inappropriate, the
patentee remains entitled to an ongoing royalty.

In sum, we must recognize "the distinction be-
tween . . . estoppel and laches . . . ." *Id.* (first alteration in
original). Whereas estoppel bars the entire suit, laches
does not. As outlined above, laches in combination with
the *eBay* factors may in some circumstances counsel
against an injunction. However, a patentee guilty of
laches typically does not surrender its right to an ongoing

royalty. *Menendez*, 128 U.S. at 523–25. Paramount in both these inquiries are the flexible rules of equity and, as a corollary, district court discretion. "[A] major departure from the long tradition of equity practice should not be lightly implied." *eBay*, 547 U.S. at 391 (quoting *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 320 (1982)).

## V. CONCLUSION

For the foregoing reasons, laches remains a defense to legal relief in a patent infringement suit after *Petrella*. Laches bars legal relief, and courts must weigh the facts underlying laches in the *eBay* framework when considering an injunction. However, absent extraordinary circumstances, laches does not preclude an ongoing royalty.

Finally, we reinstate the panel opinion's reversal of the district court's grant of summary judgment on equitable estoppel and adopt its reasoning. We thus remand to the district court for proceedings consistent with this opinion.

**REVERSED AND REMANDED**

# United States Court of Appeals for the Federal Circuit

_____

**SCA HYGIENE PRODUCTS AKTIEBOLAG
SCA PERSONAL CARE, INC.,**
*Plaintiffs-Appellants*

**v.**

**FIRST QUALITY BABY PRODUCTS, LLC,
FIRST QUALITY HYGIENIC, INC.,
FIRST QUALITY PRODUCTS, INC.** AND
**FIRST QUALITY RETAIL SERVICES, LLC,**
*Defendants-Appellees*

_____

2013-1564

_____

Appeal from the United States District Court for the Western District of Kentucky in No. 10-CV-0122, Chief Judge Joseph H. McKinley, Jr.

_____

HUGHES, *Circuit Judge*, concurring-in-part, dissenting-in-part, with whom MOORE, WALLACH, TARANTO, and CHEN, *Circuit Judges*, join.

Patent law is governed by the same common-law principles, methods of statutory interpretation, and procedural rules as other areas of civil litigation. Today, the majority adopts a patent-specific approach to the equitable doctrine of laches. In doing so, the majority overlooks Congress' intent and Supreme Court precedent, which demonstrate that laches is no defense to a claim for

damages filed within the statutory limitations period established by 35 U.S.C. § 286.

In *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S. Ct. 1962, 1974 (2014), the Supreme Court emphasized that it had never approved the use of laches to bar a claim for legal damages brought within a statutory limitations period. The majority reasons that *Petrella* is not controlling here because Congress specifically incorporated laches as a defense to legal damages into the Patent Act of 1952. But the majority has no sound basis for finding that Congress intended to displace the uniform limitations period in § 286 with the case-specific doctrine of laches. The majority's key logic—that Congress adopted the view of some lower courts that laches could bar legal relief in patent cases—requires us to presume that Congress ignored the Supreme Court. For in 1952, the Supreme Court had already recognized the common-law principle that laches cannot bar a claim for legal damages. I know of no precedent for inferring a congressional departure from a common-law principle recognized by the highest court based solely on aberrational lower-court decisions.

The Supreme Court has repeatedly cautioned this court not to create special rules for patent cases. In light of the Supreme Court's clear, consistent, and long-standing position on the unavailability of laches to bar damages claims filed within a statutory limitations period, we should not do so here. I respectfully dissent-in-part.[1]

---

[1]    I agree with the majority that laches is available to bar equitable relief. I therefore join Part III of the majority opinion.

I

The Supreme Court in *Petrella* held that when Congress enacts a statutory limitations period, courts cannot invoke the equitable doctrine of laches to bar claims for legal relief filed within that period. 134 S. Ct. at 1967. The Supreme Court reasoned that a statutory limitations period expresses Congress' judgment on the timeliness of a claim. *Id.* Because the statutory limitations period "itself takes account of delay," courts cannot further regulate the timeliness of a claim using the doctrine of laches. *Id.* at 1973. The Supreme Court found that the conflict between these two delay-based limitations creates a separation of powers problem, and concluded that "courts are not at liberty to jettison Congress' judgment on the timeliness of suit." *Id.* at 1967.

The Supreme Court further explained that "laches is a defense developed by courts of equity; its principal application was, and remains, to claims of an equitable cast for which the Legislature has provided no fixed time limitation." *Id.* at 1973 (citing 1 D. Dobbs, Law of Remedies § 2.4(4), p. 104 (2d ed. 1993)). This principle has a strong historical pedigree: "[b]oth before and after the merger of law and equity in 1938, [the Supreme Court] has cautioned against invoking laches to bar legal relief." *Id.* at 1973. The Supreme Court cited several of its decisions as proof, including two cases decided prior to 1952. *See id.* (citing *Holmberg v. Armbrecht*, 327 U.S. 392, 395, 396 (1946); *United States v. Mack*, 295 U.S. 480, 489 (1935)). Although some regional-circuit cases have departed from this principle, the Supreme Court found "no case in which [the Supreme Court] has approved the application of laches to bar a claim for damages brought within the time allowed by a federal statute of limitations." *Id.* at 1974.

Like the statute of limitations considered in *Petrella*, the statutory limitations period in § 286 of the Patent Act expresses Congress' judgment on the timeliness of claims

for damages.  *See* 35 U.S.C. § 286.  Section 286 prohibits recovery of damages when a claim is filed more than six years after the associated patent infringement occurs, but allows recovery of damages when a claim is filed within that six-year window.  *Cf. Petrella*, 134 S. Ct. at 1973 (observing that under the Copyright Act's statute of limitations, "a successful plaintiff can gain retrospective relief only three years back from the time of suit").  I agree with the majority that, with respect to claims for damages and the conflict with laches, there is no functional difference between § 286 and a statute of limitations.  *See* Maj. Op. at 17–18.  The Supreme Court's decision in *Petrella*, therefore, strongly suggests that laches is not available to further regulate the timeliness of damages claims in patent-infringement cases.

To overcome this conclusion, we would have to find compelling evidence that Congress incorporated laches into the Patent Act as an additional time-bar on claims for legal damages.  The Supreme Court has required clear evidence to justify inferring a congressional departure from traditional common-law principles, such as the principle recognized in *Petrella* that laches does not apply to claims for legal relief.  *See, e.g.*, *Nken v. Holder*, 556 U.S. 418, 433 (2009) (applying the "presumption favoring the retention of long-established and familiar principles, except when a statutory purpose to the contrary is evident"); *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 320 (1982) ("[A] major departure from the long tradition of equity practice should not be lightly implied.").  Additionally, the Supreme Court has made abundantly clear that there must be a particular justification in the statute before this court may announce special rules for patent cases that depart from the rules for other areas of civil litigation.  *See, e.g.*, *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 836–40 (2015); *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1758 (2014);

*eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006).

## II

The majority brushes aside the teachings of *Petrella* and finds based on vague legislative history and muddled case law that Congress intended to depart from the common-law principle that laches only bars equitable relief where a statutory limitations period applies. *See* Maj. Op. at 18–35. Two flaws pervade the majority's analysis. First, the majority interprets 35 U.S.C. § 282 in isolation, without regard to Congress' intent expressed in § 286. Second, in addition to misreading the pre-1952 cases it cites, the majority limits the scope of its review to favorable patent cases. The majority ignores Supreme Court precedent and other federal court decisions holding that laches does not bar claims for legal relief filed within a statutory limitations period. Properly analyzed, we cannot reasonably infer from the Patent Act that Congress intended to depart from this common-law principle.

## A

The majority finds that Congress incorporated laches into § 282 because Congress chose to use broad language in that section; and because an executive-branch official said so. *See* Maj. Op. at 18–22. Although the majority does not identify which particular term encompasses a defense of laches, the only possible candidates are "[n]on-infringement, absence of liability for infringement or unenforceability." 35 U.S.C. § 282(b)(1). The remaining subsections refer specifically to other provisions of the Patent Act, none of which allude to laches. *See id.* at (b)(2)–(4). First Quality and several amici argue that laches falls within the term "unenforceability" in particular.

The language in § 282(b)(1) is ambiguous at best, and contains no hint of a special version of laches that applies

to legal relief within a statutory limitations period. The terms "absence of liability" and "unenforceability" do not precisely refer to any particular defenses to patent-infringement suits. Although the plain meaning of these terms does not conclusively rule out the defense of laches, it does not necessarily include a defense of laches either. The majority seems to think that the indeterminate breadth of these terms helps its case, making it more likely that laches falls somewhere within their scope, whatever that may be. *See* Maj. Op. at 18–20. But statutory interpretation cannot turn on this kind of guesswork. And even if laches were implicit in § 282, that would not be enough, for the question is whether Congress prescribed a variant form of laches in the Patent Act that applies to claims for legal relief.

The majority disregards an important tool of statutory interpretation that shows Congress did not adopt such a defense. It is a "fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *King v. Burwell*, 135 S. Ct. 2480, 2492 (2015) (quoting *Utility Air Regulatory Grp. v. Envtl. Prot. Agency*, 134 S. Ct. 2427, 2441 (2014)) (internal quotation marks omitted); *see also La. Pub. Serv. Comm'n v. Fed. Commc'n Comm'n*, 476 U.S. 355, 370 (1986) (noting the "familiar rule of construction that, where possible, provisions of a statute should be read so as not to create a conflict"). Here, the statutory limitations period in § 286 informs the scope of § 282. Section 286 expresses Congress' judgment on the timeliness of damages claims: a patent owner may recover damages when a claim is filed within six years of infringement, but no later. If § 282 includes a defense of laches that applies to claims for damages, it would conflict with this judgment. Laches could bar a patent owner from recovering damages even though its claim was filed within the clearly defined six-

year period established by § 286. The extent of this conflict is highlighted by the Supreme Court's reasoning in *Petrella*. Notwithstanding the additional elements of laches beyond mere delay, the Supreme Court held that laches and the statute of limitations were in such conflict that applying laches created a separation of powers problem. *See Petrella*, 134 S. Ct. at 1967, 1973. Congress' decision to create a fixed statutory limitations period in § 286 therefore strongly suggests that it did not intend to codify a defense of laches that further regulates the timeliness of damages claims.

The legislative history of § 286 further proves the point. Between 1874 and 1897, the federal patent statute did not contain a limitations period of any kind. *See Campbell v. Haverhill*, 155 U.S. 610, 613–14 (1895). Federal courts therefore relied on analogous state statutes of limitations to determine the timeliness of claims. *See id.* at 618, 620. Congress found this approach problematic, and in 1897 enacted the predecessor to § 286 to "create a uniform statute of limitations." H.R. Rep. No. 54-940, at 2 (1896); *see* Rev. Stat. § 4921 (1897).[2] If we read § 282 to incorporate the flexible, case-specific doctrine of laches as to legal damages, that section would

---

[2]    Section 286 and its predecessor contain virtually identical language. *Compare* 35 U.S.C. § 286 ("[N]o recovery shall be had for any infringement committed more than six years prior to the filing of the complaint or counterclaim for infringement in the action."), *with* Rev. Stat. § 4921 (1897) ("But in any suit or action brought for the infringement of any patent there shall be no recovery of profits or damages for any infringement committed more than six years before the filing of the bill of complaint or the issuing of the writ in such suit or action . . . .").

"tug against the uniformity Congress sought to achieve." *Petrella*, 134 S. Ct. at 1975 (noting a similar conflict with the statute of limitations in the Copyright Act). Thus, to be consistent with the purpose of § 286, we cannot interpret § 282 to incorporate a defense of laches that bars legal relief otherwise permitted under § 286.

The House and Senate Reports from 1952 also contradict the majority's interpretation. Both sources explain that § 282 restates statutory defenses "in general terms, changing the language in the present statute, but not materially changing the substance." H.R. Rep. 82-1923 at 10 (1952); S. Rep. 82-1979 at 9 (1952). This declaration shows that Congress intended to preserve what the language of the pre-1952 statutes fairly conveys. And nothing in the pre-1952 statutes suggests an authorization of laches as a bar to legal damages requested within a limitations period. The pre-1952 provision enumerating defenses applicable to an infringement suit, whether for legal or equitable relief, does not refer directly or indirectly to laches. *See* 35 U.S.C. § 69 (1946) (codifying Rev. Stat. § 4920 as amended). The provision authorizing remedies refers to "the course and principles of courts of equity" (which includes laches) in the portion addressing injunctions, but does not mention equitable defenses in the portion addressing damages. 35 U.S.C. § 70 (1946) (codifying Rev. Stat. § 4921 as amended). In the absence of any prior statutory authorization of laches as a bar to legal damages, the majority relies on pre-1952 "common law." But nothing in the legislative history reflects congressional recognition of any pre-1952 case law on the subject of laches, let alone approval of such case law as went beyond what the pre-1952 statutes authorized on their face. The key 1952 legislative history on § 282 thus runs counter to the majority's conclusion that Congress intended this section to incorporate laches as defense to legal damages.

The majority's only evidence that Congress intended to incorporate a defense of laches at all in § 282 is a lone statement in P.J. Federico's *Commentary on the New Patent Act*. But Mr. Federico's reference to "laches" does not suggest that Congress incorporated a distinctive version of laches that, contrary to its traditional role at common law, bars a claim for legal damages filed within a statutory limitations period. This statement therefore cannot support the majority's conclusion. Indeed, the only interpretation of this statement that is consistent with § 286 is that Mr. Federico was referring to laches as a defense to equitable relief only. And in any event, an inference that Congress departed from a common-law principle could not properly rest entirely on a statement made two years after the enactment of the Patent Act by one person who, though central to its drafting, was not a member of Congress voting on the measure.[3]

In *Petrella*, the Supreme Court was presented with a similarly vague reference to "laches" in Federal Rule of Civil Procedure 8(c), which lists the affirmative defenses available in a civil action. *See* 134 S. Ct. at 1974–75. In light of the statute of limitations and the traditional role of laches, however, the Supreme Court found that this reference does not establish laches as a defense to damages claims. *Id.* So too here. Mr. Federico's lone post-hoc

---

[3]    The Supreme Court has found that a post-hoc statement, even from members of Congress, "does not qualify as legislative 'history,' . . . [and] is consequently of scant or no value" for statutory interpretation. *Graham Cty. Soil & Water Conservation Dist. v. U.S. ex. rel. Wilson*, 559 U.S. 280, 298 (2010) (discrediting a letter from the primary sponsors of the bill in Congress); *see also Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 117–18, 120 (1980).

reference to laches is entirely insufficient as a matter of statutory construction to conclude that Congress intended to incorporate laches as a defense to claims for legal damages, particularly in light of the contrary and clear language of § 286.

B

To find that Congress intended to codify laches as a defense to claims for legal damages, the majority relies on the canon of statutory interpretation that "[w]hen a statute covers an issue previously governed by the common law, we must presume that Congress intended to retain the substance of the common law." *Kirtsaeng v. John Wiley & Sons, Inc.*, 133 S. Ct. 1351, 1363 (2013) (internal quotation marks omitted). But the presumption that Congress intended to retain an aspect of the common law only applies where the common-law principle is sufficiently "well established." *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 108 (1991); *see also Isbrandtsen Co. v. Johnson*, 343 U.S. 779, 783 (1952) (explaining that Congress is presumed to retain "long-established and familiar" common-law principles). If the case law on a particular issue is conflicting, we cannot infer from Congress' silence which approach Congress intended to adopt. *Cf. Metro. Stevedore Co. v. Rambo*, 515 U.S. 291, 299 (1995) (declining to infer ratification of judicial interpretation of a statute when these interpretations were largely dicta and "were not uniform in their approach"). Here, contrary to the majority's narrow analysis of regional-circuit cases, the pre-1952 case law did not clearly establish that a plaintiff's laches may preclude recovery of legal damages.

1

Any analysis of what the common law was at a certain point in time must start with Supreme Court precedent. *See, e.g., Astoria*, 501 U.S. at 107–08 (relying on Supreme Court precedent for common-law rules of collateral estop-

pel and res judicata). For even if there were differing views in the lower courts, it would be nearly impossible to conclude that there was a uniform understanding of the common law that was inconsistent with Supreme Court precedent. In our judicial system, the Supreme Court's understanding is controlling.

Prior to 1952, the Supreme Court decided several cases holding that laches cannot bar a claim for legal relief filed within a statutory limitations period. *See Holmberg*, 327 U.S. at 395 ("If Congress explicitly puts a limit upon the time for enforcing a right which it created, there is an end of the matter. The Congressional statute of limitation is definitive."); *Mack*, 295 U.S. at 489 ("Laches within the term of the statute of limitations is no defense at law."); *Cross v. Allen*, 141 U.S. 528, 537 (1891) ("So long as the demands secured were not barred by the statute of limitations, there could be no laches in prosecuting a suit upon the mortgages to enforce those demands."). Further, the Supreme Court made clear that laches is unavailable not only in an action at law, but also in a suit in equity to enjoin an action at law. *See Wehrman v. Conklin*, 155 U.S. 314, 326–27 (1894). The Supreme Court explained that a court of equity may enjoin an action at law only if the plaintiff's delay is accompanied by further conduct that meets the requirements for equitable estoppel:

> Though a good defense in equity, laches is no defense at law. If the plaintiff at law has brought his action within the period fixed by the statute of limitations, no court can deprive him of his right to proceed. If the statute limits him to 20 years, and he brings his action after the lapse of 19 years and 11 months, he is as much entitled, as [a] matter of law, to maintain it, as though he had brought it the day after his cause of action accrued, though such delay may properly be considered by the jury in connection with other facts tending to show an estoppel.

*Id.*; *see also* McClintock on Equity § 28, p. 75 (2d ed. 1948) ("The majority of the courts which have considered the question have refused to enjoin an action at law on the ground of the laches of the plaintiff at law."). In sum, as noted in *Petrella*, the Supreme Court has never "approved the application of laches to bar a claim for damages brought within the time allowed by a federal statute of limitations." 134 S. Ct. at 1974.[4]

Moreover, several lower courts before 1952 likewise applied this general principle in patent-infringement cases to conclude that laches does not bar a claim for legal relief. In *City of Concord v. Norton*, 16 F. 477, 477 (C.C.D. Mass. 1883), the plaintiffs filed a bill in equity to enjoin the defendant's action at law based on laches. The court held that although equitable estoppel is available to bar a claim for legal relief, laches is not. *Id.* at 480. "[F]or laches the remedy at law is found in the statute of limitations, and if that statute is inadequate there is no other remedy." *Id.* Similarly, in *Thorpe v. Wm. Filene's Sons Company*, 40 F.2d 269, 269 (D. Mass 1930), the court recognized that laches "has no application to actions at law. A plaintiff's conduct may, however, have been of

---

[4] The majority implies that the Supreme Court's decision in *Lane & Bodley Co. v. Locke*, 150 U.S. 193 (1893), is to the contrary. *See* Maj. Op. at 31. In that case, the Supreme Court found that laches barred a claim brought in equity. *Lane & Bodley*, 150 U.S. at 201. As the majority notes, the Supreme Court does not say whether the monetary relief barred by laches was legal or equitable in nature. And the Supreme Court decided *Lane & Bodley* before the statutory limitations period for damages claims was enacted. It therefore does not say anything about whether laches may bar a claim for legal damages governed by a statute of limitations.

such character as . . . to make it unconscionable for him to maintain it.  This is estoppel and is recognized in equity as sufficient ground for enjoining an action at law."

These decisions alone defeat the conclusion that "courts consistently applied laches to preclude recovery of legal damages" prior to 1952.  Maj. Op. at 28.  To say that a rule was "well established" when the Supreme Court clearly and repeatedly held otherwise is to give insufficient recognition to the hierarchy of federal courts.  Further, laches is a general equitable defense, not a defense specific to patent infringement.  For the purposes of a common-law incorporation theory, therefore, the role of laches in other areas of civil litigation is of a piece with the role of laches in patent cases.[5]  We cannot assume that Congress would have ignored Supreme Court precedent on the issue and focused solely on regional-circuit decisions in patent cases.

2

Even if we could focus solely on regional-circuit law, the cases cited by the majority do not themselves show that there was a uniformly well-established rule that

---

[5]    The majority argues that a Senate floor statement claiming that the Patent Act "codifie[d] the present patent laws," 98 Cong. Rec. 9323, justifies its narrow focus on the role of laches in patent cases only.  *See* Maj. Op. at 33.  But unlike the doctrine of contributory infringement, a judicial doctrine expressly incorporated into the Patent Act of 1952, laches is not a patent law specific to patent cases.  It is a general equitable defense to liability.  Congress' codification of "patent laws" therefore does not support an assumption that Congress only looked to the application laches in patent cases, and not to fundamental equitable principles announced by the Supreme Court.

laches is available to bar legal damages otherwise permitted by § 286. Nearly all of these decisions either apply laches under a misinterpretation § 274(b) of the Judicial Code, mention laches in dicta, or apply laches to bar a claim brought in equity. The discussion of laches in these cases does not clearly demonstrate that in 1952 laches was available to bar a claim for legal damages in a civil action.

The majority primarily relies on two cases that address the availability of equitable relief under § 274(b) of the Judicial Code. *See Ford v. Huff*, 296 F. 652 (5th Cir. 1924); *Banker v. Ford Motor Co.*, 69 F.2d 665 (3d Cir. 1934). Section 274(b) stated that "in all actions at law equitable defenses may be interposed by answer, plea, or replication without the necessity of filing a bill on the equity side of the court." Act of March 3, 1915, ch. 90, § 274(b), 38 Stat. 956 (1915). As the court in *Ford* recognized, however, § 274(b) simply eliminated procedural barriers to requesting equitable relief in actions at law—obviating the need to file separately in a court of equity—but did not change the substantive and remedial principles of law and equity. *See* 296 F. at 658 (finding that under § 274(b), "a defendant in an action at law who files a plea setting up an equitable defense is given the same rights as if he had set them up in a bill in equity"). The Supreme Court subsequently confirmed that "the procedure was simplified, but the substance of the authorized intervention of equity was not altered." *Enelow v. N.Y. Life Ins. Co.*, 293 U.S. 379, 382 (1935); *cf. Stainback v. Mo Hock Ke Lok Po*, 336 U.S. 368, 383 n.26 (1949) ("Notwithstanding the fusion of law and equity by [Fed. R. Civ. P. 2], the substantive principles of Courts of Chancery remain unaffected."). And under Supreme Court precedent, it was a substantive principle of law and equity that laches alone was not a sufficient basis for a court of equity to enjoin an action at law. *See Wehrman*, 155 U.S. at 326–27. Section 274(b) therefore does not authorize

courts to bar a claim for damages in an action at law based on a defense of laches.

The holding in *Ford* is consistent with this understanding of § 274(b). The court found that the plaintiff's claim was barred under a theory of equitable estoppel, which is an appropriate ground for enjoining an action at law for damages. *See Dickerson v. Colgrove*, 100 U.S. 578, 582–83 (1879). Equitable estoppel requires a showing that the defendant relied on a misleading communication by the plaintiff that is inconsistent with his present claim. *See A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1041 (Fed. Cir. 1992) (en banc). The plaintiff in *Ford* had accepted payment "under circumstances calculated to lead defendant to believe or understand that such payment was accepted by plaintiff in full satisfaction and discharge of all claims by him." 296 F. at 657. Noting that "[t]he effect of one being estopped to enforce a claim is that his plight is substantially the same as it would have been if the claim had never existed," the court held that the plaintiff's action at law was barred. *Id.* at 657–58. The disposition in *Ford* thus rested on a theory of equitable estoppel, consistent with substantive equitable principles and § 274(b). *See Thorpe*, 40 F.2d at 270 (finding that in *Ford*, "while the word 'laches' is used, the decision clearly rested upon the ground of estoppel"). Any mention of laches was mere dictum, and certainly cannot be read to contradict Supreme Court precedent holding that laches does not bar a claim for damages in an action at law. *See Jama v. Immigration & Customs Enf't*, 543 U.S. 335, 351 n.12 (2005) ("Dictum settles nothing, even in the court that utters it.").

The Third Circuit in *Banker*, however, took *Ford* beyond its holding and applied laches in an action at law based on a misinterpretation of § 274(b). Although the court cited *Ford* for its interpretation of § 274(b), the court went further and held that this provision "authorizes equitable defenses in actions at law theretofore applicable

only in equity." *Banker*, 69 F.2d at 666. The Third Circuit found that "[had] the appellant's suit been in equity, the evidence would have been ample for holding that recovery was barred because of laches." *Id.* For support, the Third Circuit relied on cases in which courts of equity applied laches to preclude a claim for an injunction and an accounting. *Id.* But it does not follow from these cases in equity that laches may also be grounds for enjoining a claim to legal damages in an action at law. Moreover, by 1952, the Supreme Court had established that laches cannot be invoked for this purpose, *see Wehrman*, 155 U.S. at 326–27, and that § 274(b) does not change substantive principles of law and equity, *see Enelow*, 293 U.S. at 382. In light of the Third Circuit's flawed analysis, as highlighted by Supreme Court decisions, *Banker* does not support a well-established rule in 1952 that laches may preclude a claim for legal damages in patent-infringement cases, notwithstanding the statutory limitations period. Neither do the cases relying on *Banker* without discussion. *See, e.g, Universal Coin Lock Co. v. Am. Sanitary Lock Co.*, 104 F.2d 781, 781 (7th Cir. 1939).

Several other cases cited by the majority involve courts of equity barring a plaintiff's suit due to laches. In one of these cases, the precluded relief included damages. *See George J. Meyer Mfg. Co. v. Miller Mfg. Co.*, 24 F.2d 505 (7th Cir. 1928). Others applied laches to bar a request for an "accounting," which we have said was sometimes—but only sometimes—used to refer to damages. *See, e.g., Wolf, Sayer & Heller v. U.S. Slicing Mach. Co.*, 261 F. 195 (7th Cir. 1919); *Hartford-Empire Co. v. Swindell Bros.*, 96 F.2d 227 (4th Cir. 1938); *Union Shipbuilding Co. v. Boston Iron & Metal Co.*, 93 F.2d 781 (4th Cir. 1938); *France Mfg. Co. v. Jefferson Elec. Co.*, 106 F.2d 605 (6th Cir. 1939); *Gillons v. Shell Co. of Cal.*, 86 F.2d 600 (9th Cir. 1936); *Window Glass Mach. Co. v. Pittsburgh Plate Glass Co.*, 284 F. 645 (3d Cir. 1922); *A.R. Mosler & Co. v. Lurie*, 209 F. 364 (2d Cir. 1913).

These cases do not support the conclusion that laches was well understood to bar legal damages in 1952. Courts of equity had discretion to dismiss a claim on equitable grounds such as laches or unclean hands. Because the patent statute required courts of equity to award damages upon a finding of infringement, *see* Patent Act of 1870, ch. 230, § 55, 16 Stat. 198, 206 (1870), the court's equitable discretion to reject a patent-infringement claim allowed it to bar legal damages in that equity court. But a plaintiff also had the option to seek damages in a court of law. And it was well established that, although a court of equity could refuse to grant damages itself, it could not enjoin a court of law from doing so. *See, e.g., Wehrman*, 155 U.S. at 326–27. Thus, laches could only bar a plaintiff from recovering damages in a particular forum. It was not sufficient to deny a remedy altogether.

That principle necessarily endures after the merger of law and equity. *See Stainback*, 336 U.S. at 383. In the post-merger system, therefore, prior case law applying laches to bar damages in a court of equity does not suddenly extend to all claims for damages. Plaintiffs are still entitled to damages that would have been available in a court of law, to which laches was no defense.

The majority's remaining support is minimal. *See, e.g., Brennan v. Hawley Prods. Co.*, 182 F.2d 945, 948–49 (7th Cir. 1950) (applying laches to bar all relief without mention of the statutory limitations period, citing *Universal Coin Lock*, 781 F.2d at 781, and cases applying laches to bar relief in a court of equity). Particularly in light of the Supreme Court's repeated holding that laches cannot preclude a claim for legal damages governed by a statutory limitations period, these outliers are not sufficient to show a clear or well-established common-law rule to the contrary. To the extent that Congress codified laches, therefore, it was as a defense to equitable relief only, not as a defense to legal relief otherwise permitted under § 286.

C

The majority's policy concerns do not alter this conclusion. The majority argues that, because a copyright holder must prove a defendant's access to a work to establish infringement, potential defendants are more likely to know they are at risk of being sued. *See* Maj. Op. at 35. But innocence is no defense to direct patent infringement, and thus a defendant is less likely to be aware of its potential liability for infringement. *See id.* at 35–36. The majority argues that a defense of laches is therefore more useful to defendants in patent-infringement suits. *See id.* at 36.

The Supreme Court's decision in *Petrella* did not depend on policies specific to copyright law. It turned on the conflict between laches and a statutory limitations period, and the longstanding principle that laches cannot bar a claim for legal relief. *See* 134 S. Ct. at 1967, 1973–74. That innocence is not a defense to direct patent infringement does not make this reasoning any less applicable.

In any event, the majority's policy concerns are not the only consequences at stake. Patent owners often have good reason for delaying suit. As the Seventh Circuit observed:

> Frequently the position of the patentee (financial and otherwise) prevents the institution of suits. The patent litigation is often prolonged and expensive. Moreover from the very nature of the thing he cannot be fully cognizant of all infringements that occur throughout the length and breadth of this country. . . . Then, also, the validity of his patent and the infringement thereof may be, as here, disputed. These defenses present mixed questions of fact and law concerning which there is necessarily some doubt and uncertainty.

*George J. Meyer Mfg. Co.*, 24 F.2d at 507.  Resolving these competing policy concerns is precisely the type of judgment left for Congress.  Congress was well-aware of the nature of patent infringement in 1952, and it must be presumed that Congress took these concerns into account when it established the six-year limitations period for bringing a claim for damages.  We should not undermine Congress' judgment in 1952 according to our own assessment of the current policy landscape.

### III

The Supreme Court in *Petrella* reiterated the principle that laches does not apply to claims for legal relief governed by a statutory limitations period.  The evidence of congressional intent and the pre-1952 case law is insufficient to justify departing from this principle in patent-infringement cases.  Following the Supreme Court's longstanding precedent, I read § 286 to express Congress' exclusive judgment on the timeliness of a claim for damages.  Laches is not available as a further defense.  Accordingly, I respectfully dissent-in-part.