**2013-1564**

# United States Court of Appeals
# for the Federal Circuit

SCA HYGIENE PRODUCTS AKTIEBOLAG
and SCA PERSONAL CARE, INC.,

*Plaintiffs-Appellants,*

v.

FIRST QUALITY BABY PRODUCTS, LLC,
FIRST QUALITY HYGIENIC, INC., FIRST QUALITY PRODUCTS, INC.,
and FIRST QUALITY RETAIL SERVICES, LLC,

*Defendants-Appellees.*

*Appeal from the United States District Court for the Western District of Kentucky in Case No. 10-CV-0122, Chief Judge Joseph H. McKinley, Jr.*

**BRIEF OF INTELLECTUAL PROPERTY OWNERS ASSOCIATION AS *AMICUS CURIAE* IN SUPPORT OF DEFENDANTS-APPELLEES**

PHILIP S. JOHNSON, *President*
KEVIN H. RHODES, *Chair, Amicus Brief Committee*
INTELLECTUAL PROPERTY
OWNERS ASSOCIATION
1501 M Street, N.W.
Suite 1150
Washington, D.C. 20005
(202) 507-4500

GREGORY A. CASTANIAS
SASHA MAYERGOYZ
CAROLINE EDSALL
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
(202) 879-3939

*Counsel for Amicus Curiae Intellectual Property Owners Association*

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

SCA HYGIENE PRODUCTS AKTIEBOLAG AND SCA PERSONAL CARE, INC. v. FIRST QUALITY BABY PRODUCTS, LLC, ET AL.

No. 2013-1564

## CERTIFICATE OF INTEREST

Counsel for the Amicus Curiae, Intellectual Property Owners Association certifies the following (use "None" if applicable; use extra sheets if necessary):

1. The full name of every party or amicus represented by me is:

   Intellectual Property Owners Association

2. The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

   None

3. All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

   None

4. The names of all law firms and the partners or associates that appear for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

   Philip S. Johnson, Kevin H. Rhodes, and Herbert C. Wamsley, Intellectual Property Owners Association

   Gregory A. Castanias, Sasha Mayergoyz, and Caroline Edsall, Jones Day

| | |
|---|---|
| March  5, 2015 | /s/  Herbert C. Wamsley |
| Date | Herbert C. Wamsley |

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTEREST ...............................................................i

TABLE OF AUTHORITIES .............................................. iii

INTEREST OF AMICUS CURIAE ...................................1

SUMMARY OF ARGUMENT ...........................................3

ARGUMENT .....................................................................5

I.     Laches should remain available to bar a claim for damages based on patent infringement occurring within the six-year damages period of 35 U.S.C. § 286...................................................................5

       A.     *Petrella* jettisoned laches for copyright cases in light of the Copyright Act's statute of limitations; the Patent Act lacks such a statute of limitations. ......................8

       B.     Legislative history and historical practice demonstrate Congress's intent that laches remain available to bar a claim for damages. ...........................................14

       C.     Retaining laches to bar damages claims serves important interests such as fairness and certainty, thereby protecting and incentivizing investment and innovation. ..........18

II.    Laches should be available in appropriate circumstances to bar an entire infringement suit, whether for damages, injunctive relief, or both. ...................................................22

       A.     Laches should be available to bar a suit for equitable relief, including prospective injunctive relief.............................22

       B.     District courts should retain the power to bar claims for legal relief, for equitable relief, or for both, and to dismiss an entire suit, based on laches. ........................26

CONCLUSION ..................................................................29

# TABLE OF AUTHORITIES

**Page(s)**

C ASES

*A.C. Aukerman Co. v. R.L. Chaides Constr. Co.,*
     960 F.2d 1020 (Fed. Cir. 1992) .................................................................*passim*

*Abraham v. Alpha Chi Omega,*
     708 F.3d 614 (5th Cir. 2013) ................................................................25

*Armco, Inc. v. Armco Burglar Alarm Co.,*
     693 F.2d 1155 (5th Cir. 1982) ..............................................................25

*Aro Mfg. Co. v. Convertible Top Replacement Co.,*
     365 U.S. 336 (1961)..............................................................................17

*Astoria Fed. Sav. & Loan Ass'n v. Solimino,*
     501 U.S. 104 (1991)..............................................................................16

*Banker v. Ford Motor Co.,*
     69 F.2d 665 (3d Cir. 1934) ............................................................7, 15

*Beach v. Ocwen Fed. Bank,*
     523 U.S. 410 (1998)..............................................................................10

*Bobbs-Merrill Co. v. Straus,*
     210 U.S. 339 (1908)..............................................................................13

*Brennan v. Hawley Prods. Co.,*
     182 F.2d 945 (7th Cir. 1950) ................................................................15

*Chicago Pneumatic Tool Co. v. Hughes Tool Co.,*
     192 F.2d 620 (10th Cir. 1951) ..............................................................15

*CTS Corp. v. Waldburger,*
     134 S. Ct. 2175 (2014)..........................................................................10

*Dwight & Lloyd Sintering Co. v. Greenawalt,*
     27 F.2d 823 (2d Cir. 1928) ...................................................................15

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*eBay Inc. v. MercExchange, L.L.C.*,
   547 U.S. 388 (2006)...................................................................................25, 27

*Envtl. Def. Fund, Inc. v. Alexander*,
   614 F.2d 474 (5th Cir. 1980) ...................................................................6, 18

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*,
   535 U.S. 722 (2002).........................................................................................27

*Ford v. Huff*,
   296 F. 652 (5th Cir. 1924) ............................................................................15

*France Mfg. Co. v. Jefferson Electric Co.*,
   106 F.2d 605 (6th Cir. 1939) ........................................................................15

*Gardner v. Panama R.R. Co.*,
   342 U.S. 29 (1951)............................................................................................27

*Gillons v. Shell Co.*,
   86 F.2d 600 (9th Cir. 1936) ..........................................................................15

*Hartford-Empire Co. v. Swindell Bros., Inc.*,
   96 F.2d 227 (4th Cir. 1938) ..........................................................................15

*Hecht Co. v. Bowles*,
   321 U.S. 321 (1944)..........................................................................................27

*Heimeshoff v. Hartford Life & Accident Ins. Co.*,
   134 S. Ct. 604 (2013).......................................................................................10

*Holmberg v. Armbrecht*,
   327 U.S. 392 (1942).........................................................................................27

*KSR Int'l Co. v. Teleflex Inc.*,
   550 U.S. 398 (2007)..........................................................................................27

# TABLE OF AUTHORITIES

(continued)

**Page(s)**

*Lane & Bodley Co. v. Locke*,
   150 U.S. 193 (1893)..............................................................................*passim*

*Leggett v. Standard Oil Co.*
   149 U.S. 287 (1893)......................................................................................7

*Leinoff v. Louis Milona & Sons, Inc.*,
   726 F.2d 734 (Fed. Cir. 1984) ....................................................................10

*Lozano v. Montoya Alvarez*,
   34 S. Ct. 1224 (2014)..................................................................................10

*Mackall v. Casilear*,
   137 U.S. 556 (1890)................................................................................. 5-6

*Mahn v. Harwood*,
   112 U.S. 354 (1884)......................................................................................7

*Mazer v. Stein*,
   347 U.S. 201 (1954)....................................................................................13

*McLean v. Fleming*,
   96 U.S. 245 (1878)...........................................................................24, 25, 28

*McQuiggin v. Perkins*,
   133 S. Ct. 1924 (2013)................................................................................16

*Menendez v. Holt*,
   128 U.S. 514 (1888).........................................................................24, 25, 27

*Meyrowitz Mfg. Co. v. Eccleston*,
   98 F. 437 (C.C.D. Mass. 1899).....................................................................15

*Microsoft Corp. v. i4i Ltd. P'ship*,
   131 S. Ct. 2238 (2011)................................................................................16

# TABLE OF AUTHORITIES

(continued)

Page(s)

*Montgomery Ward & Co. v. Clair*,
123 F.2d 878 (8th Cir. 1941) ...........................................................15

*Nat'l R.R. Passenger Corp. v. Morgan*,
536 U.S. 101 (2002) ....................................................................6, 28

*Odetics, Inc. v. Storage Tech. Corp.*,
185 F.3d 1259 (Fed. Cir. 1999) .........................................................28

*Odetics, Inc. v. Storage Tech. Corp.*,
919 F. Supp. 911 (E.D. Va. 1996) .....................................................20

*Park & Sons v. Hartman*,
153 F. 24 (6th Cir. 1907) ................................................................ 13

*Petrella v. Metro-Goldwyn-Mayer, Inc.*,
134 S. Ct. 1962 (2014) ..........................................................*passim*

*Porter v. Warner Holding Co.*,
328 U.S. 395 (1946) ................................................................ 26-27

*Potash Co. of America v. Int'l Minerals & Chem.*,
213 F.2d 153 (10th Cir. 1954) ..........................................................16

*Serdarevic v. Advanced Med. Optics, Inc.*,
532 F.3d 1352 (Fed. Cir. 2008) .........................................................20

*SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*,
767 F.3d 1339 (Fed. Cir. 2014) .........................................................19

*Standard Oil Co. v. Nippon Shokubai Kagaku Kogyo Co.*,
754 F.2d 345 (Fed. Cir. 1985) ..........................................................10

*Symbol Techs., Inc. v. Lemelson Med.*,
277 F.3d 1361 (Fed. Cir. 2002) ................................................. 17-18

# TABLE OF AUTHORITIES

(continued)

**Page(s)**

*Tech. for Energy Corp. v. Computational Sys., Inc.*,
    1993 U.S. App. LEXIS 24556 (Fed. Cir. Sept. 21, 1993) ..................................19

*United Drug Co. v. Theodore Rectanus Co.*,
    248 U.S. 90 (1918)...................................................................................................25

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*,
    520 U.S. 17 (1997)...................................................................................................17

*Wollensak v. Reiher*,
    115 U.S. 96 (1885).....................................................................................................7

*Young v. United States*,
    535 U.S. 43 (2002)...................................................................................................11

**STATUTES**

17 U.S.C. § 507(b) ..............................................................................................3, 9, 12

35 U.S.C. § 282......................................................................................................14, 17, 18

35 U.S.C. § 286.............................................................................................................*passim*

Bankruptcy Code § 507(a)(8)(A)(i) ...................................................................11

Bankruptcy Code § 523(a)(1)(A)........................................................................11

Law and Equity Act of 1915 ...................................................................................6

16 Stat. 206, § 55 (July 8, 1870) ...........................................................................14

29 Stat. 694, § 6 (March 3, 1897) ..........................................................................14

38 Stat. 956 ..................................................................................................................6

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

OTHER AUTHORITIES

2 John Norton Pomeroy, *A Treatise on Equity as Administered in the United States of America* § 418-419 (5th ed. 1941) ...........................5

3 William C. Robinson, *The Law of Patents for Useful Inventions* § 1114 (1890) ..............................................................................5

4 *Walker, on Patents* § 880B (Deller's ed. 1937).................................15

4 Wright & Miller, *Federal Practice & Procedure* §§ 1041, 1043 (3d ed. 2014) ........................................................................................7

6A Donald S. Chisum, *Chisum on Patents* § 19.05 (Matthew Bender 2014) ........................................................................5

27A Am. Jur. 2d *Equity* (2d ed. 2015) .....................................................5

Fed. Cir. R. 29 ............................................................................................1

Fed. R. App. 29 ..........................................................................................1

Fed. R. Civ. P. 2 ........................................................................................6

Fed. R. Civ. P. 8(c)(1) ..............................................................................7

Frederico, P.J., *Commentary on the New Patent Act* reprinted in 75 J. Pat. & Trademark Off. Soc'y 161 (1993) ...........................................18

Note, *Developments in the Law: Statutes of Limitations*, 63 Harv. L. Rev. 1177 (1950) .................................................................................10

Walter Wheeler Cook, *Equitable Defenses*, 32 Yale L.J. 645 (1922-1923) ......................................................................................................6

Wood, H., 1 *Limitations of Actions* § 1 (4th ed. 1916).........................10

The Intellectual Property Owners Association (IPO) submits this brief as an amicus curiae pursuant to Fed. R. App. 29, Fed. Cir. R. 29, and the Court's Order dated December 30, 2014, authorizing amicus briefs in this case.  IPO submits this brief in support of laches being available to bar claims for both damages and injunctive relief in patent-infringement cases.  It takes no position on the underlying merits of the parties' appeal.

## INTEREST OF AMICUS CURIAE

Amicus curiae Intellectual Property Owners Association is a trade association representing companies and individuals in all industries and fields of technology that own or are interested in intellectual property rights.[1]  IPO's membership includes more than 200 companies and more than 12,000 individuals who are involved in the association either through their companies or as an inventor, author, executive, law firm, or attorney member.  Founded in 1972, IPO represents the interests of all owners of intellectual property.  IPO regularly represents the interests of its members before Congress and the United States Patent and Trademark Office and has filed amicus curiae briefs in this Court and

---

[1] No counsel for a party authored this brief in whole or in part, and no such counsel of party made a monetary contribution intended to fund the preparation or submission of this brief.  No person other than the amicus curiae or its counsel made a monetary contribution to its preparation or submission.  IPO files this brief in accordance with the Order issued on December 30, 2014, which states that briefs may be filed without consent or leave of the court.

other courts on significant issues of intellectual property law.  The members of

IPO's Board of Directors, which approved the filing of this brief, are listed in the

Appendix.[2]

_____

[2] IPO procedures require approval of positions in briefs by a two-thirds
majority of directors present and voting.

## SUMMARY OF THE ARGUMENT

IPO's amicus brief addresses the two questions posed by the Court's December 30, 2014, Order, as follows:

I.     Over twenty years ago, this Court held that the equitable doctrine of laches could bar a claim for damages based on patent infringement occurring within the six-year period established by 35 U.S.C. § 286.  *See A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1031 (Fed. Cir. 1992) (en banc).  That holding remains good law, and should be reaffirmed by this Court.

First, although the Supreme Court recently held that laches could not bar a claim for damages based on copyright infringement in light of the statute of limitations contained in the Copyright Act and codified at 17 U.S.C. § 507(b), that holding turned on the existence of a comprehensive statute of limitations for copyright infringement.  *See Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S. Ct. 1962 (2014).  By contrast, Section 286 does not impose such a statute of limitations.  Section 507(b) of the Copyright Act was a congressional pronouncement that defined the timeliness of all claims for copyright infringement, leaving no room for equity to fill gaps via laches.  The same cannot be said, however, of the six-year damages limit in Section 286 of the Patent Act, which, unaccompanied by the gap-filling work of laches, would leave patent law entirely bereft of a limitation on stale claims.

Second, the legislative history of the 1952 Patent Act establishes Congress's intention that laches remain a bar to claims of patent infringement.  Federal courts

had long applied laches in patent-infringement cases when Congress recodified the six-year provision in Section 286 without substantial change. Moreover, a commentary on the 1952 Patent Act written by one of the Act's drafters, P.J. Federico, explicitly contemplates that laches would continue to be a defense to patent-infringement actions.

Third, basic considerations of fairness, magnified in the patent context, require that laches remain a bar to such patent-infringement claims. Without laches, defendants could in good faith build entire businesses during a patentee's lengthy delay, only to lose everything in an unreasonably belated infringement suit.

II.    Laches applies not only to bar a claim for damages incurred prior to suit, but it should also be available to bar a claim for injunctive relief, or an entire suit. *Aukerman*'s pinched holding that laches cannot bar a claim for injunctive relief cannot stand in light of Supreme Court decisions such as *Lane & Bodley Co. v. Locke*, 150 U.S. 193 (1893), and *Petrella*, 134 S. Ct. 1962. Indeed, it would be curious if an equitable defense such as laches could not bar, in appropriate cases, equitable relief. Moreover, in light of those equitable roots, laches is a flexible doctrine committed to the discretion of district courts. Accordingly, in appropriate circumstances, judges may invoke the doctrine to bar damages, injunctions, or entire suits.

# **ARGUMENT**

I.    **Laches should remain available to bar a claim for damages based on patent infringement occurring within the six-year damages period of 35 U.S.C. § 286.**

The doctrine of laches is a "nonstatutory time bar[] to suit[] or to particular remedies," developed in English courts of equity.  6A Donald S. Chisum, *Chisum on Patents* § 19.05 (Matthew Bender 2014).  "In early English practice, most actions 'at law' for monetary damages fell under express statutes of limitations stating a set number of years for filing suit after a cause of action arose."  *Id.*  By contrast, equitable suits "for remedies such as an injunction, specific performance, or rescission did not fall under such statutes."  *Id.*  Nevertheless, "on policy grounds, equity declined to afford relief on 'stale demands.'"  *Id.*

U.S. courts have long incorporated this doctrine.  *See generally* 27A Am. Jur. 2d *Equity* (2d ed. 2015); 2 John Norton Pomeroy, *A Treatise on Equity as Administered in the United States of America* §§ 418-419 (5th ed. 1941); 3 William C. Robinson, *The Law of Patents for Useful Inventions* §1114 (1890).  As the Supreme Court noted in 1893, courts of equity would "not assist one who [had] slept upon his rights, and show[ed] no excuse for his laches in asserting them." *Lane & Bodley Co. v. Locke*, 150 U.S. 193, 201 (1893).  As in England, the principle was "based upon grounds of public policy, which require for the peace of society the discouragement of stale demands." *Mackall v. Casilear*, 137 U.S. 556,

566 (1890).  Today, consistent with its historical roots, the laches defense requires

"proof of (1) lack of diligence by the party against whom the defense is asserted,

and (2) prejudice to the party asserting the defense."  *Nat'l R.R. Passenger Corp. v.*

*Morgan*, 536 U.S. 101, 122 (2002) (internal quotation marks omitted).  When

successful, laches "bars a plaintiff from maintaining a suit."  *Id.* at 121.

Over one hundred years ago, laches branched out from equity and into the

law.  The doctrine was "adopted by common law courts and, following the merger

of law and equity, became part of the general body of rules governing relief in the

federal court system."  *Envtl. Def. Fund, Inc. v. Alexander*, 614 F.2d 474, 478 (5th

Cir. 1980).  More specifically, the Law and Equity Act of 1915 provided that

equitable defenses could be raised in courts of law, without need for a separate bill

of equity.  *See Aukerman*, 960 F.2d at 1031; *see also* Walter Wheeler Cook,

*Equitable Defenses*, 32 Yale L.J. 645, 646 (1922-1923) (noting that in 1915,

Congress enacted 38 Stat. 956, which provided: "In all actions at law equitable

defenses may be interposed by answer, plea, or replication without the necessity of

filing a bill on the equity side of the court.").  Two decades later, the Federal Rules

of Civil Procedure joined equitable and legal claims into a single civil action.  *See*

Fed. R. Civ. P. 2 ("There is one form of action—the civil action."); *see also*

*Aukerman,* 960 F.2d at 1031.  Today, those same Rules explicitly state that in

response to a civil action, laches may be interposed as a defense.[3]  Fed. R. Civ. P. 8(c)(1) ("In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense, including … laches ….").  Thus, given the merger of law and equity, courts "must give the relief to which the parties are entitled on the facts, applying the rules of both law and equity as a single body of principles and precedents."  4 Wright & Miller, *Federal Practice & Procedure* § 1041 (3d ed. 2014); *see also id.* § 1043 ("[T]he merger of law and equity and the abolition of the forms of action furnish a single uniform procedure by which a litigant may present his claim in an orderly manner to a court empowered to award whatever relief is appropriate and just….").

In the patent-infringement context, early Supreme Court cases recognized that laches could bar claims for equitable relief.  *See Lane & Bodley Co.*, 150 U.S. at 201; *Leggett v. Standard Oil Co.*, 149 U.S. 287, 294 (1893); *Wollensak v. Reiher*, 115 U.S. 96, 99 (1885); *Mahn v. Harwood*, 112 U.S. 354, 363 (1884).  As equity began to merge with law, lower courts recognized that laches could also bar legal claims.  *See, e.g.*, *Banker v. Ford Motor Co.*, 69 F.2d 665, 666 (3d Cir. 1934).

---

[3] Laches is not the only equitable defense that migrated into the land of the law.  For example, Rule 8 recognizes estoppel as a defense to legal claims, as does the Supreme Court.  Fed. R. Civ. P. 8(c)(1) (listing "estoppel" as an additional "avoidance or affirmative defense" to a civil action); *Petrella*, 134 S. Ct. at 1977 ("[E]stoppel may bar the copyright owner's claims completely.").

This Court's en banc decision in *Aukerman* was of a piece, holding that laches could bar claims for damages incurred prior to suit in patent-infringement cases.

That holding of *Aukerman* remains good law, and should be reaffirmed by this Court.  In *Petrella*, the Supreme Court recently held that laches could not bar claims for *copyright* damages.  However, the statutory structure of the Copyright Act contains an express statute of limitations, whereas the Patent Act does not, thereby demonstrating that laches remains necessary to prevent litigation of stale patent-infringement claims.  Moreover, the legislative history of the Patent Act underscores the conclusion that laches is available as a bar to legal relief.  Finally, practical considerations of fairness—the need to afford certainty to investors and protect their investments—weigh in favor of retaining laches as a bar to damage claims in patent-infringement suits.

### A.    *Petrella* jettisoned laches for copyright cases in light of the Copyright Act's statute of limitations; the Patent Act lacks such a statute of limitations.

The Supreme Court recently concluded that laches did not apply to claims for damages based on copyright infringement in light of the Copyright Act's three-year statute of limitations.  *Petrella*, 134 S. Ct. 1962.  However, the case before this Court involves a claim for patent infringement, and the Patent Act lacks such a statute of limitations.  Given these fundamental distinctions, *Petrella* does not require overruling *Aukerman*'s holding that laches is available as a defense in suits

- 8 -

for patent infringement; indeed, the language and logic of *Petrella* confirms the need for laches in patent cases.

In *Petrella*, the Supreme Court held that, "in face of a statute of limitations enacted by Congress, laches cannot be invoked to bar legal relief." 134 S. Ct. at 1974. The Court further explained that the Copyright Act "bars relief of any kind for conduct occurring prior to [a] three-year limitations period," and concluded that laches could not be invoked "to jettison Congress' judgment on the timeliness of suit." *Id.* at 1967. That holding was compelled by the statute of limitations contained in the Copyright Act, which provides that "[n]o civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued." 17 U.S.C. § 507(b). In short, the Copyright Act categorically bars *all* claims that are not timely commenced.

The Patent Act, by contrast, does not. Rather, 35 U.S.C. § 286 reads: "Except as otherwise provided by law, no recovery shall be had for any infringement committed more than six years prior to the filing of the complaint or counterclaim for infringement in the action." This provision merely restricts damages to the six-year period prior to the suit; it is not, as with 17 U.S.C. § 507(b), a bar to untimely claims. *See Aukerman*, 960 F.2d at 1030 ("Assuming a finding of liability, the effect of section 286 is to limit recovery to damages for infringing acts committed within six years of the date of the filing of the

infringement action.").  The Supreme Court's recent decision in *CTS Corp. v. Waldburger* is particularly instructive, as there the Court explained that, "[i]n the ordinary course, a statute of limitations creates 'a time limit for suing in a civil case, based on the date when the claim accrued.'"  134 S. Ct. 2175, 2182 (2014); *see also Lozano v. Montoya Alvarez*, 34 S. Ct. 1224, 1234 (2014) (citing *Heimeshoff v. Hartford Life & Accident Ins. Co.*, 134 S. Ct. 604, 610 (2013)); *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 416 (1998) (citing Note, *Developments in the Law: Statutes of Limitations*, 63 Harv. L. Rev. 1177, 1179 (1950); H. Wood, 1 *Limitation of Actions* § 1, pp. 2-3 (4th ed. 1916)).  Importantly, Section 286, however, does not bar actions; it merely restricts the duration for which damages can be recovered.

This Court agreed in *Aukerman*, holding that "section 286 is not a statute of limitations in the sense of barring a suit for infringement."  960 F.2d at 1030; *accord Standard Oil Co. v. Nippon Shokubai Kagaku Kogyo Co.*, 754 F.2d 345, 348 (Fed. Cir. 1985); *Leinoff v. Louis Milona & Sons, Inc.*, 726 F.2d 734, 741 (Fed. Cir. 1984).  This Court acknowledged as much in its December 30, 2014, Order, stating that "there is no statute of limitations for claims of patent infringement."  Those conclusions are sound—Section 286 only restricts damages; it is not, in any ordinary sense, a statute of limitations.

As a result, the holding and reasoning of *Petrella* do not affect the availability of laches in patent cases. In the Copyright Act, Congress, by enacting a specific bar on untimely claims, in effect occupied the field and left no room for laches to perform an equitable, gap-filling role. By contrast, in the Patent Act, Congress left much room for laches to act.

The Supreme Court's decision in *Young v. United States*, 535 U.S. 43 (2002), does not require a different conclusion. That case involved provisions of the Bankruptcy Code that granted priority and nondischargeability rights to the IRS, but only regarding taxes owed on returns due in the three years prior to the filing of the bankruptcy petition. The Court held that the "three-year lookback period" in the Bankruptcy Code was a "limitations period subject to traditional principles of equitable tolling." *Id.* at 47. In so holding, the Court commented that "unlike most statutes of limitations, the lookback period bars only *some*, and not *all*, legal remedies for enforcing the claim (viz., priority and nondischargeability in bankruptcy)," but according to the Court, the lookback period was "a statute of limitations nonetheless." *Id.* at 47-48. *Young*'s language cannot properly be stretched to suggest that Section 286 *is* a statute of limitations that leaves no room for laches to operate. For one, the Supreme Court's conclusion that Sections 507(a)(8)(A)(i) and 523(a)(1)(A) of the Bankruptcy Code constitute a statute of limitations for purposes of equitable tolling does not require the conclusion that

Section 286 of the Patent Act is a statute of limitations for purposes of preempting laches, particularly in light of the weight of authority defining statutes of limitations as bars to suit.

Moreover, *Petrella* did not turn on superficial labels; rather, it was decided based on the fact that Section 507(b) expressly occupied the timeliness field and left no room for laches. Indeed, the Court explained that prior to 1957, the Copyright Act had lacked a statute of limitations, but in that year, Congress "*filled the hole*" and prescribed a three-year limitations period "*for all civil claims*." 134 S. Ct. at 1968 (emphasis added). The Court thus deemed Section 507(b) to be a "time-to-*sue* prescription," *id.* at 1978 (emphasis added), reflecting "Congress' judgment on the timeliness of *suit*" and "*bar[ring] relief of any kind*," *id.* at 1967 (emphasis added). The Court thus concluded that the current copyright regime "leaves 'little place' for a doctrine that would further limit the timeliness of a copyright owner's suit." *Id.* at 1977. It is clear that Section 507(b) is an all-encompassing statute of limitations, and that fact was central to fueling the Court's reasoning in *Petrella* that laches had no place as a copyright-infringement defense.

By contrast, Section 286 of the Patent Act simply restricts damages to a six-year duration. Thus, under the Patent Act, not only is there room for laches, but the defense is vital for filling the statute-of-limitations void and barring stale claims. Whereas the Copyright Act's statute of limitations guarantees that

following a final act of infringement, after a period of three years, a potential

accused copyright infringer will be entitled to repose, the Patent Act does not offer

that same protection.  Laches must do that job.

In sum, this Court in *Aukerman* addressed and rejected the argument that the

six-year recovery bar of Section 286 "conflicts with" and "effectively preempts"

the laches defense.  960 F.2d at 1029.  The Court's analysis there was correct, and

consistent with the reasoning of *Petrella*.  The fact that the role for laches is

different as between patent and copyright cases stems from the differences between

the patent statutes and the copyright statutes—and those differences,

notwithstanding the "historic kinship" between the two bodies of law, should be

honored.  *See, e.g., Mazer v. Stein*, 347 U.S. 201, 217-18 (1954); *Bobbs-Merrill*

*Co. v. Straus*, 210 U.S. 339, 345-46 (1908) (quoting *Park & Sons v. Hartman*, 153

F. 24, 28 (6th Cir. 1907), for the proposition that "[t]here are such wide differences

between the right of multiplying and vending copies of a production protected by

the copyright statute and the rights secured to an inventor under the patent statutes,

that the cases which relate to the one subject are not altogether controlling as to the

other" (internal quotation marks omitted)).

**B.    Legislative history and historical practice demonstrate Congress's intent that laches remain available to bar a claim for damages.**

In *Petrella*, the Supreme Court recognized that, in the Patent Act context, "[b]ased in part on [35 U.S.C. § 282] and commentary thereon, legislative history, and historical practice, the Federal Circuit has held that laches can bar damages incurred prior to the commencement of [a] suit." 134 S. Ct. at 1974 n.15. Indeed, historical practice, legislative history, and commentary on Section 282 demonstrate that notwithstanding Section 286, laches has a vital role to play as defense to patent infringement.

As *Aukerman* explains it, well over one hundred years ago, "[f]or the brief time of 1870-1874, the patent statute contained an actual statute of limitations which required 'all actions for the infringement of patents shall be brought during the term for which letters patent shall be granted or extended, or within six years after the expiration thereof.'" 960 F.2d at 1030 n.8 (quoting 16 Stat. 206, § 55 (July 8, 1870)). That provision was abrogated, however. In 1897, a six-year recovery bar was added, *see* 29 Stat. 694, § 6 (March 3, 1897),[4] and U.S. patent law has contained substantially the same provision ever since, *see Aukerman*, 960

---

[4] "But in any suit or action brought for the infringement of any patent there shall be no recovery of profits or damages for any infringement committed more than six years before the filing of the bill of complaint or the issuing of the writ in such suit or action, and this provision shall apply to existing causes of action."

F.2d at 1030 ("[T]he statutory language of section 286 was virtually identical to a predecessor provision under which laches was also recognized.").

Without a statute of limitations in the Patent Act, federal courts turned to the equitable doctrine of laches to bar delayed claims in appropriate cases. Prior to the recodification of the patent laws in 1952, federal courts in nearly every circuit recognized that laches was a defense to a charge of patent infringement, notwithstanding the presence of the six-year recovery bar in the statute. *See Meyrowitz Mfg. Co. v. Eccleston*, 98 F. 437, 439-40 (C.C.D. Mass. 1899); *Dwight & Lloyd Sintering Co. v. Greenawalt*, 27 F.2d 823, 827 (2d Cir. 1928); *Banker v. Ford Motor Co.*, 69 F.2d 665, 666 (3d Cir. 1934); *Hartford-Empire Co. v. Swindell Bros., Inc.*, 96 F.2d 227, 233 (4th Cir. 1938); *Ford v. Huff,* 296 F. 652, 657-58 (5th Cir. 1924); *France Mfg. Co. v. Jefferson Electric Co.*, 106 F.2d 605, 609 (6th Cir. 1939); *Brennan v. Hawley Prods. Co.*, 182 F.2d 945, 948 (7th Cir. 1950); *Montgomery Ward & Co. v. Clair*, 123 F.2d 878, 883 (8th Cir. 1941); *Gillons v. Shell Co.*, 86 F.2d 600 (9th Cir. 1936); *cf. Chicago Pneumatic Tool Co. v. Hughes Tool Co.*, 192 F.2d 620, 625 (10th Cir. 1951) (assuming the availability of laches but noting that "the plea of laches and estoppel finds no substantial basis in the record").[5] *See generally* 4 *Walker, on Patents* § 880B (Deller's ed. 1937).

---

[5] In 1954, just two years after passage of the 1952 Act, the Tenth Circuit wrote, "On the question of laches, there are well-settled applicable rules of law.

In 1952, when Congress recodified the patent laws and retained the six-year recovery bar, it did so against this backdrop, in which the federal courts had uniformly embraced the availability of laches in patent cases. Accordingly, Congress's decision to continue the six-year recovery bar without change reflects its acceptance of the role of laches as a defense to patent infringement. "Congress is understood to legislate against a background of common-law adjudicatory principles;" thus, "where a common-law principle is well established, … the courts may take it as given that Congress has legislated with an expectation that the principle will apply except when a statutory purpose to the contrary is evident." *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 108 (1991) (internal quotation marks omitted); *see also McQuiggin v. Perkins*, 133 S. Ct. 1924, 1934 n.3 (2013) ("Congress legislates against the backdrop of existing law.").

The Supreme Court has frequently considered the effect of the 1952 Patent Act upon preexisting law, and has concluded, in analogous circumstances, that the 1952 Act evidenced no intent to alter a longstanding common-law regime. *See, e.g.*, *Microsoft Corp. v. i4i Ltd. P'ship*, 131 S. Ct. 2238, 2246 (2011) (retaining clear-and-convincing-evidence standard for invalidity challenges in part because of the 1952 Act's silence on the subject, which required the court to "presume" that

---

The rule is applicable in patent cases." *Potash Co. of America v. Int'l Minerals & Chem.*, 213 F.2d 153, 154 (10th Cir. 1954).

Congress intended to retain that standard of proof, as reflected in pre-1952 Act case law); *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 26-27 (1997) (concluding that the doctrine of equivalents survived the 1952 Act and noting that, "[i]n the context of infringement, we have already held that pre-1952 precedent survived the passage of the 1952 Act," "see[ing] no reason to reach a different result here," and citing *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 365 U.S. 336, 342 (1961) for the proposition that a "new section defining infringement 'left intact the entire body of case law on direct infringement'"). The same analysis applies here and leads to the conclusion that the passage of the 1952 Patent Act—and that Act's retention of the six-year recovery bar—did not disturb the uniform case law embracing laches as a supplemental equitable bar on stale claims.

Finally, as the Supreme Court noted in *Petrella*, Section 282 and commentary thereon are relevant to maintaining the laches defense. Section 282(b) provides: "The following shall be defenses in any action involving the validity or infringement of a patent and shall be pleaded: (1) Noninfringement, absence of liability for infringement or unenforceability." P.J. Federico, who was one of the drafters of the 1952 Patent Act, wrote a contemporaneous commentary on those patent laws. This Court has deemed "Federico's commentary" to be "an invaluable insight into the intentions of the drafters of the Act." *Symbol Techs.,*

*Inc. v. Lemelson Med.*, 277 F.3d 1361, 1366 (Fed. Cir. 2002). Federico's

commentary confirms that the 1952 Patent Act retained the defense of laches.

After quoting the language of Section 282(b)(1), Mr. Federico writes that "this

would include … equitable defenses such as laches, estoppel and unclean hands."

P.J. Federico, *Commentary on the New Patent Act*, reprinted in 75 J. Pat. &

Trademark Off. Soc'y 161, 215 (1993). Given *Petrella*'s directive, Federico's

commentary is further compelling evidence that Congress did not intend to

eradicate laches when it recodified the patent laws in 1952.

### C.    Retaining laches to bar damages claims serves important interests such as fairness and certainty, thereby protecting and incentivizing investment and innovation.

Laches promotes fairness by "assur[ing] that old grievances will some day

be laid to rest, that litigation will be decided on the basis of evidence that remains

reasonably accessible and that those against whom claims are presented will not be

unduly prejudiced by delay in asserting them." *Aukerman,* 960 F.2d at 1029

(quoting *Envtl. Def. Fund v. Alexander*, 614 F.2d 474, 481 (5th Cir. 1980)). To

benefit from laches, a defendant must generally demonstrate unreasonable delay by

the plaintiff and prejudice to the defendant. *See id.* at 1032. *Aukerman* identified

two types of such prejudice—economic and evidentiary. "Economic prejudice

may arise where a defendant and possibly others will suffer the loss of monetary

investments or incur damages which likely would have been prevented by earlier

suit." *Id.* at 1033. "Evidentiary … prejudice," meanwhile, "may arise by reason of a defendant's inability to present a full and fair defense on the merits due to the loss of records, the death of a witness, or the unreliability of memories of long past events, thereby undermining the court's ability to judge the facts." *Id.* Those prejudices are not eliminated by the six-year recovery bar.

The doctrine is especially critical in patent cases, where delay can lead to devastating economic prejudice. Based on a reasonable assumption that a plaintiff will not file suit, a defendant may invest heavily in researching and developing a product, expend significant resources to bring the product to market, extensively promote its use, and perhaps even build an entire business. In such circumstances, if a plaintiff files suit an unreasonable number of years later, the defendant could face ruin. Whereas a prompt and justified suit could have led to fair and equitable damages, an unreasonably delayed suit could destroy what the defendant built in good faith. In the patent context, examples abound of defendants who have invested heavily in research, development, manufacturing, and marketing, and those heavy investments may not return dividends until many years later.[6] As

---

[6] For example, in this case the panel concluded that "First Quality made a number of capital expenditures to expand its relevant product lines and to increase its production capacity. The record evidence suggests that First Quality would have restructured its activities to minimize infringement liability if SCA had brought suit earlier." 767 F.3d 1339, 1347; *see also, e.g.*, *Tech. for Energy Corp. v. Computational Sys., Inc.*, 1993 U.S. App. LEXIS 24556, at *21 (Fed. Cir. Sept. 21, 1993) ("The district court relied on several pages of undisputed evidence

*Aukerman* correctly observed, plaintiffs should not be allowed to "intentionally lie silently in wait watching damages escalate, particularly where an infringer, if he had had notice, could have switched to a noninfringing product." 960 F.2d at 1033 (citation omitted). Laches is necessary to prevent such unfair delay by plaintiffs, and protect such good-faith investments of defendants.

Delay can also lead to harmful evidentiary prejudice in patent cases. Documents or witnesses may be lost, and memories often fade. This Court recently observed in an inventorship case that "three witnesses with knowledge of [plaintiff's] inventorship claim … [had] all died during the period of her delay" and there was "'cumulative and inherent prejudice from the dimming memories of all participants, including [plaintiff] herself.'" *Serdarevic v. Advanced Med. Optics, Inc.*, 532 F.3d 1352, 1360 (Fed. Cir. 2008). Such obstacles to a full and fair defense are not uncommon. *See, e.g.*, *Odetics, Inc. v. Storage Tech. Corp.*, 919 F. Supp. 911, 922 (E.D. Va. 1996), vacated on other grounds, 1997 U.S. App. LEXIS 15254 (Fed. Cir. June 25, 1997) (finding that "600 to 800 documents related to [defendant's] validity defense [had] been lost or destroyed," "key figures in the prosecution of the … patent no longer recall[ed] facts that might well have aided [defendant] in defending against [plaintiff's] claims," and plaintiff's "patent

---

showing that [defendant] expended considerable capital to expand its business in terms of, among other things, employees, sales, and investment in research and development during [plaintiff's] period of delay….").

counsel … no longer [had] any recollection regarding their representation of [plaintiff] with respect to that patent"). Laches, however, has the power to preserve the fairness of trials by barring stale claims at the outset.

Without laches, the six-year recovery bar of Section 286 standing alone often would be insufficient to protect such interests of fairness. Particularly in a case where the defendant builds and expands its business during the period of the plaintiff's delay, the six-year recovery bar would still allow the plaintiff to capture an enormous damages award, despite the fact that the damages were able to increase in that period because of the plaintiff's prejudicial delay in bringing suit. It is easy to imagine a plaintiff who is aware of a defendant's infringements, but who does not sue while the defendant pours capital into its product, the plaintiff preferring to wait and see if the defendant's efforts are profitable. Five, ten, even fifteen years later, if and when the defendant's efforts bear fruit, the plaintiff could file for infringement and reap the benefits of the most recent—and often the most profitable—six years' worth of damages. The plaintiff could thus choose the timing and the amount of damages that were most crippling to the defendant's business, while exposing the defendant to the very real possibility that its witnesses have forgotten, moved on, or died, and its documents have been misplaced or destroyed. This Court was entirely correct when it wrote in *Aukerman* that Section 286 should not be interpreted to "provide, in effect, a guarantee of six years

damages regardless of equitable considerations arising from delay in assertion of one's rights." 960 F.2d at 1030. Laches still has its equitable role to play in balancing the fairness of patent litigation and protecting defendants from such inequitable results.

**II.   Laches should be available in appropriate circumstances to bar an entire infringement suit, whether for damages, injunctive relief, or both.**

For the reasons set forth in Part I above, laches should be available in appropriate circumstances to bar a claim for damages. Laches should also be available in appropriate circumstances to bar claims for equitable relief, including prospective injunctive relief. Accordingly, the portion of *Aukerman* that barred laches from applying to equitable remedies should be overruled. Depending on the case, district courts should maintain the flexibility to invoke laches to bar only certain remedies, or to dismiss the entire suit.

**A.   Laches should be available to bar a suit for equitable relief, including prospective injunctive relief.**

Supreme Court precedent, both old and new, requires that laches be available to bar all forms of equitable relief. While *Aukerman* correctly determined that "laches bars damages for a patent defendant's pre-filing infringement," the court unnecessarily and improperly held that laches is "not for post-filing … injunctive relief." 960 F.2d at 1040. On the latter point, *Aukerman* was incorrect, and should be overruled.

- 22 -

In *Lane & Bodley Co. v. Locke*, the Supreme Court relied on laches to bar all claims for equitable relief.  In that case, Locke invented a valve in 1872 and brought suit for patent infringement in 1884, seeking an injunction and an accounting.  The Supreme Court found him guilty of laches and ordered that "the decree of the court below … be [r]eversed, and the record remanded to the Circuit Court, with directions to dismiss the bill of complaint."  150 U.S. at 201.  In other words, the Court invoked laches as a ground upon which to bar the entire suit, both the claim for an accounting as well as the claim for an injunction.  *Lane & Bodley Co.* is a foundational case in the patent and laches contexts, and as Supreme Court precedent, it should be followed here.

*Petrella* is not to the contrary.  There, despite the existence of a three-year statute of limitations, the Court held that "in extraordinary circumstances, laches may bar at the very threshold the particular [equitable] relief requested by the plaintiff."  *Petrella*, 134 S. Ct. at 1967.  The Court also discussed at length a case where there was copyright infringement in building a housing development, ultimately endorsing the lower court's refusal to order destruction of the homes on the basis of laches.  *Id.* at 1978.  Thus, even when there is a clear statute of limitations, the Supreme Court allows laches to block equitable relief in appropriate circumstances.  As explained above, there is no such statute of

limitations in the patent context, leaving even more leeway for courts to invoke

laches in denying equitable (and other) remedies.

In light of the above cases, *Aukerman*'s narrow application of laches must be

broadened commensurate with Supreme Court precedent. *Aukerman* relied on a

nineteenth-century Supreme Court trademark case, *Menendez v. Holt*, which stated

that "[m]ere delay or acquiescence cannot defeat the remedy by injunction in

support of the legal right, unless it has been continued so long and under such

circumstances as to defeat the right itself." 128 U.S. 514, 523 (1888). *Menendez*

concluded that "so far as the act is in progress and lies in the future, the right to the

intervention of equity is not generally lost by previous delay." *Id.* at 524.

*Aukerman* also cited *McLean v. Fleming*, where the Supreme Court wrote that

"[c]ases frequently arise where a court of equity will refuse the prayer of the

complainant for an account of gains and profits, on the ground of delay in asserting

his rights, even when the facts proved render it proper to grant an injunction to

prevent future infringement." 96 U.S. 245, 257 (1878).

*Aukerman* interpreted those cases to require that laches alone could not bar

prospective injunctive relief. 960 F.2d at 1040-41. But neither *Menendez* nor

*McLean* require a categorical rule such as that announced in *Aukerman*. *Menendez*

stated that "generally" injunctions would remain available, and *McLean*

commented that "frequently" they would still issue.[7]  Moreover, both *Menendez* and *McLean* predate *Lane* and *Petrella*, which hold that laches can bar the issuance of injunctive relief.[8]  Following the holdings of *Lane* and *Petrella*, *Aukerman* should be overruled in part, and this Court should hold that laches is available, in appropriate cases, as a bar to equitable relief.  *See also, e.g.*, *United Drug Co. v. Theodore Rectanus Co.*, 248 U.S. 90, 102 (1918) (distinguishing *Menendez* and *McLean* as "cases of conscious infringement or fraudulent imitation").  *See generally eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 394 (2006) ("[T]he decision whether to grant or deny injunctive relief [in patent cases] rests within the equitable discretion of the district courts, and … such discretion must be exercised consistent with traditional principles of equity.").

---

[7] Indeed, other circuits recognize that laches may bar injunctive relief.  *See, e.g., Abraham v. Alpha Chi Omega*, 708 F.3d 614, 626 (5th Cir. 2013) ("'There is no doubt that laches may defeat claims for injunctive relief as well as claims for an accounting.'" (quoting *Armco, Inc. v. Armco Burglar Alarm Co., Inc.*, 693 F.2d 1155, 1161 n.14 (5th Cir. 1982)).

[8] *Aukerman* did recognize, however, that equitable estoppel could bar prospective injunctive relief.  960 F.2d at 1040.  Allowing laches to bar prospective injunctive relief does not supplant the doctrine of equitable estoppel.  Laches applies when there has been an unreasonable delay in filing suit that prejudices the defendant.  Equitable estoppel involves a misleading communication and detrimental reliance, without the need for unreasonable delay.  *Id.* at 1041; *see also Petrella*, 134 S. Ct. at 1977.  Thus, laches and estoppel, while both aimed at doing equity, are available in different circumstances.

Moreover, the arguments above in favor of allowing laches to bar claims for damages apply with equal force to equitable relief. Allowing laches to bar equitable remedies in appropriate cases serves important interests of fairness. If, based on a reasonable assumption that a plaintiff will not file suit, a defendant invests time and money in developing a product and building a business, it is not enough that laches shield him from damages down the road—laches should also be available to shield him from an injunction ordering him to cease production, which might put him out of business. Furthermore, evidentiary prejudice is just as much of a problem in a suit for an injunction as it is in a suit for damages—documents and witnesses are lost, and memories fade. Even when only equitable relief is requested, laches is necessary to protect defendants from stale claims.

In sum, in light of Supreme Court precedent and the realities of litigating stale claims in the patent context, laches should be allowed to bar suits for equitable relief.

### B.       District courts should retain the power to bar claims for legal relief, for equitable relief, or for both, and to dismiss an entire suit, based on laches.

In the end, laches is an equitable doctrine, and district courts retain discretion regarding its application. The Supreme Court has held that there are "inherent equitable powers" in district courts "'to do equity and to mould each decree to the necessities of the particular case.'" *Porter v. Warner Holding Co.*,

328 U.S. 395, 398 (1946) (quoting *Hecht Co. v. Bowles*, 321 U.S. 321, 329

(1944)).  They "may act so as to adjust and reconcile competing claims and so as to

accord full justice to all the real parties in interest."  *Id.*  Laches is one of these

powers, lying firmly within the discretion of the trial court.  *See Gardner v.

Panama R.R. Co.*, 342 U.S. 29, 30 (1951).  As *Aukerman* itself realized: "With its

origins in equity, a determination of laches is not made upon the application of

'mechanical rules.'  The defense, being personal to the particular party and

equitable in nature, must have flexibility in its application.  A court must look at all

of the particular facts and circumstances of each case and weigh the equities of the

parties."  960 F.2d at 1032 (internal quotation marks and citations omitted); *see

also Holmberg v. Armbrecht*, 327 U.S. 392, 396 (1942) ("Equity eschews

mechanical rules; it depends on flexibility.").[9]

For the reasons set forth above, laches should be available as a defense to

claims for damages and claims for injunctive relief.  As an equitable doctrine, there

should be no rigid or categorical rules to its application.  Rather, laches should be

available to bar damages or injunctions or both, to deny certain remedies or to

---

[9] Not only does equity frown upon "mechanical rules," the Supreme Court
has, over the past several years, rejected efforts to impose mechanical or bright-
line rules for patent cases in a number of instances.  *See, e.g., KSR Int'l Co. v.
Teleflex Inc.*, 550 U.S. 398 (2007); *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S.
388 (2006); *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722
(2002).

dismiss an entire suit, depending on the facts of the case.[10]  *Compare McLean*, 96 U.S. at 258 (laches barred an accounting and profits, but not an injunction), *with Lane & Bodley Co.*, 150 U.S. at 201 (laches required that the entire bill be dismissed).  And laches should be available to bar claims and cases at the outset, as cases from *Lane & Bodley Co.* to *Petrella* have recognized; consideration of laches should not wait until the remedial phase.  *Lane & Bodley Co.*, 150 U.S. at 201 (instructions to dismiss the bill); *Petrella*, 134 S. Ct. at 1977 (role for laches "at the very outset of the litigation"); *see also, e.g.*, *Nat'l R.R. Passenger Corp.*, 536 U.S. at 121 (laches can "bar[] a plaintiff from maintaining a suit").

In sum, the Court should retain the defense of laches in patent cases, and preserve the discretion of district judges to bar some or all aspects of a patent lawsuit, whether for damages or injunction, or both.

---

[10] For these reasons and others previously stated, laches should also be available to bar claims for post-filing damages, and for injunctive relief pertaining to pre-filing infringements, in appropriate cases.  Although *Aukerman* held that laches did not apply to claims for post-filing damages, that conclusion was founded on the same misreading of *Menendez* and *McLean* explained above, and the better rule is that the equitable doctrine of laches remains flexible enough to bar appropriate remedies in appropriate circumstances.  Another Federal Circuit case has already concluded that laches may bar claims for injunctive relief pertaining to pre-filing infringements.  See *Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1273 (Fed. Cir. 1999) ("[T]he sale of an infringing product during the laches period is beyond the reach of the patent: the patentee cannot later enjoin the use of a product sold during that time.").

## **CONCLUSION**

For these reasons, the en banc court should hold that laches continues to be available in patent suits, and may bar entire suits for damages or injunctions or both.

Dated:  March 5, 2015                                    Respectfully submitted,


                                                          /s/Gregory A. Castanias

PHILIP S. JOHNSON, *President*                GREGORY A. CASTANIAS
KEVIN H. RHODES, *Chair, Amicus Brief*        SASHA MAYERGOYZ
    *Committee*                            CAROLINE EDSALL
INTELLECTUAL PROPERTY                         JONES DAY
OWNERS ASSOCIATION                            51 Louisiana Avenue, N.W.
1501 M Street, N.W.                           Washington, D.C. 20001
Suite 1150                                    (202) 879-3939
Washington, D.C. 20005
(202) 507-4500

- 29 -

# APPENDIX

# APPENDIX[1]

## Members of the Board of Directors
## Intellectual Property Owners Association

Steven Arnold
    Micron Technology, Inc.

Edward Blocker
    Koninklijke Philips N.V.

Tina M. Chappell
    Intel Corp.

William J. Coughlin
    Ford Global Technologies LLC

Robert DeBerardine
    Sanofi-Aventis

Anthony DiBartolomeo
    SAP AG

Daniel Enebo
    Cargill, Inc.

Barbara A. Fisher
    Lockheed Martin

Louis Foreman
    Enventys

Scott M. Frank
    AT&T

David A. Frey
    Rolls-Royce Corp.

Darryl P. Frickey
    Dow Chemical Co.

Krish Gupta
    EMC Corporation

Henry Hadad
    Bristol-Myers Squibb Co.

Jennifer M. Hall
    Mars Inc.

Carl B. Horton
    General Electric Co.

Michael Jaro
    Medtronic, Inc.

Philip S. Johnson
    Johnson & Johnson

Charles M. Kinzig
    GlaxoSmithKline

David J. Koris
    Shell International B.V.

William Krovatin
    Merck & Co., Inc.

Allen Lo
    Google Inc.

Thomas P. McBride
    Monsanto Co.

Steven W. Miller
    Procter & Gamble Co.

Micky Minhas
    Microsoft Corp.

Douglas K. Norman
    Eli Lilly and Co.

[1]IPO procedures require approval of positions in briefs by a two-thirds majority of directors present and voting.

Salvatore Pace
     Praxair, Inc.

Richard F. Phillips
     Exxon Mobil Corp.

Dana Rao
     Adobe Systems Inc.

Kevin H. Rhodes
     3M Innovative Properties Co.

Curtis Rose
     Hewlett-Packard Co.

Matthew Sarboraria
     Oracle USA Inc.

Manny Schecter
     IBM Corp.

Steven J. Shapiro
     Pitney Bowes Inc.

Dennis C. Skarvan
     Caterpillar Inc.

Daniel J. Staudt
     Siemens Corp.

Brian K. Stierwalt
     ConocoPhillips

Thierry Sueur
     Air Liquide

Brian Suffredini
     United Technologies Corp.

James J. Trussell
     BP America, Inc.

Roy Waldron
     Pfizer, Inc.

Michael Walker
     DuPont

BJ Watrous
     Apple Inc.

Stuart L. Watt
     Amgen, Inc.

Charlotte Whitaker
     Motorola Solutions, Inc.

Jon D. Wood
     Bridgestone Americas Holding,
     Inc.

Michael Young
     Roche, Inc.

# United States Court of Appeals
## for the Federal Circuit

*SCA Hygiene Products v. First Quality Baby Products*, No. 2013-1564

## CERTIFICATE OF SERVICE

I, Robyn Cocho, being duly sworn according to law and being over the age of 18, upon my oath depose and say that:

Counsel Press was retained by INTELLECTUAL PROPERTY OWNERS ASSOCIATION, Attorneys for *Amicus Curiae* to print this document. I am an employee of Counsel Press.

On **March 5, 2015,** counsel has authorized me to electronically file the foregoing **BRIEF OF INTELLECTUAL PROPERTY OWNERS ASSOCIATION AS AMICUS CURIAE IN SUPPORT OF DEFENDANTS-APPELLEES** with the Clerk of Court using the CM/ECF System, which will serve via e-mail notice of such filing to any of the following counsel registered as CM/ECF users:

Kenneth P. George
(kgeorge@arelaw.com)
Charles R. Macedo
(cmacedo@arelaw.com)
Mark Berkowitz
(mberkowitz@arelaw.com)
Amster Rothstein & Ebenstein LLP
90 Park Avenue
New York, NY 10016
212-336-8000
Counsel for Appellees

Martin J. Black
(martin.black@dechert.com)
Kevin M. Flannery
(kevin.flannery@dechert.com)
Teri-Lynn A. Evans
(teri.evans@dechert.com)
Sharon K. Gagliardi
(sharon.gagliardi@dechert.com)
Dechert LLP
2929 Arch Street
Philadelphia, PA 19104-2808
(215) 994-4000
Counsel for Appellants

Two paper copies will also be mailed to the above counsel at the time paper copies are sent to the Court.  Any counsel for Amicus Curiae appearing at the time of filing, will be served only via the CM/ECF e-mail notice.

Upon acceptance by the Court of the e-filed document, thirty-one paper copies will be filed with the Court within the time provided in the Court's rules.


March 5, 2015                                    /s/ Robyn Cocho
                                                 Robyn Cocho
                                                 Counsel Press

**CERTIFICATE OF COMPLIANCE**
**UNDER FEDERAL RULE OF APPELLATE**
**PROCEDURE 32(a)(7) AND FEDERAL CIRCUIT RULE 32**

1.    This brief complies with the type-volume limitation of Federal Rule of

Appellate Procedure 32(a)(7)(B) or Federal Rule of Appellate Procedure 28.1(e).

  X   The brief contains  6,935  words, excluding the parts of the brief

        exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii), or

_____ The brief uses a monospaced typeface and contains ___ lines of text,

        excluding the parts of the brief exempted by Federal Rule of

        Appellate Procedure 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Federal Rule of

Appellate Procedure 32(a)(5) or Federal Rule of Appellate Procedure 28.1(e) and

the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).

  X   The brief has been prepared in a proportionally spaced typeface using

        Microsoft Word 2003 in a 14-point Times New Roman font, or

_____ The brief has been prepared in a monospaced typeface using _____

        with _____ characters per inch _____ font.

Dated:  March 5, 2015          /s/Gregory A. Castanias_____
                               GREGORY A. CASTANIAS