**UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT**

---

2013-1564

---

SCA HYGIENE PRODUCTS AKTIEBOLAG
and SCA PERSONAL CARE, INC.,

*Plaintiffs-Appellants*,

v.

FIRST QUALITY BABY PRODUCTS, LLC,
FIRST QUALITY HYGIENE, INC., FIRST QUALITY PRODUCTS, INC.,
and FIRST QUALITY RETAIL SERVICES, LLC,

*Defendants-Appellees*.

---

Appeal from the United States District Court for the Western District of Kentucky in Case No. 10-CV-0122, Chief Judge Joseph H. McKinley, Jr.

---

# EN BANC BRIEF OF DELL INC.; CTIA – THE WIRELESS ASSOCIATION®; GOOGLE INC.; HEWLETT-PACKARD COMPANY; INTEL CORPORATION; MARVELL SEMICONDUCTOR, INC.; AND XEROX CORPORATION AS *AMICI CURIAE* IN SUPPORT OF DEFENDANTS-APPELLEES

---

JOHN THORNE
AARON M. PANNER
GREGORY G. RAPAWY
KELLOGG, HUBER, HANSEN, TODD,
EVANS & FIGEL, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
(202) 326-7900
*Counsel for Amici Curiae Dell, CTIA, HP, Intel, and Xerox*

April 23, 2015

(additional counsel listed on inside cover)

SUZANNE MICHEL
GOOGLE INC.
25 Massachusetts Avenue, N.W.
Washington, D.C. 20001
(650) 253-0000
*Counsel for Amicus Curiae Google*

DEREK L. SHAFFER
QUINN EMANUEL URQUHART & SULLIVAN, LLP
777 6th Street, N.W., 11th Floor
Washington, D.C. 20001
(202) 538-8000
*Counsel for Amicus Curiae Marvell*

## CERTIFICATE OF INTEREST

Counsel for Dell Inc., CTIA – The Wireless Association®, Hewlett-Packard Company, Intel Corporation, and Xerox Corporation certifies the following:

1. The full name of every party or *amicus* represented by me is:

   Dell Inc. (“Dell”); CTIA – The Wireless Association® (“CTIA”); Hewlett-Packard Company (“HP”); Intel Corporation (“Intel”); and Xerox Corporation (“Xerox”).

2. The name of the real party in interest represented by me is:

   Not Applicable.

3. All parent corporations and any publicly held companies that own 10% or more of the stock of the *amici curiae* represented by me are:

   - Dell: Dell Inc.’s direct parent company is Denali Intermediate Inc. There is no publicly held company owning 10% or more of Denali Intermediate Inc.’s stock.
   - CTIA: None.
   - HP: None.
   - Intel: None.
   - Xerox: None.

4. The names of all law firms and the partners or associates that appeared for the party or *amicus* now represented by me in the trial court or agency or are expected to appear in this Court are:

John Thorne
Aaron M. Panner
Gregory G. Rapawy
KELLOGG, HUBER, HANSEN, TODD,
EVANS & FIGEL, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
(202) 326-7900

Dated: April 23, 2015

/s/ *John Thorne*
John Thorne
*Counsel for Amici Curiae Dell, CTIA, HP, Intel, and Xerox*

## CERTIFICATE OF INTEREST

Counsel for *amicus curiae* Google Inc. certifies the following:

1. The full name of every party or *amicus* represented by me is:

   Google Inc. ("Google").

2. The name of the real party in interest represented by me is:

   Not applicable.

3. All parent corporations and any publicly held companies that own 10% or more of the stock of the party or *amicus curiae* represented by me are:

   Google has no parent corporation, and no publicly held company owns more than 10% of Google's stock.

4. No law firms appeared for the party or *amicus* now represented by me in the trial court or agency or are expected to appear in this Court. The names of all counsel who have so appeared or are expected so to appear are:

   Suzanne Michel
   GOOGLE INC.
   25 Massachusetts Avenue, N.W.
   Washington, D.C. 20001
   (650) 253-0000

Dated: April 23, 2015

/s/ *Suzanne Michel*
Suzanne Michel
*Counsel for Amicus Curiae Google*

## CERTIFICATE OF INTEREST

Counsel for *amicus curiae* Marvell Semiconductor, Inc., certifies the following:

1. The full name of every party or *amicus* represented by me is:

   Marvell Semiconductor, Inc. ("Marvell").

2. The name of the real party in interest represented by me is:

   Not applicable.

3. All parent corporations and any publicly held companies that own 10% or more of the stock of the party or *amicus curiae* represented by me are:

   Marvell is a subsidiary of Marvell Technology, Inc. and Marvell Israel Ltd., and is an indirect subsidiary of Marvell Technology Group, Ltd.

4. The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this Court are:

   Derek L. Shaffer
   QUINN EMANUEL URQUHART & SULLIVAN, LLP
   777 6th Street, N.W., 11th Floor
   Washington, D.C. 20001
   (202) 538-8000

Dated: April 23, 2015

/s/ *Derek L. Shaffer*
Derek L. Shaffer
*Counsel for Amicus Curiae Marvell*

## TABLE OF CONTENTS

Page

CERTIFICATES OF INTEREST ..... i

TABLE OF AUTHORITIES ..... vi

STATEMENT OF INTEREST ..... 1

INTRODUCTION ..... 2

SUMMARY OF ARGUMENT ..... 3

ARGUMENT ..... 6

I. The Patent Act Incorporates a Laches Defense That Applies to Claims for Damages ..... 6

A. Section 282(b) Incorporates Preexisting Defenses Such as Laches ..... 6

B. Pre-1952 Cases Recognized That Laches Can Bar Damages ..... 9

C. Post-1952 Cases and Congress's Amendments to § 282 Confirm That Laches Is an Available Defense That Can Bar Damages ..... 12

D. There Is No Inconsistency Between *Aukerman* and *Petrella* ..... 16

II. In Appropriate Cases, Laches Can and Should Bar Other Forms of Relief as Well as Damages ..... 20

III. Laches Is a Critical Protection for Technological Innovators ..... 23

CONCLUSION ..... 27

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

## TABLE OF AUTHORITIES

Page

**CASES**

*A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020 (Fed. Cir. 1992).......................................................................... *passim*

*A.R. Mosler & Co. v. Lurie*, 209 F. 364 (2d Cir. 1913)..............................10, 11, 19

*American Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350 (Fed. Cir. 1984)..........................................................................15, 16

*Ankenbrandt v. Richards*, 504 U.S. 689 (1992)................................................12, 14

*Apple Inc. v. Motorola Inc.*, 757 F.3d 1286 (Fed. Cir. 2014).................................25

*Aro Mfg. Co. v. Convertible Top Replacement Co.*, 365 U.S. 336 (1961)..........................................................................................................7

*Banker v. Ford Motor Co.*, 69 F.2d 665 (3d Cir. 1934) ..................................10, 19

*Beach v. Ocwen Fed. Bank*, 523 U.S. 410 (1998) ...............................................16

*Cuozzo Speed Techs., LLC, In re*, 778 F.3d 1271 (Fed. Cir. 2015)........................14

*Dwight & Lloyd Sintering Co. v. Greenawalt*, 27 F.2d 823 (2d Cir. 1928)..........................................................................................23

*Eden Toys, Inc. v. Marshall Field & Co.*, 675 F.2d 498 (2d Cir. 1982)..........................................................................................26

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722 (2002)..........................................................................................27

*Frank F. Smith Hardware Co. v. S.H. Pomeroy Co.*, 299 F. 544 (2d Cir. 1924)..........................................................................................11

*Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 733 F.3d 1369 (Fed. Cir. 2013)......................................................................................22

*George J. Meyer Mfg. Co. v. Miller Mfg. Co.*, 24 F.2d 505 (7th Cir. 1928) .......... 21-22

*Gillons v. Shell Co. of Cal.*, 86 F.2d 600 (9th Cir. 1936) .......... 9, 19

*Hayden v. Oriental Mills*, 15 F. 605 (C.C.D.R.I. 1883) .......... 11

*Heimeshoff v. Hartford Life & Accident Ins. Co.*, 134 S. Ct. 604 (2013) .......... 16

*Helferich Patent Licensing, LLC v. New York Times Co.*, 778 F.3d 1293 (Fed. Cir. 2015) .......... 12, 19

*Holmberg v. Armbrecht*, 327 U.S. 392 (1946) .......... 19

*J.P. Stevens & Co. v. Lex Tex Ltd.*, 747 F.2d 1553 (Fed. Cir. 1984) .......... 6

*Lane & Bodley Co. v. Locke*, 150 U.S. 193 (1893) .......... *passim*

*Leinoff v. Louis Milona & Sons, Inc.*, 726 F.2d 734 (Fed. Cir. 1984), *overruled by A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020 (Fed. Cir. 1992) .......... 13, 16

*Lorillard v. Pons*, 434 U.S. 575 (1978) .......... 14

*Menendez v. Holt*, 128 U.S. 514 (1888) .......... 21

*Merck & Co. v. Reynolds*, 559 U.S. 633 (2010) .......... 17

*Microsoft Corp. v. i4i Ltd. P'ship*, 131 S. Ct. 2238 (2011) .......... 4, 15, 16, 19

*Middleton v. Wiley*, 195 F.2d 844 (8th Cir. 1952) .......... 11

*Montgomery Ward & Co. v. Clair*, 123 F.2d 878 (8th Cir. 1941) .......... 11

*Paice LLC v. Toyota Motor Corp.*, 504 F.3d 1293 (Fed. Cir. 2007) .......... 22, 23

*Paulik v. Rizkalla*, 760 F.2d 1270 (Fed. Cir. 1985) .......... 7

*Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S. Ct. 1962 (2014) .......... *passim*

*Radio Corp. of Am. v. Radio Eng'g Labs., Inc.*, 293 U.S. 1 (1934) .......... 15

*Rajah Auto Supply Co. v. Belvidere Screw & Mach. Co.*, 275 F. 761 (7th Cir. 1921) ........................................................................... 11

*Rome Grader & Mach. Corp. v. J.D. Adams Mfg. Co.*, 135 F.2d 617 (7th Cir. 1943) ........................................................................... 23

*Safety Car Heating & Lighting Co. v. Consolidated Car Heating Co.*, 174 F. 658 (2d Cir. 1909) ........................................................................... 11

*Serdarevic v. Advanced Med. Optics, Inc.*, 532 F.3d 1352 (Fed. Cir. 2008) ........................................................................... 26

*Square D Co. v. Niagara Frontier Tariff Bureau, Inc.*, 476 U.S. 409 (1986) ........................................................................... 14

*Staats*, *In re*, 671 F.3d 1350 (Fed. Cir. 2012) ........................................................................... 7

*Standard Oil Co. v. Nippon Shokubai Kagaku Kogyo Co.*, 754 F.2d 345 (Fed. Cir. 1985) ........................................................................... 17

*Studiengesellschaft Kohle mbH v. Eastman Kodak Co.*, 616 F.2d 1315 (5th Cir. 1980) ........................................................................... 13

*Symbol Techs., Inc. v. Lemelson Med.*, 277 F.3d 1361 (Fed. Cir. 2002) ........................................................................... 6, 7

*TWM Mfg. Co. v. Dura Corp.*, 592 F.2d 346 (6th Cir. 1979) ........................................................................... 12

*Ultimax Cement Mfg. Corp. v. CTS Cement Mfg. Corp.*, 587 F.3d 1339 (Fed. Cir. 2009) ........................................................................... 8

*United States v. Mack*, 295 U.S. 480 (1935) ........................................................................... 17

*Universal Coin Lock Co. v. American Sanitary Lock Co.*, 104 F.2d 781 (7th Cir. 1939) ........................................................................... 11

*Westco-Chippewa Pump Co. v. Delaware Elec. & Supply Co.*, 64 F.2d 185 (3d Cir. 1933) ........................................................................... 21

*Westinghouse Air Brake Co. v. New York Air Brake Co.*, 111 F. 741 (C.C.N.D.N.Y. 1901) ........................................................................... 11

*Window Glass Mach. Co. v. Pittsburgh Plate Glass Co.*, 284 F. 645 (3d Cir. 1922) .......... 9, 19

*Wolf, Sayer & Heller v. United States Slicing Mach. Co.*, 261 F. 195 (7th Cir. 1919) .......... 10, 11, 19

*Woodmanse & Hewitt Mfg. Co. v. Williams*, 68 F. 489 (6th Cir. 1895) .......... 9, 19, 20-21

**STATUTES AND RULES**

Act of March 3, 1915, ch. 90, 38 Stat. 956 .......... 10

Biotechnological Process Patents, Pub. L. No. 104-41, § 2, 109 Stat. 351 (1995) .......... 13

Copyright Act, 17 U.S.C. § 101 *et seq.* .......... 2, 4, 16, 17, 18, 26

First Inventor Defense Act of 1999, Pub. L. No. 106-113, app. I, § 4302, 113 Stat. 1501A-555 .......... 14

Leahy-Smith America Invents Act, Pub. L. No. 112-29, § 15(a), 125 Stat. 284 (2011) .......... 14

Patent Act of 1870, ch. 230, § 55, 16 Stat. 198 .......... 9, 10, 18

Patent Act of 1897, ch. 391, § 6, 29 Stat. 692 .......... 18

Patent Act of 1952, 35 U.S.C. § 1 *et seq.* .......... *passim*

§ 271 .......... 6

§ 282 .......... 6, 7, 8, 12, 13, 19

§ 282(a) .......... 15

§ 282(b) .......... 3, 4, 7, 15

§ 282(b)(1) .....6

§ 286 .....4, 16, 17, 18, 19

Patent Term Guarantee Act of 1999, Pub. L. No. 106-113, app. I, § 4402, 113 Stat. 1501A-557 (1999) ..... 13-14

Rev. Stat. § 4921 .....4, 9, 18

Rev. Stat. § 5596 .....18

17 U.S.C. § 507(b) .....17

Fed. R. App. P. 29(c)(5).....1

**OTHER MATERIALS**

Executive Office of the President, *Patent Assertion and U.S. Innovation* (2013) .....24, 25

Federal Trade Comm'n, *The Evolving IP Marketplace* (2011).....24

P.J. Federico, *Commentary on the New Patent Act*, 75 J. Pat. & Trademark Off. Soc'y 161 (1993) .....7

Mark A. Lemley & Carl Shapiro, *Patent Holdup and Royalty Stacking*, 85 Tex. L. Rev. 1991 (2007).....24

PricewaterhouseCoopers, *2014 Patent Litigation Study* (July 2014), *available at* http://www.pwc.com/en_US/us/forensic-services/publications/assets/2014-patent-litigation-study.pdf.....22

## STATEMENT OF INTEREST[1]

*Amici* are or represent high-technology companies that provide innovative products and services in a variety of fields, including electronics and computer hardware, commerce, online search, and wireless telecommunications. Those products and services benefit consumers, businesses large and small, the United States government, and others in the United States and around the world. *Amici* both have their own patent portfolios – which reflect their investment in the research and development of new technologies – and frequently face threatened and actual litigation involving claims that their new products and services have infringed patents of all types.

*Amici* thus have much experience with patent litigation and believe that their perspective may be useful to the Court. In particular, as set forth in Part III of this brief, *amici* believe that the well-established defense of laches in patent cases is particularly important to technology companies such as themselves, because of the extraordinary exposure that such companies face to claims of patent infringement, as well as the unique harm that they suffer when a patent holder unreasonably delays the assertion of alleged rights against a new, innovative product or service.

---

[1] Pursuant to Federal Rule of Appellate Procedure 29(c)(5), counsel for *amici curiae* represent that they authored this brief in its entirety and that none of the parties or their counsel, nor any other person or entity other than *amici*, made a monetary contribution intended to fund the preparation or submission of this brief.

## INTRODUCTION

This Court should again reaffirm the century-old rule that laches is a defense to claims for patent infringement, as it did – en banc and without relevant dissent – more than 20 years ago in *A.C. Aukerman Co. v. R.L. Chaides Construction Co.*, 960 F.2d 1020 (Fed. Cir. 1992). It should also, relying on *Lane & Bodley Co. v. Locke*, 150 U.S. 193 (1893), extend that defense to its full historical boundaries, so that a district court can invoke it to bar all forms of relief when a patent holder's delay has been particularly unreasonable or has inflicted particularly harmful prejudice on an accused infringer. By doing so, this Court can help to ensure that the patent system promotes, rather than inhibits, the innovation that is its ultimate purpose.

Laches has been recognized as a defense in patent cases for long enough that any move to abolish it should come from Congress rather than from the courts. That is true both of laches generally and of the specific principle that – in the patent context – laches bars the recovery of damages as well as injunctive relief. *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S. Ct. 1962 (2014), does not require a contrary result, because that case turned on Congress's inclusion of a statute of limitations in the Copyright Act. The Patent Act contains no similar provision; instead, its particular text and history indicate Congress's intent to retain the originally judge-made defense of laches in patent actions.

Plaintiffs-Appellants (collectively, "SCA") urge this Court to retreat from settled precedent, but their argument fails to engage with the text and history of the Patent Act. They also have not found even one court that has ever held laches unavailable as a defense to a patent action. This Court should not be the first.

## SUMMARY OF ARGUMENT

**I.A.** Section 282(b) of the 1952 Patent Act incorporates traditional equitable defenses that existed at the time of its enactment. That is clear from its text and history, and has been reaffirmed by this Court in *Aukerman* and in other cases. Under *Lane & Bodley Co. v. Locke*, 150 U.S. 193 (1893), and other cases, it was settled long before 1952 that laches is a defense to infringement claims.

**B.** It was also settled by 1952 that laches can bar not only traditional equitable relief, but also traditional legal relief such as damages for lost profits. The history of the Patent Act explains why laches bars awards of damages in this statutory context. In 1870, Congress authorized the courts to award not only an accounting of profits, but also damages, to a patent holder who filed a bill in equity. Thus, damages claims had been subject to equitable remedies in patent cases for more than 80 years when Congress enacted the current Patent Act. Many courts did apply laches to reject claims for damages during this period. There is no indication that Congress intended to change that rule.

**C.** Any doubt that might exist would be removed by post-1952 precedent and by Congress's repeated decision, in the 20 years since *Aukerman* was decided, not to disturb laches even while repeatedly amending § 282(b). As the Supreme Court held in *Microsoft Corp. v. i4i Limited Partnership*, 131 S. Ct. 2238 (2011), which confronted parallel textual and historical circumstances, any change to such a settled rule of law is for Congress to make, not the courts.

**D.** *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S. Ct. 1962 (2014), is not to the contrary. That case turned on the inclusion of a three-year statute of limitations in the Copyright Act, but there is no comparable provision in the Patent Act. SCA argues that the six-year period contained in 35 U.S.C. § 286 and its predecessor, § 4921 of the Revised Statutes, is such a period; but, as this Court has explained repeatedly, § 286 does not bar the filing of any action and so is not a statute of limitations. Congress did briefly enact a patent statute of limitations in 1870, but eliminated it four years later.

Moreover, from 1897 to 1952, many courts applied laches to bar damages for patent infringement without a single one concluding that doing so was inconsistent with § 4921; the same applies to § 286, from 1952 to the present. SCA effectively contends that *every* federal court to consider the question presented in the last hundred years has misconstrued the Patent Act. *Petrella* does not compel this Court to agree.

**II.** In appropriate cases, laches can and should be available to bar a patent holder's entire cause of action – including claims for injunctive relief and any ongoing royalty – rather than just certain types of relief. Although *Aukerman* said otherwise, its dictum on that point is not controlling; is inconsistent with *Lane*, which ordered dismissal of the entire bill of complaint before the Court; and does not reflect any pre-1952 consensus. The policy concerns that led *Aukerman* to adopt its dictum were based primarily on the historical difficulty of bringing patent infringement actions and have little application to the present day.

**III.** Laches is particularly important to companies that, like *amici*, are active in the high-technology industry. Today's innovators face damaging uncertainty about patent claims that might potentially be asserted against them based on their choices about technologies for new products. Those choices can be difficult to change once a product has gone to market. As a result, there is a substantial incentive for patent holders to delay claims of infringement until there is a developed market and the hold-up value of those claims is at its highest. The leverage created by a patent case against a commercially successful product is almost always based on other innovations incorporated in that product. Laches should remain available to encourage those independent innovations and to prevent patent holders from unfairly lying in wait.

# ARGUMENT

## I. The Patent Act Incorporates a Laches Defense That Applies to Claims for Damages

### A. Section 282(b) Incorporates Preexisting Defenses Such as Laches

**1.** The text of the 1952 Patent Act reflects Congress's intent to incorporate and preserve defenses that were historically available in an action for patent infringement. Section 282(b)(1) permits accused infringers to raise defenses of "[n]oninfringement, absence of liability for infringement or unenforceability." Section 271 defines infringement (and thus, implicitly, noninfringement); but "absence of liability for infringement" and "unenforceability" are not defined in the Patent Act. Those terms must therefore refer to another source that defines defenses available to an accused infringer. The natural source in 1952 was pre-1952 patent law, in which many defenses had been developed through case-by-case judicial decision-making. *See Symbol Techs., Inc. v. Lemelson Med.*, 277 F.3d 1361, 1366 (Fed. Cir. 2002) ("The defenses available [in 1952] to an accusation of infringement were incorporated into section 282 of the then new Act."); *J.P. Stevens & Co. v. Lex Tex Ltd.*, 747 F.2d 1553 (Fed. Cir. 1984) (referring to "Supreme Court cases" at "the time the Patent Act was enacted" as a guide to the defenses available under § 282).

A straightforward reading of § 282 to incorporate then-current precedent – including precedent concerning laches – is further supported by P.J. Federico's

contemporaneous *Commentary on the New Patent Act*. *See* 75 J. Pat. & Trademark Off. Soc'y 161, 215 (1993) ("[Section 282(b)(1)] . . . would include . . . equitable defenses such as laches, estoppel and unclean hands."). Referring to § 282(b) as a whole, Federico added: "All the defenses usually listed in textbooks on patent law may be placed in one or another of the enumerated categories, except a few which are no longer applicable in view of changes in the new statute." *Id.* at 215-16. Both the Supreme Court and this Court have relied on Federico as a reliable guide to the meaning of the 1952 Act.[2] His comments shed particular light on Congress's understanding of pre-1952 law, because he was an experienced practitioner who played a key role in advising Congress on patent law. *See Paulik v. Rizkalla*, 760 F.2d 1270, 1277-78 (Fed. Cir. 1985) (en banc) (Rich, J., concurring) (discussing Federico's role in drafting the Patent Act).

SCA asserts (at 27) that laches is "not a listed defense" in § 282 and "cannot be read into the statute." To the contrary, laches is one of a general class of equitable defenses incorporated into the term "unenforceability," and is commonly

[2] *See, e.g.*, *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 365 U.S. 336, 342 & n.8 (1961) (citing Federico for the proposition that 35 U.S.C. "§ 271(a) . . . left intact the entire body of case law on direct infringement"); *Symbol Techs.*, 277 F.3d at 1366 ("Federico's commentary is an invaluable insight into the intentions of the drafters of the Act."); *see also In re Staats*, 671 F.3d 1350, 1354 n.1 (Fed. Cir. 2012) (same). SCA's argument (at 27) that the Commentary is entitled to "no weight" merely demonstrates its disregard for this Court's (and the Supreme Court's) precedent.

described as an unenforceability defense. *See Ultimax Cement Mfg. Corp. v. CTS Cement Mfg. Corp.*, 587 F.3d 1339, 1345 (Fed. Cir. 2009) (describing a ruling that a patent "was unenforceable due to laches"). The statute likewise does not mention estoppel or inequitable conduct by name, yet those are well-recognized defenses under this Court's precedent. SCA's argument that § 282 does not incorporate pre-1952 equitable defenses *at all* proves too much to be plausible.

**2.** It was settled by 1952 that laches was a defense to a claim of patent infringement. *Lane & Bodley Co. v. Locke*, 150 U.S. 193 (1893), on which *Aukerman* relied, is perhaps the leading case. *Lane* involved a patent holder who delayed bringing suit for at least eight years after the accused infringer – his employer – rejected his request for a settlement. *See id.* at 200-01. His excuse for the delay was that he wished to continue "'amicable relations'" with the company, which meant receiving a salary from them of $2,000 a year. *Id.* at 201. The Supreme Court invoked the principle that "[c]ourts of equity . . . will not assist one who has slept upon his rights, and shows no excuse for his laches in asserting them," and added that the patent holder's "prefer[ence] . . . to receive a salary from the defendant rather than to demand a royalty, is entitled to a less favorable consideration by a court of equity than if his conduct had been that of mere inaction." *Id.* It remanded "with directions to dismiss the bill of complaint." *Id.*

*Lane* was not only controlling in its own right, but also was applied by numerous circuit courts. *See, e.g.*, *Window Glass Mach. Co. v. Pittsburgh Plate Glass Co.*, 284 F. 645, 650 (3d Cir. 1922) (citing *Lane* and affirming dismissal of infringement claims where the patent holders failed to "excuse the delay which they themselves disclose by their bill"); *Woodmanse & Hewitt Mfg. Co. v. Williams*, 68 F. 489, 493 (6th Cir. 1895) (citing *Lane*, among other authorities, in finding that a patent holder's delay had been so unreasonable "as to require a court of equity to refuse it any relief whatever"); *see also Gillons v. Shell Co. of Cal.*, 86 F.2d 600, 610 (9th Cir. 1936) (following *Window Glass* and citing *Lane* and other authorities). Other cases, *see infra* pp. 10-11 & note 3, 20-21, applied laches to infringement actions without citing *Lane.*

### B. Pre-1952 Cases Recognized That Laches Can Bar Damages

It was also settled by 1952 that laches could bar claims not only for traditional equitable relief (an injunction or an accounting), but also for traditional legal relief (damages). In § 55 of the Patent Act of 1870, ch. 230, 16 Stat. 198, 206, Congress gave patentees a remedy by a "bill in equity" through which they could recover, "in addition to the profits to be accounted for by the defendant, the damages the complainant has sustained thereby." *Id.*; *see also* 18 Stat. 952 (same language in § 4921 of the Revised Statutes). Thus, the plaintiff in *Lane* could in theory have sought damages, if he had suffered any; and the disposition in *Lane* –

a remand to "dismiss the bill of complaint" – would have barred him from recovering damages.

SCA emphasizes (at 20-21) that damages were traditionally a legal remedy and laches was traditionally an equitable defense; but SCA overlooks Congress's instruction in 1870 – when it enacted § 55 – that courts could award damages for patent infringement in the exercise of their *equitable* jurisdiction, which clearly implied that equitable defenses would apply to claims for damages. Further, as this Court noted in *Aukerman*, 960 F.2d at 1031, Congress in 1915 removed any doubt about the propriety of pleading laches as a defense to a damages action, by providing that "in all actions at law equitable defenses may be interposed by answer, plea, or replication without the necessity of filing a bill on the equity side of the court." Act of March 3, 1915, ch. 90, 38 Stat. 956.

Courts did indeed apply laches to reject claims for damages. *See*, *e.g.*, *Banker v. Ford Motor Co.*, 69 F.2d 665, 666 (3d Cir. 1934) (affirming application of laches to an action at law seeking damages, based on the 1915 statute); *Wolf, Sayer & Heller v. United States Slicing Mach. Co.*, 261 F. 195, 197-98 (7th Cir. 1919) ("The evidence . . . discloses such laches as to prevent appellee from collecting damages for past infringements . . . ."); *A.R. Mosler & Co. v. Lurie*, 209 F. 364, 371 (2d Cir. 1913) ("[I]t seems to us inequitable that [plaintiffs] should come at this late day and insist on being granted an accounting for damages and

profits during their long period of inaction.").[3] Notably, although SCA spends considerable words (at 28-32) attempting to distinguish the cases *Aukerman* cited for the pre-1952 availability of laches, it cites no case holding that laches was *not* a defense to infringement claims for damages – at that time, or ever.[4] That failure is the best sign that the courts were in consensus during the relevant period.

Thus, cases applying laches to bar claims for patent infringement – and in particular to bar infringement claims for damages – were part of the legal

[3] *See also Universal Coin Lock Co. v. American Sanitary Lock Co.*, 104 F.2d 781, 782 (7th Cir. 1939) (recognizing and applying laches, defined as "inexcusable and prejudicial" delay, to bar a claim for damages); *Safety Car Heating & Lighting Co. v. Consolidated Car Heating Co.*, 174 F. 658, 662 (2d Cir. 1909) (per curiam); *Westinghouse Air Brake Co. v. New York Air Brake Co.*, 111 F. 741, 742 (C.C.N.D.N.Y. 1901) ("It would be in conflict with the well-known principles of equity to permit the complainant to collect damages for a use which it tolerated and almost invited."). Other courts declined to apply laches to bar damages on the facts before them, but recognized in general that such a defense could be made out. *See Montgomery Ward & Co. v. Clair*, 123 F.2d 878, 883 (8th Cir. 1941) (citing *Mosler*, among other cases); *Frank F. Smith Hardware Co. v. S.H. Pomeroy Co.*, 299 F. 544, 549 (2d Cir. 1924) (similar); *Rajah Auto Supply Co. v. Belvidere Screw & Mach. Co.*, 275 F. 761, 764 (7th Cir. 1921) (quoting *Wolf*).

[4] The closest SCA comes (at 21-22) is *Hayden v. Oriental Mills*, 15 F. 605 (C.C.D.R.I. 1883), but the statement there appears to have been dictum – there is no mention of any attempt to plead laches – and was made before *Lane* or the circuit cases cited in text. *Amici* Law Professors also cite (at 18) *Middleton v. Wiley*, 195 F.2d 844 (8th Cir. 1952), but *Middleton* held not that laches was never available to bar damages but that there had been no laches on the facts of that case. *See id.* at 847 (stating that the court "s[aw] nothing equitable" in denying relief because the defendant had infringed "knowingly and deliberately"). The Eighth Circuit had already recognized the settled authority supporting the availability of laches to bar patent infringement damages in *Montgomery Ward*. *See supra* note 3. *Middleton* cannot be read as suddenly rejecting that proposition.

background against which Congress passed the 1952 Patent Act. When Congress legislates in an area with established judge-made rules, but does not address the subject matter of a particular rule, courts infer that Congress means to leave the rule intact. *See Helferich Patent Licensing, LLC v. New York Times Co.*, 778 F.3d 1293, 1305 (Fed. Cir. 2015) ("We presume, from Congress's refusal to disturb the existing decisional law of [a] doctrine (which predated the 1952 Act by nearly a century), an implicit authorization to continue applying the doctrine within its familiar boundaries."). That presumption should be even stronger in this case, because Congress included in § 282 general defense-authorizing language – "absence of liability for infringement" and "unenforceability" – that indicates its intent to adopt, not to displace, pre-1952 precedent about available defenses.

### C. Post-1952 Cases and Congress's Amendments to § 282 Confirm That Laches Is an Available Defense That Can Bar Damages

More support for the laches defense is found in post-1952 cases from the regional circuits and this Court; and in amendments that Congress has made to § 282 without suggesting that it "intended to alter" the "longstanding and well-known construction" of that provision to incorporate laches. *Ankenbrandt v. Richards*, 504 U.S. 689, 700-01 (1992).

The regional circuits recognized laches as a defense to an infringement action from 1952 until the establishment of this Court in 1982. *See, e.g.*, *TWM Mfg. Co. v. Dura Corp.*, 592 F.2d 346, 348 (6th Cir. 1979) ("Since the statute

limits only the period for recovery of damages, courts employ the traditional, equitable doctrine of laches for determining the timeliness of infringement actions."); *see also Studiengesellschaft Kohle mbH v. Eastman Kodak Co.*, 616 F.2d 1315, 1325-28 (5th Cir. 1980) (surveying circuit cases). This Court first applied laches to an infringement action in 1984, *see Leinoff v. Louis Milona & Sons, Inc.*, 726 F.2d 734, 741 (Fed. Cir. 1984), *overruled on other grounds by Aukerman*, 960 F.2d 1020,[5] and reaffirmed the core doctrine unanimously[6] en banc in 1992 in *Aukerman*.

*Aukerman* made clear that this Court would continue to apply laches as a defense to patent infringement actions. Congress is presumed to have been aware of this Court's ruling at least since that en banc declaration in 1992 – if not since *Leinoff*'s earlier holding in 1984. Congress has since had many opportunities to narrow or eliminate the laches defense recognized by this Court. From 1992 to the present, Congress has made three substantive amendments specifically to § 282,[7]

---

[5] *Aukerman* partially overruled *Leinoff* by reformulating the presumption of laches that arises when a plaintiff has delayed by more than six years. *See Aukerman*, 960 F.2d at 1037-39. The point is not relevant here.

[6] Judge Plager expressed "full agreement" with the majority opinion's reaffirmation of the "traditional common law role and concept" of "laches in patent law," but dissented from the changes to the six-year presumption. 960 F.2d at 1046-47 (Plager, J., concurring in part and dissenting in part).

[7] *See* Biotechnological Process Patents, Pub. L. No. 104-41, § 2, 109 Stat. 351, 352 (1995) (altering obviousness defense for certain patents); Patent Term

and two others to other parts of the Act dealing with defenses.[8] None of those amendments indicated any legislative dissatisfaction with laches.

Where Congress changes one part of a statutory provision, but not another, and the unchanged language already has a "longstanding and well-known construction" from the courts, the partial change is good reason to think that Congress meant to "'adopt[] th[e] interpretation'" already given the language it retained. *See Ankenbrandt*, 504 U.S. at 700-01 (quoting *Lorillard v. Pons*, 434 U.S. 575, 580 (1978)); *Square D Co. v. Niagara Frontier Tariff Bureau, Inc.*, 476 U.S. 409, 419-20 (1986) (giving weight to a showing that Congress "carefully reexamined [an] area of the law" and did not "see fit to change" settled precedent); *In re Cuozzo Speed Techs., LLC*, 778 F.3d 1271, 1280 (Fed. Cir. 2015) (applying the principle that Congress is "presumed to be aware of" a "widely known judicial decision" interpreting a statute and "to adopt that interpretation when it re-enacts a statute without change").

---

Guarantee Act of 1999, Pub. L. No. 106-113, app. I, § 4402, 113 Stat. 1501A-557 (1999) (adding defense based on certain material deficiencies in a patent-term-extension proceeding); Leahy-Smith America Invents Act, Pub. L. No. 112-29, § 15(a), 125 Stat. 284, 328 (2011) (removing failure to disclose best mode as a means of establishing invalidity or unenforceability).

[8] *See* First Inventor Defense Act of 1999, Pub. L. No. 106-113, app. I, § 4302, 113 Stat. 1501A-555, 1501A-556 (adding defense for earlier invention of subject matter); America Invents Act § 5, 125 Stat. at 297 (adding defense for prior commercial use, described as "a defense under section 282(b)").

*Microsoft Corp. v. i4i Limited Partnership*, 131 S. Ct. 2238 (2011), applied relevant principles and is closely on point. Both *i4i* and this case turn on Congress's intent to retain in the 1952 Patent Act a well-settled rule of law originally developed by the courts. In *i4i*, the rule at issue was the clear-and-convincing-evidence standard for invalidity challenges, set forth by the Supreme Court in 1934. *See id.* at 2243 (discussing *Radio Corp. of Am. v. Radio Eng'g Labs., Inc.*, 293 U.S. 1 (1934) ("*RCA*")). Here, the rule that laches is a defense to a patent infringement action was adopted by the Supreme Court in *Lane* even longer ago, in 1893. In *i4i*, the Court looked to broad language in § 282(a) – "[a] patent shall be presumed valid" – as evidence that Congress had adopted the judge-made standard from *RCA*. *Id.* at 2245. Here, language in the next subsection, § 282(b) – "absence of liability for infringement [and] unenforceability" both "shall be defenses" – similarly shows that Congress adopted the judge-made rule from *Lane* and other pre-1952 laches cases.

The *i4i* Court also found it highly significant that this Court had applied the clear-and-convincing-evidence standard for "nearly 30 years," beginning with *American Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350 (Fed. Cir. 1984), and "never wavered in this interpretation of § 282." 131 S. Ct. at 2243. During that time, Congress had "often amended § 282," but left the "evidentiary standard adopted in § 282 . . . untouched." *Id.* at 2252. The Court took this history

as confirming that "[a]ny re-calibration of the standard of proof" should "remain[ ] in [Congress's] hands." *Id.* Here, this Court announced that it would apply laches to patent actions in *Leinoff* in 1984, the same year that *American Hoist* was decided; in *Aukerman* in 1992, sitting en banc, it reaffirmed that position even more conspicuously. The circumstances here thus weigh even more strongly in favor of retaining this Court's precedent than did the circumstances in *i4i*.

### D. There Is No Inconsistency Between *Aukerman* and *Petrella*

There is no inconsistency between *Aukerman* and the holding in *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S. Ct. 1962 (2014). The premise of *Petrella* was that, "in face of a statute of limitations enacted by Congress, laches cannot be invoked to bar legal relief." *Id*. at 1974. *Aukerman* held squarely that this principle did not control here, because (among other things) the Patent Act (unlike the Copyright Act) contains no statute of limitations. *See* 960 F.2d at 1030. In reaching that conclusion, *Aukerman* correctly reasoned that the six-year damages period of § 286 is "not a statute of limitations in the sense of barring a suit for infringement." *Id.* SCA's contrary argument lacks merit.

In general, a "[s]tatute[ ] of limitations" is a law that "establish[es] the period of time within which a claimant must bring an action." *Heimeshoff v. Hartford Life & Accident Ins. Co.*, 134 S. Ct. 604, 610 (2013); *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 416 (1998) ("[A] typical statute of limitation provide[s] that a cause

of action may or must be brought within a certain period of time.”). The copyright provision in *Petrella* fits this mold: it states that “‘[n]o civil action shall be maintained under the [Copyright Act] unless it is commenced within three years after the claim accrued.’” 134 S. Ct. at 1967 (quoting 17 U.S.C. § 507(b)).

Section 286 does not limit the time to bring suit. It limits the time within which “recovery shall be had,” 35 U.S.C. § 286, which means the time to recover *damages*. *See*, *e.g.*, *Standard Oil Co. v. Nippon Shokubai Kagaku Kogyo Co.*, 754 F.2d 345, 348 (Fed. Cir. 1985) (“In the application of § 286, one starts from the filing of a complaint or counterclaim and counts backward to determine the date before which infringing acts cannot give rise to a right to recover damages.”) (emphasis omitted). Accordingly, § 286 “cannot properly be called a ‘statute of limitations’ in the sense that it defeats the right to bring suit.” *Id.*

That formal distinction sheds light on Congress’s substantive intent. As *Petrella* explains, there is authority that “‘[l]aches within the term of the statute of limitations is no defense [to an action] at law,’” which usually means an action for damages. 134 S. Ct. at 1973 (quoting *Merck & Co. v. Reynolds*, 559 U.S. 633, 652 (2010), in turn quoting *United States v. Mack*, 295 U.S. 480, 489 (1935) (alterations in *Petrella*). Accordingly, when Congress creates a statute of limitations such as § 507(b) of the Copyright Act, it presumably wants that statute to displace the discretionary laches doctrine, at least as applied to a damages

remedy. But no such background presumption could apply to § 286 – both because it is not a statute of limitations and because patent law presents a rare situation in which courts historically awarded damages as an *equitable*, not legal, remedy. *See supra* pp. 9-10.

The limited scope of § 286 takes on added significance because Congress had previously enacted and then repealed a genuine statute of limitations on actions for patent infringement. Section 55 of the Patent Act of 1870 provided that "all actions [for infringement] shall be brought during the term for which the letters-patent shall be granted or extended, or within six years after the expiration thereof." 16 Stat. at 206. That limitation applied to actions "as well in equity as at law." *Id.* But Congress repealed that provision in 1874. *See* Rev. Stat. § 5596 (1878). That history makes especially clear Congress's decision to preserve the judge-made law governing the timeliness of patent actions.

Because of these features of the 1952 Patent Act and its predecessors, this Court should take guidance not from a loose analogy to the differently worded Copyright Act, but from the settled line of precedent under which laches is understood as fully compatible with § 286. The predecessor to § 286, substantially identical for purposes of this case, was enacted in 1897.[9] Between that enactment

[9] *See* Patent Act of 1897, ch. 391, § 6, 29 Stat. 692, 694 (amending Rev. Stat. § 4921 to add: "But in any suit or action brought for the infringement of any

and the 1952 Patent Act, cases such as *Window Glass*, *Woodmanse*, *Banker*, *Gillons*, *Wolf*, and *Mosler* were decided. *See supra* pp. 9, 10-11 & note 3. None of those cases would have suggested to Congress that any court would view § 286 – which made no change in the law – as abrogating laches.

Ultimately, the rule applied in *Petrella* is grounded in judicial respect for the decisions of the legislative branch. *See* 134 S. Ct. at 1973 (quoting the statement in *Holmberg v. Armbrecht*, 327 U.S. 392, 395 (1946), that, when "Congress explicitly puts a limit upon the time for enforcing a right which it created, there is an end of the matter"). For this Court suddenly to abolish the laches defense in patent actions would be far more disrespectful to Congress than leaving settled precedent in place. Effectively, SCA asks this Court to conclude that courts have been uniformly mistaken about the survival of laches as a defense in patent cases for over a hundred years; and that Congress overlooked this mistake when it passed the 1952 Patent Act and when it repeatedly amended § 282 after *Aukerman*. The proper approach, as cases such as *i4i* and *Helferich* make clear, is to reason from the premise that Congress knows the law and that, where (as here) it leaves existing law "untouched," *i4i*, 131 S. Ct. at 2252, it does so intentionally.

---

patent there shall be no recovery of profits or damages for any infringement committed more than six years before the filing of the bill of complaint . . . .").

## II. In Appropriate Cases, Laches Can and Should Bar Other Forms of Relief as Well as Damages

Laches should function, in an appropriate case, to bar an entire patent infringement action regardless of the relief sought – whether that is retrospective monetary relief, prospective monetary relief, or an injunction. To be sure, *Aukerman* said that laches bars recovery of pre-filing damages only, and does not bar post-filing damages or injunctive relief. *See* 960 F.2d at 1040-41. That statement, however, was not necessary to the result in *Aukerman*, which addressed the issue only "for the guidance of the district court" on remand, and further qualified that guidance by stating that "the facts presented in this case" provided "no reason to revisit" the rule it stated. *Id.* Thus, *Aukerman* did not finally resolve the issue; later congressional actions, *see supra* pp. 13-16, should not be interpreted to ratify this sort of tentative dictum. This Court can and should now clarify that laches can bar all relief where delay has been particularly unreasonable or prejudice is particularly great.

*Lane* – still the principal guidance from the Supreme Court on the application of laches in patent cases – applied laches in just that way, ordering the lower courts to "dismiss the bill of complaint," 150 U.S. at 201, even though the patent holder had sought "an injunction," *id.* at 194. Accordingly, based on *Lane* alone, *Aukerman*'s dictum that laches cannot bar an injunction is in error. Circuit courts before 1952 had also applied laches to bar all relief. *See Woodmanse*, 68

F. at 493-94 (alternative holding) ("[T]he conduct of complainant . . . has been such as to require a court of equity to refuse it any relief whatever."); *Westco-Chippewa Pump Co. v. Delaware Elec. & Supply Co.*, 64 F.2d 185, 188 (3d Cir. 1933) (affirming "refus[al of] an injunction and an accounting" on the basis of laches). Thus, unlike *Aukerman*'s holding that laches is a defense against claims for patent infringement, its dictum is not supported by any pre-1952 consensus.

*Aukerman* suggested that its rule was supported by *Menendez v. Holt*, 128 U.S. 514 (1888), a trademark case which stated that "[m]ere delay or acquiescence cannot defeat the remedy by injunction in support of the legal right, unless it has been continued so long, and under such circumstances, as to defeat the right itself." *Id.* at 523. As *Aukerman* recognized, this language can be read – and has been read in trademark cases – to mean that, in some circumstances, "laches may bar all relief." 960 F.2d at 1040 (discussing authorities). That is the better rule, both under controlling precedent (because it can be reconciled with *Lane*) and because it leaves district courts flexibility to achieve equity when delay has been particularly unreasonable and prejudicial.

The policy reasons that *Aukerman* gave for its dictum – largely quoted from a pre-1952 Seventh Circuit case – boil down to the difficulty and uncertainty of patent enforcement actions, which might make it unfair to deprive a patentee of all rights. *See id.* at 1040-41 (quoting *George J. Meyer Mfg. Co. v. Miller Mfg. Co.*,

24 F.2d 505, 507 (7th Cir. 1928)). Whatever may have been the situation in 1928, however, today it is not too hard to file patent actions, and it is not a problem that too few of them are filed. The number of patent actions filed has increased at an average rate of 8% since 1991, to a record high of nearly 6,500 cases filed in 2013.[10] To the extent that *Aukerman*'s dictum was based on concerns that patent litigation was too difficult, it is ripe for reassessment.

In addition, even under SCA's incorrect view of the law, laches would still play a significant role in barring or limiting prospective equitable relief. Despite contending that laches can never bar a claim for damages, SCA concedes that, in some cases, a "plaintiff's delay [may] counsel[ ] against a particular form of equitable relief." *See* SCA Br. 36-37 (citing *Petrella*, 134 S. Ct. at 1977-78). SCA gives the example of an injunction. *See id*. As First Quality persuasively observes (at 36-37), however, the same logic applies to the judicial imposition of a royalty. This Court has treated an ongoing royalty as a form of equitable monetary relief. *See Paice LLC v. Toyota Motor Corp.*, 504 F.3d 1293, 1315-16 (Fed. Cir. 2007) (holding that there is no jury trial right as to an ongoing royalty because it does not resemble an issue traditionally tried at law); *see also Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 733 F.3d 1369, 1379 (Fed. Cir. 2013) (per curiam) (O'Malley, J.,

[10] *See* PricewaterhouseCoopers, *2014 Patent Litigation Study* 5 (July 2014), *available at* http://www.pwc.com/en_US/us/forensic-services/publications/assets/2014-patent-litigation-study.pdf.

dissenting from the denial of rehearing en banc) (discussing *Paice*'s classification of an ongoing royalty as "prospective equitable relief"). Accordingly, even if this Court concludes that *Petrella* requires it to revisit *Aukerman*, it should make clear that laches will still play a significant role in limiting the equitable relief available in patent cases, both injunctive and monetary.

### III. Laches Is a Critical Protection for Technological Innovators

*Amici* are companies active in the area of high technology, where the continued availability of laches is critical. There are obvious risks in allowing a patent holder that knows of alleged infringement to sit on its rights while the alleged infringers invest and engage in further innovation. *See, e.g.*, *Rome Grader & Mach. Corp. v. J.D. Adams Mfg. Co.*, 135 F.2d 617, 619 (7th Cir. 1943). The laches defense recognizes the unfairness of allowing a patent holder to wait in the weeds while an innovator commits resources, becomes locked in to a particular product design, and achieves success that makes it an attractive litigation target. *See Dwight & Lloyd Sintering Co. v. Greenawalt*, 27 F.2d 823, 827 (2d Cir. 1928) (L. Hand, J.) (discussing the inequity of awarding relief after "the patentee has let the infringer slowly build up a large business without protest").

In high-technology industries, delay is especially harmful. Companies such as *amici* must frequently make choices about technology while facing uncertainty

concerning the scope of protected patent rights.[11] High-technology products implicate thousands of such choices, which must often be made in a limited time because of the "fast-moving, interdependent nature of technical change" in *amici*'s industries.[12] Components within a product must remain compatible, and products must be interoperable with other products. As products and services grow through investment, there may be little practical ability to switch to alternative technologies to avoid infringement.[13] If a patent holder can hang back and bring suit only after an investment has paid off, it will be unjustly rewarded. The six-year limitation on damages recovery does not protect against that harm: it does not lessen the hold-up value of an injunction threat, and does not recognize that damages are often

---

[11] *See*, *e.g.*, Federal Trade Comm'n, *The Evolving IP Marketplace* 90 (2011) (discussing evidence that, "in the IT and telecommunications industries, it is 'almost cost prohibitive' to perform [patent] clearance searches," which "are likely to produce 'false positives and false negatives' ").

[12] Executive Office of the President, *Patent Assertion and U.S. Innovation* 8 (2013) (noting that "a single piece of software or website might have several thousand 'functions' that could be claimed in as many patents" and that "a single smartphone may read on over 100,000 patents"); *see* Mark A. Lemley & Carl Shapiro, *Patent Holdup and Royalty Stacking*, 85 Tex. L. Rev. 1991, 1992 (2007) ("In the information technology sector in particular, modern products such as microprocessors, cell phones, or memory devices can easily be covered by dozens or even hundreds of different patents.").

[13] *See* Lemley & Shapiro, *supra* note 12, at 2002-03 (analyzing the situation where a "firm has unwittingly designed a patented feature into its product, even though it could have used an equally good unpatented alternative had it known in advance about the patent").

most significant after an alleged infringer has fully developed a market for a product that incorporates allegedly infringing technology.

Those dangers to innovators are amplified because high-technology products frequently derive much or all of their value from innovations and business choices that have nothing to do with the asserted patent. In theory, a monetary award "must be carefully tied to the claimed invention itself," *Apple Inc. v. Motorola Inc.*, 757 F.3d 1286, 1324 (Fed. Cir. 2014), but in practice the calculation is uncertain and tends to be colored in a jury's mind by a patent holder's victory on the issues of infringement and (often) validity. To untangle the portion of a product's success that is due to the allegedly infringing use of a patent becomes more difficult over time – especially in the fast-changing markets in which *amici* compete, and especially for the "broad and/or vague claims" that often confront them. *Patent Assertion*, *supra* note 12, at 8 (discussing the problem as to software patents). A robust doctrine of laches can lessen such problems by requiring patent holders to sue early, when product changes can more easily be made.

In addition, patent cases involving new high-technology products are almost always cases of independent invention of allegedly patented features, rather than deliberate copying. That is a result of the sheer number of technological patents currently in force and of the extraordinary intellectual fertility – and massive research investments – common to *amici*'s industries. Although independent

invention is not itself a defense to claims for patent infringement, it is certainly a situation where the equities weigh relatively less in favor of the patent owner and more in favor of the innocent alleged infringer. When the equitable balance is further tipped by the owner's unreasonable delay, and especially where the alleged infringer is in no way responsible for that delay,[14] district courts should be able to withhold relief on the basis of laches; if anything, that doctrine should be applied *more* frequently than it is today.

Those problems are features of patent law and its interaction with new technologies. Similar considerations have less weight in the copyright context. There, it is unlikely that a single work will plausibly infringe more than a handful of copyrights; it is more likely that a potential infringer will know its risks in advance; and, of course, independent creation of a work that resembles a protected work is a defense to a claim for infringement, *see Eden Toys, Inc. v. Marshall Field & Co.*, 675 F.2d 498, 501 (2d Cir. 1982). Also, the three-year statute of limitations in the Copyright Act is relatively short. Thus, it is unsurprising that the Supreme Court found that the plaintiff's suit "put at risk only a fraction of the

[14] An otherwise viable laches defense can be overcome only if the alleged infringer is specifically "responsible for the plaintiff's delay in bringing suit," *Serdarevic v. Advanced Med. Optics, Inc.*, 532 F.3d 1352, 1361 (Fed. Cir. 2008). In those cases where a plaintiff has delayed for reasons of its own, without giving any notice of the purported infringement it later alleges, laches should apply with full force.

income MGM has earned" and would "work no unjust hardship on innocent third parties." *Petrella*, 134 S. Ct. at 1978. By contrast, there is a recurring risk that a stale patent claim will inflict significant hardship on a defendant who has lost the meaningful ability to choose between alternative technologies and whose investment in research, development, and further innovation may be jeopardized.

In sum, the rule that laches provides a defense to claims of patent infringement has been the law for more than a century and is now needed more than ever. Were this Court to abolish that rule, *amici* and their products would face even more abuse of the patent system than they do at present. Innovators' reliance on existing law is thus another compelling reason to keep the laches defense in place. *See Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 739 (2002) ("[C]ourts must be cautious before adopting changes that disrupt the settled expectations of the inventing community.").

**CONCLUSION**

For the reasons given in this brief and in the brief for Defendants-Appellees, this Court should reaffirm the availability of laches as a defense to patent infringement and should hold that, in some cases, laches may bar not only the remedy of pre-filing damages, but also injunctive relief, any ongoing royalty, and the plaintiff's claim in its entirety.

Respecfully submitted,

/s/ *John Thorne*

JOHN THORNE
AARON M. PANNER
GREGORY G. RAPAWY
KELLOGG, HUBER, HANSEN, TODD, EVANS & FIGEL, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
(202) 326-7900
*Counsel for Amici Curiae Dell, CTIA, HP, Intel, and Xerox*

Counsel whose names appear below have consented to the electronic representation of their signatures:

/s/ *Suzanne Michel*

SUZANNE MICHEL
GOOGLE INC.
25 Massachusetts Avenue, N.W.
Washington, D.C. 20001
(650) 253-0000
*Counsel for Amicus Curiae Google*

/s/ *Derek L. Shaffer*

DEREK L. SHAFFER
QUINN EMANUEL URQUHART & SULLIVAN, LLP
777 6th Street, N.W., 11th Floor
Washington, D.C. 20001
(202) 538-8000
*Counsel for Amicus Curiae Marvell*

April 23, 2015

**FORM 30. Certificate of Service**

**UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT**

# CERTIFICATE OF SERVICE

I certify that I served a copy on counsel of record on Apr 23, 2015
by:

- ☐ US mail
- ☐ Fax
- ☐ Hand
- ☒ Electronic Means
  (by email or CM/ECF)

John Thorne
Name of Counsel

/s/ John Thorne
Signature of Counsel

Law Firm: Kellogg, Huber, Hansen, Todd, Evans & Figel, P.L.L.C.

Address: 1615 M Street, N.W., Suite 400

City, State, ZIP: Washington, D.C. 20036

Telephone Number: 202-326-7900

FAX Number: 202-326-7999

E-mail Address: jthorne@khhte.com

NOTE: For attorneys filing documents electronically, the name of the filer under whose log-in and password a document is submitted must be preceded by an "/s/" and typed in the space where the signature would otherwise appear. Graphic and other electronic signatures are discouraged.

**CERTIFICATE OF COMPLIANCE**

In accordance with Federal Rule of Appellate Procedure 32(a)(7)(C), the undersigned certifies that this brief complies with the applicable type-volume limitations. Exclusive of the portions exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii) and Federal Circuit Rule 32(b), this brief contains 6,985 words. This certificate was prepared in reliance on the word count of the word-processing system (Microsoft Office Word 2007) used to prepare this brief.

The undersigned further certifies that this brief complies with the typeface and type style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Office Word 2007 in 14-point Times New Roman font.

/s/ *John Thorne*
John Thorne
*Counsel for Amici Curiae Dell, CTIA, HP, Intel, and Xerox*

April 23, 2015